

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
U.S. COURTHOUSE
402 E. STATE STREET
TRENTON, NEW JERSEY 08608**

**Hon. Michael B. Kaplan**                                                                   **609-858-9360**
**Chief Judge, United States Bankruptcy Court**

June 20, 2023

*All Counsel of Record*

        Re:    In re Whittaker, Clark & Daniels, Inc., et al.
                   Case No.: 23-13575

Dear Counsel,

Presently before the Court is an amended Motion to Dismiss (the "Motion," ECF No. 117) filed by Peter Protopapas in his capacity as court-appointed receiver seeking dismissal of the chapter 11 bankruptcy petition filed on behalf of Whittaker, Clark & Daniels, Inc. ("WCD"[1]). The Official Committee of Talc Claimants ("TCC") filed a joinder (ECF No. 132). WCD filed opposition (ECF No. 124) and the court-appointed receiver filed a Reply (ECF No. 156). The Court has reviewed the parties' submissions and fully considered the arguments made during the hearing on June 6, 2023. For the reasons stated herein, the Motion is denied.

---

[1] Related entities Brilliant National Services, Inc., Soco West, Inc., and L.A. Terminals, Inc., also filed for bankruptcy. *See* Case Nos. 23-13576, 13-13578, and 23-13581. The cases are jointly administered with WCD's bankruptcy serving as the lead case. *See Order Granting Motion for Joint Administration,* ECF No. 72 in Case No. 23-13575. However, the pending motion to dismiss relates only to WCD's bankruptcy filing, and there are no pending motions to dismiss with respect to the related filings.

I. **Jurisdiction**

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) & (O). Venue is proper in this Court pursuant to 28 U.S.C. § 1408. The Court issues the following findings of fact and conclusions of law as required by FED. R. BANKR. P. 7052 [2]

II. **Background**

The relevant background is set forth in the jointly-submitted stipulated facts. *Stipulated Facts*, ECF No. 157. WCD was incorporated in New Jersey in December 1972. In 2004, WCD ceased all operations "but continued their corporate existence to manage alleged asbestos and environmental liabilities related to the historical processing and distribution of cosmetic and industrial compounds." *Id.* at ¶ 3. On March 3, 2023, a jury rendered a verdict against WCD exceeding $29 million in an action in South Carolina involving Sarah J. Plant (the "Plant Action"), over which Justice Toal of the South Carolina Court of Common Pleas (the "South Carolina Court") presided. *Id.* at ¶ 7. On March 10, 2023, the South Carolina Court granted the Plant Action plaintiffs' request for the appointment of a receiver over WCD (the "Receivership Order"). *Receivership Order – Ex. 3 to Stipulated Facts*, ECF No. 157. WCD sought reconsideration (the "Reconsideration Motion") and, at the conclusion of oral argument on April 18, 2023, Justice Toal denied the motion in a bench ruling. *See Tr. of Apr. 18, 2023 Hrg. – Ex. 8 to Stipulated Facts*, ECF

---

[2] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

No. 157. The parties were directed submit forms of order memorializing her ruling. However, the WCD board of directors (the "Board") filed voluntary bankruptcy for WCD in this Court prior to the entry of an order on the Reconsideration Motion in the South Carolina Court. The instant Motion followed.

In his Motion, Mr. Protopapas, who is the receiver (the "Receiver") appointed by the South Carolina Court, seeks dismissal of WCD's chapter 11 bankruptcy case. The crux of the Receiver's argument is that the Board lacked authority to approve a WCD bankruptcy filing and that only he—as receiver—has such power. WCD raises several arguments in opposition. The Court addresses each, in turn. In doing so, the Court does not intend to examine the merits of the South Carolina Court's ruling with respect to the appointment of the Receiver. Likewise, the Court is not revisiting whether the South Carolina Court had jurisdiction to enter the Receivership Order. Nor, obviously, is the Court looking behind the Receivership Order into the Receiver's motives, experience, or qualifications. Rather, this Court addresses the South Carolina Court's expectations, albeit erroneous and shared by plaintiffs' counsel, that placing the Debtor's assets under the courts' control through the appointment of a receiver implicitly precludes the Debtor's bankruptcy filing, undertaken in a manner consistent with applicable state law and the Debtor's organizational documents. It is the province of this Court to question whether such expectations, standing alone, suffice to achieve such a result. Simply put, the Bankruptcy Code—specifically 11 U.S.C. § 543—answers the question in the negative. For the reasons set forth below, the Receiver's Motion to Dismiss and the TCC's Joinder are denied.

