**LOWENSTEIN SANDLER LLP**
Jeffrey D. Prol, Esq.
Philip J. Gross, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2491
jprol@lowenstein.com
pgross@lowenstein.com

*Counsel to the Ad Hoc Committee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| WHITTAKER, CLARK & DANIELS, INC., *et al.*, | Case No. 23-13575 (MBK) |
| Debtors.[1] | (Jointly Administered) |
| | **Hearing Date: March 11, 2024 @ 10:00 a.m.**<br>**Objection Deadline: March 4, 2024 @ 4:00 p.m.** |

**AD HOC COMMITTEE'S MOTION FOR AN ORDER DIRECTING**
**THE APPOINTMENT OF AN OFFICIAL COMMITTEE OF**
**UNSECURED COMMERCIAL CREDITORS**

The ad hoc committee (the "Ad Hoc Committee")[2] of general unsecured commercial creditors of Whittaker, Clark & Daniels, Inc. ("WCD") and its affiliated debtors (collectively, the "Debtors"), by and through counsel, hereby moves the Court for an order, substantially in the form submitted with this motion (the "Proposed Order"), pursuant to sections 105(a) and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification number, are: Whittaker, Clark & Daniels, Inc. (4760); Brilliant National Services, Inc. (2113); L. A. Terminals, Inc. (6800); and Soco West, Inc. (3400). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 100 First Stamford Place, Stamford, Connecticut 06902.

[2] The Ad Hoc Committee is comprised of certain law firms and other professionals and advisors that were retained prior to the Debtors' chapter 11 bankruptcy filing to defend the Debtors in connection with talc claims filed against the Debtors. The following Unsecured Commercial Creditors are members of the Ad Hoc Committee as of the date hereof: Lathrop GPM LLP; McGivney, Kluger, Clark & Intoccia, P.C.; Demler Armstrong & Rowland LLP; Fox Rothschild LLP; Cowles & Thompson, P.C.; Rizzo Bosworth Eraut PC; Heyl, Royster, Voelker & Allen, P.C.; Segrave Technical Consulting LLC; and Berkes Crane Santana & Spangler LLP.

1102(a)(2) of the United States Bankruptcy Code (the "Bankruptcy Code"), directing the Office of the United States Trustee (the "UST") to appoint an official committee of unsecured commercial creditors in the above-captioned Chapter 11 cases. In support of this Motion, the Ad Hoc Committee respectfully represents as follows:

## I. PRELIMINARY STATEMENT

1. The Debtors have acknowledged in their most recent motion to extend exclusivity that "these cases are large and complex, as they involve far-reaching mass tort claims, environmental liabilities, and **certain other unsecured constituencies [,]**" and that the Debtors "must negotiate with their core creditor constituencies" and are "progressing [in their] chapter 11 cases and negotiations with their stakeholders—in particular, in the ongoing mediation process. . . ."[3]

2. However, based on the UST's decision to appoint only an official committee of talc claimants (the "Talc Committee") and failing to appoint an official committee of unsecured creditors to represent the many[4] Unsecured Commercial Creditors (as defined below) that hold non-contingent, liquidated claims, Unsecured Commercial Creditors are not adequately represented in these chapter 11 cases.

---

[3] *See Debtors' Third Motion to Extend Their Exclusive Periods to File and Solicit Acceptances of a Chapter 11 Plan* [Docket No. 782], at ¶¶ 3 and 14 (emphasis added).

[4] Based on a review of the scheduled non-priority general unsecured claims (*see Schedules of Assets and Liabilities of Debtor Whittaker, Clark, & Daniels, Inc.* [Docket No. 134]) and unsecured proofs of claim filed by non-tort/non-environmental unsecured commercial creditors (the "Unsecured Commercial Creditors"), the Ad Hoc Committee understands that over $14 million in unsecured commercial claims (the "Unsecured Commercial Claims") have been scheduled or filed against the Debtors. The Ad Hoc Committee members themselves hold undisputed, scheduled non-contingent claims ***in excess of $5 million***.

3. Given the divergent interests of tort claimants and Unsecured Commercial Creditors on many of the significant issues in this case,[5] it is warranted and necessary to appoint an additional official committee to ensure adequate representation of Unsecured Commercial Creditors.

