UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 & 9
Jeffrey M. Sponder, Esq.
Lauren Bielskie, Esq.
One Newark Center, Suite 2100
Newark, NJ  07102
Telephone: (973) 645-3014
Fax: (973) 645-5993
E-mail:	jeffrey.m.sponder@usdoj.gov
	lauren.bielskie@usdoj.gov

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re<br><br>Whittaker, Clark & Daniels, Inc., et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-13575 (MBK)<br><br>Hearing Date: April 4, 2024 at 1:30 p.m.<br><br>Honorable Michael B. Kaplan, Chief Judge |

**UNITED STATES TRUSTEE'S OBJECTION TO THE AD HOC
COMMITTEE'S MOTION FOR AN ORDER DIRECTING
THE APPOINTMENT OF AN OFFICIAL
COMMITTEE OF UNSECURED COMMERCIAL CREDITORS**

Andrew R. Vara, the United States Trustee for Regions Three and Nine ("U.S. Trustee"), through his undersigned counsel, files this objection ("Objection") to the Ad Hoc Committee's *Motion for an Order Directing the Appointment of an Official Committee of Unsecured Commercial Creditors* ("Motion")[2] (Dkt. 854), and respectfully states:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Whittaker, Clark & Daniels, Inc. (4760); Brilliant National Services, Inc. (2113); L. A. Terminals, Inc. (6800); and Soco West, Inc. (3400).

[2] Capitalized terms used herein that are not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

**PRELIMINARY STATEMENT**

This Motion is brought by law firms and other professionals who defended Debtors pre-petition in the tort litigation that led to the filing of these bankruptcy cases. Belatedly, ten months after the Petitions were filed, Movants seek appointment of an official committee of "Unsecured Commercial Claimants."

This request should be denied. Movants owe fiduciary duties to the Debtors. In addition, many of them were retained by Debtors' insurance carriers and have direct claims against them. Even if this case involves trade creditors, which does not appear to be the case, Movants are not suitable representatives of those creditors based on their ability to recover from Debtors' insurers. In addition, the Movants for the most part are sophisticated counsel who may represent their interests or choose to do so through the Ad Hoc Committee.

To the extent the goal of this Motion is to gain admittance to the mediation process, formation of an official committee is not necessary. The Ad Hoc Committee may seek agreement from the mediation parties and permission from this Court to participate. Appointment of an official committee, and the attendant fees and costs associated therewith, is not necessary to become a mediation party.

**JURISDICTION**

1. This Court has jurisdiction to hear and determine this Objection.

2. Under 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of chapter 11 cases filed in this judicial district. This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

3. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on this Objection. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

## STATEMENT OF RELEVANT FACTS AND BACKGROUND

### I. General Case Background

4. On April 26, 2023 (the "Petition Date"), Whittaker, Clark & Daniels, Inc. ("Whittaker"), Brilliant National Services, Inc. ("Brilliant"), L. A. Terminals, Inc. ("L.A.") and Soco West, Inc. ("Soco" and together with Whittaker, Brilliant and L.A., the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). *See* Dkt. 1.

5. The cases are being jointly administered. *See* Dkt. 72.

6. The Debtors continue to operate their businesses as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

7. No trustee or examiner has been appointed in these chapter 11 cases.

8. On the Petition Date, the Debtors filed a *List of Law Firms Representing the Tort Plaintiffs. See* Dkt. 1. The list identified 20 law firms representing the Tort Plaintiffs.

9. On May 10, 2023, the Debtors filed a *Consolidated List of Creditors Who Have the 20 Largest Unsecured Non-Tort Claims and are not Insiders.* Dkt. 81. All 20 Unsecured Non-Tort Claimants were identified as having provided "professionals services" to the Debtors. The listed claims ranged from approximately $1.9 million to $93,700. Several claims were designated as "disputed."

10. Committee solicitation efforts were undertaken by counsel for the U.S. Trustee with respect to both the Tort Plaintiffs and the Unsecured Non-Tort Claimants. In addition to sending appropriate questionnaires directly to the entities on the Lists referenced above, the committee questionnaires were posted on the U.S. Trustee's website.

11. On May 24, 2023, the U.S. Trustee appointed an Official Committee of Tort Plaintiffs (the "TCC"). *See* Dkt. 121. Due to insufficient interest, an official committee of Unsecured Non-Tort Claimants was not appointed.

12. On May 30, 2023, Schedules and Statements of Financial Affairs were filed for all 4 Debtors. *See* Dkts. 134 – 137. Schedule E for the four Debtors collectively used only 4 identifiers for the types of unsecured claims held by the listed creditors: "Asbestos Bodily Injury Claim"; "Environmental Law Claimant"; "Indemnification Claim – Brenntag"; and "Litigation Services". None of the unsecured creditors listed by the Debtors was identified as a trade vendor.

13. On November 15, 2023, an Order was entered appointing a mediator for these bankruptcy cases. Dkt. 654. The Order identified the mediation parties which included, *inter alia*, Debtors' insurers. Issues to be considered during the mediation included resolution of disputes regarding the obligations of the insurers.

