**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com

-and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Chad J. Husnick, P.C. (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2400
chad.husnick@kirkland.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| WHITTAKER, CLARK & DANIELS, INC., *et al.*, | Case No. 23-13575 (MBK) |
| Debtors.[1] | (Jointly Administered) |

# DEBTORS' RESPONSE AND RESERVATION OF RIGHTS REGARDING THE AD HOC COMMITTEE'S MOTION FOR AN ORDER DIRECTING THE APPOINTMENT OF AN OFFICIAL COMMITTEE OF UNSECURED COMMERCIAL CREDITORS

TO: THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Whittaker, Clark & Daniels, Inc. (4760); Brilliant National Services, Inc. (2113); L. A. Terminals, Inc. (6800); and Soco West, Inc. (3400). The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 100 First Stamford Place, Stamford, Connecticut 06902.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") submit this response and reservation of rights (the "Response") regarding the *Ad Hoc Committee's Motion for an Order Directing the Appointment of an Official Committee of Unsecured Commercial Creditors* [Docket No. 854] (the "Motion") filed by the ad hoc committee of general unsecured commercial creditors (the "Ad Hoc Group"). In response to the Ad Hoc Group's Motion, the Debtors respectfully state as follows:

**Response**

1. The Debtors are extremely concerned about the professional fee burn in these cases. The Debtors—having a fixed amount of assets—need to be diligent and intentional in their approach to maximizing value for the Debtors' stakeholders and brokering consensus among all these stakeholders in these cases. To this end, the Debtors must consider the relative position of each of their stakeholders, including the Ad Hoc Group, to ensure that estate resources are being proportionately deployed to reach an equitable and efficient resolution of these chapter 11 cases. And while the Debtors do not necessarily concede that the Ad Hoc Group is inadequately represented by the Official Committee of Talc Claimants (the "Committee"), based on the Committee's conduct throughout these chapter 11 cases, the Debtors certainly appreciate the Ad Hoc Group's position.

2. It is a well-settled principle that a single statutory committee, complying with its fiduciary duties, can represent a diverse array of creditor interests.[2] Here, the United States Trustee

---

[2] *See, e.g., Mirant Ams. Energy Marketing, L.P. v. Off. Comm. of Unsecured Creditors of Enron Corp.*, No. 02 Civ. 6274 (GBD), 2003 WL 22327118, at *7 (S.D.N.Y. 2003) (noting that it is a "fundamental notion that a committee represents all unsecured creditors whether or not a member of a particular group is included in its membership'" and collecting cases); *In re Residential Cap., LLC*, 480 B.R. 550, 559 (Bankr. S.D.N.Y. 2012) (noting that "[i]t is well settled that statutory . . . committees owe a fiduciary duty to the entire class of creditors represented by such committee and are required to place the collective interest of the class they represent above their own personal stake in the bankruptcy case" and collecting cases).

2

for Region 3 (the "UST") decided, in its statutorily provided discretion, to adhere to this principle and only appoint a single committee—a committee comprised entirely of tort claimants.[3] While the Debtors believe that the UST envisioned that the Committee would adequately represent all general unsecured creditors in these chapter 11 cases, the Committee's conduct has raised the question of whether it is, in fact, fulfilling its fiduciary duties to all the Debtors' general unsecured creditors.

3. The Ad Hoc Group highlights the Committee's self-represented mandate "that it acts as 'a fiduciary' for current talc creditors." *See* Motion at ¶ 33. The Committee filed a joinder [Docket No. 132] to the *Amended and Revised Motion of Peter Protopapas to Dismiss the Chapter 11 Case of Whittaker, Clark & Daniels, Inc.* [Docket No. 117] (the "Motion to Dismiss") and an appeal after the Motion to Dismiss was denied [Docket No. 247]. The Motion to Dismiss, if granted, would exclusively benefit one general unsecured creditor—a member of the Committee—over all the Debtors' other similarly situated general unsecured creditors. These actions alone are evidence that the Committee is favoring the interests of its tort creditor constituency at the expense of all other general unsecured creditors.

4. The Committee also did not initially take a position when the Orange County Water District ("OCWD") moved to lift the automatic stay to proceed against the Debtors to the detriment of all other similarly situated general unsecured creditors [Docket No. 329]. During the first hearing on OCWD's motion, even the United States Bankruptcy Court for the District of New

---

[3] The UST made a similar decision not to appoint a "commercial" unsecured creditors committee in *LTL* based on the nature of the case where the debtor had almost $8.3 million in non-priority unsecured professional services claims between 52 claimants. *See In re LTL Mgmt. LLC*, No. 21-30589 (MBK), at 57–63 (Bankr. D.N.J. Dec. 6, 2021) [Docket No. 728].

3

Jersey (the "Court") noted its concern regarding the Committee's decision not to oppose OCWD's motion:

> Frankly, I'm a little surprised the Committee isn't taking a position because certainly every dollar that goes out of this estate is a dollar that could be made payable at some point for the benefit of not only environmental claimants obviously but other claimants, the personal injury claimants. And to see administration expenses dedicated toward resolving claims that may end up getting worked out depending upon how the plan proceeds and how the plan is mediated would seem to be contrary to the interest of the unsecured creditors and that continues to trouble me.

*In re Whittaker, Clark & Daniels, Inc.*, No. 23-13575 (MBK), Hr'g Tr. at 20:5-14 (Bankr. D.N.J. Aug. 24, 2023).