### A. The Receiver's Standing

WCD first challenges the Receiver's standing to file the Motion. The Court rejects this argument. As counsel for the Receiver points out, this Court may *sua sponte* raise the issue of

dismissal where cause appears to exist and—relying on this Court's decision in *3P Hightstown*—the Receiver argues this Court *must* dismiss an improperly-filed case. *See Receiver's Reply* 3-4, ECF No. 156 (citing *In re 3P Hightstown, LLC*, 631 B.R. 205, 209 (Bankr. D.N.J. 2021) (collecting cases explaining that a bankruptcy court can *sua sponte* dismiss a bankruptcy petition for cause under § 1112(b) and is required to dismiss a case without relying on § 1112(b) if the petition was filed without the prerequisite authority) (citations omitted)). In response to this argument, WCD's Counsel contends that—even if this Court finds cause for dismissal—it is not compelled to dismiss the case and, instead, has discretion to *refuse to* dismiss based on the best interests of the creditors. WCD argues that *3P Hightstown* improperly relies on a Supreme Court case, *Price*, that pre-dates § 1112(b). *See Price v. Gurney*, 324 U.S. 100, 104, 65 S. Ct. 513, 515, 89 L. Ed. 776 (1945). Counsel for the Receiver counters that, because the case was improperly filed, this Court need not look to § 1112(b). *Tr. of June 6, 2023 Hrg.* 14:25-15:2 ("You don't even have to reference Section 1112. You don't even get to Section 1112. The case must be dismissed if there is no authority, which is what we argue here."). Indeed, there is case law that cuts both ways. *Compare In re ComScape Telecommunications, Inc.*, 423 B.R. 816, 829–30 (Bankr. S.D. Ohio 2010) (collecting cases holding that § 1112(b) provided grounds for dismissal of case filed by individual who lacked authority to file the petition on behalf of the debtor company) *with In re Mid-S. Bus. Assocs., LLC*, 555 B.R. 565, 570 (Bankr. N.D. Miss. 2016) (citing *Price v. Gurney*, 324 U.S. 100 for the proposition that "a bankruptcy petition filed without proper corporate authority must be dismissed *independent of any finding of 'cause' under § 1112(b)*, because if the Debtor did not have sufficient corporate authority for the filing of its petition, then this Court lacks subject matter jurisdiction over the case") (emphasis added). Because—for reasons discussed below—this Court concludes that WCD's bankruptcy was filed by entities with proper authority, it likewise concludes that there

exists no cause for dismissal, and this Court need not engage in an academic exercise as to whether dismissal of an improperly-filed case would be discretionary under § 1112(b) or mandatory independent of § 1112(b).

### B. The *Rooker-Feldman* Doctrine

This doctrine—whose name is derived from two Supreme Court cases—precludes lower federal courts from exercising appellate jurisdiction over final state court judgments.[3] The Receiver asserts that *Rooker-Feldman* mandates dismissal of WCD's bankruptcy filing because a finding that WCD had authority to file would amount to re-litigation of issues already decided by the South Carolina Court. WCD contends that, because the Receivership Order in the instant case was an interlocutory order, the *Rooker-Feldman* doctrine is inapplicable and the Receivership Order is not entitled to full faith and credit. *See WCD's Obj.* 18, ECF No. 124 (citing S.C. CODE ANN. § 14-3-330). The Court need not address the applicability of this doctrine because—even assuming it applies—the Court's present ruling is not violative. The Supreme Court has clarified that the *Rooker-Feldman* doctrine applies in only those narrow circumstances where state court losers ask a federal court to review and reject the state court's judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005); *Vuyanich v. Smithton Borough*, 5 F.4th 379, 387 (3d Cir. 2021). Here, however, this Court is not reviewing or rejecting the underlying judgment or otherwise issuing a ruling that is inconsistent with the South Carolina Court's judgment. A more detailed discussion on this issue follows.