4. In similar mass tort cases around the country where material Unsecured Commercial Creditors are known to exist, the UST often appoints two committees—a tort claimant committee and a committee to represent the interests of Unsecured Commercial Creditors—to ensure that all unsecured creditors are adequately represented.[6]

5. Here, while current talc claimants' interests are represented by the Talc Committee and future talc claimants are represented by the Future Claims' Representative, the many million of dollars in claims held by Unsecured Commercial Creditors—many of whom also hold claims against the Debtors' related insurance carriers that retained a large percentage of

---

[5] As the court recently explained in *In re Roman Catholic Church of the Archdiocese of New Orleans*, No. 20-10846, 2021 WL 454220, at *14 (Bankr. E.D. La. Feb. 8, 2021) in granting a motion to appoint an official committee of commercial creditors where only a tort committee was functioning:

> **Congress intended unsecured commercial creditors to be represented in the reorganization process through the unsecured creditors' committee**. Although the Abuse Claimants in this case, at times, may share interests with commercial creditors, their interests often differ from the issues facing other creditors. . .
>
> Given the nature of this particular case, the Court is not convinced that the appointment of additional members to the existing Committee would provide commercial creditors with a meaningful voice. **Moreover, separate committees are commonly appointed to represent important constituencies and to provide dynamic tension in negotiations with the debtor and other parties in interest in the reorganization process**. Therefore, the Court finds that it should exercise its discretion under § 1102(a)(2) and orders the appointment of an additional committee of commercial creditors. The Court finds that the value created will outweigh the costs associated with the formation of an additional committee . . .

[6] *See, e.g.*, *In re Rite Aid Corp.,* No. 23-18993 (Bankr. D.N.J.) (appointing an official unsecured creditor committee and tort claimant committee); *In re The Diocese of Camden, New Jersey,* No. 20-21257 (Bankr. D.N.J.) (appointing a tort claimant committee and separate official committee of unsecured trade creditors); *In re Boy Scouts of America and Delaware BSA, LLC*, No. 20-10343 (Bankr. D. Del.) (same); *In re National Gypsum Company*, 219 F.3d 478, 480 (5th Cir. 2000) (appointing asbestos claimant committee and bond/trade claims committee; *In re Armstrong World Industries, Inc.*, 320 B.R. 523, 525 (D. Del. 2005) (appointing official committee of unsecured creditors, official committee of asbestos personal injury claimants, and official committee of asbestos property damage claimants); *In re PG&E Corp.*, Bankruptcy No. 19-30088-DM, at *2 (Bankr. N.D. Cal. Nov. 27, 2019) (appointing tort claimant committee and separate commercial creditors' committee).

-3-

the Unsecured Commercial Creditors to assist the Debtors in defending against talc claims—are left unrepresented and without a seat at the table.

6. The consensually submitted Mediation Order[7] illustrates the fact that the current case parties are not adequately representing the interests of Unsecured Commercial Creditors. Specifically, the various case/Mediation Parties (as defined in the Mediation Order) proposed the specific terms of the Mediation Order and the language drafted (and ultimately approved by the Court) indicates that the Mediation would be focused on comprehensively resolving the following "Mediation Matters":

> any and all issues, including, but not limited to . . . (a) environmental claims . . .; (b) claims related to personal injury in any way related to asbestos, talc, or other compounds or substances . . . or other related claims; (c) successor liability or alter ego claims in connection with the Debtors' historical business operations or products; (d) the resolution of disputes over the obligations of certain insurers that issued insurance policies that cover or arguably cover the above claims; and (e) any other matters agreed to among the Mediation Parties or as otherwise directed by further order of the Court.[8]

Notably absent from the specifically described list of "Mediation Matters" is the claims of Unsecured Commercial Creditors.

7. Unsecured Commercial Creditors hold millions of dollars of undisputed unsecured claims in this case, and the Ad Hoc Committee respectfully requests that the Court

---

[7] *Amended Order (I) Appointing Hon. Robert E. Gerber (Ret.) as Mediator to Mediate Adversary Proceeding-, Plan-, and Confirmation-Related Matters; (II) Referring Such Matters to Mediation; (III) Directing the Mediation Parties to Participate in the Mediation; and (IV) Granting Related Relief* [Docket No. 762] (the "Mediation Order").

[8] *Id.* at ¶ 5.