14. Discovery is ongoing as part of the mediation. Debtors' counsel has contacted certain of the Movants/AHC members to obtain information to meet their mediation discovery obligations. *See, e.g.,* Dkt. 759, pgs. 81 – 82.

**II.    Committee Request by AHC**

15. In October 2023, Jeffrey D. Prol, Esq. of Lowenstein Sandler LLP contacted counsel for the U.S. Trustee asking that a committee of unsecured creditors be appointed. The U.S. Trustee declined to make such an appointment.

4

16. Four months later, on February 16, 2024, Mr. Prol filed the *Verified Statement of the Ad Hoc Committee Pursuant To Bankruptcy Rule 2019*. Dkt. 853. Nine creditors are members of the Ad Hoc Committee ("AHC"). Upon information and belief, eight of the members are law firms that defended the Debtors in the tort litigation brought by the members of the TCC and/or the constituencies they represent. Segrave Technical Consulting LLC, the ninth AHC member, was also involved in the tort litigation and provided "Professionals/Expert Witness services in defense of WCD." *See* Proof of Claim No. 7.

17. Also on February 16, 2024, the AHC filed this Motion. The Movants admit that many of them, in addition to the other Unsecured Commercial Creditors they seek to represent, were retained by the Debtors' insurance carriers and hold claims against the insurance carriers. (Motion, ¶ 5).

18. Accordingly, more than ten months after the Petition Date, the AHC requests by its Motion that this Court direct: the appointment of an unsecured creditors committee in these cases; the U.S. Trustee to solicit interest for membership on such a committee; and that upon appointment of an unsecured creditors committee, the committee will be designated as a Mediation Party and the Mediator will be directed to also mediate claims held by the Unsecured Commercial Creditors against the Debtors and its insurers. (Motion, ¶ 27). This request also comes nine months after the TCC was appointed, four months after an informal request for appointment of a committee was made, and three months after the Mediator was appointed.

19. The AHC asserts there are over $14 million in unsecured commercial claims filed by non-tort/non-environmental Unsecured Commercial Creditors for whom it seeks appointment of an unsecured creditors committee. (Motion, p. 2 fn. 4). Upon information and belief, based on Debtors' schedules there are approximately 40 creditors that would be represented by the requested committee

and they all either provided services as Debtors' tort defense law firms or they were professionals used to defend the Debtors in the tort litigation.

20. For the reasons set forth below, the Court should deny the Motion as the requested committee cannot and should not be appointed. The Movants are Debtors' law firms that owe fiduciary duties to the Debtors. Post-petition, Debtors' bankruptcy counsel has conferred with one or more of these law firms. Movants also share with Debtors claims against insurance carriers that appointed them in the first place and have not paid the outstanding fees.[3] As such, the AHC members/top 20 Unsecured Non-Tort Claimants cannot represent the interest of general unsecured creditors, if there are any, due to their fiduciary relationship with the Debtors and their standing to pursue claims against the Debtors' insurance carriers to recover their fees.

## ARGUMENT

### I. The Standard for Appointment of a Creditors Committee

21. Section 1102(a) of the Bankruptcy Code governs the formation, appointment, and modification of official committees. It provides under what circumstances and pursuant to which standards a court and the U.S. Trustee may act in connection with official committees. Congress gave the U.S. Trustee and courts important, but divergent, authority with respect to committees in chapter 11.

22. Section 1102(a)(1) provides that the U.S. Trustee "shall appoint" a committee of creditors holding unsecured claims in virtually all cases (if there are creditors willing to serve) "as soon as practicable after the order for relief . . . ." 11 U.S.C. § 1102(a)(1). That language is mandatory, and the U.S. Trustee must appoint a committee of unsecured creditors unless such a

---

[3] Movants admit that "many of [the Unsecured Commercial Creditors] also hold claims against the Debtors' related insurance carriers that retained a large percentage of the Unsecured Commercial Creditors to assist the Debtors in defending against talc claims…" Motion, ¶ 5.

6

committee cannot be appointed because of lack of interest or eligible and suitable candidates. The U.S. Trustee also, as appropriate, monitors committee membership and occasionally modifies their composition. 11 U.S.C. § 1102(a)(1) and (2).

23. The requirement that there be suitable candidates is important because the members of an official committee owe a fiduciary duty to the committee's constituents. *In re Garden Ridge Corp.*, 2005 WL 523129 (Del. Bankr. 2005). The chief purpose of an official committee is to maximize the distribution to the class they represent under a confirmed plan. *Id*

24. A request for appointment of an additional committee is considered extraordinary relief. *In re The Budd Company, Inc.,* 512 B.R. 910, 912 (Bankr. N.D. Ill 2014) (citations omitted). The Court has discretion to look at such requests on a case by case basis. *Id.* Even if a movant proves that the existing committee does not adequately represent their interests, the Court must still decide if certain discretionary factors dictate it should not appoint a second committee. The factors include, *inter alia*, the nature of the chapter 11 case, the standing and desires of the moving constituency, the ability of the movants to participate in the case without appointment of a second committee, the delay and additional costs that will occur with a second committee, and the nature of the tasks the additional committee would perform. *Id.* No one factor is dispositive, and the consideration given depends on the circumstances of the case. *Id.* at 912-913 (citations omitted). *See also In re Enron Corp.,* 279 B.R. 671, 685 (Bankr. S.D.N.Y. 2002) (when faced with a request for a second committee, the court must look at the timing of the application for appointment of a second committee, the potential for additional complexity and the presence of other avenues for the creditors to participate) (citations omitted).