5. Given the Committee's actions in these chapter 11 cases, the Debtors understand why the Ad Hoc Group filed the Motion and echo the Court's concerns. Further, the Debtors have no issue with the Ad Hoc Group participating in these chapter 11 cases and welcome it to participate in mediation. However, the Debtors are apprehensive regarding the prospect of having to pay the Ad Hoc Group's professionals' fees and expenses using property of the estate that would otherwise be available to fund potential recoveries for its, the Committee's, and the Future Claimants' Representative's (the "FCR") constituencies.

6. Ultimately, the Debtors believe that the Ad Hoc Group's request must be viewed in the context of these chapter 11 cases and the Ad Hoc Group's role herein. As a matter of volume, relative to the estates' other stakeholders, the approximately $14 million of claims held by 53 of the Debtors' general unsecured commercial creditors are dwarfed by (i) the as-of-now unsettled tort claims alleged by over 1,000 individual claimants; (ii) an unknown number of claims held by an unknown number of future claimants; and (iii) the environmental claims resulting from several clean-up sites across various states. Based on a review of the Debtors' books and records and the Ad Hoc Group's assertions in the Motion, the Debtors currently believe, in the aggregate,

4

there is only approximately $171,000 of potentially disputed claims among the Ad Hoc Group's membership.[4]

7.      In light of the Ad Hoc Group's disproportionately small stake in these chapter 11 cases, the Debtors are particularly attuned to the cost and delay that would result from the appointment of another estate-funded committee.[5] On April 26, 2023, the Debtors had a cash balance of approximately $77 million. *See* [Docket No. 122 Ex. A]. As of February 16, 2024 (the date the Motion was filed), the Debtors had a cash balance of approximately $53 million, and currently, the Debtors have a cash balance of less than $45 million. Through the diligence process to date (which began in July 2023), the Debtors have provided the Committee, the FCR, and other parties in interest with over 240,000 documents (totaling over 3 million pages of discovery), resulting in substantial fees and time stemming from the hours of review and analysis these parties' professionals incurred to familiarize themselves with such diligence.[6] This considerable work and professional fee expenditure is necessary to bring these chapter 11 cases to a consensual resolution in the context of successor liability claims, tort claims, and environmental claims that are as-of-yet unsettled and not yet estimated. The Debtors welcome the Ad Hoc Group's participation in the mediation, but the relatively limited dispute as to their claims does not justify the extreme costs

---

[4]   The Debtors reserve all rights to dispute the alleged claims purportedly held by the Ad Hoc Group, including on the basis that such filed claims deviate from the values listed on the Debtors' schedules and statements of financial affairs [Docket Nos. 134–37].

[5]   If granted official committee status, the Ad Hoc Group would likely seek to retain its own counsel (lead and local) and financial advisor(s) who would endeavor to engage in duplicative efforts of reviewing and analyzing the millions of pages of diligence have already been produced by the Debtors and reviewed by the Committee, FCR, and other parties in interest. *See, e.g.*, *In re Vital Pharms., Inc.*, No. 22-17842-PDR, 2022 WL 17968889, at *7 (Bankr. S.D. Fl. Dec. 27, 2022) ("An additional committee will seek to retain yet [another] set of professionals including counsel, financial advisors, and investment bankers."); *In re Dana Corp.*, 344 B.R. 35, 40 (Bankr. S.D.N.Y. 2006) ("This [c]ourt is very aware of the high cost of legal and professional fees in large chapter 11 cases. Appointing a separate committee . . . may inevitably lead to duplicative efforts in these cases.").

[6]   To date, advisors to the Committee and the FCR have requested approximately $14.9 million and $3.9 million in fees and expenses, respectively, through their docketed monthly fee applications.

5

that would be required to fully engage with the discovery materials produced to date. Therefore, the Debtors want to ensure that any appointment of an additional committee does not permit a professional fee burn that overruns the Ad Hoc Group's proportional stake in these chapter 11 cases.

8.   To the extent the Court decides to grant the Motion, subject to the reservation of rights set forth in paragraph 9 of this Response, the Debtors believe that an appropriate balance can be reached through a strict cap on professional fees and expenses commensurate with the Ad Hoc Group's relative position in these cases. Absent such constraint, the potential for further proliferation of professional fees and expenses in the Debtors' fixed-asset cases can significantly impact the potential recoveries of the very claimants the Committee, FCR, and the Ad Hoc Group represent. Therefore, granting the relief requested in the Motion must be accompanied by a strict cap to manage and monitor the Ad Hoc Group's professional fees and expenses and prevent an excessive burden on the Debtors' estates.

## Reservation of Rights

9.   Nothing contained herein shall constitute a waiver of any of the Debtors' rights or remedies under the Bankruptcy Code or applicable law, including, without limitation, the right to: (i) amend, modify, or supplement this Response, or (ii) raise any other additional arguments at a later date, including, but not limited, at the hearing on the Motion, whether or not mentioned in this Response.

## Conclusion

10.   For the reasons set forth above, the Debtors respectfully request that the if the Court allows the appointment of an additional official committee, it implement a strict budget for the Ad Hoc Group's professional fees and expenses incurred in these chapter 11 cases.

Dated: March 26, 2024

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email: msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: joshua.sussberg@kirkland.com

-and-

Chad J. Husnick, P.C. (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: chad.husnick@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*