---

[3] *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923).

### C. Authority to File for Bankruptcy

At the heart of this dispute is who—the Board or the Receiver—held authority to commence the WCD bankruptcy filing. The parties agree that, prior to the appointment of the Receiver, the Board could have authorized the filing of a voluntary bankruptcy petition for WCD. However, the Receiver contends that, after the entry of the Receivership Order, he possessed the sole and exclusive authority to commence a filing. Based on a review of the Receivership Order, case law, applicable South Carolina statutes, and federal bankruptcy statutes, this Court cannot agree. Indeed, as the Receiver argues, an order appointing a receiver *can* remove a board of directors' authority to file bankruptcy. The Receivership Order in the instant case, however, did no such thing.

The Receiver relies on language of the Receivership Order, which he describes as "broad." Admittedly, the Receivership Order affords the Receiver a host of powers and duties. However, it makes no mention of dissolution of the Board or of the authority to file for bankruptcy. While the Receiver emphasizes language in the Receivership Order that grants him "the power and authority [to] fully administer *all* assets of WCD," the Court notes that the Receiver omits the qualifying language immediately preceding the highlighted portion. *Receivership Order* 5, ECF No. 157 (emphasis added). Read in full, the Order states that Mr. Protopapas "is appointed Receiver in this case *pursuant to the South Carolina Law* with the power and authority [to] fully administer all assets of WCD." *Id.* (emphasis added). The Receivership Order later acknowledges that "the powers of a receiver are as broad as the law permits," *id.*, before continuing to identify specific powers and duties afforded to the Receiver in the instant case—none of which include the exclusive power to file for bankruptcy or to deprive the Board of that right.

The motion resulting in the Receivership Order sought the appointment of receiver under S.C. CODE ANN. § 15-65-10. That statute is a civil remedy and contemplates the appointment of a receiver where—as is relevant here—a corporation "is insolvent or in imminent danger of insolvency." § 15-65-10(4); *see also Receivership Order* 5, ECF No. 157 (finding that "the application is meritorious under the applicable statute because WCD appears to actually be insolvent and it is certainly in imminent danger of insolvency"). Unfortunately, there appears to be a dearth of case law addressing the powers of a receiver appointed under § 15-65-10. *See, e.g.*, *Zurich Am. Ins. Co. v. Covil Corp.*, No. 1:18-CV-932, 2019 WL 3205676, at *3 n.6 (M.D.N.C. July 16, 2019) (stating that § 15-65-10 "addresses when a receiver may be appointed but not the scope of their powers"). And the few cases this Court has been able to locate are not from this century. However, the dated case law clearly establishes that—because a receiver's authority is derived solely from the court, and because a receiver is subject only to the court's direction—a receiver has no power other than that given him or her by the order of appointment. *See e.g.*, *Kirven v. Lawrence* (S.C. 1964) 244 S.C. 572, 137 S.E.2d 764; *In re Fifty-Four First Mortg Bonds*, 15 SC 304 (1881) (holding that a receiver is an executive officer of the court, administering the assets of the estate under the direction of the court, and his authority resting only in the orders by which he is appointed). Thus, this Court is constrained to look to the Receivership Order when interpreting the power afforded the Receiver in this case.

The Receiver urges this Court to look beyond the Receivership Order to Justice Toal's oral ruling on the subsequent Motion for Reconsideration. Specifically, the Receiver points to the following exchange between Mr. Branham (plaintiffs' counsel) and Justice Toal:

> MR. BRANHAM: Okay. The last thing I want to say is, I am concerned enough about their insolvency to just note this for the record. You have entered a receivership. I don't know what you're going to do here. But assuming that you