-4-

order the appointment of an additional committee of Unsecured Commercial Creditors so that the interests of all unsecured creditors can be fairly represented, including but not limited to in connection with the ongoing mediation and plan negotiation process.

## II. JURISDICTION AND VENUE

8. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).

9. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

10. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

11. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105 and 1102.

## III. ADDITIONAL BACKGROUND

12. On April 26, 2023, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

13. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

14. On May 24, 2023, the UST appointed the Talc Committee [Docket No. 121]. The UST appointed nine (9) members to the Talc Committee, including eight tort claimants and one other tort-related creditor, Blue Cross Blue Shield Association.[9]

---

[9] Upon information and belief, Blue Cross Blue Shield Association is a third-party payor with respect to talc related claims.

15. On June 26, 2023, the Court entered an *Order (I) Appointing the Honorable Shelley C. Chapman (Ret.) as Future Claimants' Representative, Effective as of the Petition Date and (II) Granting Related Relief* [Docket No. 231], pursuant to which the Honorable Shelley C. Chapman (Ret.) was appointed to serve as the FCR in these chapter 11 cases.

16. The Talc Committee has indicated in at least one filed pleading (in connection with the appointment of the FCR) that the Talc Committee serves as "a fiduciary for current [talc] claimants . . ."[10]

17. Prior to the formation of the Talc Committee, the Debtors filed a *Consolidated List of Creditors Who Have the 20 Largest Unsecured Non-Tort Claims and Are Not Insiders* [Docket No. 81] (the "Non-Talc List") listing approximately $12 million in Unsecured Commercial Claims.[11]

18. Upon information and belief, the UST sent questionnaires to creditors listed on the Non-Talc List; and several creditors on the Non-Talc List submitted questionnaires indicating their willingness to serve on an official committee of unsecured creditors.[12]

19. Notwithstanding the willingness of creditors to serve on an official committee and represent the interests of the over $14 million in Unsecured Commercial Claims

---

[10] *See The Official Committee of Talc Claimants' Limited Objection and Reservation of Rights to Debtors' Motion for Entry of an Order (I) Appointment the Honorable Shelley C. Chapman (Ret.) as Future Claimants' Representative, Effective as of the Petition Date and (II) Granting Related Relief* [Docket No. 133], at ¶ 3.

[11] Seven (7) of the nine (9) current members of the Ad Hoc Committee were included on the Non-Talc List. While certain creditors' claims on this Non-Talc List were listed with "disputed" claims, on the subsequent *Schedules of Assets and Liabilities of Debtor Whittaker, Clark, & Daniels, Inc.* [Docket No. 134] filed on May 30, 2023, such scheduled claims were not listed as "disputed" or "contingent", and all members of the Ad Hoc Committee hold fixed, non-contingent, non-disputed claims against the Debtors.

[12] Two (2) of the nine (9) current members of the Ad Hoc Committee were incorrectly omitted from the Non-Talc List and were therefore never sent a questionnaire by the UST for potential appointment to a GUC Committee.

-6-

against the Debtors, the UST declined to appoint a committee of Unsecured Commercial Creditors.

20. A review of Debtor WCD's filed schedules of assets and liabilities and other proofs of claim filed to date show that Unsecured Commercial Creditors are owed over **$14 million**. These claims include the following Unsecured Commercial Claims held by the individual members of the Ad Hoc Committee:[13]

| | |
|---|---:|
| (1) Lathrop GPM LLP: | $2,093,829.43 |
| (2) McGivney, Kluger, Clark & Intoccia, P.C. | $1,006,651.28 |
| (3) Demler Armstrong & Rowland LLP | $901,025.92 |
| (4) Fox Rothschild LLP | $455,836.74 |
| (5) Cowles & Thompson, P.C. | $382,497.52 |
| (6) Rizzo Bosworth Eraut PC | $353,647.46 |
| (7) Heyl, Royster, Voelker & Allen, P.C | $251,708.96 |
| (8) Segrave Technical Consulting LLC | $226,395.29 |
| (9) Berkes Crane Santana & Spangler LLP | $148,536.65 |
| **Total:** | **$5,820,129.25** |

21. These Unsecured Commercial Claims are fixed and liquidated, in contrast to the pending and future talc claims which are unliquidated and disputed.