25. As highlighted above, only suitable candidates may be appointed to an official committee. As set forth in the United Sates Trustee Manual regarding Chapter 11 Case

Administration, issues arise when counsel to a debtor seeks to serve on a creditors committee. They have been (and may still be) privy to attorney-client privilege information that places them in an awkward position with respect to meeting their fiduciary obligations as a member of a general unsecured creditors committee. (Section 3-4.4.5).

## II. AHC's Request for Appointment of a Second Committee Should be Denied

26. The AHC seeks appointment of a committee of "Unsecured Commercial Creditors". In a footnote, the AHC defines this term as "scheduled non-priority general unsecured claims …and unsecured proofs of claim filed by non-tort/non-environmental unsecured creditors." This group in reality consists only of law firms and a few professionals that defended the Debtors in tort ligation that led to the bankruptcy filing. What is revealed about the "Unsecured Commercial Creditors" is that:

- Many also hold claims against the Debtors' insurance carriers, and a large percentage of these Creditors are law firms actually retained by the insurance carriers;

- They include the 20 entities identified by the Debtors on May 10, 2023 that all provided "professional services" to the Debtors;

- They are owed a total of over $14 million based on Debtors' Schedules, of which $5.8 million is owed to the 9 members of the AHC; and

- The overwhelming number of Unsecured Commercial Creditors are law firms and the rest performed services for the law firms.

27. The Unsecured Commercial Creditors in these cases are not the usual trade vendors normally found in a bankruptcy case. To the extent there are any such creditors, the law firm creditors are not suitable candidates to represent them. The law firms have alternative payment sources – the insurance firms. In addition, they've been privy to attorney-client communications that concern the very reason for these bankruptcy cases – the Debtors' tort liabilities.

28. The cases cited by the AHC where the Court ordered that a second committee be

8

formed, concerned scenarios where there were actual trade creditors. That is not the case here, where Debtors' defense counsel requests that estate funds be used to support their efforts to recover from Debtors' insurers that in many instances actually retained them and against which they have direct claims.

29. In addition, the AHC and its members can certainly proceed in these cases on their own and/or may participate through the AHC itself. As lawyers, they do not need separate legal counsel. The belated timing of their request also weighs against appointment of a second committee. The TCC has been in place for nine months and the mediation order was entered three months ago.

30. The nature of this case also does not support a second committee. The $14 million allegedly due the Unsecured Commercial Claimants is di minimis when compared to the tort claimants projected liabilities.

31. In summary, the discretionary factors that must be considered when a request is made for appointment of a second committee weigh against such action being taken here. The reasoning followed by the court in *In re Dana Corp.,* 344 B.R. 35 (Bankr. S.D.N.Y. 2006) is relevant here. The *Dana* Court made clear that the large size of a bankruptcy case is not determinative as to whether two committees should be appointed. *Id.* 39. In *Dana,* the movants seeking a second committee were represented by sophisticated counsel with a wealth of experience who could represent them without the necessity of a committee. *Id.* 40. Here, the claimants are themselves sophisticated counsel who can represent themselves. In addition, they have such counsel through the firm representing the AHC.

32. Movants claim a reason for seeking appointment of a second committee is to permit them to participate in the mediation. There is nothing stopping that request from being made at

any time, especially as there is now an AHC which could participate upon receiving Court approval.

33. In summary, to the extent the Motion seeks appointment of an unsecured creditors committee, neither the Movants, the AHC members, nor the Unsecured Non-Tort Claimants on the top 20 list filed by Debtors are suitable representatives of trade vendors, of which there do not appear to be any here. To the extent there are no trade creditors and only "professional" debt, the Unsecured Commercial Creditors are more than capable of representing their own interests and/or can do so as part of the AHC.

34. The U.S. Trustee reserves any and all rights, remedies, duties, and obligations found at law, equity or otherwise, including the right to complement, supplement, augment, alter and/or modify this Objection.

WHEREFORE, the U.S. Trustee respectfully submits that the Court should deny the Motion.

    Respectfully submitted,

    ANDREW R. VARA
    UNITED STATES TRUSTEE
    REGIONS 3 & 9

    By: */s/ Jeffrey M. Sponder*
    Jeffrey M. Sponder
    Trial Attorney
    Lauren Bielskie
    Trial Attorney
    United States Department of Justice
    Office of the United States Trustee
    One Newark Center, Suite 2100
    Newark, NJ 07102

    -and-

    Linda Richenderfer

              Trial Attorney
              United States Department of Justice
              Office of the United States Trustee
              J. Caleb Boggs Federal Building
              844 King Street, Suite 2207, Lockbox 35
              Wilmington, DE 19801
              (302) 573-6491 (Phone)
              linda.richenderfer@usdoj.gov

Dated:  March 26, 2024