> maintain the receivership, the property of Whittaker Clark & Daniels, as any custody alleges, it's in the property of the Court. Once that receivership order, it's in the property of the Court. And so to the extent there is a consideration of a bankruptcy filing, which I have some concerns about, I just want it in the record for any bankruptcy judge that's looking at this issue that at the present time a receivership is in place.
>
> And as the Court well knows, **once that receivership order is in place, they no longer hold the property, the receiver holds the property. The receiver is proper party to the bankruptcy. They don't have the authority to enter a bankruptcy**. They don't control it.
>
> Now, if Your Honor vacates it and all that kind of thing, that changes things. But as we stand here right this second, they do not have the authority to enter into a voluntary bankruptcy.
>
> THE COURT: I'm well aware, that was the main factor in my signing the order so quickly is that I wanted to be sure that something other than kind of amorphous organization I wasn't quite sure about in terms of asset picture, control or anything else would not simply declare bankruptcy and that entity would still be controlling things. **I wanted a receiver that I knew would take it seriously, to look at the asset picture and see what was going on.**
>
> And that is what we've set up under the South Carolina receivership, this receivership as we have for many, many others. I get that.

*Tr. of Apr. 18, 2023 Hrg. – Exhibit 8 to Stipulated Facts* 166:14 – 168:3, ECF No. 63-4 (emphasis added). Clearly, counsel was under the impression that with the Court's appointment of the Receiver having control over the assets, only the Receiver could put WCD into bankruptcy. Admittedly, Justice Toal's response suggests that she too shared this belief. To the extent that Justice Toal's comment that the entity whose assets were under the Receiver's control "*would* not simply declare bankruptcy" can be interpreted as her understanding that the Board *could* not declare bankruptcy—meaning, that they lacked the authority to declare bankruptcy—this understanding is misguided. As previously discussed, a receiver's powers are derived from the order appointing him or her. In this case, the Receivership Order makes no mention of bankruptcy or of the dissolution of the Board. Nor does South Carolina law expressly vest a receiver with such

exclusive authority or automatically displace the existing management. It is well-settled that applicable state law determines whether a bankruptcy filing was authorized. *See Price,* 324 U.S. at 106, 65 S. Ct. 513 (holding that those "who purport to act on behalf of the corporation" must have "been granted authority by local law to institute the proceedings"); *In re Sino Clean Energy, Inc.*, 901 F.3d 1139, 1142 (9th Cir. 2018) ("[S]tate law dictates which persons may file a bankruptcy petition on behalf of a debtor corporation."); *In re ComScape Telecommunications, Inc.*, 423 B.R. at 829–32 (collecting cases and stating that "bankruptcy courts generally look to state law to determine who is authorized to file a voluntary petition for a corporation, partnership or other kind of organizational entity"). Pursuant to applicable state law in this case—New Jersey state law—the Board was authorized to file for bankruptcy.

The Court recognizes that, during oral argument on this Motion, Mr. Branham emphasized repeatedly his belief that that Receivership Order did, in fact, provide the Receiver with exclusive authority to file for bankruptcy. Indeed, in response to the Debtor's argument that Justice Toal had not divested the Board of power to file for bankruptcy in her ruling on the Reconsideration Motion, Mr. Branham agreed. Specifically, he explained "[s]he said, I already gave it to you in the first order. I don't need to give it to you again." *Tr. of June 6, 2023 Hrg.* 63:25-64:1, ECF No. 191. When this Court inquired what language of the Receivership Order gave this relief, counsel responded, "The entirety of the order." *Id.* at 64:7. Mr. Branham further stressed that this Court should focus on what Justice Toal *meant* when she issued the Receivership Order. However, as stated previously, this Court is constrained to interpret the Receiver's powers based on the Receivership Order itself.

This Court will not, and cannot, give force to any subjective belief that the Receivership Order achieved something beyond the powers outlined therein—especially when that expansive

interpretation would contravene case law and the Bankruptcy Code; specifically, 11 U.S.C. § 543, which compels the turnover of property of the estate held by a receiver. *See also* 11 U.S.C. § 101(11)(C) (defining a receiver as a custodian "that is appointed or authorized to take charge of property of the debtor . . . for the benefit of the debtor's creditors"); *Sovereign Bank v. Schwab*, 414 F.3d 450, 454 (3d Cir. 2005). Thus, this Court cannot give weight to the Receiver's argument, which is based on Mr. Branham's mistaken understanding of the Receivership Order's effect. Likewise, to the extent the South Carolina Court shared Mr. Branham's understanding, this Court cannot alter the Receivership Order's language or ultimate legal impact to afford it that subjective, desired effect. Indeed, it remains open to pure speculation as to whether Justice Toal would have taken the next extraordinary step of displacing the board of directors of a foreign corporation as part of a provisional remedy, as a means to prevent a bankruptcy filing. To the extent she were so inclined, this Court would expect an explicit direction in that regard in her Receivership Order. In this same vein, it is worth noting that the Receivership Order was very specific and explicitly identified many powers. Given the detail and length of the Receivership Order, it is a notable omission that it fails to specifically reference the displacement of the Board or the Receiver's exclusive authority to file for bankruptcy.