22. The Debtors indicated that they had approximately $81 million of cash on hand as of on or about the Petition Date.[14] The remaining amount of such cash, plus any additional contribution from the Debtors' insurers and affiliated entities, must be divided pursuant to a chapter 11 plan among environmental creditors, talc claimants, and Unsecured Commercial Creditors.

---

[13] These claim amounts are derived from the *Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs* [Docket No. 134] as well as the claims filed with Debtors' claims and noticing agent (or, in the case of Ad Hoc Committee member Fox Rothschild LLP, its to-be-filed claim). *See* https://cases.stretto.com/whittaker/claims/#search (last visited Feb. 8, 2024).

[14] *See* Cash Management Motion [Docket No. 9], at ¶ 6.

23. Notwithstanding this reality, Unsecured Commercial Creditors lack a seat at the mediation table or an official voice in these chapter 11 cases.

24. Accordingly, on October 20, 2023, the undersigned counsel, on behalf of several of the largest Unsecured Commercial Creditors, reached out to the UST to request the appointment of an official committee of unsecured creditors (a "GUC Committee").[15]

25. In response, on October 24, 2023, the UST indicated that it was declining to form a GUC Committee.[16]

26. Subsequently, the Ad Hoc Committee was formed and now seeks recognition and a formal voice for the interests of Unsecured Commercial Creditors in these chapter 11 cases through the appointment of a GUC Committee.

## IV. RELIEF REQUESTED

27. By this Motion, the Ad Hoc Committee requests entry of the Proposed Order, pursuant to 11 U.S.C. §§ 105(a) and 1102(a)(2):

   i. directing the appointment of an additional committee of Unsecured Commercial Creditors (the "GUC Committee") to assure the adequate representation of Unsecured Commercial Creditors in the Debtors' chapter 11 cases;

   ii. directing the UST to solicit the interests of Unsecured Commercial Creditors for serving on such GUC Committee within four (4) business days of entry of the Proposed Order and to appoint such GUC Committee as soon as reasonably practicable thereafter; and

---

[15] A copy of the letter sent to the UST on October 20, 2023 requesting the appointment of a GUC Committee is attached hereto as **Exhibit A**.

[16] A copy of the email sent from the UST's office declining to appoint a GUC Committee is attached hereto as **Exhibit B.**

-8-

      iii.    upon the appointment of the GUC Committee by the UST, ordering that the GUC Committee to be immediately deemed added to the Court's Mediation Order as a "Mediation Party" (as defined in the Mediation Order) and the Mediator (as defined in the Mediation Order) directed to include the mediation of the claims of Unsecured Commercial Creditors against the Debtors and their insurers (including any parties affiliated with the Debtors) as one of the "Mediation Matters" to be mediated in good faith between and among the Mediation Parties.

## V.    LEGAL BASIS FOR THE RELIEF REQUESTED

**1.    THE COURT SHOULD ORDER THE APPOINTMENT OF AN OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO ENSURE THAT UNSECURED COMMERCIAL CREDITORS IN THIS CASE ARE ADEQUATELY REPRESENTED.**

28.    Section 1102(a)(2) of the Bankruptcy Code provides that the Court may, on request of a party in interest, order the appointment an additional committee of creditors "if necessary to assure adequate representation of creditors…"

29.    Some courts have held that the issue of whether creditors are adequately represented is to be determined by the Court without any deference to the UST's determinations.[17] While this Court in its recent *LTL* decision[18] noted that the actions and decision of the UST are entitled to deference and reviewed under an "arbitrary and capricious" or "abuse of discretion" standard, when the UST fails to disclose its reasoning in not making certain committee appointment decisions, "the Court cannot accord the U.S. Trustee such deference."[19]

---

[17] *In re McLean Industries, Inc.*, 70 B.R. 852, 857–58 (Bankr. S.D.N.Y. 1987) ("Congress expressly retained in the bankruptcy courts the ability to decide *de novo* the question of whether additional committees are necessary to assure adequate representation."); *In re First Republicbank Corp.*, 95 B.R. 58, 59 (Bankr. N.D. Tex. 1988) ("If raised, the issue of adequate representation must be determined by the court de novo after the United States trustee performs his administrative task of appointing the committee members."); *c.f. In re ShoreBank Corp.*, 467 B.R. 156, 162 (Bankr. N.D. Ill. 2012) (holding that there is no standard of review to determine adequate representation, but rather it is to be an "independent determination of whether a change in committee composition is necessary").