The Court finds further support for its conclusion in another exchange with counsel during oral argument. The Court queried whether the Receiver could leave the Board in place to operate and manage the company if he so chose. When Mr. Branham responded in the affirmative, the Court asked whether, as a corollary, that meant the Board stayed in place until such time as the Receiver took a formal step to dissolve or remove them. Mr. Branham responded:

> No, because [Justice Toal] indicated, she was clear on the record, that the intent of that order, what that order actually did was preclude the authority to run that company and hand it to Mr. Protopapas. That's what she did in that order. He didn't

> have to do anything more affirmatively to say, you don't have authority. She had already said it.

*Tr. of June 6, 2023 Hrg.*, 65:8-13. As an initial matter, the response does not answer the "bigger picture" question raised by the Court about the general procedure and mechanics of a receivership. In any event, this Court again disagrees with Mr. Branham's interpretation. As Mr. Branham concedes, the Receivership Order precludes the Board from running certain aspects of the company and gives those controls to the Receiver. The Receivership Order is clear as to those aspects. However, this Court disagrees with the notion that an order appointing a receiver does not have to affirmatively reference the authority granted to a receiver and/or taken away from a board of directors. The case law belies this position. *See e.g.*, *Kirven v. Lawrence* 244 S.C. 572 (stating that a receiver has no power other than that given him or her by the order of appointment); *In re Fifty-Four First Mortg Bonds*, 15 SC 304 (same). Therefore, as to affirmative removal of the Board's authority to file for bankruptcy, contrary to Mr. Branham's statement, Justice Toal had not "already said it." *Tr. of June 6, 2023 Hrg.* 65:12-13. The Receivership Order was silent as to this power.

This Court takes seriously counsel's allegation that this Court is improperly sitting in review of Justice Toal's order. *See, e.g. Tr. of June 6, 2023 Hrg.* 66:14-21. That is precisely what this Court is avoiding. This Court is not examining the merits of the South Carolina Court's ruling; nor is it challenging Justice Toal's authority or jurisdiction to enter the Receivership Order, or her rationale in doing so. Instead, the Court undertakes only to assess the Receivership Order's impact, if any, on the Board's ability to file bankruptcy in this jurisdiction. That analysis requires this Court to focus on the powers afforded the Received by text of the Receivership Order and by the South Carolina Court's affirmative rulings. Ultimately, Justice Toal's comments—explaining that

her concern over potential bankruptcy filing was a factor in her decision to appoint a receiver—remain precisely that: comments. The transcript excerpt highlighted by the Receiver does not constitute a ruling. Rather, Justice Toal's oral ruling was limited to denying the motion seeking reconsideration and dissolution of the receivership. *Tr. of Apr. 18, 2023 Hrg.* at 174:25—175:3 ("So what I'm going to do is this: I'm going to deny the motion to reconsider and to dissolve the receivership. And I do that on the record now.").

Other portions of the transcript on the Reconsideration Motion reflect that Justice Toal knew there remained open questions regarding the scope of the Receiver's powers and that she anticipated litigation on the issue. *Tr. of Apr. 18, 2023 Hrg.* 175:12-14 ("If there gets to be some litigation about how in charge the receiver is, that will just have to be as it is. I think I've done what I could to protect the potential of these assets."). This Court will not read further into *any* colloquy undertaken in the context of the Reconsideration Motion. Instead, applicable case law dictates that this Court look to the Receivership Order to determine the scope of the Receiver's powers. Again, nothing in the Receivership Order grants the Receiver sole authority to file for bankruptcy or divests the Board of such authority.