[18] *In re LTL Mgmt., LLC.*, 636 B.R. 610, 623-24 (Bankr. D.N.J. 2022).

[19] *Id.* at 623-24. Here, the UST failed to provide any explanation as to (i) why it declined to appoint a GUC Committee despite apparently soliciting and receiving submitted questionnaires from Unsecured Commercial Creditors that were ready, willing and able to serve on such a committee, or (ii) how the current Talc Committee

30. "Adequate representation" is not defined in the Code and section 1102 affords the Court discretion to determine whether to appoint an additional committee. Courts have developed a set of factors to determine whether to appoint an additional committee, including: (1) the ability of the committee to function; (2) the nature of the case; (3) the standing and desires of the various constituencies; (4) the ability for creditors to participate in the case even without an official committee and the potential to recover expenses pursuant to section 503; (5) the delay and additional cost that would result if the court grants the motion; (6) the tasks that a committee or separate committee is to perform; and (7) other factors relevant to the adequate representation issue.[20]

31. "Such analysis, however, should be made on a case-by-case basis, with no one factor being dispositive, both individually and in the aggregate."[21]

32. Before analyzing the various factors, it bears noting, as the court highlighted in the recent *Roman Catholic Church of the Archdiocese of New Orleans* case—where the court under very similar circumstances to the facts here considered and granted a motion to appoint a committee of unsecured commercial creditors where a committee of tort

---

adequately represents the interests of the scores of Unsecured Commercial Creditors with valid, undisputed and non-contingent claims against the Debtors (and their insurers).

[20] *In re Roman Catholic Church of the Archdiocese of New Orleans*, No. 20-10846, 2021 WL 454220, at *10 (Bankr. E.D. La. Feb. 8, 2021) (citing *In re Dana Corp.*, 344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006) (citations omitted). Some courts "consider the first three factors listed above to determine initially whether a committee adequately represents the unsecured creditor body and, depending on the answer, then evaluating the other identified factors to determine whether the court should proceed and exercise its discretion to act." *Id.* at *10; *see also In re Enron Corporation*, 279 B.R. at 684–85 ("There is no framework provided in the Bankruptcy Code for [courts] to determine adequate representation." However, factors such as the ability of the committee to function, the nature of the case, and the standing and desires of the various constituencies help a court determine adequate representation on a case-by-case basis.); *In re Dow Corning Corp.*, 194 B.R. 121, 141 (Bankr. E.D. Mich. 1996), *rev'd on other grounds*, 212 B.R. 258 (E.D. Mich. 1997) (decision of adequate representation is made on a case-by-case basis, and "[t]he factors most commonly cited are: the ability of the committee to function; the nature of the case; and the standing and desires of the various constituencies."); *In re Hill Stores Co.*, 137 B.R. 4, 5–6 (Bankr. S.D.N.Y. 1992).

[21] *Roman Catholic Church of the Archdiocese of New Orleans*, 2021 WL 454220, at *10.

claimants was exclusively representing tort claimants—that "ultimately, th[e] Court is required to examine the facts of th[e] case and determine whether unsecured creditors are adequately represented by the current Committee."[22]

33. Here, as noted above, the Talc Committee is currently comprised *exclusively* of tort claimants and has indicated in filed pleadings in this case that it acts as "a fiduciary" for current talc creditors.

34. Moreover, in the Mediation Order negotiated by and among, *inter alia*, the Debtors, Talc Committee, FCR, certain affiliates of the Debtors and certain insurance parties, the case parties focused on mediating environmental claims, talc claims, insurance claims, and successor liability/alter ego claims, and the mediation order failed to mention or consider the claims of Unsecured Commercial Creditors.

35. A cursory review of the Debtor WCD's statements and schedules and the filed proofs of claim indicate that the claims of Unsecured Commercial Creditors in this case exceed $14 million.

36. "[A]dequate representation exists through a single committee as long as the *diverse interests* of the various creditor groups are represented on and have participated in that committee."[23] Here, there is **no** diversity on the Talc Committee and any argument that Unsecured Commercial Creditors are adequately represented is simply untenable.[24] Given the

---

[22] *Id.* at *10.

[23] *In re Sharon Steel Corp.*, 100 B.R. 767, 777–78 (Bankr. W.D. Pa. 1989) (emphasis added).