This Court finds additional support for its ruling in analogous South Carolina statutes. This Court identified South Carolina case law discussing the powers of receivers appointed under another state statute: S.C. CODE ANN. § 33-14-320. That statute contemplates the appointment of a receiver or custodian in the course of a judicial dissolution, which—admittedly—is a different context that the appointment of a receiver as a civil remedy to protect creditor assets under § 15-65-10. Nevertheless, the Court finds the statute and the cases interpreting it instructive. Just as an impartial receiver may be appointed under § 15-65-10 to preserve property, *see In re Citizens' Exch. Bank of Denmark,* 140 S.C. 471, 139 S.E. 135, 143 (1927), a receiver may be appointed

under § 33-14-320 for the purpose of placing company assets in "impartial hands" so "that the proceeds may be administered according to the priorities of the claims thereto." *Shapemasters Golf Course Builders, Inc. v. Shapemasters, Inc.*, 360 S.C. 473, 479, 602 S.E.2d 83, 87 (Ct. App. 2004) (quoting *National Cash Register Co. v. Burns*, 217 S.C. 310, 316, 60 S.E.2d 615, 618 (1950)).

Further, just as the concern that property will be lost or materially injured or impaired is cause for appointment of a receiver under § 15-65-10, South Carolina courts have acknowledged similar concerns when discussing appointment of a receiver under § 33-14-320. *See Shapemasters*, 360 S.C. at 479 (explaining that "the potential harm in not having an unbiased party to protect a corporation's assets," is sufficient to render a decision not to appoint a receiver under § 33-14-320 immediately appealable). Indeed, Justice Toal recognized this concern in her rulings. Specifically, she discussed the need to "protect the potential of these assets" in her oral ruling on the Reconsideration Motion, *Tr. of Apr. 18, 2023 Hrg.* 175:15, and the need to make an "expedited ruling in this matter to preserve the status quo" in her Receivership Order under § 15-65-10. Accordingly, this Court looks to § 33-14-320 for guidance in interpreting the scope of the Receiver's duties in this case and finds further support for the conclusion that the Receivership Order here did not divest the Board of its authority to file for bankruptcy.

Section 33-14-320 addresses the appointment of both receivers and custodians. Notably, the South Carolina Appellate Court recognizes that "[r]eceivers and custodians are distinguishable." *Shapemasters Golf Course Builders, Inc. v. Shapemasters, Inc.*, 360 S.C. 473, 479, 602 S.E.2d 83, 86 (Ct. App. 2004). While a receiver "(i) may dispose of all or any part of the assets of the corporation wherever located, at a public or private sale, **if authorized by the court**; and (ii) may sue and defend in his own name as receiver of the corporation in all courts of this State," a custodian "may exercise all of the powers of the corporation, **through or in place of its**

**board of directors or officers, to the extent necessary to manage the affairs of the corporation in the best interests of its shareholders and creditors.**" S.C. CODE ANN. § 33-14-320 (emphasis added). Thus, while a receiver's abilities are limited to protecting assets and aiding in effectuating judgments under § 15-65-10 or "wind[ing] up and liquidat[ing] the business and affairs" under § 33-14-320, only a custodian is vested with the power to "manage the affairs of the corporation," *see Shapemasters*, 360 S.C. at 479. Here, Mr. Protopapas is a receiver. His duties are limited to those that can be inferred from the statute or those set forth in the Receivership Order. He is not a custodian acting in place of the Board and, absent a court order affording him such status, he is not the entity authorized to file for bankruptcy.[4]

Finally, the Court finds additional support in case law cited by the parties. First, in a decision out of the Western District of Pennsylvania, *In re Monroe*, the bankruptcy court considered which entity—a shareholder or court-appointed receiver—had the authority to file for bankruptcy. *In re Monroe Heights Dev. Corp., Inc.*, No. 2017 WL 3701857 (Bankr. W.D. Pa. Aug. 22, 2017), dismissed, 573 B.R. 613 (Bankr. W.D. Pa. 2017). In making its decision, the *Monroe* court discussed two other relevant cases—each of which involved a debtor who filed bankruptcy after the appointment of a receiver under state law: *In re Corp. & Leisure Event Prods., Inc.* ("*Leisure*"), 351 B.R. 724 (Bankr. D. Ariz. 2006), and *Sino Clean Energy Inc. by & through Baowen Ren v. Seiden*, 565 B.R. 677, 682 (D. Nev. 2017), *aff'd sub nom. In re Sino Clean Energy, Inc.* ("*Sino*"), 901 F.3d 1139 (9th Cir. 2018). The courts in *Leisure* and *Sino* reached essentially opposite results. The *Leisure* court held that federal bankruptcy law preempted state law and, thus,