[24] *In re Dow Corning Corp.*, 194 B.R. at 142 (A committee is not adequately represented when "the committee is so dominated by one group of creditors that a separate group has virtually no say in the decision-making process." (citations omitted); *see also Roman Catholic Church of the Archdiocese of New Orleans*, 2021 WL 454220, at *9 ("for a creditor group to be adequately represented by a committee, the interests of that group must 'have a *meaningful* voice on the committee in relation to their posture in the case.'").

composition of the Talc Committee, it is clear the Talc Committee represents the interests of one constituency—tort claimants.

37. The interests of tort claimants are different from the interests of Unsecured Commercial Creditors. Specifically, tort claimants have an interest in maximizing the value of and funding for the 524(g) trust being negotiated and will also look to maximize contributions to such trust from the Debtors' insurers and affiliated non-debtor parties. At the same time, Unsecured Commercial Creditors in these cases also will look to potential contributions from insurers and have competing interests in making sure that speculative, non-liquidated talc claims are fairly valued and not receiving disparate recoveries compared with Unsecured Commercial Claims.

38. While it is true that each member of a committee "has a legitimate right to look out for its own interests,"[25] it is equally true that a committee comprised of only one group of creditors whose interests are demonstrably different than all other groups of unsecured creditors does not adequately represent the interests of other creditors. It is therefore unsurprising that the Talc Committee has stated that it acts as a fiduciary only for current talc claimants and does not purport to represent the interests of all unsecured creditors (including Unsecured Commercial Creditors) in this case.

39. Furthermore, the Talc Committee early on in these cases joined in the motion to dismiss these cases filed by the Debtors' pre-bankruptcy receiver. Such motion promoted the interests of tort claimants by seeking to allow pending tort actions to proceed in state court. The Talc Committee did not appear to focus, in joining in the motion to dismiss, on how dismissal would affect the interests of other Unsecured Commercial Creditors.

---

[25] *Krafsur v. UOP (In re El Paso Refinery, L.P.)*, 196 B.R. 58, 74 (Bankr. W.D. Tex. 1996).

40. While it would be reasonable to assume that a committee truly representing the interests of all unsecured creditors would be supportive of a process that would pave the way for a chapter 11 plan providing for unsecured creditor recoveries, the Talc Committee here chose the opposite path in pushing for immediate dismissal of these cases.[26] Such actions make it clear whom the Talc Committee is representing and advocating for.

41. The Ad Hoc Committee does not fault the Talc Committee for its strong advocacy on behalf of talc creditors. That is a natural consequence of a committee that is comprised *entirely* of creditors of only one kind in a case involving several important creditor bodies. Accordingly, the Court should appoint an additional GUC Committee to ensure that all unsecured creditors—including Unsecured Commercial Creditors–are adequately represented in this case.

B. **The Various Factors Considered by Courts in Connection With the Appointment of an Additional Committee Support the Relief Sought.**

42. The factors considered by courts in determining whether an additional committee should be appointed weigh in favor of appointing a separate GUC Committee in this case.

   i. *The Committee is Only Able to Function as a Representative of Its Constituents, Talc Creditors*

43. Predictably, the Talc Committee—which consists only of creditors whose interests are focused on recoveries under a 524(g) trust for talc creditors—has noted publicly that it acts as a fiduciary for current talc creditors.

---

[26] *See* Talc Committee's joinder to motion to dismiss [Docket No. 132] and Talc Committee's notice of appeal [Docket No. 247] regarding Court's *Order Denying Motion to Dismiss* [Docket No. 211].

44. Courts have found that where a material class of unsecured or other creditors are not adequately (or at all) represented by a current official committee, this factor weighs in favor of appointing a second committee.[27]

    ii. *The Nature of the Case Necessitates an Additional Committee*

45. In mass tort cases, the UST routinely appoints multiple committees to ensure adequate representation: a tort claimant committee and a committee to represent all other unsecured creditors.[28]

46. In the mass tort cases where two committees were not appointed, the failure to appoint separate committees was often either because (i) the official committee appointed was comprised of representative litigation creditors and commercial creditors or (ii) a lack of material commercial debt existed.[29] That is not the case here. As explained above, the Unsecured Commercial Creditors hold significant non-contingent, non-disputed claims as seen from the claims register and the Debtors' filed schedules of assets and liabilities.[30]