---

[4] Mr. Branham asserted during oral argument that the Receiver in the instant case was not winding up the company's affairs, as would a receiver appointed under § 33-14-320, but was "marshaling and controlling the company to marshal the assets for the benefit of the creditors [under § 15-65-10]." *Tr. of June 6, 2023 Hrg.* 62:12-14, ECF No. 191. The Court acknowledges that the respective purposes of the two statutes are different. Nevertheless, the distinction drawn between the powers of a receiver and custodian in § 33-14-320 remains instructive and persuasive.

the corporate debtor and its officers and directors properly filed for bankruptcy. The *Sino* court, on the other hand, found that the former board members, who had been replaced by the receiver months prior, were without authority to file for bankruptcy. Like the court in *Monroe*, this Court does not view *Leisure* and *Sino* as irreconcilable. Both courts applied the same concepts and analysis—just to highly dissimilar facts.

In *Leisure*, the receiver was appointed at the request of a creditor and the bankruptcy was filed shortly after the receiver's appointment. In *Sino*, the receiver was appointed because of a dispute between shareholders and the board of directors, and the bankruptcy was filed by the former board nearly a year after the receiver's appointment, and more than seven months after the receiver had dismissed and replaced the board. The facts of the instant case more closely resemble those in *Leisure* and *Monroe*; specifically, this case also involves the appointment of a receiver at the request of a creditor and a bankruptcy filing shortly thereafter. And—as the *Monroe* court points out—*Leisure's* holding recognized "that an exception to the general rule of deferral to state law to determine who is authorized to file a voluntary petition for a corporation is necessary in cases involving a creditor-driven intracorporate dispute in order to vindicate federal bankruptcy law supremacy." *In re Monroe*, 2017 WL 3701857, at *14; *see also id.* at *16. This Court agrees.[5]

Like the courts in *Leisure, Sino,* and *Monroe*, this Court declines to establish a bright line rule for when this exception should apply. Instead, the applicable statutes and case law suggest that the decision is discretionary. *See, e.g.*, 11 U.S.C. § 543(d)(1) (affording bankruptcy courts

---

[5] In affirming the bankruptcy court's ruling in *Sino*, the Ninth Circuit likewise recognized the limited holding in *Leisure*, describing it to mean that "where a state court purports to enjoin a corporation from filing bankruptcy altogether, federal law preempts that injunction." *In re Sino Clean Energy, Inc.*, 901 F.3d 1139, 1142 (9th Cir. 2018). Because the company in *Sino* was "fully able to file for bankruptcy through valid filings made by its eligible board of directors," the holding in *Leisure* was "inapposite." *Id.* This lends further support to the conclusion that the rulings in *Leisure* and *Sino* are not wholly irreconcilable.

discretionary powers to compel or not compel a receiver to turn over property to the estate); 11 U.S.C. § 305(a)(1) (affording bankruptcy courts discretionary powers to abstain or suspend proceedings if the interests of creditors and the debtor would be better served). The *Sino* court likewise observed that exceptions may apply in certain circumstances. *See Sino*, 565 B.R. at 682 n.26 ("Perhaps this case would be different if appellants could show that a receiver was biased or significantly delayed in appointing a new board, thus interfering with the corporations' ability to get into bankruptcy court in a timely matter.").