47. Moreover, Unsecured Commercial Creditors submitted questionnaires to the UST in this case indicating their willingness to serve on a GUC Committee, and for an

---

[27] *See, e.g., Roman Catholic Church of the Archdiocese of New Orleans*, 2021 WL 454220, at *11 (where committee was comprised entirely of survivor creditors/claimants, notwithstanding a functioning committee, such a sole interest committee "does not necessarily ensure that all creditors groups are adequately represented" and directing appointment of unsecured commercial creditor committee); *see also In re Budd Co., Inc.*, 512 B.R. 910 (Bankr. N.D. Ill. 2014) (notwithstanding existing of retiree committee which was functioning, such committee did not adequately represent the interests of asbestos creditors). The *Budd* decision was cited approvingly by this Court in *LTL Mgmt., LLC.*, 636 B.R. at 624.

[28] *See* Professor S. Elizabeth Gibson, *Judicial Management of Mass Tort Bankruptcy Cases*, Federal Judicial Center, at 37 (2005) ("In virtually all mass tort bankruptcies . . . U.S. Trustees or bankruptcy courts have appointed at least one committee for the tort claimants, in addition to the official committee of unsecured creditors whose members are typically trade creditors, institutional lenders, and bondholders."); *see also* footnote 6 above.

[29] *See, e.g., Roman Catholic Church of the Archdiocese of New Orleans*, 2021 WL 454220, at *11-*13 n.6 (noting that in cases involving a substantial amount of commercial debt, it is typical to ensure adequate representation to either appoint a second committee representing commercial creditors or including such non-tort creditors initially upon committee appointment).

[30] *See* above, at ¶ 20 and footnote 13.

explained reason—and despite such creditors holding material, non-contingent and undisputed debt—the UST declined to appoint a GUC Committee or a combined committee comprised of talc creditors and Unsecured Commercial Creditors.

48. These Unsecured Commercial Creditors can and should be immediately contacted (again) by the UST to solicit their interest in serving on a GUC Committee.

      iii.    *Standing and Desires of the Various Constituencies; Ability of Unsecured Commercial Creditors to Participate in the Case Without an Additional Committee*

49. As stated above, the tort claimants and the Unsecured Commercial Creditors have distinct interests in this case. First, both constituencies hold claims against insurers, and it would be inequitable for the Talc Committee to be able to negotiate recoveries and insurance issues for talc creditors while Unsecured Commercial Creditors are left without any voice. Talc creditors may also look to maximize the value and size of a 524(g) trust to shift value away from Unsecured Commercial Creditors given that it appears likely that the Debtors here are insolvent.

50. While Unsecured Commercial Creditors have standing individually to participate fully as a party in interest in this case, as the court recently noted in *Roman Catholic Church of the Archdiocese of New Orleans*, "'[p]articipation by individual unsecured creditors may not be cost-effective if each unsecured creditor must retain its own counsel, appear in court, attempt to review the debtor's financial status, and otherwise participate alone. . . . For that reason, unsecured creditors' committees are vital to the chapter 11 process to ensure that all

unsecured creditors, most of which may be owed relatively small sums, are still represented in the reorganization process[.]"[31]

51. The tort claimants have a right to be represented in this case and to have the Talc Committee advocate for such interests. On the other hand, it would be inequitable to require Unsecured Commercial Creditors with significant claims to represent their interests at their own expense, and the Court therefore should appoint a committee that will represent the interests of Unsecured Commercial Creditors so their voices can be heard equally to the Talc Committee in this case.

        iv.    *Delay and Additional Cost and Immediate Tasks for GUC Committee to Perform*

52. Although the appointment of an additional committee will result in the incurrence of additional expense, that cannot outweigh the need for Unsecured Commercial Creditors to have adequate representation in this case.

53. Indeed, as the UST noted in its briefing in *LTL* (citing to the *Roman Catholic Church of the Archdiocese of New Orleans* case), "'[t]he potential added cost is not sufficient in itself to deprive the creditors of the formation of an additional committee if one is otherwise appropriate.'"[32]

---

[31] *See, e.g., Roman Catholic Church of the Archdiocese of New Orleans*, 2021 WL 454220, at *12 (citing Greg M. Zipes & Lisa L. Lambert, *Creditors' Committee Formation Dynamics: Issues in the Real World*, 77 AM. BANKR. L.J. 229, 229 (2003)).