The case law demonstrates that the outcome of this discretionary decision depends in large part on the point from which the court starts. The *Monroe* and *Sino* courts began with the presumption that the appointment of the receiver vested the authority to file bankruptcy exclusively in the receiver's hands, and a debtor could rebut that presumption. The *Leisure* court, however, "started with the view that those formerly in control of a corporation should still be able to file a bankruptcy for it . . . leaving it up to the receiver to show why under the particular facts of the case that view was wrong and the case should not proceed." *In re Monroe*, 2017 WL 3701857, at *17 (discussing *Leisure*). For reasons previously discussed, this Court finds that the Board in the present case possessed the authority to file for bankruptcy under state law; therefore, an inquiry into whether an exception to the general rule applies is unnecessary. However, were this Court to undertake such an analysis, this Court's reasoning aligns more closely with that in *Leisure* and it would be inclined to start with the presumption outlined therein. Nevertheless, even starting with the converse presumption set forth in *Monroe* and *Sino*—and assuming that the Receiver in the instant case possessed the exclusive authority to file for bankruptcy under state law by virtue of his appointment—given the facts of the instant case, the Court finds that access to the bankruptcy system is of paramount importance and, thus, this case presents a worthy exception to the general

rule that state law dictates who may file bankruptcy on behalf of a corporate debtor. In so finding, the Court considers the unique qualities of asbestos-related bankruptcies, Congressional intent in structuring a scheme under 11 U.S.C. § 524(g) to address such claims and the considerable interests of future, unidentified claimants.

### III. **Conclusion**

Ultimately, this Court cannot conclude that the Receivership Order displaced the Board and/or divested it of its ability to file for bankruptcy under state law. Despite the Receiver's arguments to the contrary, he is unable to identify any South Carolina state law or language in the Receivership Order that provides for this relief.[6] Moreover, even assuming that appointment of the Receiver established him as the sole entity with authority to file bankruptcy under state law, this Court determines that the circumstances weigh in favor of preserving the constitutional right

---

[6] The cases on which the Receiver relies for the proposition that the appointment of a receiver automatically displaces a board are factually distinguishable and, in any event, are not controlling. In *Monroe*, the order appointing the receiver specifically "vested [the receiver] with the standing and all power and sole authority of . . . the board of directors or manager of the Defendant[.]" *Order Appointing Receiver* ¶ 22, ECF No. 9-2 in Case No. 17-10176 (W.D. Pa. Bankr. Ct.). No such language appears in the Receivership Order in the instant case. In *Sino*, the board of directors had been dismissed by the receiver more than seven months before they filed for bankruptcy. Thus, "the individuals who filed the bankruptcy petition were not members of the board of directors of [the company] at the time they filed the petition, and they were not authorized to file a bankruptcy petition on behalf of [the company]." *In re Sino Clean Energy, Inc.*, 901 F.3d 1139, 1141 (9th Cir. 2018). Here, however, the Receiver had not dismissed the Board. Likewise, in *Oil & Gas Co. v. Duryee*, 9 F.3d 771, 772 (9th Cir. 1993), the state court issued a temporary restraining order that specifically enjoined the company's former president from filing for bankruptcy on its behalf, but he filed anyway. Here, the South Carolina Court issued no such injunction. The receiver cites to *Monmouth Inv. Co. v. Means*, 151 F. 159, 166 (8th Cir. 1906) in support of his argument that a receiver displaces a board. However, the quoted language has been paraphrased to afford it a meaning beyond its initial intent and, in any event, it is dicta. Finally, the Receiver's reliance on South Carolina case law characterizing the appointment of a receiver as a "practical displacement of the boards of directors," *Brookshire v. Farmers' All. Exch.*, 73 S.C. 131, 52 S.E. 867, 867 (1905), and indicating that a receiver "stands in the shoes of the debtor," *Carroll v. Cash Mills*, 125 S.C. 332, 118 S.E. 290, 297 (1923), is unavailing. As an initial matter, the cases cited predate the Bankruptcy Code. Regardless, there is no dispute that, upon appointment, a receiver takes on many of the rights, responsibilities, and duties of a board of directors. That fact, and the case law cited in the Receiver's briefs, do nothing to support the Receiver's contention that the exclusive right to file for bankruptcy is automatically included among those rights.

to bankruptcy and, thus, warrant an exception to the general rule that state law determines who has authority to file bankruptcy for a corporation. For the reasons set forth above, the Court denies the Receiver's Motion to Dismiss and the TCC's Joinder. The Court will enter an Order consistent with this Opinion.

/s/ Michael B. Kaplan
Michael B. Kaplan, Chief Judge
U.S. Bankruptcy Court
District of New Jersey

Cc:    Filed on CM/ECF