[32] *See Objection to (i) Debtors' Motion for an Order Determining that the United States Trustees Notice of Reconstituted and Amended Talc Claimants Committee is Invalid and Reinstating that Committee and (ii) Arnold & Itkin LLP's Motion for Order Vacating Appointment of Second Official Committee of Talc Claimants and Addition of New Committee Members* [Docket No. 1161] at ¶ 44, *In re LTL Management LLC*, Case No. 21-30589 (Bankr. D.N.J. 2021), *available at* https://document.epiq11.com/document/getdocumentbycode?docId=4052614&projectCode=LLC&source=DM (citing *Roman Catholic Church of the Archdiocese of New Orleans*, 2021 WL 454220, at *13 (citing *In re Hills Stores Co.*, 137 B.R. 4, 6 (Bankr. S.D.N.Y. 1992))).

54. Where the currently appointed committee is "comprised of special interests, but traditional, unsecured commercial interests go unrepresented", courts have explained that "separate committees are commonly appointed to represent important constituencies and to provide dynamic tension in negotiations with the debtor and other parties in interest in the reorganization process."[33]

55. Appointing a new GUC Committee here would not cause any undue delay, as this case remains in its preliminary stages with ongoing mediation, no bar date for proofs of unsecured claims or tort claimants yet set and no plan yet negotiated. Thus, the appointment of an additional committee is unlikely to delay progress and will instead provide for the voice of Unsecured Commercial Creditors who are not tort claimants to be heard, including with respect to the ongoing mediation process.

56. This voice will assist all constituencies in addressing and working through the various complexities this case presents, including the fact that certain Unsecured Commercial Creditors were retained by the Debtors' insurance carriers and may otherwise object to (i) third party non-debtor releases that may be proposed to the extent such carriers do not agree to adequately fund recoveries for Unsecured Commercial Creditors.

## VI. WAIVER OF MEMORANDUM OF LAW & NO PRIOR REQUEST

57. The Ad Hoc Committee respectfully requests that the Court waive the requirement to file a separate memorandum of law pursuant to D.N.J. LBR 9013-1(a)(3) because the legal basis upon which the Ad Hoc Committee relies is set forth herein and the Motion does not raise any novel issues of law.

---

[33] *Roman Catholic Church of the Archdiocese of New Orleans*, 2021 WL 454220, at *14.

-17-

58. No prior request for the relief sought in this Motion has been made to this Court or any other court.

### VII. NOTICE

59. Notice of this Motion will be provided by the Ad Hoc Committee to the following parties: (a) the Debtors; (b) the U.S. Trustee for the District of New Jersey; (c) the Talc Committee; (d) Berkshire Hathaway Inc.; (e) the Office of the United States Attorney for the District of New Jersey; (f) the Internal Revenue Service; (g) the Future Claims' Representative; and (h) any other party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Ad Hoc Committee respectfully submits that no other or further notice is required.

### VIII. CONCLUSION

60. For all of the foregoing reasons, the Ad Hoc Committee respectfully requests that the Court (i) grant the Motion, (ii) enter the Proposed Order directing the UST to, within four (4) business days, solicit an additional GUC Committee and appoint such GUC Committee as soon as reasonably practicable thereafter; (iii) order that the GUC Committee upon its appointment be immediately deemed added to the Court's Mediation Order as a "Mediation Party" (as defined in the Mediation Order) and the Mediator (as defined in the Mediation Order) directed to include the mediation of the claims of Unsecured Commercial Creditors as one of the "Mediation Matters" to be mediated in good faith between and among the Mediation Parties; and (iv) grant such other relief as is just and proper.

DATED:  February 16, 2024

                                              Respectfully submitted,

                                              /s/ Jeffrey D. Prol
                                              Jeffrey D. Prol, Esq.
                                              Philip J. Gross, Esq.
                                              LOWENSTEIN SANDLER LLP
                                              One Lowenstein Drive
                                              Roseland, New Jersey  07068
                                              Telephone: (973) 597-2490
                                              Facsimile: (973) 597-2491
                                              jprol@lowenstein.com
                                              pgross@lowenstein.com

                                              *Counsel for the Ad Hoc Committee*