**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com

-and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Chad J. Husnick, P.C. (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2400
chad.husnick@kirkland.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| WHITTAKER, CLARK & DANIELS, INC., *et al.*, | Case No. 23-13575 (MBK) |
| Debtors.[1] | (Jointly Administered) |

**CERTIFICATION OF NO OBJECTION WITH RESPECT TO DEBTORS' MOTION**
**FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN**
**POSTPETITION FINANCING; (II) GRANTING LIENS AND PROVIDING**
**CLAIMS SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS;**
**(III) AUTHORIZING THE USE OF CASH COLLATERAL; (IV) MODIFYING**
**THE AUTOMATIC STAY; AND (V) GRANTING RELATED RELIEF**

1.      On May 8, 2023, the Court entered the *Order (I) Establishing Certain Notice,*

*Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No.

67] (the "Case Management Order").[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Whittaker, Clark & Daniels, Inc. (4760); Brilliant National Services, Inc. (2113); L. A. Terminals, Inc.

2.    The Case Management Order provides that "[a]fter the Objection date [for motions] has passed with no Objection having been filed or served, counsel for the movant may file a certification of no objection stating that no Objection has been filed or served on the movant."  *See* Case Management Order at ¶ 3(i).

3.    On September 3, 2024, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Granting Liens and Providing Claims Superpriority Administrative Expense Status; (III) Authorizing the Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [Docket No. 1302] (the "Motion").

4.    On October 5, 2024, the Debtors filed the *Notice of Filing of DIP Credit Agreement in Connection with Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Granting Liens and Providing Claims Superpriority Administrative Expense Status; (III) Authorizing the Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [Docket No. 1382].

5.    The deadline for parties to file objections and responses to the Motion was October 8, 2024 (the "Objection Deadline").  No formal objections or responses to the Motion were filed on the docket on or before the Objection Deadline.  The Debtors did receive informal comments to the proposed form of order from the Official Committee of Talc Claimants and the U.S. Government, which comments have been incorporated into the revised proposed form of order attached hereto as Exhibit A (the "Revised Order").  A blackline version of the Revised

---

(6800); and Soco West, Inc. (3400).  The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 100 First Stamford Place, Stamford, Connecticut 06902.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them on the Case Management Order.

Order reflecting all changes from the form of order submitted with the Motion is attached hereto

as Exhibit B.

6.      The Debtors respectfully request that the Court enter the Revised Order at the

earliest convenience of the Court.

Dated: October 9, 2024

/s/ Michael D. Sirota
**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:  msirota@coleschotz.com
        wusatine@coleschotz.com
        fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:       joshua.sussberg@kirkland.com

-and-

Chad J. Husnick, P.C. (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:   (312) 862-2200
Email:       chad.husnick@kirkland.com

*Co-Counsel for Debtors*
*and Debtors in Possession*

**<u>EXHIBIT A</u>**

**<u>REVISED ORDER</u>**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted pro hac vice)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Chad J. Husnick, P.C. (admitted pro hac vice)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2400
chad.husnick@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| WHITTAKER, CLARK & DANIELS, *et al.*, | Case No. 23-13575 (MBK) |
| Debtors.[1] | (Jointly Administered) |

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Whittaker, Clark & Daniels, Inc. (4760); Brilliant National Services, Inc. (2113); Soco West, Inc. (3400); and L.A. Terminals, Inc. (6800).

**ORDER (I) AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION
SECURED FINANCING, (II) GRANTING LIENS
AND PROVIDING SUPERPRIORITY ADMINISTRATIVE
EXPENSE CLAIMS, (III) MODIFYING THE AUTOMATIC
STAY, AND (IV) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through forty (40) is

**ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") in the above captioned chapter 11 cases (collectively, the "Chapter 11 Cases"), pursuant to sections 105, 361, 362, 363, 364, 506(c), 507, and 552 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 4001-1, 4001-3, 9013-1, 9013-2, 9013-3, and 9013-4 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules"), seeking entry of this final order (this "Order"):

(i)     authorizing Brilliant National Services, Inc. in its capacity as borrower (the "DIP Borrower") to obtain postpetition financing, and authorizing each of the other Debtors (such other Debtors, the "DIP Guarantors") to guarantee unconditionally, on a joint and several basis, the DIP Borrower's obligations in connection with a senior secured multiple draw term loan credit facility (the "DIP Facility") in the aggregate principal amount of $50,000,000 (the "DIP Commitments" and the term loans made thereunder, the "DIP Loans"), pursuant to the terms and conditions of this Order, the DIP Credit Agreement (as defined below), and the other DIP Facility Documents (as defined below);

(ii)    authorizing the DIP Borrower to enter into and perform under that certain Senior Secured Debtor-in-Possession Credit Agreement attached hereto as **Exhibit 1** between the DIP Borrower and National Indemnity Company and/or certain of its affiliate's or designees, as the lender(s) (in such capacity, the "DIP Lenders") (as the same may be amended, restated, supplemented, waived or otherwise modified from time to time, the "DIP Credit Agreement" and, together with this Order and all other agreements, documents, and instruments delivered or executed in connection therewith, in each case as may be amended, restated, supplemented, waived or otherwise modified from time to time in accordance with the terms thereof, collectively, the "DIP Facility Documents"), and to perform such other and further acts as may be required in connection with the DIP Facility Documents;

(iii)   authorizing the Debtors to use the proceeds of the DIP Loans and cash collateral (within the meaning of Bankruptcy Code section 363(a)) (a) for general

---

[2]    Capitalized terms used but not defined herein have the meanings given to such terms in the Motion or the DIP Credit Agreement (as defined herein).

(Page | 4)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al.* |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

corporate purposes of the Debtors, including to fund the costs of the administration of the Chapter 11 Cases and to pay such prepetition expenses, in each case in a manner consistent with the Approved Budget (as defined below), (b) to pay professional fees and expenses; (c) to pay premiums, fees, expenses, penalties, and other amounts owed under the DIP Facility Documents, to the extent applicable, (d) to fund a wind-down budget in form and substance acceptable to the DIP Lenders, and (e) to fund the Carve Out (as defined below);

(iv)    granting valid, enforceable, binding, non-avoidable, and fully perfected first priority liens on and senior security interests in substantially all of the property, assets, and other interests in property and assets of the Debtors, whether such property is presently owned or after-acquired, and each Debtor's estate as created by section 541 of the Bankruptcy Code, of any kind or nature whatsoever, real or personal, tangible, intangible, or mixed, now existing or hereafter acquired or created, whether existing prior to or arising after the Petition Date (as defined below), subject only to the Carve Out (as defined below);

(v)    granting superpriority administrative expense claims against each of the Debtors' estates to the DIP Lenders with respect to the DIP Obligations (as defined below) with priority over any and all administrative expenses of any kind or nature subject and subordinate only to the payment of the Carve Out on the terms and conditions set forth herein and in the DIP Facility Documents;

(vi)    effective as of the Petition Date, waiving the Debtors' and the estates' right to surcharge against the DIP Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code;

(vii)    effective as of the Petition Date, waiving the equitable doctrine of marshaling with respect to the DIP Lenders;

(viii)    modifying the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of the DIP Facility Documents and this Order; and

(ix)    related relief.

This Court having considered the Motion, the exhibits thereto, the Aronzon Declaration and the Meghji Declaration (collectively, the "Declarations"); and having held a hearing on September 24, 2024, to consider the relief requested in the Motion (the "Hearing"); and upon the Declarations and the record of the Hearing; and this Court having heard and resolved or overruled

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

any objections, reservations of rights, or other statements with respect to the relief requested in the Motion (or with the same being resolved on a consensual basis with revisions made to this Order); and the Court having noted the appearances of all parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the Debtors' entry into the DIP Credit Agreement and the other DIP Facility Documents is a sound and prudent exercise of the Debtors' business judgment; and the Debtors having provided notice of the Motion as set forth in the Motion, and it appearing that no other or further notice of the final relief granted herein need be given under the circumstances; and after due deliberation and consideration, and for good and sufficient cause appearing therefor; **BASED UPON THE RECORD ESTABLISHED AT THE HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A.    *Petition Date*.  On April 27, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "Court") commencing the Chapter 11 Cases.  On May 8, 2023, the Court entered an order approving joint administration of the Chapter 11 Cases.

---

[3]    Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

(Page | 6)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

B.      *Debtors in Possession*.    The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

C.      *Jurisdiction and Venue*.    The Court has jurisdiction over the Motion, the Chapter 11 Cases, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered on July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  The Court may enter a final order consistent with Article III of the United States Constitution.  Venue for the Chapter 11 Cases and proceedings on the Motion is properly before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      *Committee*.    On May 24, 2023, the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed an official committee of talc claimants in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (such committee, the "Committee") [Docket No. 121].  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

E.      *Future Claimants' Representative*.    On June 26, 2023, the Court appointed the Honorable Shelley C. Chapman (Ret). as Future Claimants' Representative (the "FCR") in the Chapter 11 Cases [Docket No. 231].

F.      *Findings Regarding the DIP Facility*.

(i)      The Debtors have an immediate need to obtain the DIP Facility (solely to the extent consistent with the Approved Budget (as defined below)) to (A) permit the orderly

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al.* |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

continuation of the Chapter 11 Cases; and (B) pay the costs of administration of the estates of the Debtors. The ability of the Debtors to obtain sufficient funds to pay the costs of administration of their respective estates through the incurrence of the new indebtedness for borrowed money and other financial accommodations is vital to the successful resolution of the Chapter 11 Cases. The Debtors will not have sufficient sources of funds to pay the costs of administration of their respective estates without access to the DIP Facility, as provided herein.

(ii)     The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Facility Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors also are unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Facility Documents without the Debtors granting to the DIP Lenders the DIP Liens (as defined below) and the DIP Superpriority Claims (as defined below) under the terms and conditions set forth in this Order and the DIP Facility Documents.

(iii)     The DIP Facility has been negotiated in good faith and at arm's length among the Debtors and the DIP Lenders, and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with the DIP Facility and the DIP Facility Documents, including, without limitation, all loans made to and guarantees issued by the Debtors pursuant to the DIP Facility Documents and all other obligations under the DIP Facility Documents (collectively, the "DIP Obligations") shall be deemed to have been extended by the DIP Lenders in "good faith" as that term is used in section 364(e) of the Bankruptcy Code and in express reliance

| (Page \| 8) | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al.* |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

upon the protections offered by section 364(e) of the Bankruptcy Code and reflects the Debtors'

exercise of prudent business judgment consistent with their fiduciary duties, and are supported by

reasonably equivalent value and consideration.  The DIP Obligations, the DIP Liens, and the DIP

Superpriority Claims shall be entitled to the full protection of Bankruptcy Code section 364(e) in

the event that this Order or any provision hereof is vacated, reversed, or modified on appeal or

otherwise, and any liens or claims granted to, or payments made to the DIP Lenders hereunder

prior to the effective date of any such vacatur, reversal, or modification of this Order shall be

governed in all respects by the original provisions of this Order, including entitlement to all rights,

remedies, privileges, and benefits granted herein.

(iv)     The DIP Facility is independent from the Settlement Agreement made and

executed as of September 3, 2024 by and between the Contributing Parties (as defined therein) and

the Debtors (the "Proposed Settlement"), and the DIP Obligations, the DIP Liens, and the DIP

Superpriority Claims each shall be allowed and enforceable pursuant to the terms and conditions

set forth in this Order and the DIP Facility Documents regardless of whether or not the Proposed

Settlement is approved by the Court, becomes effective, or is terminated.  For the avoidance of

doubt, the findings of fact and conclusions of law set forth herein shall not limit the objection of

any party in interest to the approval of the Proposed Settlement, and all parties' rights are reserved

with respect thereto.

(v)     The DIP Lenders have consented to the Debtors' proposed use of any cash

collateral (within the meaning of Bankruptcy Code section 363(a)) on the terms and conditions set

forth in this Order.

(Page | 9)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

G.    *Findings Regarding Corporate Authority*.  Each Debtor has all requisite corporate authority to execute and deliver the DIP Facility Documents to which it is a party and to perform its obligations thereunder.

H.    *Good Cause Shown; Best Interest*.  Good cause has been shown for entry of this Order, and entry of this Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow the Debtors to facilitate their chapter 11 goals and maximize the value of their assets and estates.  Absent granting the relief sought by this Order, the Debtors' estates will be immediately and irreparably harmed.

I.    *Notice*.  In accordance with Bankruptcy Rules 2002, 4001(c), and 9014, and the Local Rules, notice of Hearing and the relief requested in the Motion has been provided by the Debtors.  Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein, and of the Hearing complies with Bankruptcy Rules 2002, 4001(c), and 9014 and applicable Local Rules.

J.    *Arm's Length, Good Faith Negotiations*.  The terms of this Order were negotiated in good faith and at arm's length between the Debtors and the DIP Lenders.  The DIP Lenders have acted without negligence or violation of public policy or law in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of the Debtors' incurrence of the DIP Facility, including in respect of all of the terms of this Order, all documents related thereto, and all transactions contemplated by the foregoing.

(Page | 10)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al.* |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.     <u>DIP Financing Approved</u>.  The Motion is granted as set forth herein and the DIP Facility is approved on a final basis, subject to the terms of this Order.

2.     <u>Objections Overruled</u>.  Any objections, reservations of rights, or other statements with respect to the Motion and entry of this Order, to the extent not withdrawn or resolved (including resolved on a consensual basis with revisions made to this Order), are overruled on the merits.  This Order shall become effective immediately upon its entry.

3.     <u>Authorization of the DIP Facility and the DIP Facility Documents</u>.

(a)     The DIP Borrower is, and the DIP Guarantors are, hereby immediately authorized and empowered to enter into, execute and deliver, the DIP Facility Documents, including the DIP Credit Agreement, and such additional documents, instruments, certificates and agreements as may be reasonably required or requested by the DIP Lenders to implement the terms or effectuate the purposes of this Order and the DIP Facility Documents.  To the extent not entered into as of the date hereof, the Debtors and the DIP Lenders shall negotiate the DIP Facility Documents in good faith, and in all respects such DIP Facility Documents shall be, subject to the terms of this Order, materially consistent with the terms of the DIP Credit Agreement and otherwise reasonably acceptable to the DIP Lenders.  Upon entry of this Order, the DIP Credit Agreement, this Order, and other DIP Facility Documents shall govern and control the DIP Facility.  The DIP Lenders are hereby authorized to execute and enter into its obligations under

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al.* |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

the DIP Facility Documents, subject to the terms and conditions set forth therein and this Order. Upon execution and delivery thereof, the DIP Facility Documents shall constitute valid and binding obligations of the Debtors enforceable in accordance with their terms. To the extent there exists any conflict among the terms and conditions of the Motion, the DIP Facility Documents and this Order, the terms and conditions of this Order shall govern and control. To the extent there is a conflict between the terms and conditions of the Motion and the DIP Facility Documents, the terms and conditions of the DIP Facility Documents shall govern and control.

(b)     Upon entry of this Order, the DIP Borrower is hereby authorized to borrow, and the DIP Guarantors are hereby authorized to guaranty, all borrowings under the DIP Facility Documents, including, without limitation, $50,000,000 of DIP Loans, subject to and in accordance with this Order and the DIP Facility Documents, without further action by the Debtors or any other party.

(c)     In accordance with the terms of this Order and the other DIP Facility Documents, proceeds of the DIP Loans and any cash collateral (within the meaning of Bankruptcy Code section 363(a)) shall be used solely for the purposes permitted under this Order and the DIP Facility Documents, subject to the Carve Out. As used in this Order, "Approved Budget" means the budget dated as of August 30, 2024, prepared by the Debtors and approved by the DIP Lenders in accordance with the DIP Credit Agreement (which shall constitute the "Initial Approved Budget" under the DIP Credit Agreement), or any updated budget delivered as a "Subsequent Approved Budget" in accordance with the DIP Credit Agreement.

(Page | 12)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

(d)     In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized, and the automatic stay imposed by section 362 of the Bankruptcy Code is hereby lifted solely to the extent necessary to perform all acts and to make, execute, and deliver all instruments and documents (including, without limitation, the DIP Credit Agreement, any security and pledge agreement, and any mortgage to the extent contemplated thereby or by the DIP Credit Agreement and any other DIP Facility Documents), and to pay all fees (including all amounts owed to the DIP Lenders) that may be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Facility, including, without limitation:

(1)     the execution, delivery, and performance of the DIP Facility Documents, including, without limitation, the DIP Credit Agreement, any security and pledge agreement, and any mortgage to the extent required thereby;

(2)     the execution, delivery, and performance of one or more amendments, waivers, consents, or other modifications to and under the DIP Facility Documents (in each case in accordance with the terms of the applicable DIP Facility Documents, in such form as the Debtors and the DIP Lenders may reasonably agree), it being understood that no further approval of the Court shall be required for amendments, waivers, consents, or other modifications to and under the DIP Facility Documents or the DIP Obligations that are not material; and

(3)     the performance of all other acts required under or in connection with the DIP Facility Documents.

| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al.* |
|---|---|
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

(e)  Upon entry of this Order, the DIP Facility Documents, the DIP Obligations, and the DIP Liens shall constitute valid, binding, and non-avoidable obligations of the Debtors enforceable against each Debtor in accordance with their respective terms and the terms of this Order for all purposes during the Chapter 11 Cases, any subsequently converted Chapter 11 Case of any Debtor to a case under chapter 7 of the Bankruptcy Code or after the dismissal of any Chapter 11 Case.  No order confirming a chapter 11 plan entered in the Chapter 11 Cases shall discharge or otherwise affect in any way the joint and several obligations of the Debtors to the DIP Lenders under the DIP Facility.  No obligation, payment, transfer, or grant of security under the DIP Credit Agreement, the other DIP Facility Documents or this Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 542, 544, 548, or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, Uniform Voidable Transactions Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment, or counterclaim.  All payments or proceeds remitted to the DIP Lenders, pursuant to the DIP Facility Documents or the provisions of this Order, or any subsequent order of this Court, shall be received free and clear of any claim, charge, assessment, or other liability.

(f)  The DIP Guarantors are hereby authorized and directed to jointly, severally, and unconditionally guarantee, and upon entry of this Order shall be deemed to have guaranteed, in full, all of the DIP Obligations of the DIP Borrower.

(Page | 14)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

4.      <u>Access to Records</u>.  The Debtors shall provide the DIP Lenders and its advisors with all reporting and other information required to be provided to the DIP Lenders under the DIP Facility Documents.

5.      <u>DIP Superpriority Claims</u>.  Subject to, and subordinated in all respects to, the Carve Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against each of the Debtors' estates (the "<u>DIP Superpriority Claims</u>") (without the need to file any proof of claim) with priority over any and all administrative expenses, adequate protection claims, diminution claims, and all other claims against the Debtors, their estates or their property, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 361, 362, 363, 364, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for the purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code and which shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including, without limitation, any proceeds or property recovered in connection with the pursuit of claims or causes of action (x) brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents, if any (the "<u>Avoidance Actions</u>") or (y) that were held to be property of the estates in the

(Page | 15)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

Memorandum Decision issued by the Court in Adv. Pro. No. 23-01245 (MBK) on August 13, 2024 (the "Successor Liability Claims"), subject only to the payment of the Carve Out. Except as set forth in this Order, no other superpriority claims shall be granted or allowed in the Chapter 11 Cases.

6.     DIP Liens. As security for the DIP Obligations, effective and perfected upon the date of this Order, and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements, or other similar documents, or the possession or control by the DIP Lenders of, or over, any DIP Collateral (as defined below), the following security interests and liens are hereby granted by the Debtors to the DIP Lenders (all property identified in clause (a) and (b) below being collectively referred to as the "DIP Collateral"), subject only to the Carve Out (all such liens and security interests granted to the DIP Lenders, pursuant to this Order and the DIP Facility Documents, the "DIP Liens"):

(a)     First Priority Lien On Any Unencumbered Property. Subject only to the Carve Out, pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-avoidable, automatically, and properly perfected first priority senior security interest in and lien upon all property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date is not subject to valid, perfected, and non-avoidable liens (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), including, without limitation (in each case, to the extent not subject to valid, perfected, and non-avoidable liens), all unencumbered assets of the Debtors; all prepetition

(Page | 16)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al.* |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

property and post-petition property of the Debtors' estates, and the proceeds, products, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including, without limitation, unencumbered cash (and any investment of such cash) of the Debtors; all equipment, all goods, all accounts, cash, payment intangibles, bank accounts and other deposit or securities accounts of the Debtors (including any accounts opened prior to, on, or after the Petition Date); all insurance policies and proceeds thereof, equity interests, instruments, intercompany claims, accounts receivable, other rights to payment, all general intangibles, all contracts and contract rights, securities, investment property, letters of credit and letter of credit rights, chattel paper, all interest rate hedging agreements of the Debtors; all owned real estate, real property leaseholds and fixtures of the Debtors; patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property of the Debtors; all commercial tort claims of the Debtors; and all claims and causes of action (including causes of action arising under section 549 of the Bankruptcy Code, claims arising on account of transfers of value from a Debtor to (x) another Debtor and (y) a non-Debtor affiliate incurred on or following the Petition Date); any and all proceeds, products, rents, and profits of the foregoing, and all proceeds and property recovered in respect of Avoidance Actions and Successor Liability Claims; *provided*, for the avoidance of doubt, and notwithstanding anything to the contrary contained herein, to the extent an asset is an Excluded Asset or a lien cannot attach to any of the foregoing pursuant to applicable law, the liens granted pursuant to this Order shall attach to the Debtors' economic rights, including, without limitation, any and all proceeds of the foregoing.  "Excluded Assets" means (a) any governmental licenses or state or local franchises, charters or authorizations, to the extent a security

(Page | 17)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al.* |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

interest in any such license, franchise, charter or authorization would be prohibited or restricted

thereby (including any legally effective prohibition or restriction, but excluding any prohibition or

restriction that is ineffective under the Uniform Commercial Code of any applicable jurisdiction),

(b) any asset if, to the extent that and for so long as the grant of a lien thereon is prohibited by

applicable law (other than to the extent that any such prohibition would be rendered ineffective

pursuant to any other applicable law, including the Bankruptcy Code or the Uniform Commercial

Code of any applicable jurisdiction), or would require consent or approval of any governmental

authority, (c) any intent-to-use trademark application prior to the filing of a "Statement of Use" or

"Amendment to Allege Use" with respect thereto, (d) any lease, license or other agreement or any

property subject thereto (including pursuant to a purchase money security interest, capital lease or

similar arrangement) to the extent that a grant of a security interest therein would, under the terms

of such lease, license or other agreement existing on the Closing Date (as defined in the DIP Credit

Agreement), violate or invalidate such lease, license or agreement or purchase money arrangement

or capital lease or create a breach, default or right of termination in favor of any other party thereto

after giving effect to the applicable anti-assignment provisions of the Uniform Commercial Code

of any applicable jurisdiction or other similar applicable law, other than proceeds and receivables

thereof, the assignment of which is expressly deemed effective under the Uniform Commercial

Code of any applicable jurisdiction or the Bankruptcy Code or other similar applicable law

notwithstanding such prohibition, and (e) cash or cash equivalents maintained in any deposit

account that are comprised of (i) funds used or to be used for payroll and payroll taxes and other

employee benefit payments to or for the benefit of the employees, in each case, during the

(Page | 18)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

applicable period, (ii) funds used or to be used to pay any taxes required to be collected, remitted or withheld during the current period and (iii) other funds which any Debtor holds as an escrow or fiduciary for the benefit of any third person, including the trust fund established for the benefit of the EPA, pursuant to the *Remedial Design/Remedial Action Consent Decree, United States v. Soco West, Inc.,* No. 1:11-cv-00088-RFC (D. Mont. Aug. 18, 2011) [Docket No. 3-1] (the "EPA Trust Account").

(b)      Liens Junior to Certain Other Liens.  Subject only to the Carve Out, pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected security interest in and lien upon all prepetition and post-petition property of the Debtors that is subject to valid, perfected and enforceable prepetition liens (if any) or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (the "Permitted Prior Liens").  Subject to the Carve Out and the Permitted Prior Liens, the DIP Liens: (i) shall not be made subject to or *pari passu* with (A) any lien or security interest heretofore or hereinafter granted in any of the Chapter 11 Cases or any successor cases, and shall be valid and enforceable against the Debtors, their estates, any trustee or any other estate representative appointed or elected in the Chapter 11 Cases or any successor cases and/or upon the dismissal of any of the Chapter 11 Cases or any successor cases and (B) any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code; and (ii) shall not be subject to sections 506(c) (effective as of the Petition Date), 510, 549, 550, or 551 of the Bankruptcy Code.

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

Notwithstanding the foregoing, the DIP Liens shall not extend to, and the DIP Collateral shall not consist of, (v) Avoidance Actions, (w) Successor Liability Claims, (x) other estate causes of action and estate claims, if any, against the DIP Lenders and their Affiliates (as defined in the DIP Facility Documents), (y) any and all estate claims and estate causes of action subject to the Proposed Settlement (together with subclauses (v), (w) and (x), the "Specified Estate Claims") and (z) Excluded Assets; *provided*, that DIP Collateral shall include the proceeds of Specified Estate Claims and Excluded Assets; *provided*, *however*, that DIP Collateral shall not include the proceeds of the EPA Trust Account. For the avoidance of doubt, all estate causes of actions and estate claims other than the Specified Estate Claims shall be DIP Collateral.

(c)     Notwithstanding anything to the contrary in this Order or the DIP Facility Documents, the DIP Collateral shall not include the EPA Trust Account or any proceeds thereof.

7.     Carve Out.

(a)     Carve Out. As used in this Order, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals"), the FCR pursuant to section 105(a) or 1103

(Page | 20)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

(the "FCR Professionals"), and the Committee pursuant to section 328 or 1103 of the Bankruptcy

Code (the "Committee Professionals" and, together with the Debtor Professionals and FCR

Professionals, the "Professional Persons") at any time before or on the first business day following

delivery by the DIP Lenders of a Carve Out Trigger Notice (as defined below), whether allowed

by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional

Fees of Professional Persons in an aggregate amount not to exceed $500,000 incurred after the

first business day following delivery by the DIP Lenders of the Carve Out Trigger Notice, to the

extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts

set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap").  For purposes of the

foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other

electronic means) by the DIP Lenders to the Debtors, their lead restructuring counsel, the U.S.

Trustee, counsel to the FCR, and counsel to the Committee, which notice may be delivered

following the occurrence and during the continuation of an Event of Default and acceleration of

the DIP Obligations under the DIP Facility, stating that the Post-Carve Out Trigger Notice Cap

has been invoked.

(b)    Carve Out Reserves.  On the day on which a Carve Out Trigger Notice is

given by the DIP Lenders to the Debtors with a copy to counsel to the FCR and counsel to the

Committee (the "Termination Declaration Date"), the Carve Out Trigger Notice shall (i) be

deemed a draw request and notice of borrowing by the Debtors for DIP Loans under the DIP

Commitments (each, as defined in the DIP Credit Agreement), in an amount equal to the then

unpaid amounts of the Allowed Professional Fees (any such amounts actually advanced shall

(Page | 21)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

constitute DIP Loans) and (ii) also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees. The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims. On the Termination Declaration Date, the Carve Out Trigger Notice shall also (i) be deemed a request by the Debtors for DIP Loans under the DIP Commitments, in an amount equal to the Post-Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute DIP Loans) and (ii) constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap. The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims. On the first business day after the DIP Lenders give such notice, notwithstanding anything in the DIP Credit Agreement to the contrary, including with respect to the existence of a Default (as defined in the DIP Credit Agreement) or Event of Default, the failure of the Debtors to satisfy any or all of the conditions precedent for DIP Loans under the DIP Facility, any termination of the DIP Commitments following an Event of Default, or the occurrence of the Maturity Date (as defined in the DIP Credit Agreement), the DIP Lenders shall make available to the Debtors such borrowing in accordance with the DIP Facility. All funds in

(Page | 22)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full, in cash, and all DIP Commitments have been terminated, in which case any such excess shall be paid to the Debtors. All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full, in cash, and all DIP Commitments have been terminated, in which case any such excess shall be paid to the Debtors. Notwithstanding anything to the contrary in the DIP Facility Documents or this Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 7, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 7, prior to making any payments to the DIP Lenders. Notwithstanding anything to the contrary in the DIP Facility Documents or this Order, following delivery of a Carve Out Trigger Notice, the DIP Lenders shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with

| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
|---|---|
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

any excess paid to the DIP Lenders for application in accordance with the DIP Facility Documents. Further, notwithstanding anything to the contrary in this Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute DIP Loans (as defined in the DIP Credit Agreement) or increase or reduce the DIP Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors. For the avoidance of doubt and notwithstanding anything to the contrary in this Order or the DIP Facility, the Carve Out shall be senior to all liens and claims securing the DIP Facility and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations.

(c)     <u>Payment of Allowed Professional Fees Prior to the Termination Declaration Date</u>. Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(d)     <u>No Direct Obligation to Pay Allowed Professional Fees</u>. The DIP Lenders shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code. Nothing in this Order or otherwise shall be construed to obligate the DIP Lenders in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(Page | 24)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

(e)     <u>Payment of Carve Out On or After the Termination Declaration Date</u>.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.  Any funding of the Carve Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Order, the DIP Facility Documents, the Bankruptcy Code, and applicable law.

8.     <u>Reservation of Rights of the DIP Lenders</u>.  Subject only to the Carve Out, notwithstanding any other provision in this Order, or the other DIP Facility Documents to the contrary, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights of the DIP Lenders under the DIP Facility Documents, any intercreditor agreement, or the Bankruptcy Code or under non-bankruptcy law (as applicable).  The delay in or failure of the DIP Lenders to seek relief or otherwise exercise their rights and remedies shall not constitute a waiver of any of the DIP Lenders' rights and remedies.

9.     <u>Bar of Challenges</u>.  The waivers and releases contained in this Order shall be binding upon the Debtors, their estates, and any of their respective successors including the Committee, the FCR or any other person acting behalf of the Debtors or their estates, in each case, in all circumstances and for all purposes.  The  waivers contained in this Order shall be binding upon all other parties in interest. For the avoidance of doubt, the findings of fact and conclusions of law set forth herein shall not limit the objection of any party in interest to the approval of the Proposed Settlement, and all parties' rights are reserved with respect thereto.

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

10.     <u>Termination Date</u>.  On the Termination Date (as defined below), consistent with the DIP Credit Agreement, (a) all DIP Obligations shall be immediately due and payable, all DIP Commitments will terminate, and the Carve Out Reserves shall be funded as set forth in this Order; and (b) the DIP Lenders shall be otherwise entitled to exercise rights and remedies under the DIP Facility Documents in accordance with this Order.

11.     <u>Events of Default</u>.  The occurrence of any of the following events, unless waived in writing (email being sufficient) by the DIP Lenders in accordance with the terms of the DIP Facility Documents, shall constitute an event of default (collectively, the "<u>Events of Default</u>"): (a) the failure of the Debtors to perform, in any material respect, any of the terms, provisions, conditions, covenants, or obligations under this Order, (b) the failure of the Debtors to comply with any of the Milestones (as defined below) or (c) the occurrence of an "Event of Default" under the DIP Credit Agreement (which Events of Default are explicitly incorporated by reference into this Order).  The DIP Lenders shall provide written notice of any Event of Default to the Debtors and the U.S. Trustee; *provided* that, in the event a Standstill EOD (as defined below) is triggered, the DIP Lenders shall also provide written notice of such Standstill EOD to counsel to the Committee and counsel to the FCR.

12.     <u>Standstill Upon the Occurrence of Certain Events of Default</u>.  In the event that an Event of Default is triggered under sections [8(e)] (solely with respect to the Settlement Order (as defined in the DIP Credit Agreement)) or [8(f)] (solely with respect to the Estate Claims Decision or the Settlement Order (each as defined in the DIP Credit Agreement)) of the DIP Credit Agreement (collectively, the "<u>Standstill EODs</u>," and each, a "<u>Standstill EOD</u>"), the DIP Lenders

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

shall refrain from exercising their rights and remedies under section 14 of this Order for forty-five (45) days from the DIP Lenders' provision of a written notice of such Standstill EOD in accordance with paragraph 11 of this Order (the "Standstill Period"); *provided*, *however*, if, prior to expiration of the Standstill Period, a party in interest (including the Committee and/or the FCR) files a motion for authority to obtain alternative postpetition financing ("Alternative Financing Motion") that expressly provides that such alternative postpetition financing will be used, inter alia, to repay the DIP Obligations in full, the Standstill Period shall be extended until the date that is one (1) business day from entry of the order granting or denying such Alternative Financing Motion; *provided* that in no event shall the Standstill Period be extended by more than twenty-four (24) days; *provided* that nothing in this paragraph shall prevent the DIP Lenders from issuing a Carve Out Trigger Notice pursuant to paragraph 7 of this Order during the Standstill Period; *provided*, *further*, that upon the occurrence of a Standstill EOD and the issuance of a Carve Out Trigger Notice pursuant to paragraph 7 of this Order during the Standstill Period, the Post-Carve Out Trigger Notice Cap shall be increased by an additional $200,000, subject to paragraph 30 of this Order.

13.    Milestones.  The Debtors' failure to comply with any of the case milestones set forth in the DIP Credit Agreement attached hereto as **Exhibit 1** (collectively, the "Milestones") shall constitute an "Event of Default" in accordance with the terms of the DIP Credit Agreement unless waived or extended by the DIP Lenders.

14.    Rights and Remedies Upon Event of Default.  Subject to the terms of the applicable DIP Facility Documents and the provision of this Order relating to the Carve Out, immediately upon the occurrence and during the continuation of an Event of Default notwithstanding the

(Page | 27)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

provisions of section 362 of the Bankruptcy Code (which is expressly vacated and modified for such purposes), without any application, motion, or notice to, hearing before, or order from the Court, but subject to the terms of this Order and the Remedies Notice Period (defined below), the DIP Lenders may declare (any such declaration shall be referred to herein as a "Termination Declaration") (i) all DIP Obligations owing under the DIP Facility Documents to be immediately due and payable, and thereupon the principal of the DIP Obligations so declared to be due and payable, together with accrued interest thereon and all fees and other applicable DIP Obligations, shall become due and payable immediately, in each case, without presentment, demand, protest, notice of intent to accelerate, notice of acceleration or other notice of any kind, which is waived by the Debtors pursuant to the DIP Credit Agreement, (ii) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the DIP Facility, (iii) termination of the DIP Facility and the DIP Facility Documents as to any future liability or obligation of the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations, (iv) that the Carve Out shall be triggered, through the delivery of the Carve Out Trigger Notice to the DIP Borrower, and (v) that the default rate of interest under the DIP Facility has been triggered (the date on which a Termination Declaration is delivered, the "Termination Date"). The automatic stay in the Chapter 11 Cases otherwise applicable to the DIP Lenders are hereby modified so that five (5) business days after the Termination Date, with written notice having been provided to the Debtors and the U.S. Trustee and filed on the docket of the lead Debtor of the Chapter 11 Cases (the "Remedies Notice Period") the DIP Lenders shall be entitled to exercise its rights and remedies in accordance with the DIP

| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al.* |
|---|---|
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

Facility Documents and this Order to satisfy the DIP Obligations, DIP Superpriority Claims, and DIP Liens, subject to the Carve Out. During the Remedies Notice Period, the Debtors and/or any party in interest shall be entitled to seek an emergency hearing within the Remedies Notice Period with the Court for the sole purpose of contesting whether an Event of Default has occurred or is continuing. Except as set forth in this paragraph 14 or otherwise ordered by the Court prior to the expiration of the Remedies Notice Period, after the Remedies Notice Period, the Debtors and all parties in interest shall waive their right to and shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Lenders under this Order. Unless the Court orders otherwise prior to the expiration of the Remedies Notice Period, the automatic stay as to the DIP Lenders shall automatically be terminated at the end of the Remedies Notice Period without further notice or order. Upon expiration of the Remedies Notice Period, the DIP Lenders shall be permitted to exercise all remedies set forth herein, and in the DIP Facility Documents, and as otherwise available at law without further order of or application or motion to this Court consistent with this Order.

15.     <u>Limitation on Charging Expenses Against Collateral</u>.     No expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral (except to the extent of the Carve Out) pursuant to sections 105(a) or 506(c) of the Bankruptcy Code or any similar principle of law or

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

equity, without the prior written consent of the DIP Lenders, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lenders.

16.   Expenses.  The Debtors are hereby authorized and directed to pay, in accordance with this Order, the principal, interest, fees, payments, expenses, and other amounts described in the DIP Facility Documents as such amounts become due and without need to obtain further Court approval, all to the extent provided in this Order or the DIP Facility Documents.

17.   No Third Party Rights.  Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

18.   Insurance.  Until the DIP Obligations have been indefeasibly paid in full, at all times the Debtors shall maintain casualty and loss insurance coverage for the DIP Collateral on substantially the same basis as maintained prior to the Petition Date and shall name the DIP Lenders as loss payee or additional insured, as applicable, thereunder.

19.   No Waiver for Failure to Seek Relief.  The failure or delay of the DIP Lenders to exercise rights and remedies under this Order, the DIP Facility Documents, or applicable law, as the case may be, shall not constitute a waiver of its rights or remedies hereunder, thereunder, or otherwise.  All such rights and remedies are expressly reserved and preserved.

20.   Perfection of the DIP Liens.

(a)   The DIP Lenders are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, depository account control agreements, notices of lien, or similar instruments in any jurisdiction in order to validate and

(Page | 30)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al.* |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

perfect the liens and security interests granted hereunder or under the DIP Facility Documents.

Whether or not the DIP Lenders shall choose to file such financing statements, intellectual property

filings, mortgages, notices of lien, or similar instruments, such liens and security interests shall be

deemed valid, perfected, allowed, enforceable, and non-avoidable. If the DIP Lenders determine

to file or execute any financing statements, agreements, notice of liens, or similar instruments, the

Debtors shall use commercially reasonable efforts to cooperate and assist in any such execution

and/or filings as reasonably requested by the DIP Lenders, and the automatic stay shall be modified

solely to allow such filings as provided for in this Order.

(b)     A certified copy of this Order may be filed with or recorded in filing or

recording offices by the DIP Lenders in addition to or in lieu of such financing statements,

mortgages, notices of lien, or similar instruments, and all filing offices are hereby authorized and

directed to accept such certified copy of this Order for filing and recording; *provided*, *however*,

that notwithstanding the date of any such filing, the date of such perfection shall be the date of this

Order.

(c)     Any provision of any lease, license, contract or other agreement that

requires (i) the consent or approval of one or more landlords, lessors, or other parties or (ii) the

payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge,

grant, sell, assign, or otherwise transfer any such leasehold interest, license, contract or other

agreement or the proceeds thereof, or other collateral related thereto, is hereby deemed to be

inconsistent with the applicable provisions of the Bankruptcy Code, subject to applicable law. Any

such provision shall have no force and effect with respect to the granting of the DIP Liens on such

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

leasehold interest, license, contract or other agreement, or the proceeds of any assignment and/or sale thereof by any Debtor in accordance with the terms of the DIP Credit Agreement or this Order, subject to applicable law.

21.    <u>Release</u>.  Effective upon entry of this Order, each of the Debtors and the Debtors' estates, on its own behalf and on behalf of each of their predecessors, their successors, and assigns, shall, to the maximum extent permitted by applicable law, unconditionally, irrevocably, and fully forever release, remise, acquit, relinquish, irrevocably waive, and discharge, effective upon entry of this Order, the DIP Lenders and their affiliates, former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, assigns, and predecessors in interest (collectively, "<u>Representatives</u>"), each in their capacity as such, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract, of every nature and description that exist on the date hereof (collectively, "<u>Claims</u>") with respect to or relating to the DIP Obligations, the DIP Liens, or the DIP Facility Documents, as applicable, including, without limitation: (i) any so-called "lender liability" or equitable subordination claims or defenses with respect to or relating to the DIP Obligations, the DIP Liens, or the DIP Facility Documents and

(Page | 32)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

(ii) any and all claims and causes of action regarding the validity, priority, extent, enforceability, perfection, or avoidability of the liens or claims of the DIP Lenders; *provided* that nothing in this paragraph shall (x) in any way limit or release the obligations of the DIP Lenders under the DIP Facility Documents, (y) release any Claims of a Debtor against another Debtor or any Debtors' officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, assigns, and predecessors in interest, each solely in their capacity as such or (z) release any Avoidance Actions or Successor Liability Claims against the DIP Lenders or their Affiliates.

22.     Preservation of Rights Granted Under this Order.

(a)     In the event this Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise, any liens or claims granted to the DIP Lenders hereunder arising prior to the effective date of any such vacatur, reversal, or modification of this Order shall be governed in all respects by the original provisions of this Order, including entitlement to all rights, remedies, privileges, and benefits granted herein, and the DIP Lenders shall be entitled to all the rights, remedies, privileges, and benefits afforded in section 364(e) of the Bankruptcy Code.

(b)     Unless and until all DIP Obligations are indefeasibly paid in full, in cash, and all DIP Commitments are terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly (i) except as permitted under the DIP Facility Documents or, if not provided for therein, with the prior written consent of the DIP Lenders, (x) any modification, stay, vacatur, or amendment of this Order or (y) a priority claim for any administrative expense or unsecured claim against any of the Debtors (now existing or hereafter

(Page | 33)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

arising of any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in sections 503(b), 507(a), or 507(b) of the Bankruptcy Code) in any of the Chapter 11 Cases, *pari passu* with or senior to the DIP Superpriority Claims, or (z) any other order allowing use of the DIP Collateral; and (ii) except as permitted under the DIP Facility Documents (including the Carve Out), any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens.

(c)      Notwithstanding any order dismissing any of the Chapter 11 Cases entered at any time, or the termination of the Settlement Agreement, (x) the DIP Liens, the DIP Superpriority Claims, and the other administrative claims granted pursuant to this Order shall continue in full force and effect and shall maintain their priorities as provided in this Order until all DIP Obligations are indefeasibly paid in full in cash (and such DIP Liens, DIP Superpriority Claims, and the other administrative claims granted pursuant to this Order, shall, notwithstanding such dismissal, remain binding on all parties in interest); and (y) to the fullest extent permitted by law the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, and security interests referred to in clause (x) above.

(d)      Except as expressly provided in this Order or in the DIP Facility Documents, the DIP Liens, the DIP Superpriority Claims, and all other rights and remedies of the DIP Lenders granted by the provisions of this Order and the DIP Facility Documents shall survive, and shall not be modified, impaired, or discharged by (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases, terminating the joint administration of the Chapter 11 Cases or by any other act or omission, (ii) the entry of

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

an order approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code, (iii) the termination of the Settlement Agreement, or (iv) the entry of an order confirming a chapter 11 plan in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations. The terms and provisions of this Order and the DIP Facility Documents shall continue in the Chapter 11 Cases, in any successor cases if these Chapter 11 Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code.  The DIP Liens, the DIP Superpriority Claims, and all other rights and remedies of the DIP Lenders granted by the provisions of this Order shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full, in cash or, with respect to the DIP Obligations, otherwise satisfied in a manner agreed to by the DIP Lenders.

(e)     Other than as set forth in this Order, subject to the Carve Out, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest granted in any of the Chapter 11 Cases or arising after the Petition Date, and the DIP Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code.

23.     Limitation on Use of DIP Facility Proceeds and DIP Collateral.  Notwithstanding anything to the contrary in this Order, none of the DIP Facility, the DIP Collateral, or the Carve Out or proceeds thereof may be used to assert, support or prosecute (or to seek standing to assert, support or prosecute) any claims or causes of action against, or which are indemnified by, the DIP Lenders or any of their affiliates, officers, directors, employees, agents, representatives, attorneys,

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

consultants, financial advisors, affiliates, assigns, or successors (the "DIP Related Parties");

*provided*, however, that such proceeds may be used to seek approval of (or object to or otherwise

respond to) (a) the Proposed Settlement and (b) the *Joint Motion of the Official Committee of Talc*

*Claimants and the Future Claimants' Representative for Entry of an Order Granting Standing and*

*Authorizing the Committee and the FCR to Commence, Prosecute, and Settle Certain Causes of*

*Action on Behalf of the Debtors' Estates* [Docket No. 1293].  For the avoidance of doubt, the DIP

Facility, the DIP Collateral, and the Carve Out and the proceeds thereof may be used to pay

Allowed Professional Fees of Professional Persons incurred in connection with any appeal of the

Memorandum Decision and Order Granting Summary Judgment in Favor of the Debtors on Counts

I and IV of the Complaint issued by the Court in Adv. Pro. No. 23-01245 (MBK) on August 13,

2024 [Adv. Pro. Docket No. 268] and August 28, 2024 [Adv. Pro. Docket No. 292], respectively.

24.     Conditions Precedent.  Except as provided for in the Carve Out, the DIP Lenders

shall not have any obligation to make any DIP Loan under the respective DIP Facility Documents

unless all of the conditions precedent to the making of such extensions of credit under the

applicable DIP Facility Documents have been satisfied in full or waived in accordance with such

DIP Facility Documents.

25.     Binding Effect; Successors and Assigns.  The DIP Facility Documents and the

provisions of this Order, including all findings herein, shall be binding upon all parties in interest

in the Chapter 11 Cases, including, without limitation, the DIP Lenders, the Committee, the FCR,

and the Debtors and their respective successors and permitted assigns (including any chapter 7 or

chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner

(Page | 36)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Lenders. In determining to make any loan (whether under the DIP Credit Agreement, a promissory note or otherwise) or in exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Facility Documents, the DIP Lenders (in their capacity as such) shall not (i) be deemed to be in control of the operations of the Debtors, or (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates.

26. <u>Limitation of Liability</u>. In determining to make any loan under the DIP Facility Documents or in exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Facility Documents, the DIP Lenders shall not, solely by reason thereof, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute). Furthermore, nothing in this Order or the DIP Facility Documents shall in any way be construed or interpreted to impose upon the DIP Lenders any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors.

27. <u>No Requirement to File Claim for DIP Obligations</u>. Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including, without limitation, any order establishing a deadline for the filing of proofs of claim or requests for payment of

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

administrative expenses under section 503(b) of the Bankruptcy Code, the DIP Lenders shall not be required to file any proof of claim or request for payment of administrative expenses with respect to any of the DIP Obligations, all of which shall be due and payable in accordance with the DIP Facility Documents without the necessity of filing any such proof of claim or request for payment of administrative expenses, and the failure to file any such proof of claim or request for payment of administrative expenses shall not affect the validity, priority, or enforceability of any of the DIP Facility Documents or of any indebtedness, liabilities, or obligations arising at any time thereunder or prejudice or otherwise adversely affect the DIP Lenders' rights, remedies, powers, or privileges under any of the DIP Facility Documents, this Order, or applicable law.    The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

28.    <u>No Marshaling</u>.  The DIP Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral, and proceeds of the DIP Collateral shall be received and applied pursuant to this Order and the DIP Facility Documents, notwithstanding any other agreement or provision to the contrary.

29.    <u>Payments Held in Trust</u>.  Except as expressly permitted in this Order or the DIP Facility Documents, in the event that any person or entity (other than the DIP Lenders) receives any payment on account of a security interest in DIP Collateral, receives any DIP Collateral or any proceeds of such collateral, or receives any other payment with respect thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations under the DIP Facility

| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
|---|---|
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

Documents or the Settlement Contribution Date, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of collateral in trust for the benefit of the DIP Lenders (as applicable based on the specific asset at issue) and shall immediately turn over such proceeds to the DIP Lenders, or as otherwise instructed by this Court, for application in accordance with the DIP Facility Documents and this Order.

30. Notwithstanding anything the contrary contained in this Order, the DIP Facility, DIP Credit Agreement, or any other DIP Facility Document, the DIP Lenders shall have no obligation to make DIP Loans to the extent that such DIP Loans (whether for the Carve Out or otherwise) would cause the aggregate amount of outstanding DIP Loans to exceed the DIP Commitments; *provided*, that any PIK Payment Amounts (as defined in the DIP Credit Agreement) shall not be counted towards the DIP Commitments.

31. <u>Certain Governmental Matters</u>.

(a) Notwithstanding anything to the contrary in this Order or the DIP Facility Documents, nothing in this Order or the DIP Facility Documents shall relieve the Debtors of any obligations under federal, state or local police or regulatory laws or under 28 U.S.C. § 959(b); *provided* that nothing herein shall limit or impair the Debtors' rights to assert defenses under applicable law and nothing herein shall create new defenses to obligations under police or regulatory laws or 28 U.S.C. § 959(b).

(b) Notwithstanding anything to the contrary in this Order or the DIP Facility Documents, nothing in this Order or the DIP Facility Documents, shall impair or adversely affect the United States of America's rights, claims and defenses of set-off and recoupment, or those of

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

any State or any of the foregoing's respective agencies, departments or agents, and all such rights, claims and defenses shall be preserved in their entirety; *provided* that nothing herein shall limit or otherwise impair the Debtors' or the DIP Lenders' rights to challenge any such rights, claims, and defenses under applicable nonbankruptcy law; *provided, further*, that nothing herein shall limit the applicability of paragraphs 25 and 26 of this Order.

(c)      Notwithstanding anything to the contrary in this Order or the DIP Facility Documents, nothing in this Order or the DIP Facility Documents shall impair or adversely affect any right under applicable law of any governmental unit with respect to any financial assurance, letter of credit, trust, surety bond, or insurance proceeds; *provided* that nothing herein shall limit or otherwise impair the Debtors' or the DIP Lenders' rights to challenge any such rights under applicable nonbankruptcy law.

(d)      Notwithstanding anything to the contrary in this Order or the DIP Facility Documents, nothing in this Order or the DIP Facility Documents permits the DIP Lenders to recover their attorney's fees and costs in negotiating, briefing, defending the Proposed Settlement or any discovery or litigation relating thereto.

(e)      Subpart (i) of the second sentence of Paragraph 25 and the first sentence of paragraph 26 of this Order shall apply to police or regulatory liabilities to governmental units only so long as the actions of the DIP Lenders do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by the Debtors, or otherwise cause lender liability to arise or the status of control, responsible person, owner, or operator to exist under applicable federal, state, or local law.

(Page | 40)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al.* |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

32.     <u>Effect of this Order</u>.  This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon execution hereof.

33.     The Debtors shall serve by regular mail a copy of this Order and the Motion on all parties required to receive such service pursuant to Local Rule 9013-5(f) within two (2) business days after the entry of this Order.

34.     <u>Retention of Jurisdiction</u>.  The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

## EXHIBIT 1

**DIP Credit Agreement**

[Execution Version]

BRILLIANT NATIONAL SERVICES, INC.

_____

SENIOR SECURED DEBTOR-IN-POSSESSION CREDIT AGREEMENT

dated as of October [_], 2024

_____

$50,000,000
Credit Facility

_____

National Indemnity Company, as DIP Lender

## Table of Contents

Page

SECTION 1.    DEFINITIONS ..................................................................................1

   1.1    Defined Terms .......................................................................................1

   1.2    Other Definitional Provisions ................................................................7

SECTION 2.    COMMITMENTS ..............................................................................8

   2.1    Commitments ..........................................................................................8

   2.2    Commitment Amounts ............................................................................8

   2.3    Proceeds of DIP Loans ...........................................................................8

SECTION 3.    GENERAL PROVISIONS APPLICABLE TO DIP LOANS ...........9

   3.1    Procedure for DIP Loan Borrowings ......................................................9

   3.2    Repayments .............................................................................................9

   3.3    Interest Rates and Payment Dates ..........................................................9

   3.4    Computation of Interest ........................................................................10

SECTION 4.    REPRESENTATIONS AND WARRANTIES ..................................10

   4.1    Collateral ...............................................................................................10

   4.2    Ownership of Property; Liens ...............................................................10

   4.3    Corporate Existence; Compliance with Law ........................................10

   4.4    Corporate Power; Authorization ...........................................................11

   4.5    Enforceable Obligations .......................................................................11

   4.6    No Legal Bar .........................................................................................11

   4.7    Insurance ...............................................................................................11

   4.8    Accuracy and Completeness of Information .........................................11

SECTION 5.    CONDITIONS PRECEDENT & SUBSEQUENT ...........................12

   5.1    Conditions to the Initial Draw ..............................................................12

   5.2    Conditions to Subsequent Draws ..........................................................13

SECTION 6.    AFFIRMATIVE COVENANTS .......................................................14

   6.1    Financial Statements .............................................................................14

   6.2    Certificates; Other Information .............................................................14

   6.3    Conduct of Business and Maintenance of Existence ............................14

   6.4    Books and Records ................................................................................14

   6.5    Notices ..................................................................................................14

   6.6    Further Assurances ................................................................................15

6.7     Milestones ........................................................................................................15

6.8     Debtor-in-Possession Obligations .................................................................15

6.9     Control Agreement ........................................................................................15

6.10    Insurance .......................................................................................................15

6.11    Wind-Down Budget .......................................................................................16

SECTION 7.         NEGATIVE COVENANTS ..............................................................16

7.1     Indebtedness .................................................................................................16

7.2     Limitation on Liens........................................................................................17

7.3     Limitation on Contingent Obligations .........................................................17

7.4     Prohibition of Fundamental Changes ..........................................................18

7.5     Prohibition on Sale of Assets .......................................................................18

7.6     Limitation on Investments, Loans and Advances.........................................18

7.7     DIP Financing ...............................................................................................18

7.8     Alteration of Rights of the DIP Lender .........................................................18

7.9     Chapter 11 Claims ........................................................................................18

7.10    Limitation on New Subsidiaries ...................................................................19

7.11    Use of Proceeds ............................................................................................19

SECTION 8.         EVENTS OF DEFAULT .................................................................19

SECTION 9.         MISCELLANEOUS .......................................................................21

9.1     Amendments and Waivers ............................................................................21

9.2     Notices ..........................................................................................................21

9.3     No Waiver; Cumulative Remedies ................................................................22

9.4     Survival of Representations and Warranties................................................23

9.5     Successors and Assigns ................................................................................23

9.6     Counterparts.................................................................................................23

9.7     Severability ...................................................................................................23

9.8     Governing Law; No Third-Party Rights ........................................................23

9.9     WAIVER OF JURY TRIAL ..............................................................................23

9.10    Jurisdiction; Consent to Service of Process.................................................24

9.11    Counterparts; Electronic Execution .............................................................24

Exhibits:

Exhibit A – DIP Financing Order
Exhibit B – Initial Approved Budget
Exhibit C – Guarantee and Collateral Agreement

## SENIOR SECURED DEBTOR-IN-POSSESSION CREDIT AGREEMENT

SENIOR SECURED DEBTOR-IN-POSSESSION CREDIT AGREEMENT, dated as of October [ ], 2024 (as amended, restated or otherwise modified from time to time in accordance with the terms hereof, this "Agreement"), between Brilliant National Services, Inc., a Delaware corporation and a debtor and a debtor-in-possession (the "Borrower"), and National Indemnity Company, a Nebraska corporation, as lender (the "DIP Lender").

W I T N E S S E T H :

WHEREAS, on April 27, 2023 (the "Petition Date"), the Borrower and each Guarantor commenced voluntary bankruptcy proceedings (collectively, the "Chapter 11 Cases") under Chapter 11 of Title 11 of the United States Code (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), which are being jointly administered under the lead case filed by the Borrower, Case No. 23-13575 (MBK);

WHEREAS, the Borrower has requested, and, upon the terms and subject to the conditions set forth in this Agreement, the DIP Lender has agreed to make available to the Borrower, a senior secured debtor-in-possession credit facility of up to $50,000,000 (the "DIP Facility");

WHEREAS, subject to the terms of this Agreement and the other DIP Financing Documents, the Borrower and the Guarantors have agreed to secure all of their Obligations under the DIP Financing Documents by granting to the DIP Lender, a security interest in, and lien upon, substantially all of their respective assets, whether now existing or acquired after the date hereof, subject to exceptions specified herein or in the other DIP Financing Documents; and

WHEREAS, the DIP Lender is willing, on the terms and conditions hereinafter set forth, to make such DIP Loans to the Borrower to facilitate the administration of the Chapter 11 Cases, solely pursuant to and in accordance with the Approved Budget and the DIP Financing Documents;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the parties hereto agree as follows:

## SECTION 1.     DEFINITIONS

1.1     Defined Terms. As used in this Agreement, the following terms shall have the following meanings:

"Affiliates": as applied to any Person, any other Person directly or indirectly Controlling, Controlled by, or under common Control with, that Person. Neither the DIP Lender nor any of its respective Affiliates shall be considered an Affiliate of any Loan Party.

"Agreement": as defined in the preamble.

"<u>Approved Budget</u>": the Initial Approved Budget, as replaced or modified by any Subsequent Approved Budget delivered in accordance with <u>Section 5.2(f)</u>. As of the Closing Date, the Approved Budget is attached hereto as <u>Exhibit B</u>.

"<u>Approved Disclosure Statement</u>": a disclosure statement in form and substance mutually agreeable to the DIP Lender and the Borrower (as the same may be amended, supplemented, or modified from time to time with the prior written consent of the DIP Lender).

"<u>Approved Order</u>": an order of the Bankruptcy Court in form and substance mutually agreeable to the DIP Lender and the Borrower.

"<u>Approved Plan</u>": a plan of reorganization for one or more Loan Parties proposed pursuant to Section 1121 et <u>seq.</u> of the Bankruptcy Code that is in form and substance satisfactory to the DIP Lender and the Borrower (as the same may be amended, supplemented, or modified from time to time with the prior written consent of the DIP Lender).

"<u>Availability Period</u>": the period from the Closing Date to (but not including) the earliest to occur of (i) the Maturity Date, (ii) the date that the Wind-Down Budget is fully funded, and (iii) the Plan Effective Date.

"<u>Bankruptcy Code</u>": as defined in the first recital.

"<u>Bankruptcy Court</u>": as defined in the first recital.

"<u>Bankruptcy Rules</u>": means the Federal Rules of Bankruptcy Procedure, as the same may be amended from time to time, in effect and applicable to the Chapter 11 Cases.

"<u>Borrower</u>": as defined in the preamble.

"<u>Borrowing</u>": the making of DIP Loans on any Business Day in accordance with <u>Sections 2 and 3</u>.

"<u>Borrowing Date</u>": any Business Day, specified in a notice pursuant to <u>Section 3.1</u> as a date on which the Borrower requests that the DIP Lender make DIP Loans hereunder.

"<u>Budget Period</u>": as defined in <u>Section 5.1(c)</u>.

"<u>Budget Variances</u>" shall mean any variance from the Approved Budget (x) that is not material or (y) which would not result in a breach of <u>Section 7.11</u>.

"<u>Business Day</u>": a day other than a Saturday, Sunday or other day on which banks in New York City, New York are authorized or required by law to be closed.

"<u>Carve Out</u>": as defined in the DIP Financing Order.

"<u>Chapter 11 Cases</u>": as defined in the first recital.

"<u>Closing Date</u>": the date on which each condition precedent set forth in <u>Section 5.1</u> has been satisfied or waived in accordance with this Agreement, which date is October [_], 2024.

2

"<u>Closing Date Shared Services Agreements</u>": that certain (i) Intercompany Services Agreement Between National Indemnity Company And Brilliant National Services Inc., dated as of July 21, 2008, between the Borrower and the DIP Lender, and (ii) Intercompany Service Agreement Between National Liability & Fire Insurance Company And Brilliant National Services, Inc., dated as of July 21, 2008, between the Borrower and National Liability & Fire Insurance Company.

"<u>Collateral</u>": all property of the Loan Parties, now owned or hereafter acquired, upon which a Lien is created or purported to be created by the DIP Financing Order and the other DIP Financing Documents; <u>provided</u>, that "Collateral" shall exclude (v) Avoidance Actions (as defined in the DIP Financing Order), (w) Successor Liability Claims (as defined in the DIP Financing Order), (x) other estate causes of action and estate claims, if any, against the DIP Lender and/or its Affiliates (as defined in the DIP Facility Documents), (y) any and all estate claims and estate causes of action subject to the Proposed Settlement (together with subclauses (v), (w) and (x), the "<u>Specified Estate Claims</u>") and (z) all Excluded Assets; <u>provided</u> <u>further</u>, that "Collateral" shall include the proceeds of Specified Estate Claims and Excluded Assets; <u>provided</u>, <u>however</u>, that "Collateral" shall not include the proceeds of the EPA Trust Account (as defined in the DIP Financing Order). For the avoidance of doubt, all estate causes of actions and estate claims other than the Specified Estate Claims shall be "Collateral".

"<u>Committee</u>": the official committee of talc claimants appointed in the Chapter 11 Cases pursuant to Section 1102 of the Bankruptcy Code.

"<u>Confirmation Order</u>": an Approved Order confirming an Approved Plan.

"<u>Contingent Obligation</u>": as to any Person, any obligation of such Person guaranteeing or in effect guaranteeing any Indebtedness, Financing Leases, dividends or other obligations ("<u>primary obligations</u>") of any other Person (the "<u>primary obligor</u>") in any manner, whether directly or indirectly, including, without limitation, any obligation of such Person, whether or not contingent (a) to purchase any such primary obligation or any property constituting direct or indirect security therefor, (b) to advance or supply funds (i) for the purchase or payment of any such primary obligation or (ii) to maintain working capital or equity capital of the primary obligor or otherwise to maintain the net worth or solvency of the primary obligor, (c) to purchase property, securities or services primarily for the purpose of assuring the owner of any such primary obligation of the ability of the primary obligor to make payment of such primary obligation or (d) otherwise to assure or hold harmless the owner of any such primary obligation against loss in respect thereof; <u>provided</u>, <u>however</u>, that the term Contingent Obligation shall not include endorsements of instruments for deposit or collection in the ordinary course of business. The amount of any Contingent Obligation shall be deemed to be an amount equal to the stated or determinable amount (based on the maximum reasonably anticipated net liability in respect thereof as determined by the Borrower in good faith) of the primary obligation or portion thereof in respect of which such Contingent Obligation is made or, if not stated or determinable, the maximum reasonably anticipated net liability in respect thereof (assuming such Person is required to perform thereunder) as determined by the Borrower in good faith.

3

"Contractual Obligation": as to any Person, any provision of any security issued by such Person or of any agreement, instrument or undertaking to which such Person is a party or by which it or any of the property owned by it is bound.

"Control": the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ability to exercise voting power, by contract or otherwise.  "Controlling" and "Controlled" have meanings correlative thereto.

"Control Agreement": a "springing" control agreement in form and substance reasonably satisfactory to the DIP Lender and the Borrower, among the DIP Lender, the financial institution or other Person at which such account is maintained and the Loan Party maintaining such account, effective to grant "control" (as defined under the applicable UCC) over such account to the DIP Lender.

"Default": any of the events specified in Section 8, whether or not any requirement for the giving of notice, the lapse of time, or both, hereunder has been satisfied.

"DIP Claims": the claims of the DIP Lender granted and arising hereunder and under the DIP Financing Order.

"DIP Facility": as defined in the preamble.

"DIP Financing Documents": the collective reference to this Agreement, the DIP Financing Order, the Security Documents and each other instrument, document or agreement required to be delivered pursuant hereto or thereto.

"DIP Financing Order": an order of the Bankruptcy Court approving this Agreement on a final basis, in the form of Exhibit A attached hereto or otherwise satisfactory to the DIP Lender in its reasonable discretion.

"DIP Lender": as defined in the preamble.

"DIP Loan": each loan made pursuant to Section 2.1, collectively referred to as the "DIP Loans".

"DIP Loan Commitment": the commitment of the DIP Lender to make DIP Loans pursuant to Section 2.1 and Section 2.2(a).

"DIP Loan Commitment Amount": the lesser of (a) $50,000,000 (as reduced from time to time in accordance with the terms of this Agreement) and (b) the amount approved by the Bankruptcy Court pursuant to the DIP Financing Order; provided, that any PIK Payment Amounts shall not be included in the DIP Loan Commitment Amount.

"Dollars" and "$": dollars in lawful currency of the United States of America.

"Estate Claims Decision": the order of the Bankruptcy Court entered August 28, 2024 in Case No. 23-01245 (MBK) at Adv. Proc. Docket No. 292.

"Event of Default": any of the events specified in Section 8, provided, that any requirement, if any, for the giving of notice, the lapse of time, or both, hereunder as been satisfied.

"FCR": Honorable Shelley C. Chapman (Ret). in her capacity as Future Claimants' Representative in the Chapter 11 Cases.

"Financing Lease": as to any Person any lease of property, real or personal, the obligations under which are capitalized on a balance sheet of such Person in accordance with GAAP prior to giving effect to the Financial Accounting Standards Board Accounting Standard Update 2016-02, Leases (Topic 842).

"GAAP": generally accepted accounting principles in the United States of America in effect from time to time.

"Governmental Authority": any nation or government, any state or other political subdivision thereof or any entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government.

"Guarantee and Collateral Agreement": that certain Guarantee and Collateral Agreement, substantially in the form attached as Exhibit C hereto, among the Loan Parties, as grantors, and the DIP Lender.

"Guarantor": each Subsidiary of the Borrower.

"Indebtedness": of a Person, at a particular date, (a) all indebtedness of such Person for borrowed money or for the deferred purchase price of property or services, (b) the undrawn face amount of all letters of credit issued for the account of such Person and, without duplication, all drafts drawn thereunder and unpaid reimbursement obligations with respect thereto, (c) all Indebtedness described in clauses (a), (b), (d) and (e) of this definition secured by any Lien on any property owned by such Person, even though such Person has not assumed or become liable for the payment thereof, (d) Financing Leases and (e) all indebtedness of such Person arising under acceptance facilities; but, in each case, excluding (i) trade and other accounts payable and accrued expenses payable arising from and after the Petition Date in the ordinary course of business, (ii) any accruals for payroll, deferred compensation and customary arrangements under employment agreements, (iii) deferred taxes and (iv) operating leases.

"Indemnitee": as defined in Section 10.11.

"Indemnified Liabilities": as defined in Section 10.11.

"Initial Approved Budget": as defined in Section 5.1(c).

"Initial Draw": as defined in Section 2.1(a).

"Lease Obligations": of any Person, as of the date of any determination thereof, the rental commitments (including all fixed, minimum, percentage and additional cost, together with all real property taxes, common area charges, insurance premiums and all maintenance, alteration and repair obligations) of such Person, if any, under leases, subleases or licenses for real and/or

personal property (net of rental commitments from sub-leases thereof), excluding however, obligations under Financing Leases.

"<u>Lien</u>": any mortgage, pledge, hypothecation, collateral assignment, deposit arrangement, encumbrance, lien (statutory or other), or preference, priority or other security agreement or preferential arrangement of any kind or nature whatsoever (including any conditional sale or other title retention agreement, any Financing Lease having substantially the same economic effect as any of the foregoing, and the filing of any financing statement under the UCC or comparable law of any jurisdiction in respect of any of the foregoing except for the filing of financing statements in connection with Lease Obligations incurred by any Loan Party to the extent that such financing statements relate to the property subject to such Lease Obligations); <u>provided</u> that in no event shall an operating lease in and of itself be deemed a Lien.

"<u>Loan Parties</u>": collectively, the Borrower and the Guarantors.

"<u>Material Adverse Effect</u>": (a) a material adverse effect on the Loan Parties' ability to confirm an Approved Plan or (b) a material adverse effect upon the legality, validity, binding effect or enforceability against any Loan Party of any DIP Financing Document.

"<u>Maturity Date</u>": the earlier of (i) the Settlement Contribution Date, (ii) the date the DIP Loans are accelerated in accordance with <u>Section 8</u> of this Agreement or in accordance with the DIP Financing Order and (iii) the date of the dismissal of any of the Chapter 11 Cases or conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.

"<u>Milestones</u>": as defined in <u>Section 6.7</u>.

"<u>Notice of Borrowing</u>": as defined in <u>Section 3.1</u>.

"<u>Obligations</u>": all unpaid principal of and accrued and unpaid interest on the DIP Loans and all other advances to, debts, liabilities and obligations of any Loan Party to the DIP Lender or any indemnified party arising under the DIP Financing Documents in respect of any DIP Loan (including any PIK Payment Amounts), whether direct or indirect (including those acquired by assumption), absolute, contingent, due or to become due, now existing or hereafter arising.

"<u>Permitted Liens</u>": Liens permitted to exist under <u>Section 7.2</u>.

"<u>Person</u>": an individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, Governmental Authority or other entity of whatever nature.

"<u>Petition Date</u>": as defined in the first recital.

"<u>PIK Payment Amount</u>": as defined in <u>Section 3.3</u>.

"<u>Plan Effective Date</u>": the date on which an Approved Plan becomes effective in accordance with its terms.

"Proposed Settlement": the Settlement Agreement, dated as of September 3, 2024, by and between the Contributing Parties (as defined therein) and the Debtors (as defined therein).

"Repayment Date": as defined in Section 3.3(a).

"Requirement of Law": as to any Person, any law, treaty, rule or regulation or determination of an arbitrator or a court or other Governmental Authority, in each case applicable to or binding upon such Person or any of its property, or to which such Person or any of its property is subject.

"Responsible Officer": as to any Person, the president, chief restructuring officer, treasurer or secretary of such Person.

"Security Documents": collectively, the Guarantee and Collateral Agreement and any Control Agreements.

"Settlement Contribution": as defined in the Proposed Settlement.

"Settlement Contribution Date": the date on which the Loan Parties receive the Settlement Contribution.

"Settlement Order": as defined in Section 6.7(b).

"Specified Estate Claims": as defined in the DIP Financing Order.

"Subsequent Approved Budget": as defined in Section 5.2(e).

"Subsidiary": as to any Person, any corporation (or other entity) of which shares of stock (or equivalent equity interests) of each class having ordinary voting power (other than stock (or equivalent equity interests) having such power only by reason of the happening of a contingency) to elect a majority of the board of directors or other managers of such corporation (or other entity) are at the time owned by such Person or by one or more Subsidiaries of such Person or by such Person and one or more Subsidiaries of such Person.

"UCC": the Uniform Commercial Code or any successor provision thereof as the same may from time to time be in effect in the State of New York or the Uniform Commercial Code or any successor provision thereof (or similar code or statute) of another jurisdiction, to the extent it may be required to apply to any item or items of Collateral.

"U.S. Trustee": the United States Trustee for the District of New Jersey.

"Wind-Down Budget": as defined in Section 6.11.

1.2    Other Definitional Provisions. Unless otherwise specified therein, all terms defined in this Agreement shall have the defined meaning when used in any other DIP Financing Document or any certificate or other document made or delivered pursuant hereto.

7

(a)    As used herein, any other DIP Financing Document and any certificate or other document made or delivered pursuant hereto or thereto, accounting terms relating to the Loan Parties not defined herein and accounting terms partly defined herein to the extent not defined, shall have the meaning given to them under GAAP.

(b)    The words "hereof", "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement, and section, subsection, schedule and exhibit references are to this Agreement unless otherwise specified. The words "include," "includes" and "including" will be deemed to be followed by the phrase "without limitation." All references to "knowledge" or "awareness" of any Loan Party or a Subsidiary thereof means the actual knowledge of a Responsible Officer of such Loan Party or such Subsidiary.

(c)    The meanings given to terms defined herein shall be equally applicable to the singular and plural forms of such terms.

(d)    Unless the context requires otherwise, any definition of or reference to any agreement, instrument or other document herein or in any DIP Financing Document (including any DIP Financing Document) shall be construed as referring to such agreement, instrument or other document as from time to time amended, restated, amended and restated, supplemented or otherwise modified or extended, replaced or refinanced (subject to any restrictions or qualifications on such amendments, restatements, amendment and restatements, supplements or modifications or extensions, replacements or refinancings set forth herein).

(e)    Notwithstanding anything herein to the contrary, whenever any document, agreement or other item is required by any DIP Financing Document to be delivered or completed on a day that is not a Business Day or when the payment of any obligation is stated to be due on a day which is not a Business Day, the due date thereof, in each case, shall be extended to the next succeeding Business Day.

(f)    With respect to any Default or Event of Default, the words "exists," "is continuing" or similar expressions with respect thereto shall mean that the Default or Event of Default has occurred and has not yet been cured or waived.  If any Default or Event of Default occurs due to the failure by any Loan Party to take any action by a specified time, such Default or Event of Default shall be deemed to have been cured at the time, if any, that the applicable Loan Party takes such action to the extent within the cure periods specified thereunder.  If any Default or Event of Default occurs that is subsequently cured in accordance with the foregoing (a "Cured Default"), any other Default or Event of Default resulting from the making or deemed making of any representation or warranty by any Loan Party or the taking of any action by any Loan Party or any Subsidiary of any Loan Party, in each case which subsequent Default or Event of Default would not have arisen had the Cured Default not occurred, shall be deemed to be cured automatically upon, and simultaneous with, the cure of the Cured Default.

**SECTION 2.**    <u>**COMMITMENTS**</u>

2.1    <u>Commitments</u>. Subject to the terms and conditions of this Agreement (including those contained in <u>Section 5(a)</u> and <u>(b)</u>, as applicable), the DIP Lender agrees that it will, in accordance with <u>Section 3</u>:

(a) on the Closing Date, make a loan to the Borrower in a principal amount equal to $20,000,000 (the "<u>Initial Draw</u>"); and

(b) at any time on or after October 12, 2024, during the Availability Period, make one or more loans to the Borrower in the aggregate principal amount requested by the Borrower;

<u>provided</u>, <u>however</u>, that, the DIP Lender shall not be required to make any DIP Loan if, after giving effect thereto, the aggregate outstanding principal amount of all DIP Loans (excluding any PIK Payment Amount) would exceed the DIP Loan Commitment Amount. Amounts repaid on the DIP Loans may not be reborrowed.

Each borrowing of DIP Loans shall be in an aggregate amount equal to $500,000 or increments of $250,000 in excess thereof; <u>provided</u>, <u>however</u>, that the Initial Draw shall be in an aggregate amount not to exceed $20,000,000.

2.2    <u>Commitment Amounts</u>. The DIP Lender agrees, on the terms and conditions set forth herein, to make DIP Loans to the Borrower from time to time on any Business Day in an aggregate amount not to exceed, when added to the aggregate principal amount of all outstanding DIP Loans (excluding any PIK Payment Amounts), the DIP Loan Commitment Amount.

2.3    <u>Proceeds of DIP Loans</u>.  The proceeds of the DIP Loans shall be used by the Borrower solely in accordance with <u>Section 7.11</u> (subject to Budget Variances).

**SECTION 3.**    <u>**GENERAL PROVISIONS APPLICABLE TO DIP LOANS**</u>

3.1    <u>Procedure for DIP Loan Borrowings</u>. The Borrower shall give the DIP Lender irrevocable notice (which notice must be received by the DIP Lender no later than 10:00 a.m., New York City time, five (5) Business Days prior to the requested Borrowing Date) (a "<u>Notice of Borrowing</u>") of each borrowing of DIP Loans. Any Notice of Borrowing shall be signed by an authorized officer of the Borrower and state that, to the best of such officer's knowledge, (a) the proceeds of the DIP Loans to be made in connection with such Notice of Borrowing shall be used in accordance with the terms of the DIP Credit Agreement, (b) no Default or Event of Default has occurred and is continuing, and (c) the representations and warranties contained in the DIP Credit Agreement are true and correct in all material respects as at the applicable Borrowing Date; <u>provided</u>, that to the extent stated to relate to a specific earlier date, such representations and warranties are be true and correct in all material respects as of such earlier date; <u>provided</u>, <u>further</u>, that any representation and warranty that is qualified as to "materiality," "Material Adverse Effect" or similar language is true and correct (after giving effect to any qualification therein) in all respects on such respective dates. On the Borrowing Date, the DIP Lender shall make available funds equal to the amount of the requested DIP Loan to the Borrower by wire transfer to the account specified in the Notice of Borrowing, subject to the limitations set forth in <u>Section 2.1</u> and <u>2.2</u>.

9

3.2     Repayments.

(a)     Except as otherwise set forth herein or agreed in an Approved Plan, this Agreement evidences the Borrower's obligations, and no promissory note or proof of claim is required to evidence such obligations.

(b)     The Borrower hereby unconditionally promises to repay to the DIP Lender on the Maturity Date, an amount equal to the principal amount of outstanding DIP Loans (including any PIK Payment Amounts) on such date, together with accrued and unpaid interest on the principal amount to be paid to but excluding the date of such payment.

(c)     No order (i) dismissing the Chapter 11 Cases; (ii) converting the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code; or (iii) confirming a plan of reorganization, including the Confirmation Order, entered in the Chapter 11 Cases shall discharge or otherwise affect in any way the joint and several obligations of the Loan Parties to the DIP Lender under the DIP Facility.

(d)     Notwithstanding the foregoing, upon the occurrence of the Settlement Contribution Date, the DIP Lender hereby irrevocably agrees that: (i) the obligations under the DIP Financing Documents shall be automatically forgiven, released, and terminated in exchange for a reduction in the amount to be paid by the DIP Lender or its Affiliates as set forth in Section 3 of the Proposed Settlement, and (ii) any Liens or security interests granted to the DIP Lender by any Loan Party on any Collateral shall be automatically released and terminated.

3.3     Interest Rates and Payment Dates.

(a)     Subject to Section 3.3(b) hereof, the unpaid principal amount of all DIP Loans shall bear interest at a rate per annum equal to 5.35% for the period from and including the date such DIP Loans are made to, but excluding, the date such DIP Loans are paid in full (such date, the "Repayment Date").

(b)     At all times following the earlier of (i) December 31, 2024 and (ii) upon the written election of the DIP Lender, following the occurrence and during the continuation of an Event of Default, all DIP Loans and all other amounts outstanding under this Agreement, shall automatically bear interest at a rate per annum equal to 9.35%.

(c)     Accrued interest on each DIP Loan shall be capitalized and added to the unpaid principal amount on the last Business Day of each month (each such capitalized amount of accrued interest, a "PIK Payment Amount");

3.4     Computation of Interest. Interest in respect of DIP Loans shall be calculated on the basis of a 365- or 366-day year, as applicable, for the actual days elapsed.

## SECTION 4.     REPRESENTATIONS AND WARRANTIES

In order to induce the DIP Lender to enter into this Agreement and to make the DIP Loans, the Borrower hereby represents and warrants to the DIP Lender that on the Closing Date,

on each date that is required pursuant to <u>Section 5.2</u> and on each date that is explicitly required by any other provision of this Agreement or any other DIP Financing Document:

      4.1     <u>Collateral</u>. Upon execution and delivery thereof by the parties thereto and upon the entry by the Bankruptcy Court of the DIP Financing Order (and subject to the terms therein), the Security Documents are effective to create in favor of the DIP Lender a legal, valid and enforceable security interest in the Collateral described therein and proceeds thereof. Upon the entry by the Bankruptcy Court of the DIP Financing Order, and subject to the terms therein, the security interests and Liens granted to the DIP Lender to secure the Obligations pursuant to the DIP Financing Order, and the Security Documents shall automatically, and without further action, constitute a fully perfected Lien on, and security interest in, all right, title and interest of the Loan Parties in such Collateral.

      4.2     <u>Ownership of Property; Liens</u>. Each Loan Party has title in fee simple to, or a valid leasehold interest in, all its real property, and good title to, or a valid leasehold interest in, or other rights in, all its other property, in each case, except for defects which would not have a Material Adverse Effect, and none of such property is subject to any Lien except as permitted by <u>Section 7.2</u>.

      4.3     <u>Corporate Existence; Compliance with Law</u>. Each Loan Party, except as it may be affected by the commencement of the Chapter 11 Cases and all events and circumstances associated therewith and resulting therefrom, (a) is a corporation duly formed, validly existing and in good standing under the laws of its jurisdiction of formation, (b) has full corporate (or equivalent) power and authority and possesses all governmental franchises, licenses, permits, authorizations and approvals necessary to enable it to use its corporate name and to own, lease or otherwise hold its properties and assets and to carry on its business as presently conducted other than such franchises, licenses, permits, authorizations and approvals the lack of which, individually or in the aggregate, would not have a Material Adverse Effect, (c) is duly qualified and in good standing to do business in each jurisdiction in which the nature of its business or the ownership, leasing or holding of its properties makes such qualification necessary, except such jurisdictions where the failure so to qualify would not have a Material Adverse Effect, and (d) is in compliance with all applicable statutes, laws, ordinances, rules, orders and regulations of any Governmental Authority or instrumentality, domestic or foreign, except where noncompliance would not have a Material Adverse Effect.

      4.4     <u>Corporate Power; Authorization</u>. Subject to any required approval of the Bankruptcy Court to be obtained pursuant to the DIP Financing Order, each Loan Party has corporate (or equivalent) power and authority to make, deliver and perform each of the DIP Financing Documents to which it is a party and create the Liens provided for therein, and, subject to the approval of the Bankruptcy Court pursuant to the DIP Financing Order, the Borrower has the corporate power and authority and legal right to borrow hereunder. Each Loan Party has taken all necessary corporate (or equivalent) action to authorize the execution, delivery and performance of each of the DIP Financing Documents to which it is a party and to create the Liens provided for therein and the Borrower has taken all necessary corporate action to authorize the borrowings hereunder. Except for any required approval of the Bankruptcy Court to be obtained pursuant to the DIP Financing Order, no consent or authorization of, or filing with, any Person (including any Governmental Authority) is required in connection with the execution, delivery or performance by

any Loan Party, or for the validity or enforceability against any Loan Party, of any DIP Financing Document to which it is a party except for consents, authorizations and filings which have been obtained or made and are in full force and effect and except such consents, authorizations and filings, the failure to obtain or perform which would not have a Material Adverse Effect.

4.5     <u>Enforceable Obligations</u>. Each DIP Financing Document delivered on or prior to the date hereof (i) has been duly executed and delivered on behalf of each Loan Party party thereto and (ii) subject to any required approval of the Bankruptcy Court to be obtained pursuant to the DIP Financing Order, constitutes the legal, valid and binding obligation of each Loan Party party thereto, and is enforceable against each Loan Party party thereto in accordance with its terms.

4.6     <u>No Legal Bar</u>. Subject to the approval of the Bankruptcy Court pursuant to the DIP Financing Order, the execution, delivery and performance of each DIP Financing Document, the use of the proceeds of the DIP Loans and the transactions contemplated by or in respect of such use of proceeds will not violate any Requirement of Law or any Contractual Obligation applicable to or binding upon any Loan Party or any of such Loan Party's properties or assets, in any manner which, individually or in the aggregate, (i) would have a Material Adverse Effect on the ability of the Loan Parties to perform their obligations under the DIP Financing Documents or (ii) would have a Material Adverse Effect, and will not result in the creation or imposition of any Lien on any Loan Party's properties or assets pursuant to any Requirement of Law applicable to it, as the case may be, or any of its Contractual Obligations (other than the Liens created by or permitted under the DIP Financing Documents).

4.7     <u>Insurance</u>. All material property or liability insurance maintained by or on behalf of the Borrower and its Subsidiaries as of the Closing Date is in full force and effect as of such date.

4.8     <u>Accuracy and Completeness of Information</u>. The factual statements contained in the DIP Financing Documents and any other certificates or documents furnished or to be furnished to the DIP Lender from time to time pursuant to this Agreement (in each case, other than any projections, pro formas, budgets and other forward-looking information and information of a general economic or industry-specific nature), taken as a whole, do not and will not, to the knowledge of the Borrower, as of the date when made, contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements contained therein not materially misleading in light of the circumstances in which the same were made, all except as otherwise qualified herein or therein, such knowledge qualification being given only with respect to factual statements made by Persons other than the Borrower.

## SECTION 5.     <u>CONDITIONS PRECEDENT & SUBSEQUENT</u>

5.1     <u>Conditions to the Initial Draw</u>. The obligation of the DIP Lender to make DIP Loans on the Closing Date shall not become effective until the date on which each of the following conditions is satisfied (or waived in accordance with <u>Section 9.1</u>):

(a)     <u>Agreement</u>. The DIP Lender shall have received a counterpart of (i) this Agreement duly executed and delivered by a duly authorized officer of the Borrower and (ii)

each other DIP Financing Document duly executed and delivered by a duly authorized officer of each Loan Party party thereto.

(b)    <u>DIP Financing Order</u>. The DIP Lender shall have received a copy of the DIP Financing Order entered by the Bankruptcy Court, and the DIP Financing Order shall be in full force and effect and shall not have been reversed, modified, amended, supplemented, stayed, vacated or subject to stay.

(c)    <u>Initial Approved Budget</u>. The DIP Lender shall have received a budget beginning with the week which includes the Closing Date through January 31, 2025 (the "<u>Budget Period</u>") showing the Loan Parties' anticipated cash receipts and cash disbursements in form and substance reasonably satisfactory to the DIP Lender in its sole discretion (the "<u>Initial Approved Budget</u>") (it being acknowledged and agreed that the Initial Approved Budget attached hereto as <u>Exhibit B</u> is approved by and satisfactory to the DIP Lender and is and shall be the Approved Budget unless and until modified or replaced by a Subsequent Approved Budget delivered in accordance with <u>Section 5.2(f)</u>).

(d)    <u>Collateral Filings</u>. Each document (including any UCC financing statement) required by the DIP Financing Documents or reasonably requested by the DIP Lender to be filed, registered or recorded in order to create in favor of the DIP Lender, a perfected Lien on the Collateral described therein, prior and superior in right to any other Person (other than with respect to Permitted Liens), shall be in proper form for filing, registration or recordation.

(e)    <u>Representation and Warranties</u>. Each of the representations and warranties made in or pursuant to <u>Section 4</u> or which are contained in any other DIP Financing Document shall be true and correct in all material respects on and as of the Closing Date; <u>provided</u>, that to the extent stated to relate to a specific earlier date, in which case, such representations and warranties shall be true and correct in all material respects as of such earlier date; <u>provided</u>, <u>further</u>, that any representation and warranty that is qualified as to "materiality," "Material Adverse Effect" or similar language shall be true and correct (after giving effect to any qualification therein) in all respects on such respective dates.

(f)    <u>No Default or Event of Default</u>. No Default or Event of Default shall have occurred and be continuing on the Closing Date or will occur immediately after giving effect to the Initial Draw.

(g)    <u>Notice of Borrowing</u>. The DIP Lender shall have received a Notice of Borrowing.

(h)    <u>Good Standing Certificate of Loan Parties</u>. The DIP Lender shall have received a good standing certificate, dated as of a recent date for each Loan Party from its jurisdiction of organization.

(i)    <u>Lien Searches</u>. The DIP Lender shall have received customary lien searches in the United States reasonably requested by it.

5.2     Conditions to Subsequent Draws. At any time on or after October 12, 2024, the obligation of the DIP Lender to make any DIP Loans is subject to the satisfaction of the following conditions precedent (or waived in accordance with Section 9.1):

(a)     Notice of Borrowing. The DIP Lender shall have received a Notice of Borrowing.

(b)     Representation and Warranties. Each of the representations and warranties made in or pursuant to Section 4 or which are contained in any other DIP Financing Document shall be true and correct in all material respects on and as such Borrowing Date as if made on and as of such date; provided, that to the extent stated to relate to a specific earlier date, in which case, such representations and warranties shall be true and correct in all material respects as of such earlier date; provided, further, that any representation and warranty that is qualified as to "materiality," "Material Adverse Effect" or similar language shall be true and correct (after giving effect to any qualification therein) in all respects on such respective dates.

(c)     No Default or Event of Default. No Default or Event of Default shall have occurred and be continuing on such Borrowing Date or will occur immediately after giving effect to such DIP Loan.

(d)     DIP Financing Order. The DIP Financing Order shall be in full force and effect and shall not have been vacated, stayed, reversed, modified or amended.

(e)     Subsequent Approved Budget. The DIP Lender shall have received an updated budget for the remainder of the Budget Period in form and substance reasonably satisfactory to the DIP Lender and the Borrower (a "Subsequent Approved Budget"); provided, that any Subsequent Approved Budget that shows "Net Available Unrestricted Cash" of the Loan Parties at the end of the Budget Period of less than $5 million, must be satisfactory to the DIP Lender in its sole discretion.

## SECTION 6.     AFFIRMATIVE COVENANTS

So long as the DIP Loan Commitment remains in effect, any DIP Loan remains outstanding and unpaid or any other amount is owing to the DIP Lender under the DIP Financing Documents:

6.1     Financial Statements. The Borrower shall furnish to the DIP Lender, no later than 30 days after the end of each calendar month of each year (other than quarterly month-ends, in which case no later than 45 days after the end of such quarterly month-end) (or within such longer period as the DIP Lender may agree to in its reasonable discretion), unaudited cash receipts and disbursements, summary of assets and liabilities and income statement for such calendar month, for the Loan Parties. The information required under this Section 6.1 may be satisfied by delivery of the monthly operating reports as filed in the Chapter 11 Cases.

6.2     Certificates; Other Information. The Borrower shall, and shall cause each of its Subsidiaries to, furnish to the DIP Lender (subject, in the case of clause (b) below, to restrictions pursuant to attorney-client privilege, law, rule or regulation, or any obligation of confidentiality):

14

(a)    all materials, statements and reports required of the Loan Parties pursuant to the DIP Financing Order; and

(b)    promptly, such additional financial and other information as the DIP Lender may from time-to-time reasonably request.

6.3    <u>Conduct of Business and Maintenance of Existence</u>. The Borrower shall, and shall cause each of its Subsidiaries to, preserve, renew and keep in full force and effect its corporate existence and take all reasonable action to maintain all rights and privileges necessary or desirable in the ordinary conduct of its business except for rights and privileges the loss of which would not in the aggregate have a Material Adverse Effect, and except as otherwise permitted hereunder; and comply with all applicable Requirements of Law except to the extent that the failure to comply therewith would not, in the aggregate, have a Material Adverse Effect.

6.4    <u>Books and Records</u>. The Borrower shall, and shall cause each of its Subsidiaries to, keep proper books of record and account in which full, true and correct entries, in all material respects, are made of all material dealings and transactions in relation to its business and activities which permit financial statements to be prepared in conformity in all material respects with all applicable Requirements of Law.

6.5    <u>Notices</u>. The Borrower shall promptly after a Responsible Officer obtains actual knowledge thereof give notice to the DIP Lender:

(a)    of the occurrence of any Default or Event of Default then known to the Borrower; and

(b)    of a Material Adverse Effect arising after the Closing Date known to the Borrower.

Each notice pursuant to this <u>Section 6.5</u> shall be accompanied by a statement of an authorized officer or director setting forth details of the occurrence referred to therein and (in the cases of clause (a)) stating what action the Borrower proposes to take with respect thereto.

6.6    <u>Further Assurances</u>. Notwithstanding anything to the contrary contained in this Agreement, but subject in all respects to the terms and conditions of the DIP Financing Documents, the Borrower shall, and shall cause each of its Subsidiaries to, execute any and all further documents, agreements and instruments, and take all such further actions that may be required under any applicable Requirements of Law, or that the DIP Lender may reasonably request, in order to comply with its obligations under and to effectuate the transactions contemplated by this Agreement, the Proposed Settlement and the DIP Financing Order, all at the reasonable expense of the Borrower.

6.7    <u>Milestones</u>. The Borrower shall, and shall cause each of its Subsidiaries to, comply with the following milestones (the "<u>Milestones</u>"):

(a)    Filing an Approved Plan and Approved Disclosure Statement with the Bankruptcy Court on or before October 28, 2024;

15

(b)      The hearing to approve the Proposed Settlement (which hearing may be the hearing to approve the Approved Plan) shall be scheduled to begin on or before December 20, 2024;

(c)      Commencement of solicitation of acceptances of an Approved Plan on or before December 26, 2024; and

(d)      Entry by the Bankruptcy Court of an Approved Order approving the Proposed Settlement (a "Settlement Order") on or before January 20, 2025.

6.8      Debtor-in-Possession Obligations. The Borrower shall, and shall cause each of its Subsidiaries to, comply in all material respects with their obligations and responsibilities as debtors-in-possession under the Bankruptcy Code, the Bankruptcy Rules, and any applicable order of the Bankruptcy Court, including the DIP Financing Order.

6.9      Control Agreement. Within 30 days after the Closing Date (or such later date as the DIP Lender may agree in its reasonable discretion), the Borrower shall deliver to the DIP Lender a Control Agreement with respect to the account disclosed to the DIP Lender.

6.10     Insurance.

(a)      The Borrower shall, or shall cause each of its Subsidiaries to, maintain casualty and loss insurance coverage for the Collateral (other than worker's compensation insurance) on substantially the same basis as maintained prior to the date hereof and, subject to Section 6.10(b), the Borrower shall, or shall cause each of its Subsidiaries to, name the DIP Lender as loss payee or additional insured, as applicable, thereunder.

(b)      Within 60 days after the Closing Date (or such later date as the DIP Lender may agree in its sole discretion), the Borrower shall, or shall cause each of its Subsidiaries to, deliver to the DIP Lender, each in form and substance reasonably satisfactory to the DIP Lender, (a) an additional insured endorsement with respect to each liability insurance policy of the Loan Parties and (b) a lender's loss payable endorsement with respect to each property insurance policy (with respect to the Collateral) of the Loan Parties, in each case, as required by Section 6.10(a) of the Credit Agreement.

6.11     Wind-Down Budget. On or before the Plan Effective Date, the Borrower shall deliver to the DIP Lender a wind-down budget for the Chapter 11 Cases in form and substance acceptable to the DIP Lender (the "Wind-Down Budget").

**SECTION 7.      NEGATIVE COVENANTS**

The Borrower shall not, nor shall it permit any of its Subsidiaries to, directly or indirectly, so long as the DIP Loan Commitment remains in effect or any DIP Loan remains outstanding and unpaid or any other amount is owing to the DIP Lender hereunder:

7.1      Indebtedness. Create, incur, assume or suffer to exist any Indebtedness, except:

16

(a)     Indebtedness outstanding on the Closing Date and any renewal, replacement or extension thereof without an increase in the principal amount thereof;

(b)     Indebtedness in connection with the DIP Loans, the DIP Financing Order and this Agreement;

(c)     Indebtedness owed on a short-term basis to banks and other financial institutions in the ordinary course of business with such banks or financial institutions that arises in connection with ordinary banking arrangements, including cash management and related activities to manage cash balances of the Borrower and its Subsidiaries including treasury, depository, electronic funds transfer and other cash management arrangements and similar arrangements;

(d)     endorsements of instruments or other payment items for deposit;

(e)     intercompany Indebtedness among the Loan Parties;

(f)     Indebtedness (i) included in or contemplated by the Approved Budget (subject to Budget Variances) or (ii) permitted by an Approved Plan, the DIP Financing Order or any other Approved Order;

(g)     other Indebtedness incurred by the Borrower or any of its Subsidiaries in an aggregate outstanding amount not to exceed $125,000;

(h)     all premiums (if any), interest (including post-petition interest), fees, expenses, charges and additional or contingent interest on obligations described in clauses (a) through (f) above; and

(i)     all obligations of Borrower and its Subsidiaries under the Closing Date Shared Services Agreements.

7.2     Limitation on Liens. Create, incur, assume or suffer to exist any Lien upon any of its property, assets, income or profits, whether now owned or hereafter acquired, except:

(a)     Liens for taxes, assessments or other governmental charges (i) not yet due or which are being contested in good faith and by appropriate proceedings if adequate reserves (as determined by Borrower in good faith) with respect thereto are maintained on the books of the applicable Loan Party; (ii) the nonpayment of which is permitted or required by the Bankruptcy Code; or (iii) with respect to amounts attributable to members of any consolidated, combined, or similar tax group of which the Borrower is a non-parent member with joint and/or several liability;

(b)     carriers', warehousemen's, mechanics', landlords', materialmen's, repairmen's or other similar Liens arising in the ordinary course of business in respect of obligations which are not yet due or which are being contested in good faith and by appropriate proceedings if adequate reserves (as determined by Borrower in good faith) with respect thereto are maintained on the books of the applicable Loan Party;

17

(c)      bankers' liens arising by operation of law;

(d)      Liens existing on the Closing Date and any renewal, replacement or extension thereof on the same assets;

(e)      Liens created pursuant to the Security Documents;

(f)      easements, zoning restrictions, encroachments, rights of way, restrictions, other land use laws regulating the use or occupancy of the real property, minor defects or irregularities in title and other similar Liens on real property;

(g)      non-consensual restrictions on the transfer or pledge of assets imposed by governmental authorization or comparable state or local legislation, regulations or ordinances or otherwise imposed by Requirements of Law;

(h)      any right of expropriation vested in any governmental or public body or authority;

(i)      Liens arising from judgments, decrees, arbitration awards or attachments (x) in existence not more than 30 days after the entry thereof or (y) with respect to which execution has been stayed or (z) the payment of which is covered by insurance;

(j)      Liens on the assets described in clause (e) of the definition of "Excluded Assets" in the DIP Financing Order;

(k)      Liens (i) created in connection with transactions included in or contemplated by the Approved Budget (subject to Budget Variances) or (ii) permitted by an Approved Plan, the DIP Financing Order or any other Approved Order; and

(l)      other Liens which do not exceed $125,000 at any one time outstanding.

7.3     Limitation on Contingent Obligations. Create, incur, assume or suffer to exist any Contingent Obligation except (a) Contingent Obligations existing on the Closing Date, (b) as included in or as contemplated by the Approved Budget (subject to Budget Variances) or permitted by an Approved Plan, the DIP Financing Order or any other Approved Order, and (c) Contingent Obligations in respect of Indebtedness otherwise permitted by Section 7.1.

7.4     Prohibition of Fundamental Changes. Merge or consolidate or amalgamate, or liquidate, wind up or dissolve itself (or suffer any liquidation or dissolution), or reclassify its equity interests (including by dividing into one or more series), in each case, except in connection with an Approved Plan.

7.5     Prohibition on Sale of Assets. Convey, sell, lease, assign, transfer or otherwise dispose of any of its property, business or assets (including, without limitation, tax benefits, receivables and leasehold interests), whether now owned or hereafter acquired except (i) dispositions of any property or asset that is obsolete, worn-out or no longer used or usable in the ordinary course of business of the Borrower and its Subsidiaries, (ii) immaterial assets, (iii)

dispositions of cash or cash equivalents, in each case, consistent with the Approved Budget (subject to Budget Variances), (iv) any involuntary condemnation, loss, damage or destruction of property, (v) dispositions of the assets described in clause (e) of the definition of "Excluded Assets" in the DIP Financing Order, (vi) in connection with transactions included in or contemplated by the Approved Budget (subject to Budget Variances) or permitted by an Approved Plan, the DIP Financing Order or any other Approved Order, (vii) any other sale, transfer, license, lease or other disposition of property, business or assets in an aggregate amount not to exceed $50,000, and (viii) the disposition of property or assets by any Loan Party to any other Loan Party.

7.6     Limitation on Investments, Loans and Advances. Make any advance, loan, extension of credit or capital contribution to, or purchase any stock, bonds, notes, debentures or other securities of, or make any other investment in (including, without limitation, any acquisition of all or any substantial portion of the assets, and any acquisition of a business or a product line, of other companies), any Person, except (i) any Loan Party may invest in, acquire and hold cash and cash equivalents and may make all payments to fund the administrative expenses of the Chapter 11 Cases consistent with the Approved Budget (subject to Budget Variances); (ii) investments existing as of the Closing Date and any renewal, replacement or extension thereof without an increase in the amount thereof; (iii) investments in connection with transactions included in or contemplated by the Approved Budget (subject to Budget Variances) or permitted by an Approved Plan, the DIP Financing Order or any other Approved Order, (iv) deposit accounts and investments in negotiable instruments deposited or to be deposited for collection in the ordinary course of business, (v) intercompany loans permitted by Section 7.1; (vi) deposits, prepayments and other credits to service providers made in the ordinary course of business consistent with the Approved Budget (subject to Budget Variances); and (vii) other investments which do not exceed $125,000 at any one time outstanding.

7.7     DIP Financing. Incur or apply to the Bankruptcy Court for authority to incur, or suffer to exist, any (i) indebtedness having the priority afforded by Section 364(c) or (d) of the Bankruptcy Code or (ii) obligation to make adequate protection payments, or otherwise provide adequate protection, in each case, other than as approved by the DIP Lender or as set forth in the DIP Financing Order.

7.8     Alteration of Rights of the DIP Lender. Consent to limit or modify, or apply to the Bankruptcy Court to limit or modify any of the DIP Lender's rights with respect to the Obligations, pursuant to any Approved Plan or otherwise, other than with the DIP Lender's express prior written consent.

7.9     Chapter 11 Claims. Except for the Carve Out and as set forth in the DIP Financing Order, apply to the Bankruptcy Court for the authority to incur, create, assume, suffer or permit any claim, Lien or encumbrance (other than Permitted Liens) against any Loan Party or any of its assets in the Chapter 11 Cases to be senior to the DIP Claims.

7.10    Limitation on New Subsidiaries. Organize, form, create or acquire any new Subsidiary, in each case, except in connection with an Approved Plan.

7.11    Use of Proceeds. Use the DIP Loans or the proceeds thereof for any purpose other than (i) for general corporate purposes of any Loan Party, including to fund the costs of the

administration of the Chapter 11 Cases and to pay such prepetition expenses, in each case in a manner consistent with the Approved Budget; (ii) to pay professional fees and expenses; (iii) to pay premiums, fees, expenses, penalties, and other amounts owed under the DIP Financing Documents, to the extent applicable; (iv) to fund the Wind-Down Budget; and (v) to fund the Carve Out; <u>provided</u>, that in no event shall any such proceeds be used to assert, support or prosecute (or to seek standing to assert, support or prosecute) any claims or causes of action against, or which are indemnified by, the DIP Lender or any of its Affiliates; <u>provided</u>, <u>however</u>, that such proceeds may be used to seek approval of (or object to or otherwise respond to) (a) the Proposed Settlement and (b) the *Joint Motion of the Official Committee of Talc Claimants and the Future Claimants' Representative for Entry of an Order Granting Standing and Authorizing the Committee and the FCR to Commence, Prosecute, and Settle Certain Causes of Action on Behalf of the Debtors' Estates* [Docket No. 1293]. For the avoidance of doubt, the DIP Facility, the DIP Collateral, and the Carve Out and the proceeds thereof may be used to pay Allowed Professional Fees of Professional Persons incurred in connection with any appeal of the *Memorandum Decision* and *Order Granting Summary Judgment in Favor of the Debtors on Counts I and IV of the Complaint* issued by the Bankruptcy Court in Adv. Pro. No. 23-01245 (MBK) on August 13, 2024 [Adv. Pro. Docket No. 268] and August 28, 2024 [Adv. Pro. Docket No. 292], respectively.

## SECTION 8.    <u>EVENTS OF DEFAULT</u>

Upon the occurrence and during the continuation of any of the following events:

(a)    any representation or warranty made or deemed made by any Loan Party in any DIP Financing Document shall prove to have been incorrect in any material respect (or, to the extent qualified by materiality, in all respects) on or as of the date made or deemed made and, to the extent capable of being cured, such representation or warranty is not corrected or clarified (in each case, in a manner which causes such representation or warranty to no longer be incorrect or misleading) within 5 days after the date on which a Responsible Officer of the Borrower has actual knowledge of such Default;

(b)    the Borrower shall default in the observance or the performance of <u>Section 2.3</u>, <u>Section 6.5(a)</u>, <u>Section 6.7</u>, <u>Section 6.9</u>, <u>Section 6.10(b)</u>, <u>Section 6.11</u> or any covenant contained in <u>Section 7</u>;

(c)    Default by any Loan Party in the performance of or compliance with any term contained herein or any of the other DIP Financing Documents, other than any such term referred to in any other Section of this <u>Section 8</u>, which default has not been remedied or waived within fifteen (15) days after receipt by the Borrower of written notice thereof from the DIP Lender;

(d)    entry of an order of the Bankruptcy Court with respect to any Loan Party dismissing its Chapter 11 Case or converting it to a case under Chapter 7 of the Bankruptcy Code, or the appointment in any of the Chapter 11 Cases of a trustee, receiver, examiner, or responsible officer with enlarged powers relating to the operation of the business of any Loan Party (powers beyond those set forth in Sections 1106(a)(3) and (a)(4) of the Bankruptcy Code), or, in each case, any Loan Party shall seek approval therefor or support or fail to object to any motion seeking the foregoing;

20

(e)     entry of an order of the Bankruptcy Court denying the Debtors' motion for entry of the Settlement Order [Docket No. 1297] or the Confirmation Order;

(f)     entry of an order of the Bankruptcy Court or other court of competent jurisdiction reversing, amending, supplementing, staying, vacating or otherwise modifying the Estate Claims Decision, the DIP Financing Order, the Settlement Order or the Confirmation Order or any Loan Party, absent the approval of the DIP Lender, shall seek approval therefor or support or fail to object to and motion seeking the foregoing, in each case;

(g)     entry of an order in the Chapter 11 Cases approving a disclosure statement for a plan of reorganization that is not an Approved Plan or any Loan Party shall seek approval therefor or support or fail to object to any motion seeking the foregoing;

(h)     entry of an order of the Bankruptcy Court for any financing pursuant to Section 364 of the Bankruptcy Code (other than the DIP Facility), or any Loan Party, absent the approval of the DIP Lender, shall seek approval therefor or support or fail to object to and motion seeking the foregoing;

(i)     entry of an order of the Bankruptcy Court granting (x) any Liens in any of the Chapter 11 Cases that (i) are senior to or *pari passu* with the Liens granted and arising hereunder and under the DIP Financing Order (except for the Carve Out) or (ii) encumber any Specified Estate Claims, or (y) any claims that are senior to or *pari passu* with the DIP Claims or, in each case, any Loan Party shall seek approval therefor or support or fail to object to and motion seeking the foregoing;

(j)     any Loan Party shall seek to, or shall support any motion to disallow in whole or in part the DIP Claims;

(k)     unless approved by the DIP Lender, based on (i) the most recent Subsequent Approved Budget, (ii) actual cash disbursements made by the Loan Parties as of such date and (iii) fees incurred by persons or firms retained by the Loan Parties pursuant to section 327, 328, or 363 of the Bankruptcy Code, as reflected on any fee statement or fee application filed with the Bankruptcy Court as of such date, unrestricted cash of the Loan Parties at the end of the Budget Period will be less than $5 million; or

(l)     the DIP Financing Order or any DIP Financing Document shall cease, for any reason (other than as a result of an act or omission by the DIP Lender), to be in full force and effect, or any Loan Party shall so assert in writing.

then, and in any such event, so long as any such Event of Default shall be continuing, any of the following actions may be taken, subject to the terms of the DIP Financing Order (including, without limitation, paragraph 12 of the DIP Financing Order and any notice to the Loan Parties, counsel to the Committee, counsel to the FCR, and the U.S. Trustee required by the DIP Financing Order), the Carve Out, and the DIP Financing Documents: (i) declare the DIP Loans (including principal of, and accrued interest on, any outstanding DIP Loans) to be immediately due and payable; (ii) terminate any remaining DIP Loan Commitments and/or (iii) exercise rights and remedies pursuant to the terms of the DIP Financing Order, the DIP Financing Documents or applicable law (including, without limitation, direct the Borrower (or file a motion in the name of

21

the Borrower)), (a) to enforce, or cause each of its Subsidiaries to enforce, the terms and provisions of the DIP Financing Documents, and (b) to sell or otherwise dispose of or otherwise monetize, or cause each of its Subsidiaries to sell or otherwise dispose of or otherwise monetize, any or all of the Collateral on terms and conditions reasonably acceptable to the DIP Lender pursuant to Sections 363, 365 and other applicable provisions of the Bankruptcy Code; provided that, subject to the DIP Financing Order, the Borrower shall, and shall cause each of its Subsidiaries to, take all action that is reasonably necessary to cooperate with the DIP Lender's exercise of their rights and remedies and facilitate the realization upon the Collateral by the DIP Lender. Except as expressly provided above in this Section 8, presentment, demand, protest and all other notices of any kind are hereby expressly waived.

## SECTION 9.      MISCELLANEOUS

9.1      Amendments and Waivers. No DIP Financing Document nor any terms thereof may be amended, supplemented or modified except in accordance with the provisions of this Section 9.1. In the case of (i) this Agreement, the DIP Lender and the Borrower may, and (ii) any other DIP Financing Document (other than the DIP Financing Order), the DIP Lender and each Loan Party party thereto may, from time to time, enter into written amendments, supplements or modifications hereto for the purpose of adding any provisions to such DIP Financing Document (other than the DIP Financing Order) in which they are parties or changing in any manner the rights of the DIP Lender or of the applicable Loan Parties or waiving, on such terms and conditions as the DIP Lender may specify in such instrument, any of the requirements of any such DIP Financing Document or any Default or Event of Default and its consequences; provided, however, that no such amendment, supplement or modification that is adverse to any Loan Party or its bankruptcy estate shall be effective absent approval of the Bankruptcy Court.

Any such waiver and any such amendment, supplement or modification described in this Section 9.1 shall be binding upon each Loan Party and the DIP Lender. In the case of any waiver, each Loan Party and the DIP Lender shall be restored to their former position and rights hereunder and under the outstanding DIP Loans, and any Default or Event of Default waived shall be deemed to be cured and not continuing; but no such waiver shall extend to any subsequent or other Default or Event of Default, or impair any right consequent thereon.

9.2      Notices. All notices, requests and demands to or upon the respective parties hereto to be effective shall be in writing, and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when delivered by hand, overnight courier service, mailed by certified or registered mail or sent by email, as follows, or to such other address as may be hereafter notified by such respective parties hereto:

The Borrower:          Brilliant National Services, Inc.
1700 Broadway, 19th Floor
New York, NY 10019
Attn: Mohsin Y. Meghji; Brian J. Griffith
Telephone: 212-202-2200
Email: mmeghji@m3-partners.com;
bgriffith@m3-partners.com

|  |  |
|---|---|
| With a copy to: | Kirkland & Ellis LLP<br>333 West Wolf Point Plaza<br>Chicago, IL 60654<br>Attn: Michelle Kilkenney; Chad J. Husnick;<br>Charles B. Sterrett<br>Telephone: 312-862-2000<br>Email: mkilkenney@kirkland.com;<br>chad.husnick@kirkland.com;<br>charles.sterrett@kirkland.com |
| The DIP Lender: | National Indemnity Company<br>Attn: Brian Snover, Senior Vice President<br>Telephone:  203-363-5211<br>Email:  bsnover@berkre.com |
| With a copy to: | Munger, Tolles & Olson LLP<br>350 S Grand Avenue 50th fl.<br>Los Angeles, California<br>Attn: Seth Goldman<br>Telephone:  (213) 683-9554<br>Email:  seth.goldman@mto.com<br><br>and<br><br>Simpson Thacher & Bartlett LLP<br>425 Lexington Avenue<br>New York, NY 10017<br>Attn: David Zylberberg<br>Telephone:  (212) 455-3702<br>Email:  david.zylberberg@stblaw.com |

provided that any notice, request or demand to or upon the DIP Lender pursuant to Section 3.1 shall not be effective until actually received.

9.3    No Waiver; Cumulative Remedies. No failure to exercise and no delay in exercising, on the part of the DIP Lender, any right, remedy, power or privilege hereunder, shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege. The rights, remedies, powers and privileges herein provided are cumulative and not exclusive of any rights, remedies, powers and privileges provided by law.

9.4    Survival of Representations and Warranties. All representations and warranties made hereunder and in any document, certificate or statement delivered pursuant hereto or in connection herewith shall survive the execution and delivery of this Agreement.

9.5    Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the Borrower and the DIP Lender, and their respective successors and assigns,

except that, absent an order from the Bankruptcy Court, neither the Borrower nor the DIP Lender may assign or transfer any of its rights or obligations under this Agreement without the prior written consent of the other parties hereto (<u>provided</u>, that, the DIP Lender shall be permitted to make any such assignment or transfer to one or more of its controlled Affiliates without any such consent). Any purported assignment or transfer in contravention of the preceding sentence shall be *ab initio* null and void.

9.6    <u>Counterparts</u>. This Agreement may be executed by one or more of the parties to this Agreement on any number of separate counterparts and all of said counterparts taken together shall be deemed to constitute one and the same instrument. A set of the copies of this Agreement signed by all the parties shall be lodged with the Borrower and the DIP Lender. This Agreement shall become effective with respect to the Borrower and the DIP Lender when the Borrower and the DIP Lender shall have executed and delivered this Agreement and upon entry of the DIP Financing Order.

9.7    <u>Severability</u>. In the event any one or more of the provisions contained in this Agreement or in any other DIP Financing Document should be held invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein and therein shall not in any way be affected or impaired thereby. The parties shall endeavor in good faith negotiations to replace the invalid, illegal or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the invalid, illegal or unenforceable provisions.

9.8    <u>Governing Law; No Third-Party Rights</u>. This Agreement and the rights and obligations of the parties under this Agreement, including the DIP Loans, shall be governed by, and construed and interpreted in accordance with, the internal law of the State of New York, except to the extent governed by the Bankruptcy Code. This Agreement is solely for the benefit of the parties hereto and their respective successors, and, except as expressly set forth in <u>Section 9.1</u> and <u>Section 9.5</u>, no other Persons shall have any right, benefit, priority or interest under, or because of the existence of, this Agreement.

9.9    <u>WAIVER OF JURY TRIAL</u>. EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY OF THE OTHER DIP FINANCING DOCUMENTS. EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE OTHER DIP FINANCING DOCUMENTS, AS APPLICABLE, BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS <u>SECTION 9.9</u>.

9.10    <u>Jurisdiction; Consent to Service of Process</u>. Each of the parties hereto hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of the Bankruptcy Court, and if the Bankruptcy Court does not have (or abstains from)

jurisdiction, non-exclusive jurisdiction of any New York State court or federal court of the United States of America sitting in the borough of Manhattan in New York County, and of the United States District Court of the Southern District of New York, and any appellate court from any thereof (collectively, "New York Courts"), in any action or proceeding arising out of or relating to this Agreement or the other DIP Financing Documents, or for recognition or enforcement of any judgment, and each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding shall be heard and determined in the Bankruptcy Court (or, as applicable, a New York Court). Each of the parties hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Nothing in this Agreement shall affect any right that any party may otherwise have to bring any action or proceeding relating to this Agreement or any of the other DIP Financing Documents in the courts of any jurisdiction, except that each Borrower agrees that (i) it will not bring any such action or proceeding in any court other than the Bankruptcy Court, and (ii) in any such action or proceeding brought against such Borrower in any other court, it will not assert any cross-claim, counterclaim or set-off, or seek any other affirmative relief, except to the extent that the failure to assert the same will preclude such Borrower from asserting or seeking the same in the Bankruptcy Court. Each of the parties hereto hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement or the other DIP Financing Documents in the Bankruptcy Court. Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

9.11    Counterparts; Electronic Execution. This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Agreement. Delivery of an executed counterpart of this Agreement by facsimile or other electronic method of transmission shall be equally as effective as delivery of an original executed counterpart of this Agreement. Any party delivering an executed counterpart of this Agreement by facsimile or other electronic method of transmission also shall deliver an original executed counterpart of this Agreement but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Agreement. The foregoing shall apply to each other DIP Financing Document *mutatis mutandis*.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first written above.

**BRILLIANT NATIONAL SERVICES, INC.,**
as the Borrower


By: _____

Name:

Title:

**NATIONAL INDEMNITY COMPANY**,
as the DIP Lender


By: _____
Name:
Title:

## **EXHIBIT A**

### **DIP FINANCING ORDER**

## **EXHIBIT B**

### **INITIAL APPROVED BUDGET**

# DIP Budget Weekly View (WE 09/28/2024 – WE 01/31/2025)

| $000s | WE- 9/28/24 FCST Wk 1 | WE- 10/5/24 FCST Wk 2 | WE- 10/12/24 FCST Wk 3 | WE- 10/19/24 FCST Wk 4 | WE- 10/26/24 FCST Wk 5 | WE- 11/2/24 FCST Wk 6 | WE- 11/9/24 FCST Wk 7 | WE- 11/16/24 FCST Wk 8 | WE- 11/23/24 FCST Wk 9 | WE- 11/30/24 FCST Wk 10 | WE- 12/7/24 FCST Wk 11 | WE- 12/14/24 FCST Wk 12 | WE- 12/21/24 FCST Wk 13 | WE- 12/28/24 FCST Wk 14 | WE- 1/4/25 FCST Wk 15 | WE- 1/11/25 FCST Wk 16 | WE- 1/18/25 FCST Wk 17 | WE- 1/25/25 FCST Wk 18 | WE- 1/31/25 FCST Wk 19 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Receipts** | | | | | | | | | | | | | | | | | | | |
| Total Cash Receipts | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – |
| **Cash Operating Disbursements** | | | | | | | | | | | | | | | | | | | |
| Board Fees & Expenses | – | ($70) | – | – | – | ($70) | – | – | – | – | ($70) | – | – | – | ($70) | – | – | – | – |
| Other | (3) | – | – | – | (3) | – | – | – | – | (3) | – | – | – | (3) | – | – | – | – | (3) |
| Utilities | (0) | – | – | – | (0) | – | – | – | – | (0) | – | – | – | (0) | – | – | – | – | (0) |
| Bank Fees | (1) | – | – | – | (1) | – | – | – | – | (1) | – | – | – | (1) | – | – | – | – | (1) |
| Total Cash Operating Disbursements | ($3) | ($70) | – | – | ($3) | ($70) | – | – | – | ($3) | ($70) | – | – | ($3) | ($70) | – | – | – | ($3) |
| **Net Operating Cash Flow** | ($3) | ($70) | – | – | ($3) | ($70) | – | – | – | ($3) | ($70) | – | – | ($3) | ($70) | – | – | – | ($3) |
| **Cash Non-Operating Disbursements** | | | | | | | | | | | | | | | | | | | |
| Professional Fees & Expenses | – | – | – | ($4,888) | ($250) | – | ($6,709) | ($4,888) | – | ($250) | – | – | ($4,888) | ($250) | – | – | – | ($7,557) | ($250) |
| Noticing & Solicitation Costs | – | – | – | – | (7,700) | – | – | – | – | – | – | – | – | – | – | – | – | – | – |
| US Trustee Fees | – | – | – | (140) | – | – | – | – | – | – | – | – | – | – | – | – | – | – | (307) |
| Total Cash Non-Operating Disbursements | – | – | – | ($5,028) | ($7,950) | – | ($6,709) | ($4,888) | – | ($250) | – | – | ($4,888) | ($250) | – | – | – | ($7,557) | ($557) |
| DIP Financing | $20,000 | – | – | – | $15,000 | – | – | – | – | – | – | $15,000 | – | – | – | – | – | – | – |
| **Total Net Cash Flow** | $19,997 | ($70) | – | ($5,028) | $7,047 | ($70) | ($6,709) | ($4,888) | – | ($253) | ($70) | $15,000 | ($4,888) | ($253) | ($70) | – | – | ($7,557) | ($560) |
| Beginning Unrestricted Cash Balance | $4,966 | $24,963 | $24,893 | $24,893 | $19,864 | $26,911 | $26,841 | $20,132 | $15,244 | $15,244 | $14,991 | $14,921 | $29,921 | $25,033 | $24,779 | $24,709 | $24,709 | $24,709 | $17,153 |
| Total Net Cash Flow | 19,997 | (70) | – | (5,028) | 7,047 | (70) | (6,709) | (4,888) | – | (253) | (70) | 15,000 | (4,888) | (253) | (70) | – | – | (7,557) | (560) |
| Ending Unrestricted Cash | $24,963 | $24,893 | $24,893 | $19,864 | $26,911 | $26,841 | $20,132 | $15,244 | $15,244 | $14,991 | $14,921 | $29,921 | $25,033 | $24,779 | $24,709 | $24,709 | $24,709 | $17,153 | $16,592 |
| (-) Accrued but Unpaid Professional Fees | (14,818) | (16,318) | (17,818) | (14,430) | (15,930) | (17,130) | (11,620) | (7,932) | (9,132) | (10,332) | (11,832) | (13,332) | (9,944) | (11,444) | (12,644) | (13,844) | (15,044) | (8,688) | (9,888) |
| Net Available Unrestricted Cash | $10,145 | $8,575 | $7,075 | $5,435 | $10,982 | $9,712 | $8,512 | $7,312 | $6,112 | $4,658 | $3,088 | $16,588 | $15,088 | $13,335 | $12,065 | $10,865 | $9,665 | $8,465 | $6,705 |
| | | | | | | | | | | | | | | | | | | | |
| Memo: Restricted Cash - EPA Trust Account x8700 | $8,114 | $8,150 | $8,150 | $8,150 | $8,150 | $8,186 | $8,186 | $8,186 | $8,186 | $8,186 | $8,222 | $8,222 | $8,222 | $8,222 | $8,258 | $8,258 | $8,258 | $8,258 | $8,258 |
| Memo: Accrued DIP Interest | $10 | $31 | $52 | $73 | $102 | $138 | $175 | $211 | $248 | $285 | $321 | $366 | $418 | $471 | $563 | $655 | $747 | $839 | $919 |

## EXHIBIT C

**GUARANTEE AND COLLATERAL AGREEMENT**

GUARANTEE AND COLLATERAL AGREEMENT

dated as of

October [_], 2024

among

BRILLIANT NATIONAL SERVICES, INC., as Borrower,

THE GUARANTORS IDENTIFIED HEREIN,

and

NATIONAL INDEMNITY COMPANY, as the DIP Lender

# TABLE OF CONTENTS

Page

## ARTICLE I

### Definitions

SECTION 1.01   Defined Terms.................................................................................1

SECTION 1.02   Other Defined Terms........................................................................1

## ARTICLE II

### GUARANTEE

SECTION 2.01   Guarantee .......................................................................................4

SECTION 2.02   Guarantee of Payment; Continuing Guarantee................................4

SECTION 2.03   No Limitations.................................................................................4

SECTION 2.04   Reinstatement .................................................................................6

SECTION 2.05   Agreement to Pay; Subrogation .....................................................6

SECTION 2.06   Information......................................................................................6

SECTION 2.07   Guarantor Representations and Warranties.....................................6

SECTION 2.08   Guarantor Covenant .......................................................................7

## ARTICLE III

### PLEDGE OF SECURITIES

SECTION 3.01   Pledge.............................................................................................7

SECTION 3.02   Representations and Warranties ......................................................8

SECTION 3.03   Registration in Nominee Name; Denominations ............................9

SECTION 3.04   Voting Rights; Dividends and Interest ...........................................9

## ARTICLE IV

### SECURITY INTERESTS IN PERSONAL PROPERTY

SECTION 4.01   Security Interest............................................................................11

SECTION 4.02   Grantor Representations and Warranties.......................................13

SECTION 4.03   Grantor Covenants.........................................................................13

## ARTICLE V

### REMEDIES

SECTION 5.01   Remedies Upon Event of Default..................................................15

SECTION 5.02   Application of Proceeds ................................................................16

SECTION 5.03    Grant of License to Use Intellectual Property ................................................17

SECTION 5.04    Securities Act ................................................................................................17

## ARTICLE VI

### INDEMNITY, SUBROGATION AND SUBORDINATION

SECTION 6.01    Indemnity and Subrogation ............................................................................18

SECTION 6.02    Contribution and Subrogation ........................................................................18

SECTION 6.03    Subordination ................................................................................................18

## ARTICLE VII

### MISCELLANEOUS

SECTION 7.01    Notices............................................................................................................19

SECTION 7.02    Waivers; Amendment......................................................................................19

SECTION 7.03    Survival ..........................................................................................................20

SECTION 7.04    Counterparts; Electronic Execution ..............................................................20

SECTION 7.05    Severability......................................................................................................20

SECTION 7.06    Governing Law; Jurisdiction; Consent to Service of Process.......................20

SECTION 7.07    WAIVER OF JURY TRIAL ..........................................................................21

SECTION 7.08    Headings .........................................................................................................21

SECTION 7.09    Security Interest Absolute ..............................................................................21

SECTION 7.10    Termination or Release ..................................................................................22

SECTION 7.11    DIP Lender Appointed Attorney-in-Fact ......................................................22

SECTION 7.12    DIP FINANCING ORDER, CONFLICTS, ETC..........................................23

*Schedules*

Schedule I        Guarantors
Schedule II       Pledged Equity Interests; Pledged Debt Securities
Schedule III      Commercial Tort Claims

GUARANTEE AND COLLATERAL AGREEMENT dated as of October [_] , 2024 (this "Agreement"), among Brilliant National Services, Inc., a Delaware corporation (the "Borrower"), the Guarantors and National Indemnity Company (the "DIP Lender").

Reference is made to the Senior Secured Debtor-in-Possession Credit Agreement, dated as of the date hereof (as amended, restated, supplemented or otherwise modified from time to time, the "DIP Credit Agreement"), between the Borrower and the DIP Lender. Pursuant to the DIP Credit Agreement, the DIP Lender has agreed to make DIP Loans to the Borrower subject to the terms and conditions set forth therein. The obligations of the DIP Lender to make such loans are conditioned upon, among other things, the execution and delivery of this Agreement. The Guarantors are Subsidiaries of the Borrower, will derive substantial benefits from the DIP Loans made to the Borrower pursuant to the DIP Credit Agreement and are willing to execute and deliver this Agreement in order to induce the DIP Lender to make such loans. Accordingly, the parties hereto agree as follows:

ARTICLE I

DEFINITIONS

SECTION 1.01  *Defined Terms*.

(a)     Each capitalized term used but not defined herein shall have the meaning specified in the DIP Credit Agreement; *provided* that each term defined in the New York UCC (as defined herein) and not defined in this Agreement shall have the meaning specified therein. The term "instrument" shall have the meaning specified in Article 9 of the New York UCC.

(b)     The rules of construction specified in Section 1.2 of the DIP Credit Agreement also apply to this Agreement, mutatis mutandis.

SECTION 1.02  *Other Defined Terms*. As used in this Agreement, the following terms have the meanings specified below:

"*Account Debtor*" means any Person that is or may become obligated to any Grantor under, with respect to or on account of an Account.

"*Agreement*" has the meaning assigned to such term in the preamble hereto.

"*Article 9 Collateral*" has the meaning assigned to such term in Section 4.01(a).

"*Claiming Party*" has the meaning assigned to such term in Section 6.02.

"*Code*" means the U.S. Internal Revenue Code of 1986, as amended, or the Code, its legislative history, existing and proposed U.S. Treasury regulations promulgated thereunder, published rulings by the U.S. Internal Revenue Service, or the IRS, and court decisions.

"*Collateral*" means Article 9 Collateral and Pledged Collateral.

"*Contributing Party*" has the meaning assigned to such term in Section 6.02.

"*Copyright License*" means any written agreement, now or hereafter in effect, granting to any Person any right to use any Copyright owned by any Grantor or that such Grantor otherwise has the right to license, or granting to the Grantor any right to use any Copyright owned by any other Person, or that any other Person now or hereafter otherwise has the right to license and all rights of such Grantor under any such agreement.

"*Copyrights*" means, with respect to any Person, all of the following now owned or hereafter acquired by such Person, including, without limitation, all rights to sue at law or in equity for any past, present, or future infringement or other impairment thereof, including the right to receive all Proceeds and damages therefrom:  (a) all copyright rights in any work subject to the copyright laws of the United States, whether as author, assignee, transferee or otherwise, and (b) all registrations and applications for registration of any such copyright in the United States, including registrations, recordings, supplemental registrations and pending applications for registration in the United States Copyright Office.

"*DIP Credit Agreement*" has the meaning assigned to such term in the recitals hereto.

"*DIP Financing Obligations*" means (a) the Obligations, (b) the due and punctual performance of all other obligations of the Borrower under or pursuant to the DIP Credit Agreement and each of the other DIP Financing Documents, and (c) the due and punctual payment and performance of all the obligations of each other Loan Party under or pursuant to this Agreement and each of the other DIP Financing Documents.

"*DIP Financing Order*" has the meaning assigned to such term in the DIP Credit Agreement.

"*EPA Trust Account*" has the meaning assigned to such term in the DIP Financing Order.

"*Equity Interests*" means shares of capital stock, partnership interests, membership interests, beneficial interests or other ownership interests, whether voting or nonvoting, in, or interests in the income or profits of, a Person, and any warrants, options or other rights entitling the holder thereof to purchase or acquire any of the foregoing.

"*Excluded Assets*" has the meaning assigned to such term in the DIP Financing Order.

"*Federal Securities Laws*" has the meaning assigned to such term in Section 5.04.

"*Grantors*" means the Borrower and each Guarantor.

"*Guarantors*" means the Persons identified on <u>Schedule I</u>.

"*Intellectual Property*" means all intellectual and similar property of every kind and nature, including, without limitation, all rights to sue at law or in equity for any past, present, or future infringement or other impairment thereof, including the right to receive all Proceeds and damages therefrom, whether arising under United States, multinational or foreign laws or

otherwise: inventions, designs, Patents, Copyrights, Licenses, Trademarks, trade secrets (including without limitation, customer lists), domain names, confidential or proprietary technical and business information, know-how, show-how or other data or information, software and databases and all embodiments or fixations thereof and related documentation, registrations and franchises, applications and registrations for any of the foregoing, and all additions, improvements and accessions to, and books and records describing or used in connection with, any of the foregoing.

"*Laws*" means, collectively, all international, foreign, Federal, state and local statutes, treaties, rules, guidelines, regulations, ordinances, laws, codes and administrative or judicial precedents or authorities, including the interpretation or administration thereof by any Governmental Authority charged with the enforcement, interpretation or administration thereof, and all applicable administrative orders, directed duties, requests, licenses, authorizations and permits of, and agreements with, any Governmental Authority, in each case whether or not having the force of law.

"*License*" means any Patent License, Trademark License, Copyright License or other license or sublicense agreement to which any Grantor is a party.

"*New York UCC*" means the Uniform Commercial Code as from time to time in effect in the State of New York.

"*Patent License*" means any written agreement, now or hereafter in effect, granting to any Person any right to make, use or sell any invention on which a Patent, owned by any Grantor or that any Grantor otherwise has the right to license, is in existence, or granting to any Grantor any right to make, use or sell any invention on which a Patent owned by any other Person, or that any other Person otherwise has the right to license, is in existence, and all rights of any Grantor under any such agreement.

"*Patents*" means with respect to any Person all of the following now owned or hereafter acquired by such Person, including, without limitation, all rights to sue at law or in equity for any past, present, or future infringement or other impairment thereof, including the right to receive all Proceeds and damages therefrom:  (a) all letters patent of the United States, all registrations and recordings thereof, and all applications for letters patent of the United States, including registrations, recordings and pending applications in the United States Patent and Trademark Office, and (b) all reissues, continuations, divisions, continuations-in-part, renewals or extensions thereof, and the inventions disclosed or claimed therein, including the right to make, use and/or sell the inventions disclosed or claimed therein.

"*Pledged Collateral*" has the meaning assigned to such term in Section 3.01.

"*Pledged Debt Securities*" has the meaning assigned to such term in Section 3.01.

"*Pledged Equity Interests*" has the meaning assigned to such term in Section 3.01.

"*Pledged Securities*" means any promissory notes, stock certificates, unit certificates, limited liability membership certificates or other certificated securities now or hereafter included in the Pledged Collateral, including all certificates, instruments or other documents representing or evidencing any Pledged Collateral.

"*Security Interest*" has the meaning assigned to such term in Section 4.01(a).

"*Specified Estate Claims*" has the meaning assigned to such term in the DIP Financing Order.

"*Trademark License*" means any written agreement, now or hereafter in effect, granting to any Person any right to use any Trademark owned by any Grantor or that any Grantor otherwise has the right to license, or granting to any Grantor any right to use any Trademark owned by any other Person or that any other Person otherwise has the right to license, and all rights of any Grantor under any such agreement.

"*Trademarks*" means, with respect to any Person, all of the following now owned or hereafter acquired by such Person, including, without limitation, all rights to sue at law or in equity for any past, present, or future infringement or other impairment thereof, including the right to receive all Proceeds and damages therefrom: (a) all trademarks, service marks, trade names, corporate names, company names, business names, fictitious business names, internet domain names, trade styles, trade dress, logos, other source or business identifiers, designs and general intangibles of like nature, all registrations and recordings thereof, and all registration and registration applications filed in connection therewith, including registrations and registration applications therefor in the United States Patent and Trademark Office or any similar offices in any State of the United States, and all extensions or renewals thereof, (b) all goodwill associated therewith or symbolized thereby and (c) all other assets, rights and interests that uniquely reflect or embody such goodwill or items listed in clause (a).

ARTICLE II

GUARANTEE

SECTION 2.01  *Guarantee*.  Each Guarantor irrevocably and unconditionally guarantees to the DIP Lender, jointly with the other Guarantors and severally, as a primary obligor and not merely as a surety, the due and punctual payment and performance of the DIP Financing Obligations.  Each Guarantor further agrees that the DIP Financing Obligations may be extended or renewed, in whole or in part, or amended or modified, without notice to or further assent from it, and that it will remain bound upon its guarantee hereunder notwithstanding any extension, renewal, amendment or modification of any DIP Financing Obligation.  Each Guarantor waives presentment to, demand of payment from and protest to the Borrower or any other Loan Party of any of the DIP Financing Obligations, waives any right to apportion any liability arising hereunder with any other Guarantor, and also waives notice of acceptance of its guarantee hereunder and notice of protest for nonpayment.

SECTION 2.02  *Guarantee of Payment; Continuing Guarantee*.  Each Guarantor further agrees that its guarantee hereunder constitutes a guarantee of payment when due (whether or not any bankruptcy or similar proceeding shall have stayed the accrual or collection of any of the DIP Financing Obligations or operated as a discharge thereof) and not merely of collection, and waives any right to require that any resort be had by the DIP Lender to any security held for the payment of the DIP Financing Obligations or to any balance of any deposit account or credit on the books of the DIP Lender in favor of the Borrower, any other Loan Party, or any other Person.

Each Guarantor agrees that its guarantee hereunder is continuing in nature and applies to all DIP Financing Obligations, whether currently existing or hereafter incurred.

SECTION 2.03  *No Limitations*.

(a)     Except for termination or release of a Guarantor's obligations hereunder as expressly provided in Section 7.10 or the occurrence of the Settlement Contribution Date or the Repayment Date, the obligations of each Guarantor hereunder shall not be subject to any reduction, limitation, impairment or termination for any reason, including any claim of waiver, release, surrender, alteration or compromise, and shall not be subject to any defense (other than the defenses (w) the occurrence of the Settlement Contribution Date, (x) the occurrence of the Repayment Date, (y) the termination or release of a Guarantor's obligations hereunder as expressly provided in Section 7.10 and (z) of payment or performance in full of the DIP Financing Obligations) or set-off, counterclaim, recoupment or termination whatsoever by reason of the invalidity, illegality or unenforceability of the DIP Financing Obligations, any impossibility in the performance of the DIP Financing Obligations, or otherwise.  Without limiting the generality of the foregoing, the obligations of each Guarantor hereunder shall not be discharged or impaired or otherwise affected by (i) the failure of the DIP Lender to assert any claim or demand or to enforce any right or remedy under the provisions of any DIP Financing Document or otherwise; (ii) any rescission, waiver, amendment or modification of, or any release from any of the terms or provisions of, any DIP Financing Document or any other agreement, including with respect to any other Guarantor under this Agreement; (iii) the release of any security held by the DIP Lender for any of the DIP Financing Obligations; (iv) any default, failure or delay, willful or otherwise, in the performance of any of the DIP Financing Obligations; or (v) any other act or omission that may or might in any manner or to any extent vary the risk of any Guarantor or otherwise operate as a discharge of any Guarantor as a matter of law or equity (other than the occurrence of the Settlement Contribution Date or the Repayment Date).  Each Guarantor expressly authorizes the DIP Lender to take and hold security in accordance with the terms of the Loan Documents for the payment and performance of the DIP Financing Obligations, to exchange, waive or release any or all such security (with or without consideration), to enforce or apply such security and direct the order and manner of any sale thereof in their sole discretion or to release or substitute any one or more other guarantors or obligors upon or in respect of the DIP Financing Obligations, all without affecting the obligations of any Guarantor hereunder.

(b)     To the fullest extent permitted by applicable law, each Guarantor waives any defense based on or arising out of any defense of the Borrower or any other Loan Party or the unenforceability of the DIP Financing Obligations or any part thereof from any cause, or the cessation from any cause of the liability of the Borrower or any other Loan Party, other than the defenses of (w) the occurrence of the Settlement Contribution Date, (x) the occurrence of the Repayment Date, (y) the termination or release of such Guarantor's obligations as expressly provided in Section 7.10 and (z) payment or performance in full of the DIP Financing Obligations. The DIP Lender may, at its election, foreclose on any security held by one or more of them by one or more judicial or nonjudicial sales, accept an assignment of any such security in lieu of foreclosure, compromise or adjust any part of the DIP Financing Obligations, make any other accommodation with the Borrower or any other Loan Party or exercise any other right or remedy available to them against the Borrower or any other Loan Party, without affecting or impairing in any way the liability of any Guarantor hereunder except to the extent the Settlement Contribution

Date or the Repayment Date has occurred.  To the fullest extent permitted by applicable law, each Guarantor waives any defense arising out of any such election even though such election operates, pursuant to applicable law, to impair or to extinguish any right of reimbursement or subrogation or other right or remedy of such Guarantor against the Borrower or any other Loan Party, as the case may be, or any security.

SECTION 2.04  *Reinstatement*.   Each Guarantor agrees that, unless released pursuant to Section 7.10, its guarantee hereunder shall continue to be effective or be reinstated, as the case may be, if at any time payment, or any part thereof, of any DIP Financing Obligation is rescinded or must otherwise be restored by the DIP Lender upon the bankruptcy or reorganization of the Borrower, any other Loan Party or otherwise, or upon or as a result of the appointment of a receiver, intervenor or conservator of, or trustee or similar officer for, the Borrower or any other Loan Party or any substantial part of their property, or otherwise, all as though such payments had not been made.

SECTION 2.05  *Agreement to Pay; Subrogation*.  In furtherance of the foregoing and not in limitation of any other right that the DIP Lender has at law or in equity against any Guarantor by virtue hereof, upon the failure of the Borrower or any other Loan Party to pay any DIP Financing Obligation when and as the same shall become due, whether at maturity, by acceleration, after notice of prepayment or otherwise, each Guarantor hereby promises to and will forthwith pay, or cause to be paid, to the DIP Lender in cash the amount of such unpaid DIP Financing Obligation.  Upon payment by any Guarantor of any sums to the DIP Lender as provided above, all rights of such Guarantor against the Borrower or any other Loan Party arising as a result thereof by way of right of subrogation, contribution, reimbursement, indemnity or otherwise shall in all respects be subject to Article VI.

SECTION 2.06  *Information*.   Each Guarantor (a) assumes all responsibility for being and keeping itself informed of the Borrower's and each other Loan Party's financial condition and assets, and of all other circumstances bearing upon the risk of nonpayment of the DIP Financing Obligations and the nature, scope and extent of the risks that such Guarantor assumes and incurs hereunder, and (b) agrees that the DIP Lender will not have any duty to advise such Guarantor of information known to it or any of them regarding such circumstances or risks.

SECTION 2.07  *Guarantor Representations and Warranties*.   The Guarantors jointly and severally represent and warrant to the DIP Lender that:

(a)   Corporate Existence; Compliance with Law.  Each Guarantor, except as it may be affected by the commencement of the Chapter 11 Cases and all events and circumstances associated therewith and resulting therefrom, (a) is a corporation duly formed, validly existing and in good standing under the laws of its jurisdiction of formation, (b) has full corporate (or equivalent) power and authority and possesses all governmental franchises, licenses, permits, authorizations and approvals necessary to enable it to use its corporate name and to own, lease or otherwise hold its properties and assets and to carry on its business as presently conducted other than such franchises, licenses, permits, authorizations and approvals the lack of which, individually or in the aggregate, would not have a Material Adverse Effect, (c) is duly qualified and in good standing to do business in each jurisdiction in which the nature of its business or the ownership, leasing or holding of its properties makes such qualification necessary, except such

jurisdictions where the failure so to qualify would not have a Material Adverse Effect, and (d) is in compliance with all applicable statutes, laws, ordinances, rules, orders and regulations of any Governmental Authority or instrumentality, domestic or foreign, except where noncompliance would not have a Material Adverse Effect.

(b)    Corporate Power; Authorization.  Subject to any required approval of the Bankruptcy Court to be obtained pursuant to the DIP Financing Order, each Guarantor has corporate (or equivalent) power and authority to make, deliver and perform each of the DIP Financing Documents to which it is a party, and, subject to the approval of the Bankruptcy Court pursuant to the DIP Financing Order, each Guarantor has the corporate power and authority and legal right to make the guarantees hereunder. Each Guarantor has taken all necessary corporate (or equivalent) action to authorize the execution, delivery and performance of each of the DIP Financing Documents to which it is a party and each Guarantor has taken all necessary corporate action to authorize the guarantees hereunder. Except for any required approval of the Bankruptcy Court to be obtained pursuant to the DIP Financing Order, no consent or authorization of, or filing with, any Person (including any Governmental Authority) is required in connection with the execution, delivery or performance by any Guarantor, or for the validity or enforceability against any Guarantor, of any DIP Financing Document to which it is a party except for consents, authorizations and filings which have been obtained or made and are in full force and effect and except such consents, authorizations and filings, the failure to obtain or perform which would not have a Material Adverse Effect.

(c)    Enforceable Obligations.  Each DIP Financing Document delivered on or prior to the date hereof (i) has been duly executed and delivered on behalf of each Guarantor party thereto and (ii) subject to any required approval of the Bankruptcy Court to be obtained pursuant to the DIP Financing Order, constitutes the legal, valid and binding obligation of each Guarantor party thereto, and is enforceable against each Guarantor party thereto in accordance with its terms.

(d)    No Legal Bar.  Subject to the approval of the Bankruptcy Court pursuant to the DIP Financing Order, the execution, delivery and performance of each DIP Financing Document, will not violate any Requirement of Law or any Contractual Obligation applicable to or binding upon any Guarantor or any of such Guarantor's properties or assets, in any manner which, individually or in the aggregate, (i) would have a Material Adverse Effect on the ability of the Guarantors to perform their obligations under the DIP Financing Documents or (ii) would have a Material Adverse Effect, and will not result in the creation or imposition of any Lien on any Guarantor's properties or assets pursuant to any Requirement of Law applicable to it, as the case may be, or any of its Contractual Obligations (other than the Liens created by or permitted under the DIP Financing Documents).

SECTION 2.08  *Guarantor Covenant*.  Each Guarantor shall comply with all applicable covenants with which the Borrower has agreed to cause itself and any of its Subsidiaries to comply in the DIP Credit Agreement.

ARTICLE III

PLEDGE OF SECURITIES

SECTION 3.01  *Pledge*.  As security for the payment or performance, as the case may be, in full of the DIP Financing Obligations, each Grantor hereby pledges to and for the benefit of the DIP Lender and hereby grants to and for the benefit of the DIP Lender a security interest in, all of such Grantor's right, title and interest in, to and under (a)(i) all Equity Interests, now owned or at any time hereafter acquired by such Grantor, including those set forth opposite the name of such Grantor on Schedule II, and (ii) all certificates and any other instruments representing all such Equity Interests (collectively, the "*Pledged Equity Interests*"); (b)(i) the debt securities now owned or at any time hereafter acquired by such Grantor, including those listed opposite the name of such Grantor on Schedule II, and (ii) the promissory notes and any other instruments evidencing all such debt securities (collectively, the "*Pledged Debt Securities*"); (c) all other property that may be delivered to and held by the DIP Lender pursuant to the terms of this Section; (d) subject to Section 3.03, all payments of principal or interest, dividends, cash, instruments and other property from time to time received, receivable or otherwise distributed in respect of, in exchange for or upon the conversion of, and all other Proceeds received in respect of, the securities referred to in clauses (a) and (b) above; (e) subject to Section 3.03, all rights and privileges of such Grantor with respect to the securities and other property referred to in clauses (a), (b), (c) and (d) above; and (f) all Proceeds of any of the foregoing (the items referred to in clauses (a) through (f) above being collectively referred to as the "*Pledged Collateral*").  Notwithstanding anything herein to the contrary, in no event shall the security interest granted hereunder attach to, and the term "Pledged Collateral" shall not include, any Excluded Assets; *provided* that if any Excluded Assets that would have otherwise constituted Pledged Collateral shall cease to be Excluded Assets, such property shall be deemed at all times from and after the date hereof to be Pledged Collateral.

SECTION 3.02  *Representations and Warranties*.  The Grantors jointly and severally represent and warrant to the DIP Lender that:

(a)    Schedule II sets forth, as of the Closing Date, a true and complete list, with respect to each Grantor, of (i) all the Pledged Equity Interests owned by such Grantor and the percentage of the issued and outstanding units of each class of the Equity Interests of the issuer thereof represented by the Pledged Equity Interests owned by such Grantor and (ii) all the Pledged Debt Securities owned by such Grantor;

(b)    the Pledged Equity Interests and Pledged Debt Securities owned by a Grantor have been duly and validly authorized and issued by the issuers thereof and (i) in the case of Pledged Equity Interests, are fully paid and nonassessable and (ii) in the case of Pledged Debt Securities, are legal, valid and binding obligations of the issuers thereof; subject to applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally and to general principles of equity, regardless of whether considered in a proceeding in equity or at law;

(c)    except for the security interests granted hereunder, each of the Grantors (i) is and, subject to any transfers made in compliance with the DIP Credit Agreement, will continue to be the direct owner, beneficially and of record, of the Pledged Securities

indicated on <u>Schedule II</u> as owned by such Grantor, (ii) holds the same free and clear of all Liens, other than Liens created by this Agreement, Permitted Liens and transfers made in compliance with the DIP Credit Agreement, (iii) will make no assignment, pledge, hypothecation or transfer of, or create or permit to exist any security interest in or other Lien on, the Pledged Collateral, other than Liens created by this Agreement, Permitted Liens and transfers made in compliance with the DIP Credit Agreement, and (iv) will defend its title or interest thereto or therein against any and all Liens (other than the Liens created by this Agreement and Permitted Liens), however arising, of all Persons whomsoever;

(d)      each of the Grantors has the power and authority to pledge the Pledged Collateral pledged by it hereunder in the manner hereby done or contemplated;

(e)      no consent or approval of any Governmental Authority, any securities exchange or any other Person was or is necessary to the validity of the pledge effected hereby (other than such as have been obtained and are in full force and effect); and

(f)      subject to the requirements of the DIP Credit Agreement or any other DIP Financing Document, the pledge effected hereby is effective to vest in and for the benefit of the DIP Lender the rights of the DIP Lender in the Pledged Collateral as set forth herein.

SECTION 3.03  *Registration in Nominee Name; Denominations*.  The DIP Lender shall have the right (in its sole and absolute discretion) to hold the Pledged Securities in its own name as pledgee, in the name of its nominee (as pledgee or as sub-agent) or in the name of the applicable Grantor, endorsed or assigned in blank or in favor of the DIP Lender. Each Grantor will promptly give to the DIP Lender copies of any material notices or other communications (and after the occurrence and during the continuance of an Event of Default, any notices or other communications) received by it with respect to Pledged Securities registered in the name of such Grantor. In addition, upon the occurrence and during the continuance of an Event of Default, the DIP Lender shall at all times have the right to exchange the certificates representing Pledged Securities for certificates of smaller or larger denominations.

SECTION 3.04  *Voting Rights; Dividends and Interest*.   Unless and until an Event of Default shall have occurred and be continuing and the DIP Lender shall have provided at least 3 Business Days' prior written notice to the Grantors that their rights under this Section are being suspended:

(i)      each Grantor shall be entitled to exercise or refrain from exercising any and all voting and/or other consensual rights and powers inuring to an owner of Pledged Collateral or any part thereof for any purpose consistent with the terms of this Agreement and the other DIP Financing Documents;

(ii)      the DIP Lender shall execute and deliver to each Grantor, or cause to be executed and delivered to such Grantor, all such proxies, powers of attorney and other instruments as such Grantor may reasonably request for the purpose of enabling such Grantor to exercise the voting and/or consensual rights and powers it is entitled to exercise or refrain from exercising pursuant to paragraph (a)(i) of this Section; and

(iii)    each Grantor shall be entitled to receive and retain any and all dividends, interest, principal and other distributions paid on or distributed in respect of the Pledged Collateral, but only to the extent that such dividends, interest, principal and other distributions are permitted by, and otherwise paid or distributed in accordance with, the terms and conditions of the DIP Credit Agreement, the other DIP Financing Documents and applicable laws; *provided* that any noncash dividends, interest, principal or other distributions that would constitute Pledged Equity Interests or Pledged Debt Securities, whether resulting from a subdivision, combination or reclassification of the outstanding Equity Interests of the issuer of any Pledged Securities or received in exchange for Pledged Securities or any part thereof, or in redemption thereof, or as a result of any merger, consolidation, acquisition or other exchange of assets to which such issuer may be a party or otherwise, shall be and become part of the Pledged Collateral and, if received by any Grantor, and required to be delivered to the DIP Lender hereunder, shall not be commingled by such Grantor with any of its other funds or property but shall be held separate and apart therefrom, shall be held in trust for the benefit of the DIP Lender and shall be forthwith delivered to the DIP Lender in the same form as so received (with any necessary endorsements, stock powers or other instruments of transfer).

(iv)    Upon the occurrence and during the continuance of an Event of Default, after the DIP Lender shall have provided at least 3 Business Days' prior written notice to the Grantors of the suspension of their rights under paragraph (a)(iii) of this Section, then all rights of any Grantor to dividends, interest, principal or other distributions that such Grantor is authorized to receive pursuant to paragraph (a)(iii) of this Section, shall cease, and all such rights shall thereupon become vested in the DIP Lender, which shall have the sole and exclusive right and authority to receive and retain such dividends, interest, principal or other distributions.  All dividends, interest, principal or other distributions received by any Grantor contrary to the provisions of this Section shall be held in trust for the benefit of the DIP Lender, shall be segregated from other property or funds of such Grantor and shall be forthwith delivered to the DIP Lender in the same form as so received (with any necessary endorsements, stock powers or other instruments of transfer).  Any and all money and other property paid over to or received by the DIP Lender pursuant to the provisions of this paragraph (b) shall be retained by the DIP Lender in an account to be established by the DIP Lender upon receipt of such money or other property shall be held as security for the payment and performance of the DIP Financing Obligations and shall be applied in accordance with the provisions of Section 5.02.  After all Events of Default have been cured or waived and the Borrower has delivered to the DIP Lender a certificate of a Responsible Officer of the Borrower to that effect, the DIP Lender shall promptly repay to each Grantor (without interest) all dividends, interest, principal or other distributions that such Grantor would otherwise be permitted to retain pursuant to the terms of paragraph (a)(iii) of this Section and that remain in such account.

(v)    Upon the occurrence and during the continuance of an Event of Default, after the DIP Lender shall have provided at least 3 Business Days' prior written notice to the Grantors of the suspension of their rights under paragraph (a)(i) of this Section, then all rights of any Grantor to exercise or refrain from exercising the voting and consensual rights and powers it is entitled to exercise pursuant to paragraph (a)(i) of this Section, and the obligations of the DIP Lender under paragraph (a)(ii) of this Section, shall cease, and all

such rights shall thereupon become vested in the DIP Lender, which shall have the sole and exclusive right and authority to exercise such voting and consensual rights and powers; *provided* that, unless otherwise directed by the DIP Lender, the DIP Lender shall have the right from time to time following and during the continuance of an Event of Default to permit the Grantors to exercise such rights.

(vi)    Any notice given by the DIP Lender to the Grantors suspending their rights under paragraph (a) of this Section (i) may be given to one or more of the Grantors at the same or different times and (ii) may suspend the rights of the Grantors under paragraph (a)(i) or paragraph (a)(iii) in part without suspending all such rights (as specified by the DIP Lender in their sole and absolute discretion) and without waiving or otherwise affecting any DIP Lender' right to give additional notices from time to time suspending other rights so long as an Event of Default has occurred and is continuing.

ARTICLE IV

SECURITY INTERESTS IN PERSONAL PROPERTY

SECTION 4.01  *Security Interest*.  (a)  As security for the payment or performance, as the case may be, in full of the DIP Financing Obligations, each Grantor hereby grants to and for the benefit of the DIP Lender, a security interest (the "*Security Interest*") in all right, title and interest in, to and under all of the personal property of such Grantor, in each case whether now owned or at any time hereafter acquired by such Grantor, whether now or hereafter existing, whether tangible or intangible, wherever the same may be located and whether or not subject to the New York UCC, or in, to or under which such Grantor now has or at any time hereafter may acquire any right, title or interest, including the following (collectively, the "*Article 9 Collateral*"):

(i)    all Accounts;

(ii)    all Chattel Paper;

(iii)    all cash and Deposit Accounts, together with all amounts on deposit from time to time in such Deposit Accounts;

(iv)    all Documents;

(v)    all Equipment;

(vi)    all General Intangibles, including Payment Intangibles and Software;

(vii)    all Instruments;

(viii)    all Intellectual Property;

(ix)    all Inventory;

(x)    all other Goods, including Fixtures;

(xi)     all Investment Property;

(xii)    all applicable Supporting Obligations;

(xiii)   all Commercial Tort Claims specifically described on <u>Schedule III</u>, as such Schedule may be supplemented from time to time;

(xiv)    all Records, including all books and records pertaining to the Article 9 Collateral;

(xv)     all DIP Collateral (as defined in the DIP Financing Order);

(xvi)    all Proceeds of Specified Estate Claims and Excluded Assets (other than Proceeds of the EPA Trust Account); and

(xvii)   to the extent not otherwise included, all Proceeds, Accessions and products of any and all of the foregoing and all collateral security and guarantees given by any Person with respect to any of the foregoing.

(b)      Each Grantor hereby irrevocably authorizes the DIP Lender at any time and from time to time to file in any relevant jurisdiction any initial financing statements (including fixture filings) with respect to the Article 9 Collateral or any part thereof and amendments thereto that (i) indicate the Collateral as all assets of such Grantor or words of similar effect as being of an equal or lesser scope or with greater detail, and (ii) contain the information required by Article 9 of the Uniform Commercial Code of each applicable jurisdiction for the filing of any financing statement or amendment, including (A) whether such Grantor is an organization, the type of organization and any organizational identification number issued to such Grantor and (B) in the case of a financing statement filed as a fixture filing or covering Article 9 Collateral constituting minerals or the like to be extracted or timber to be cut, a sufficient description of the real property to which such Article 9 Collateral relates.  Each Grantor agrees to provide such information to the DIP Lender promptly upon request.

Each Grantor also ratifies its authorization for the DIP Lender to file in any relevant jurisdiction any financing statements or amendments thereto with respect to the Article 9 Collateral or any part thereof, naming each Grantor as debtor and the DIP Lender as secured party, if filed prior to the date hereof.

Each Grantor shall pay the actual costs of, or incidental to, any recording or filing of any financing statements, financing statement amendments, continuation statements, or security agreement concerning the Collateral.

(c)      The Security Interest and the security interest granted pursuant to Article III are granted as security only and shall not subject the DIP Lender to, or in any way alter or modify, any obligation or liability of any Grantor with respect to or arising out of the Collateral.

(d)      Notwithstanding anything herein to the contrary, in no event shall the security interest granted hereunder attach to, and the term "Article 9 Collateral" shall not include, any Specified Estate Claims, any Excluded Assets, the EPA Trust Account or any Proceeds of the

EPA Trust Account; *provided* that if any Excluded Assets that would have otherwise constituted Article 9 Collateral shall cease to be Excluded Assets, such property shall be deemed at all times from and after the date hereof to be Article 9 Collateral.

(e)      Notwithstanding anything contained in this Agreement, if the DIP Lender has determined in its sole and absolute discretion that the value of certain Collateral is insufficient to justify the difficulty, time and expense of perfecting the Security Interest and other security interests granted under this Agreement in such Collateral, Grantors shall not be required to take all actions necessary or advisable to perfect or otherwise protect the Security Interest and such other security interests in such Collateral, in each case as agreed to by the DIP Lender.

SECTION 4.02   *Grantor Representations and Warranties*.  The Grantors jointly and severally represent and warrant to the DIP Lender that:

(a)      Each Grantor has good and valid rights in and title to the Article 9 Collateral with respect to which it has purported to grant the Security Interest (except for minor irregularities or deficiencies in title that, individually or in the aggregate, could not reasonably be expected to have a Material Adverse Effect) and, subject to entry of the DIP Financing Order and the terms therein, has full power and authority to grant to the DIP Lender the Security Interest in such Article 9 Collateral pursuant hereto and to execute, deliver and perform its obligations in accordance with the terms of this Agreement, without the consent or approval of any other Person other than any consent or approval that has been obtained, subject to Permitted Liens.

(b)      Subject to entry of the DIP Financing Order and the terms therein, the Security Interest constitutes (i) a legal and valid security interest in all the Article 9 Collateral securing the payment and performance of the DIP Financing Obligations and (ii) a perfected security interest in all Article 9 Collateral in which a security interest may be perfected by filing, recording or registering a financing statement or analogous document in the United States of America (or any political subdivision thereof) and its territories and possessions pursuant to the UCC or other applicable law in such jurisdictions.  The Security Interest is and shall be prior to any other Lien on any of the Article 9 Collateral, other than Permitted Liens.

SECTION 4.03   *Grantor Covenants*.

(a)      Each Grantor agrees to, within 30 days following the effectiveness thereof, notify the DIP Lender in writing of any change (i) in corporate name, (ii) in the location of its chief executive office or its principal place of business, (iii) in its identity or type of organization or corporate structure, or (iv) in its jurisdiction of organization.  Each Grantor agrees to provide the DIP Lender with certified organizational documents reflecting any of the changes described in the first sentence of this paragraph.  Each Grantor agrees to provide the DIP Lender with all additional financing statements and other documents that are required in order for the DIP Lender to continue at all times following such change to have a valid, legal and perfected security interest, having the priority required by this Agreement, in all the Article 9 Collateral.  Each Grantor agrees promptly to notify the DIP Lender if any material portion of the Article 9 Collateral owned or held by such Grantor is damaged, destroyed, or subject to condemnation.

(b)      Each Grantor shall, at its own expense, take any and all actions necessary to defend title to the Article 9 Collateral against all Persons and to defend the Security Interest of the DIP Lender in the Article 9 Collateral and the priority thereof against any Lien that is not a Permitted Lien.

(c)      Each Grantor agrees, at its own expense, to execute, acknowledge, deliver and cause to be duly filed all such further instruments, financing statements, agreements and documents reasonably requested by the DIP Lender, and take all such other actions as the DIP Lender may from time to time reasonably request to better assure, preserve, protect and perfect the Security Interest and the rights and remedies created hereby, including the payment of any fees and taxes required in connection with the execution and delivery of this Agreement, the granting of the Security Interest and the filing and recording of any financing statements (including fixture filings) or other documents in connection herewith or therewith.  Each Grantor will provide to the DIP Lender, from time to time upon request, evidence reasonably satisfactory to the DIP Lender as to the perfection and priority of the Liens created or intended to be created pursuant to this Agreement.

(d)      At its option, the DIP Lender may, upon the occurrence and during the continuance of an Event of Default, discharge past due taxes, assessments, charges, fees and Liens at any time levied or placed on the Article 9 Collateral that are not permitted pursuant to the DIP Credit Agreement, and may pay for the maintenance and preservation of the Article 9 Collateral to the extent any Grantor fails to do so as required by this Agreement or the other DIP Financing Documents, and each Grantor jointly and severally agrees to reimburse the DIP Lender on demand for any reasonable and documented payment made or any expense incurred by the DIP Lender pursuant to the foregoing authorization; *provided* that nothing in this paragraph shall be interpreted as excusing any Grantor from the performance of, or imposing any obligation on the DIP Lender to cure or perform, any covenants or other promises of any Grantor with respect to taxes, assessments, charges, fees and Liens and maintenance as set forth herein or in the other DIP Financing Documents.

(e)      Each Grantor shall remain liable to observe and perform all the conditions and obligations to be observed and performed by it under each contract, agreement or instrument relating to the Article 9 Collateral, all in accordance with the terms and conditions thereof.

(f)      Unless and until the DIP Lender shall notify the Grantors that an Event of Default shall have occurred and be continuing and that during the continuance thereof the Grantors may not sell, convey, lease, assign, transfer, license, sublicense, let lapse or otherwise dispose of any Article 9 Collateral, the Grantors may use and dispose of the Article 9 Collateral in any manner permitted by the DIP Credit Agreement; *provided* that if any Event of Default shall have occurred and be continuing and the DIP Lender shall have so notified the Grantors, none of the Grantors shall make or permit to be made any transfer of the Article 9 Collateral without the prior consent of the DIP Lender.

(g)      The Grantors at their own expense, shall maintain or cause to be maintained casualty and loss insurance coverage for the Article 9 Collateral on substantially the same basis as maintained prior to the date hereof.  Each Grantor irrevocably makes, constitutes and appoints each Lender (and all officers, employees or agents designated by the DIP Lender) as such Grantor's

true and lawful agent (and attorney-in-fact) for the purpose, upon the occurrence and during the continuance of an Event of Default, of making, settling and adjusting claims in respect of Article 9 Collateral under policies of insurance, endorsing the name of such Grantor on any check, draft, instrument or other item of payment for the proceeds of such policies of insurance and for making all determinations and decisions with respect thereto.  In the event that any Grantor at any time or times shall fail to obtain or maintain any of the policies of insurance required hereby or to pay any premium in whole or part relating thereto, the DIP Lender may, without waiving or releasing any obligation or liability of the Grantors hereunder or any Event of Default, in their sole discretion, obtain and maintain such policies of insurance and pay such premium and take any other actions with respect thereto as the DIP Lender deem advisable.  All sums disbursed by the DIP Lender in connection with this paragraph, including reasonable attorneys' fees, court costs, expenses and other charges relating thereto, shall be payable, upon demand, by the Grantors to the DIP Lender and shall be additional DIP Financing Obligations secured hereby.

(h)     Each Grantor hereby irrevocably designates and appoints the DIP Lender as the agent of such Grantor under this Agreement and the other DIP Financing Documents, and each such Grantor irrevocably authorizes the DIP Lender, in such capacity, to take such action on its behalf under the provisions of this Agreement and the other DIP Financing Documents and to exercise such powers and perform such duties as are expressly delegated to the DIP Lender by the terms of this Agreement and the other DIP Financing Documents, together with such other powers as are reasonably incidental thereto.  Notwithstanding any provision to the contrary elsewhere in this Agreement or any other DIP Financing Documents, the DIP Lender shall not have any duties or responsibilities, except those expressly set forth herein and in the other DIP Financing Documents, or any fiduciary relationship with any Grantor, and no implied covenants, functions, responsibilities, duties, obligations or liabilities shall be read into this Agreement or any other DIP Financing Document or otherwise exist against the DIP Lender.

ARTICLE V

REMEDIES

SECTION 5.01  *Remedies Upon Event of Default*.  Subject to compliance with the DIP Financing Order, upon the occurrence and during the continuance of an Event of Default (and only after the expiration of any applicable cure period), each Grantor agrees to deliver each item of Collateral to the DIP Lender on demand, and it is agreed that the DIP Lender shall have the right to take any of or all the following actions at the same or different times: (a) with respect to any Article 9 Collateral consisting of Intellectual Property, on demand, to cause the Security Interest to become an assignment, transfer and conveyance of any of or all such Article 9 Collateral by the applicable Grantors to the DIP Lender, or to license or sublicense, whether general, special or otherwise, and whether on an exclusive or nonexclusive basis, any such Article 9 Collateral throughout the world on such terms and conditions and in such manner as the DIP Lender shall determine (other than in violation of any then-existing licensing arrangements to the extent that waivers cannot be obtained), and (b), with or without legal process and with or without prior notice or demand for performance, to take possession of the Article 9 Collateral and without liability for trespass to enter any premises where the Article 9 Collateral may be located for the purpose of taking possession of or removing the Article 9 Collateral and, generally, to exercise any and all rights afforded to a secured party under the Uniform Commercial Code or other applicable law.

Without limiting the generality of the foregoing, each Grantor agrees that the DIP Lender shall have the right, subject to the mandatory requirements of applicable law, to sell or otherwise dispose of all or any part of the Collateral at a public or private sale or at any broker's board or on any securities exchange, for cash, upon credit or for future delivery as the DIP Lender shall deem appropriate. The DIP Lender shall be authorized at any such sale of securities (if it deems it advisable to do so) to restrict the prospective bidders or purchasers to Persons who will represent and agree that they are purchasing the Collateral for their own account for investment and not with a view to the distribution or sale thereof, and upon consummation of any such sale the DIP Lender shall have the right to assign, transfer and deliver to the purchaser or purchasers thereof the Collateral so sold. Each such purchaser at any sale of Collateral shall hold the property sold absolutely free from any claim or right on the part of any Grantor, and each Grantor hereby waives (to the extent permitted by law) all rights of redemption, stay and appraisal that such Grantor now has or may at any time in the future have under any rule of law or statute now existing or hereafter enacted.

The DIP Lender shall give the applicable Grantors 10 days' prior written notice (which each Grantor agrees is reasonable notice within the meaning of Section 9-611 of the New York UCC or its equivalent in other jurisdictions) of the DIP Lender' intention to make any sale of Collateral. Such notice, in the case of a public sale, shall state the time and place for such sale and, in the case of a sale at a broker's board or on a securities exchange, shall state the board or exchange at which such sale is to be made and the day on which the Collateral or portion thereof, will first be offered for sale at such board or exchange. Any such public sale shall be held at such time or times within ordinary business hours and at such place or places as the DIP Lender may fix and state in the notice (if any) of such sale. At any such sale, the Collateral, or portion thereof, to be sold may be sold in one lot as an entirety or in separate parcels, as the DIP Lender may (in its sole and absolute discretion) determine. The DIP Lender shall not be obligated to make any sale of any Collateral if they shall determine not to do so, regardless of the fact that notice of sale of such Collateral shall have been given. The DIP Lender may, without notice or publication, adjourn any public or private sale or cause the same to be adjourned from time to time by announcement at the time and place fixed for sale, and such sale may, without further notice, be made at the time and place to which the same was so adjourned. In case any sale of all or any part of the Collateral is made on credit or for future delivery, the Collateral so sold may be retained by the DIP Lender until the sale price is paid by the purchaser or purchasers thereof, but the DIP Lender shall not incur any liability in case any such purchaser or purchasers shall fail to take up and pay for the Collateral so sold and, in case of any such failure, such Collateral may be sold again upon like notice. In the event of a foreclosure by the DIP Lender on any of the Collateral pursuant to a public or private sale or other disposition, the DIP Lender may be the purchaser or licensor of any or all of such Collateral at any such sale or other disposition, and the DIP Lender shall be entitled, for the purpose of bidding and making settlement or payment of the purchase price for all or any portion of the Collateral sold at any such public sale, to use and apply any of the DIP Financing Obligations as a credit on account of the purchase price for any Collateral payable by the DIP Lender at such sale or other disposition. For purposes hereof, a written agreement to purchase the Collateral or any portion thereof shall be treated as a sale thereof; the DIP Lender shall be free to carry out such sale pursuant to such agreement and no Grantor shall be entitled to the return of the Collateral or any portion thereof subject thereto, notwithstanding the fact that after the DIP Lender shall have entered into such an agreement all Events of Default shall have been remedied and the DIP Financing Obligations paid in full. As an alternative to

exercising the power of sale herein conferred upon it, the DIP Lender may proceed by a suit or suits at law or in equity to foreclose this Agreement and to sell the Collateral or any portion thereof pursuant to a judgment or decree of a court or courts having competent jurisdiction or pursuant to a proceeding by a court-appointed receiver.  Any sale pursuant to the provisions of this Section shall be deemed to conform to the commercially reasonable standards as provided in Section 9-610(b) of the New York UCC or its equivalent in other jurisdictions.

SECTION 5.02 *Application of Proceeds*.  The DIP Lender shall apply the proceeds of any collection or sale of Collateral, including any Collateral consisting of cash in payment of the DIP Financing Obligations in the following order:

First, to the DIP Lender, for application by it towards repayment of amounts of the DIP Financing Obligations; and

Second, any balance remaining after the DIP Financing Obligations shall have been paid in full shall be paid over to the Borrower or to whomsoever may be lawfully entitled to receive the same.

Upon any sale of Collateral by the DIP Lender (including pursuant to a power of sale granted by statute or under a judicial proceeding), the receipt of the DIP Lender or of the officer making the sale shall be a sufficient discharge to the purchaser or purchasers of the Collateral so sold and such purchaser or purchasers shall not be obligated to see to the application of any part of the purchase money paid over to the DIP Lender or such officer or be answerable in any way for the misapplication thereof.

SECTION 5.03 *Grant of License to Use Intellectual Property*.  For the purpose of enabling the DIP Lender to exercise rights and remedies under this Agreement at such time as the DIP Lender shall be lawfully entitled to exercise such rights and remedies, each Grantor hereby grants to the DIP Lender an irrevocable, nonexclusive license (exercisable without payment of royalty or other compensation to the Grantors) to use, license or sublicense any of the Article 9 Collateral consisting of Intellectual Property now owned or hereafter acquired or created by such Grantor, and wherever the same may be located, and including in such license reasonable access to all media in which any of the licensed items may be recorded or stored and to all computer software and programs used for the compilation or printout thereof.  The use of such license by the DIP Lender shall only be exercised, at the option of the DIP Lender, upon the occurrence and during the continuation of an Event of Default; provided that any license, sublicense or other transaction entered into by the DIP Lender in accordance herewith shall be binding upon the Grantors notwithstanding any subsequent cure of an Event of Default.

SECTION 5.04 *Securities Act*.  In view of the position of the Grantors in relation to the Pledged Collateral, or because of other current or future circumstances, a question may arise under the Securities Act of 1933, as now or hereafter in effect, or any similar statute hereafter enacted analogous in purpose or effect (such Act and any such similar statute as from time to time in effect being called the "*Federal Securities Laws*") with respect to any disposition of the Pledged Collateral permitted hereunder.  Each Grantor understands that compliance with the Federal Securities Laws might very strictly limit the course of conduct of the DIP Lender if the DIP Lender were to attempt to dispose of all or any part of the Pledged Collateral, and might also limit the extent to which or the manner in which any subsequent transferee of any Pledged Collateral could

dispose of the same.  Similarly, there may be other legal restrictions or limitations affecting the DIP Lender in any attempt to dispose of all or part of the Pledged Collateral under applicable Blue Sky or other state securities laws or similar laws analogous in purpose or effect.  Each Grantor recognizes that in light of such restrictions and limitations the DIP Lender may, with respect to any sale of the Pledged Collateral, limit the purchasers to those who will agree, among other things, to acquire such Pledged Collateral for their own account, for investment, and not with a view to the distribution or resale thereof.  Each Grantor acknowledges and agrees that in light of such restrictions and limitations, the DIP Lender, in their sole and absolute discretion, (a) may proceed to make such a sale whether or not a registration statement for the purpose of registering such Pledged Collateral or part thereof shall have been filed under the Federal Securities Laws and (b) may approach and negotiate with a single potential purchaser to effect such sale.  Each Grantor acknowledges and agrees that any such sale might result in prices and other terms less favorable to the seller than if such sale were a public sale without such restrictions.  In the event of any such sale, the DIP Lender shall incur no responsibility or liability for selling all or any part of the Pledged Collateral at a price that the DIP Lender, in their sole and absolute discretion, may in good faith deem reasonable under the circumstances, notwithstanding the possibility that a substantially higher price might have been realized if the sale were deferred until after registration as aforesaid or if more than a single purchaser were approached.  The provisions of this Section will apply notwithstanding the existence of a public or private market upon which the quotations or sales prices may exceed substantially the price at which the DIP Lender sell.

## ARTICLE VI

## INDEMNITY, SUBROGATION AND SUBORDINATION

SECTION 6.01  *Indemnity and Subrogation*.  In addition to all such rights of indemnity and subrogation as the Guarantors may have under applicable law (but subject to Section 6.03), the Borrower agrees that (a) in the event a payment in respect of any DIP Financing Obligation shall be made by any Guarantor under this Agreement, the Borrower shall indemnify such Guarantor for the full amount of such payment and such Guarantor shall be subrogated to the rights of the Person to whom such payment shall have been made to the extent of such payment and (b) in the event any assets of any Grantor shall be sold pursuant to this Agreement or any other Security Document to satisfy in whole or in part any DIP Financing Obligation, the Borrower shall indemnify such Grantor in an amount equal to the greater of the book value or the fair market value of the assets so sold.

SECTION 6.02  *Contribution and Subrogation*.  Each Guarantor and Grantor (a "*Contributing Party*") agrees (subject to Section 6.03) that, in the event a payment shall be made by any other Guarantor hereunder in respect of any DIP Financing Obligation or assets of any other Grantor (other than the Borrower) shall be sold pursuant to any Security Document to satisfy any DIP Financing Obligation and such other Guarantor or Grantor (the "*Claiming Party*") shall not have been fully indemnified by the Borrower as provided in Section 6.01, the Contributing Party shall indemnify the Claiming Party in an amount equal to the amount of such payment or the greater of the book value or the fair market value of such assets, as the case may be, in each case multiplied by a fraction of which the numerator shall be the net worth of the Contributing Party on the date hereof and the denominator shall be the aggregate net worth of all the Guarantors and Grantors on the date hereof.  Any Contributing Party making any payment to a Claiming Party

pursuant to this Section shall (subject to Section 6.03) be subrogated to the rights of such Claiming Party under Section 6.01 to the extent of such payment.

SECTION 6.03  *Subordination*.

(a)      Notwithstanding any provision of this Agreement to the contrary, all rights of the Guarantors and Grantors under Sections 6.01 and 6.02 and all other rights of the Guarantors and Grantors of indemnity, contribution or subrogation under applicable law or otherwise shall be fully subordinated to the payment in full in cash of the DIP Financing Obligations.  No failure on the part of the Borrower or any other Guarantor or Grantor to make the payments required by Sections 6.01 and 6.02 (or any other payments required under applicable law or otherwise) shall in any respect limit the obligations and liabilities of any Guarantor or Grantor with respect to its obligations hereunder, and each Guarantor and Grantor shall remain liable for the full amount of the obligations of such Guarantor or Grantor hereunder.

(b)      Each Guarantor and Grantor hereby agrees that all Indebtedness and other monetary obligations owed by it to, or to it by, any other Guarantor, Grantor or any other Subsidiary of the Borrower shall be fully subordinated to the indefeasible payment in full in cash of the DIP Financing Obligations.

ARTICLE VII

MISCELLANEOUS

SECTION 7.01  *Notices*.  All communications and notices hereunder shall (except as otherwise expressly permitted herein) be in writing and given in the manner provided in Section 9.2 of the DIP Credit Agreement.  All communications and notices hereunder to any Guarantor shall be given to it in care of the Borrower in the manner provided in Section 9.2 of the DIP Credit Agreement.

SECTION 7.02  *Waivers; Amendment*.   (a)  No failure or delay by the DIP Lender in exercising any right or power hereunder or under any other DIP Financing Document shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power, or any abandonment or discontinuance of steps to enforce such a right or power, preclude any other or further exercise thereof or the exercise of any other right or power.  The rights and remedies of the DIP Lender hereunder and under the other DIP Financing Documents are cumulative and are not exclusive of any rights or remedies that they would otherwise have.  No waiver of any provision of this Agreement or consent to any departure by any Loan Party therefrom shall in any event be effective unless the same shall be permitted by paragraph (b) of this Section, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given. Without limiting the generality of the foregoing, the execution and delivery of this Agreement and the making of the Loans shall not be construed as a waiver of any Default, regardless of whether the DIP Lender may have had notice or knowledge of such Default at the time.  No notice or demand on any Loan Party in any case shall entitle any Loan Party to any other or further notice or demand in similar or other circumstances.

(b)      Neither this Agreement nor any provision hereof may be waived, amended or modified except pursuant to an agreement or agreements in writing entered into by the DIP Lender and the Loan Party or Loan Parties with respect to which such waiver, amendment or modification is to apply, subject to any consent required in accordance with Section 9.1 of the DIP Credit Agreement.

(c)      This Agreement shall be construed as a separate agreement with respect to each Loan Party and may be amended, modified, supplemented, waived or released with respect to any Loan Party without the approval of any other Loan Party and without affecting the obligations of any other Loan Party hereunder.

SECTION 7.03 *Survival*.    All covenants, agreements, representations and warranties made by the Loan Parties in the DIP Financing Documents and in the certificates or other instruments delivered in connection with or pursuant to this Agreement or any other DIP Financing Document shall be considered to have been relied upon by the DIP Lender and shall survive the execution and delivery of the DIP Financing Documents and the making of the DIP Loans, regardless of any investigation made by or on behalf of any Lender or any other Person and notwithstanding that any Lender or any other Person may have had notice or knowledge of any Default or incorrect representation or warranty at the time any DIP Financing Document is executed and delivered or any DIP Loan is made under the DIP Credit Agreement, and shall continue in full force and effect as long as the principal of or any accrued interest on the DIP Loans or any fee or any other amount payable under the DIP Credit Agreement is outstanding and unpaid.

SECTION 7.04 *Counterparts; Electronic Execution*.    This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Agreement. Delivery of an executed counterpart of this Agreement by facsimile or other electronic method of transmission shall be equally as effective as delivery of an original executed counterpart of this Agreement. Any party delivering an executed counterpart of this Agreement by facsimile or other electronic method of transmission also shall deliver an original executed counterpart of this Agreement but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Agreement.

SECTION 7.05 *Severability*.    Any provision of this Agreement held to be invalid, illegal or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability without affecting the validity, legality and enforceability of the remaining provisions hereof; and the invalidity of a particular provision in a particular jurisdiction shall not invalidate such provision in any other jurisdiction.

SECTION 7.06 *Governing Law; Jurisdiction; Consent to Service of Process*.

(a)      This Agreement shall be governed by, and construed and interpreted in accordance with, the law of the State of New York, except to the extent governed by the Bankruptcy Code.

(b)     Each party hereto hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of the courts of the Bankruptcy Court, and if the Bankruptcy Court does not have (or abstains from) jurisdiction, non-exclusive jurisdiction of any New York State court or federal court of the United State of America sitting in the borough of Manhattan in New York County, and of the United States District Court of the Southern District of New York, in any action or proceeding arising out of or relating to this Agreement or any other DIP Financing Document. Each party hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  Nothing in this Agreement or any other DIP Financing Document shall affect any right that any Lender may otherwise have to bring any action or proceeding relating to this Agreement or any other DIP Financing Document against any Loan Party or any of its properties in the courts of any jurisdiction.

(c)     Each party hereto hereby irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any objection that it may now or hereafter have to the laying of venue of any action or proceeding arising out of or relating to this Agreement or any other DIP Financing Document in any court referred to in paragraph (b) of this Section.  Each party hereto hereby irrevocably waives, to the fullest extent permitted by applicable law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

(d)     Each party hereto irrevocably consents to service of process in the manner provided for notices in Section 7.01.  Nothing in this Agreement or any other DIP Financing Document will affect the right of any party to this Agreement to serve process in any other manner permitted by applicable law.

SECTION 7.07  *WAIVER OF JURY TRIAL*.  EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER DIP FINANCING DOCUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).  EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER, AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE OTHER DIP FINANCING DOCUMENTS BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

SECTION 7.08  *Headings*.  Article and Section headings and the Table of Contents used herein are for convenience of reference only, are not part of this Agreement and shall not affect the construction of, or be taken into consideration in interpreting, this Agreement.

SECTION 7.09  *Security Interest Absolute*.  All rights of the DIP Lender hereunder, the Security Interest, the grant of the security interest in the Pledged Collateral and all

obligations of each Loan Party hereunder shall be absolute and unconditional irrespective of (a) any lack of validity or enforceability of the DIP Credit Agreement, any other DIP Financing Document, any agreement with respect to any of the DIP Financing Obligations or any other agreement or instrument relating to any of the foregoing, (b) any change in the time, manner or place of payment of, or in any other term of, all or any of the DIP Financing Obligations, or any other amendment to or waiver of, or any consent to any departure from, the DIP Credit Agreement, any other DIP Financing Document, any agreement with respect to any of the DIP Financing Obligations or any other agreement or instrument relating to any of the foregoing, (c) any exchange, release or non-perfection of any Lien on other collateral securing, or any release or amendment to or waiver of, or any consent to any departure from, any guarantee of, all or any of the DIP Financing Obligations, or (d) any other circumstance that might otherwise constitute a defense available to, or a discharge of, any Loan Party in respect of the DIP Financing Obligations or this Agreement, other than the defense that the DIP Financing Obligations have been paid in cash in full.

SECTION 7.10   *Termination or Release.*

(a)     This Agreement, the Guarantees made herein, the Security Interest and all other security interests granted hereby shall automatically terminate when (x) all the DIP Financing Obligations have been paid in full in cash (other than contingent indemnification obligations for which no claim or demand has been made) or (y) upon the occurrence of the Settlement Contribution Date.

(b)     Upon any sale or other transfer by any Grantor of any Collateral that is permitted under the DIP Credit Agreement (other than a sale or other transfer to the Borrower, a Guarantor or any of their respective Subsidiaries), or upon the effectiveness of any written consent to the release of the security interest granted hereby in any Collateral pursuant to the DIP Credit Agreement, the security interest in such Collateral shall be automatically released.

(c)     In connection with any termination or release pursuant to paragraph (a), (b) or (c) of this Section, the DIP Lender shall execute and deliver to any Grantor, at such Grantor's expense, all documents that such Grantor shall reasonably request to evidence such termination or release.  Any execution and delivery of documents pursuant to this Section shall be without recourse to or warranty by the DIP Lender.

SECTION 7.11   *DIP Lender Appointed Attorney-in-Fact.*  Each Grantor hereby appoints each Lender as the attorney-in-fact of such Grantor for the purpose of carrying out the provisions of this Agreement and taking any action and executing any instrument that the DIP Lender may deem reasonably necessary for the purpose of carrying out the provisions of this Agreement and taking any action and executing any instrument that the DIP Lender may deem reasonably necessary or advisable to accomplish the purposes hereof, which appointment is irrevocable and coupled with an interest.  Without limiting the generality of the foregoing, and to the extent consistent with the DIP Credit Agreement, the DIP Lender shall have the right, upon the occurrence and during the continuance of an Event of Default, with full power of substitution either in the DIP Lender' name or in the name of such Grantor (a) to receive, endorse, assign and/or deliver any and all notes, acceptances, checks, drafts, money orders or other evidences of payment relating to the Collateral or any part thereof; (b) to demand, collect, receive payment of, give

receipt for and give discharges and releases of all or any of the Collateral; (c) to sign the name of any Grantor on any invoice or bill of lading relating to any of the Collateral; (d) to send verifications of Accounts to any Account Debtor; (e) to commence and prosecute any and all suits, actions or proceedings at law or in equity in any court of competent jurisdiction to collect or otherwise realize on all or any of the Collateral or to enforce any rights in respect of any Collateral; (f) to settle, compromise, compound, adjust or defend any actions, suits or proceedings relating to all or any of the Collateral; (g) to notify, or to require any Grantor to notify, Account Debtors to make payment directly to the DIP Lender; and (h) to use, sell, assign, transfer, pledge, make any agreement with respect to or otherwise deal with all or any of the Collateral, and to do all other acts and things necessary to carry out the purposes of this Agreement, as fully and completely as though the DIP Lender were the absolute owner of the Collateral for all purposes; *provided* that nothing herein contained shall be construed as requiring or obligating the DIP Lender to make any commitment or to make any inquiry as to the nature or sufficiency of any payment received by the DIP Lender, or to present or file any claim or notice, or to take any action with respect to the Collateral or any part thereof or the moneys due or to become due in respect thereof or any property covered thereby.  The DIP Lender shall be accountable only for amounts actually received as a result of the exercise of the powers granted to them herein, and neither they nor their officers, directors, employees or agents shall be responsible to any Grantor for any act or failure to act hereunder, except for their own gross negligence or willful misconduct.

SECTION 7.12  *DIP FINANCING ORDER, CONFLICTS, ETC.*

(a)    NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, THE LIENS AND SECURITY INTERESTS GRANTED TO THE DIP LENDER PURSUANT TO THIS AGREEMENT AND THE EXERCISE OF ANY RIGHT OR REMEDY BY THE DIP LENDER HEREUNDER, ARE SUBJECT TO THE PROVISIONS OF THE DIP FINANCING ORDER.

(b)    The failure of the DIP Lender to immediately enforce any of its rights and remedies hereunder (as a result of the terms of the DIP Financing Order or otherwise) shall not constitute a waiver of any such rights and remedies. Notwithstanding any failure on the part of the DIP Lender, any Grantor or any other Person to take any action to perfect, maintain, protect or enforce the Liens and security interests in the Collateral granted hereunder or in the DIP Financing Order, the DIP Financing Order shall automatically, and without further action by any Person, perfect such Liens and security interests against the Collateral.

(c)    Further, notwithstanding anything to the contrary contained elsewhere in this Security Agreement, all rights to enforce this Security Agreement shall in all respects be subject to the terms of the DIP Financing Order.

(d)    Conflicts. Notwithstanding anything to the contrary herein, the provisions of this Agreement are subject to the DIP Financing Order, as applicable. In the event of a conflict between, or inconsistency among, any terms and provisions set forth in this Agreement and the DIP Financing Order, the terms and provisions of the DIP Financing Order shall supersede, govern and control.

(e)      <u>Automatic Stay</u>. Performance of the obligations of any Grantors or of the DIP Lender hereunder, or any enforcement of rights as permitted hereunder, to the extent in accordance with the DIP Financing Order, shall in no way constitute, for purposes of the Chapter 11 Cases, a violation of the automatic stay provided by Section 362 of the Bankruptcy Code, and the Grantors hereby waive applicability thereof.

[Signatures Follow]

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the day and year first above written.

**BORROWER:**

**BRILLIANT NATIONAL SERVICES, INC.,** a Delaware corporation

By: _____

Name: _____

Title: _____

*[Signature Page to Guarantee and Collateral Agreement]*

**GUARANTORS:**

**WHITTAKER, CLARK & DANIELS, INC.,** a New Jersey corporation

By: _____
Name: _____
Title:  _____

**L. A. TERMINALS, INC.,** a California corporation

By: _____
Name: _____
Title:  _____

**SOCO WEST, INC.,** a Delaware corporation

By: _____
Name: _____
Title:  _____

*[Signature Page to Guarantee and Collateral Agreement]*

**<u>DIP LENDER</u>:**

**NATIONAL INDEMNITY COMPANY**


By: _____
Name: _____
Title:  _____

*[Signature Page to Guarantee and Collateral Agreement]*

Schedule I to
the Guarantee and
Collateral Agreement

## GUARANTORS

1.      Whittaker, Clark & Daniels, Inc.

2.      L. A. Terminals, Inc.

3.      Soco West, Inc.

Schedule II to
the Guarantee and
Collateral Agreement

### PLEDGED EQUITY INTERESTS

| Name of Loan Party | Name of Subsidiary the Equity Interests of Which are Being Pledged | Certificate Number | Percentage of Ownership |
|---|---|---|---|
| Brilliant National Services, Inc. | Soco West, Inc. | [_] | 100% |
| Brilliant National Services, Inc. | L. A. Terminals, Inc. | [_] | 100% |
| Soco West, Inc. | Whittaker, Clark & Daniels, Inc. | [_] | 100% |

### PLEDGED DEBT SECURITIES

[_]

Schedule III to
the Guarantee and
Collateral Agreement

## COMMERCIAL TORT CLAIMS

None.

**EXHIBIT B**

**BLACKLINE OF REVISED ORDER**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted pro hac vice)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Chad J. Husnick, P.C. (admitted pro hac vice)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2400
chad.husnick@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| WHITTAKER, CLARK & DANIELS, *et al.*, | Case No. 23-13575 (MBK) |
| Debtors.[1] | (Jointly Administered) |

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Whittaker, Clark & Daniels, Inc. (4760); Brilliant National Services, Inc. (2113); Soco West, Inc. (3400); and L.A. Terminals, Inc. (6800).

**ORDER (I) AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION
SECURED FINANCING, (II) GRANTING
LIENS
AND PROVIDING SUPERPRIORITY ADMINISTRATIVE
EXPENSE CLAIMS, (III) MODIFYING THE AUTOMATIC
STAY, AND (IV) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through ~~thirty-seven~~forty (~~37~~40) is **ORDERED**.

(Page | 4)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") in the above captioned chapter 11 cases (collectively, the "Chapter 11 Cases"), pursuant to sections 105, 361, 362, 363, 364, 506(c), 507, and 552 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 4001-1, 4001-3, 9013-1, 9013-2, 9013-3, and 9013-4 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules"), seeking entry of this final order (this "Order"):

(i)    authorizing Brilliant National Services, Inc. in its capacity as borrower (the "DIP Borrower") to obtain postpetition financing, and authorizing each of the other Debtors (such other Debtors, the "DIP Guarantors") to guarantee unconditionally, on a joint and several basis, the DIP Borrower's obligations in connection with a senior secured multiple draw term loan credit facility (the "DIP Facility") in the aggregate principal amount of $50,000,000 (the "DIP Commitments" and the term loans made thereunder, the "DIP Loans"), pursuant to the terms and conditions of this Order, the DIP Credit Agreement (as defined below), and the other DIP Facility Documents (as defined below);

(ii)    authorizing the DIP Borrower to enter into and perform under that certain Senior Secured Debtor-in-Possession Credit Agreement, which is to be consistent in all respects with the terms in the term sheet attached hereto as **Exhibit 1**, between the DIP Borrower and National Indemnity Company and/or certain of its affiliate's or designees, as the lender(s) (in such capacity, the "DIP Lenders") (as the same may be amended, restated, supplemented, waived or otherwise modified from time to time, the "DIP Credit Agreement" and, together with this Order and all other agreements, documents, and instruments delivered or executed in connection therewith, in each case as may be amended, restated, supplemented, waived or otherwise modified from time to time in accordance with the terms thereof, collectively, the "DIP Facility Documents"),

---

[2]    Capitalized terms used but not defined herein have the meanings given to such terms in the Motion or the DIP Credit Agreement (as defined herein).

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

and to perform such other and further acts as may be required in connection with the DIP Facility Documents;

(iii)    authorizing the Debtors to use the proceeds of the DIP Loans and cash collateral (within the meaning of Bankruptcy Code section 363(a)) (a) for general corporate purposes of the Debtors, including to fund the costs of the administration of the Chapter 11 Cases and to pay such prepetition expenses, in each case in a manner consistent with the Approved Budget (as defined below), (b) to pay professional fees and expenses; (c) to pay premiums, fees, expenses, penalties, and other amounts owed under the DIP Facility Documents, to the extent applicable, (d) to fund a wind-down budget in form and substance acceptable to the DIP Lenders, and (e) to fund the Carve Out (as defined below);

(iv)    granting valid, enforceable, binding, non-avoidable, and fully perfected first priority liens on and senior security interests in substantially all of the property, assets, and other interests in property and assets of the Debtors, whether such property is presently owned or after-acquired, and each Debtor's estate as created by section 541 of the Bankruptcy Code, of any kind or nature whatsoever, real or personal, tangible, intangible, or mixed, now existing or hereafter acquired or created, whether existing prior to or arising after the Petition Date (as defined below), subject only to the Carve Out (as defined below);

(v)    granting superpriority administrative expense claims against each of the Debtors' estates to the DIP Lenders with respect to the DIP Obligations (as defined below) with priority over any and all administrative expenses of any kind or nature subject and subordinate only to the payment of the Carve Out on the terms and conditions set forth herein and in the DIP Facility Documents;

(vi)    effective as of the Petition Date, waiving the Debtors' and the estates' right to surcharge against the DIP Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code;

(vii)    effective as of the Petition Date, waiving the equitable doctrine of marshaling with respect to the DIP Lenders;

(viii)    modifying the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of the DIP Facility Documents and this Order; and

(ix)    related relief.

(Page | 6)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

This Court having considered the Motion, the exhibits thereto, the Aronzon Declaration and the Meghji Declaration (collectively, the "Declarations"); and having held a hearing on September 24, 2024, to consider the relief requested in the Motion (the "Hearing"); and upon the Declarations and the record of the Hearing; and this Court having heard and resolved or overruled any objections, reservations of rights, or other statements with respect to the relief requested in the Motion (or with the same being resolved on a consensual basis with revisions made to this Order); and the Court having noted the appearances of all parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the Debtors' entry into the DIP Credit Agreement and the other DIP Facility Documents is a sound and prudent exercise of the Debtors' business judgment; and the Debtors having provided notice of the Motion as set forth in the Motion, and it appearing that no other or further notice of the final relief granted herein need be given under the circumstances; and after due deliberation and consideration, and for good and sufficient cause appearing therefor; **BASED UPON THE RECORD ESTABLISHED AT THE HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:[3]

A.     *Petition Date*.  On April 27, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy

---

[3]   Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

Court for the District of New Jersey (the "Court") commencing the Chapter 11 Cases. On May 8, 2023, the Court entered an order approving joint administration of the Chapter 11 Cases.

B. *Debtors in Possession*. The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

C. *Jurisdiction and Venue*. The Court has jurisdiction over the Motion, the Chapter 11 Cases, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered on July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.). The Court may enter a final order consistent with Article III of the United States Constitution. Venue for the Chapter 11 Cases and proceedings on the Motion is properly before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D. *Committee*. On May 24, 2023, the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed an official committee of talc claimants in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (such committee, the "Committee") [Docket No. 121]. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

E. *Future Claimants' Representative*. On June 26, 2023, the Court appointed the Honorable Shelley C. Chapman (Ret). as Future Claimants' Representative (the "FCR") in the Chapter 11 Cases [Docket No. 231].

(Page | 8)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

F.      *Findings Regarding the DIP Facility.*

(i)      The Debtors have an immediate need to obtain the DIP Facility (solely to the extent consistent with the Approved Budget (as defined below)) to (A) permit the orderly continuation of the Chapter 11 Cases; and (B) pay the costs of administration of the estates of the Debtors.  The ability of the Debtors to obtain sufficient funds to pay the costs of administration of their respective estates through the incurrence of the new indebtedness for borrowed money and other financial accommodations is vital to the successful resolution of the Chapter 11 Cases.  The Debtors will not have sufficient sources of funds to pay the costs of administration of their respective estates without access to the DIP Facility, as provided herein.

(ii)      The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Facility Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors also are unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Facility Documents without the Debtors granting to the DIP Lenders the DIP Liens (as defined below) and the DIP Superpriority Claims (as defined below) under the terms and conditions set forth in this Order and the DIP Facility Documents.

(iii)      The DIP Facility has been negotiated in good faith and at arm's length among the Debtors and the DIP Lenders, and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with the DIP Facility and the DIP Facility

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

Documents, including, without limitation, all loans made to and guarantees issued by the Debtors pursuant to the DIP Facility Documents and all other obligations under the DIP Facility Documents (collectively, the "DIP Obligations") shall be deemed to have been extended by the DIP Lenders in "good faith" as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code and reflects the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration. The DIP Obligations, the DIP Liens, and the DIP Superpriority Claims shall be entitled to the full protection of Bankruptcy Code section 364(e) in the event that this Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise, and any liens or claims granted to, or payments made to the DIP Lenders hereunder prior to the effective date of any such vacatur, reversal, or modification of this Order shall be governed in all respects by the original provisions of this Order, including entitlement to all rights, remedies, privileges, and benefits granted herein.

(iv)     The DIP Facility is independent from the Settlement Agreement made and executed as of September 3, 2024 by and between the Contributing Parties (as defined therein) and the Debtors (the "Proposed Settlement"), and the DIP Obligations, the DIP Liens, and the DIP Superpriority Claims each shall be allowed and enforceable pursuant to the terms and conditions set forth in this Order and the DIP Facility Documents regardless of whether or not the Proposed Settlement is approved by the Court, becomes effective, or is terminated. For the avoidance of doubt, the findings of fact and conclusions of law set forth herein shall not limit the

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

objection of any party in interest to the approval of the Proposed Settlement, and all parties' rights are reserved with respect thereto.

(v)     The DIP Lenders have consented to the Debtors' proposed use of any cash collateral (within the meaning of Bankruptcy Code section 363(a)) on the terms and conditions set forth in this Order.

G.     *Findings Regarding Corporate Authority*.  Each Debtor has all requisite corporate authority to execute and deliver the DIP Facility Documents to which it is a party and to perform its obligations thereunder.

H.     *Good Cause Shown; Best Interest*.  Good cause has been shown for entry of this Order, and entry of this Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow the Debtors to facilitate their chapter 11 goals and maximize the value of their assets and estates.  Absent granting the relief sought by this Order, the Debtors' estates will be immediately and irreparably harmed.

I.     *Notice*.  In accordance with Bankruptcy Rules 2002, 4001(c), and 9014, and the Local Rules, notice of Hearing and the relief requested in the Motion has been provided by the Debtors.  Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein, and of the Hearing complies with Bankruptcy Rules 2002, 4001(c), and 9014 and applicable Local Rules.

J.     *Arm's Length, Good Faith Negotiations*.  The terms of this Order were negotiated in good faith and at arm's length between the Debtors and the DIP Lenders.  The DIP Lenders

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

have acted without negligence or violation of public policy or law in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of the Debtors' incurrence of the DIP Facility, including in respect of all of the terms of this Order, all documents related thereto, and all transactions contemplated by the foregoing.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      <u>DIP Financing Approved</u>.  The Motion is granted as set forth herein and the DIP Facility is approved on a final basis, subject to the terms of this Order.

2.      <u>Objections Overruled</u>.  Any objections, reservations of rights, or other statements with respect to the Motion and entry of this Order, to the extent not withdrawn or resolved (including resolved on a consensual basis with revisions made to this Order), are overruled on the merits.  This Order shall become effective immediately upon its entry.

3.      <u>Authorization of the DIP Facility and the DIP Facility Documents</u>.

(a)      The DIP Borrower is, and the DIP Guarantors are, hereby immediately authorized and empowered to enter into, execute and deliver, the DIP Facility Documents, including the DIP Credit Agreement, and such additional documents, instruments, certificates and agreements as may be reasonably required or requested by the DIP Lenders to implement the terms or effectuate the purposes of this Order and the DIP Facility Documents.  To the extent not

(Page | 12)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al.* |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

entered into as of the date hereof, the Debtors and the DIP Lenders shall negotiate the DIP Facility Documents in good faith, and in all respects such DIP Facility Documents shall be, subject to the terms of this Order, materially consistent with the terms of the DIP Credit Agreement and otherwise reasonably acceptable to the DIP Lenders.  Upon entry of this Order, the DIP Credit Agreement, this Order, and other DIP Facility Documents shall govern and control the DIP Facility.  The DIP Lenders are hereby authorized to execute and enter into its obligations under the DIP Facility Documents, subject to the terms and conditions set forth therein and this Order.  Upon execution and delivery thereof, the DIP Facility Documents shall constitute valid and binding obligations of the Debtors enforceable in accordance with their terms.  To the extent there exists any conflict among the terms and conditions of the Motion, the DIP Facility Documents and this Order, the terms and conditions of this Order shall govern and control.  To the extent there is a conflict between the terms and conditions of the Motion and the DIP Facility Documents, the terms and conditions of the DIP Facility Documents shall govern and control.

(b)    Upon entry of this Order, the DIP Borrower is hereby authorized to borrow, and the DIP Guarantors are hereby authorized to guaranty, all borrowings under the DIP Facility Documents, including, without limitation, $50,000,000 of DIP Loans, subject to and in accordance with this Order and the DIP Facility Documents, without further action by the Debtors or any other party.

(Page | 13)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

(c)     In accordance with the terms of this Order and the other DIP Facility Documents, proceeds of the DIP Loans and any cash collateral (within the meaning of Bankruptcy Code section 363(a)) shall be used solely for the purposes permitted under this Order and the DIP Facility Documents, subject to the Carve Out.  As used in this Order, "Approved Budget" means the budget dated as of August 30, 2024, prepared by the Debtors and approved by the DIP Lenders in accordance with the DIP Credit Agreement (which shall constitute the "Initial Approved Budget" under the DIP Credit Agreement), or any updated budget delivered as a "Subsequent Approved Budget" in accordance with the DIP Credit Agreement.

(d)     In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized, and the automatic stay imposed by section 362 of the Bankruptcy Code is hereby lifted solely to the extent necessary to perform all acts and to make, execute, and deliver all instruments and documents (including, without limitation, the DIP Credit Agreement, any security and pledge agreement, and any mortgage to the extent contemplated thereby or by the DIP Credit Agreement and any other DIP Facility Documents), and to pay all fees (including all amounts owed to the DIP Lenders) that may be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Facility, including, without limitation:

(1)     the execution, delivery, and performance of the DIP Facility Documents, including, without limitation, the DIP Credit Agreement, any security and pledge agreement, and any mortgage to the extent required thereby;

(Page | 14)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

(2)     the execution, delivery, and performance of one or more amendments, waivers, consents, or other modifications to and under the DIP Facility Documents (in each case in accordance with the terms of the applicable DIP Facility Documents, in such form as the Debtors and the DIP Lenders may reasonably agree), it being understood that no further approval of the Court shall be required for amendments, waivers, consents, or other modifications to and under the DIP Facility Documents or the DIP Obligations that are not material; and

(3)     the performance of all other acts required under or in connection with the DIP Facility Documents.

(e)     Upon entry of this Order, the DIP Facility Documents, the DIP Obligations, and the DIP Liens shall constitute valid, binding, and non-avoidable obligations of the Debtors enforceable against each Debtor in accordance with their respective terms and the terms of this Order for all purposes during the Chapter 11 Cases, any subsequently converted Chapter 11 Case of any Debtor to a case under chapter 7 of the Bankruptcy Code or after the dismissal of any Chapter 11 Case.  No order confirming a chapter 11 plan entered in the Chapter 11 Cases shall discharge or otherwise affect in any way the joint and several obligations of the Debtors to the DIP Lenders under the DIP Facility.  No obligation, payment, transfer, or grant of security under the DIP Credit Agreement, the other DIP Facility Documents or this Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under

| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
|---|---|
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

any applicable law (including, without limitation, under sections 502(d), 542, 544, 548, or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, Uniform Voidable Transactions Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment, or counterclaim.  All payments or proceeds remitted to the DIP Lenders, pursuant to the DIP Facility Documents or the provisions of this Order, or any subsequent order of this Court, shall be received free and clear of any claim, charge, assessment, or other liability.

(f)      The DIP Guarantors are hereby authorized and directed to jointly, severally, and unconditionally guarantee, and upon entry of this Order shall be deemed to have guaranteed, in full, all of the DIP Obligations of the DIP Borrower.

4.      <u>Access to Records</u>.  The Debtors shall provide the DIP Lenders and its advisors with all reporting and other information required to be provided to the DIP Lenders under the DIP Facility Documents.

5.      <u>DIP Superpriority Claims</u>.  Subject to, and subordinated in all respects to, the Carve Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against each of the Debtors' estates (the "<u>DIP Superpriority Claims</u>") (without the need to file any proof of claim) with priority over any and all administrative expenses, adequate protection claims, diminution claims, and all other claims against the Debtors, their estates or their property, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 361, 362, 363, 364, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for the purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code and which shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including, without limitation, any proceeds or property recovered in connection with the pursuit of claims or causes of action (x) brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents, if any (the "Avoidance Actions") or (y) that were held to be property of the estates in the Memorandum Decision issued by the Court in Adv. Pro. No. 23-01245 (MBK) on August 13, 2024 (the "Successor Liability Claims"), subject only to the payment of the Carve Out.  Except as set forth in this Order, no other superpriority claims shall be granted or allowed in the Chapter 11 Cases.

6.      DIP Liens.  As security for the DIP Obligations, effective and perfected upon the date of this Order, and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements, or other similar documents, or the possession or control by the DIP Lenders of, or over, any DIP Collateral (as defined below), the following security interests and liens are hereby

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

granted by the Debtors to the DIP Lenders (all property identified in clause (a) and (b) below being collectively referred to as the "<u>DIP Collateral</u>"), subject only to the Carve Out (all such liens and security interests granted to the DIP Lenders, pursuant to this Order and the DIP Facility Documents, the "<u>DIP Liens</u>"):

(a) <u>First Priority Lien On Any Unencumbered Property</u>.  Subject only to the Carve Out, pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-avoidable, automatically, and properly perfected first priority senior security interest in and lien upon all property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date is not subject to valid, perfected, and non-avoidable liens (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), including, without limitation (in each case, to the extent not subject to valid, perfected, and non-avoidable liens), all unencumbered assets of the Debtors; all prepetition property and post-petition property of the Debtors' estates, and the proceeds, products, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including, without limitation, unencumbered cash (and any investment of such cash) of the Debtors; all equipment, all goods, all accounts, cash, payment intangibles, bank accounts and other deposit or securities accounts of the Debtors (including any accounts opened prior to, on, or after the Petition Date); all insurance policies and proceeds thereof, equity interests, instruments, intercompany claims, accounts receivable, other rights to payment, all general intangibles, all contracts and contract rights, securities, investment property, letters of

(Page | 18)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

credit and letter of credit rights, chattel paper, all interest rate hedging agreements of the Debtors; all owned real estate, real property leaseholds and fixtures of the Debtors; patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property of the Debtors; all commercial tort claims of the Debtors; and all claims and causes of action (including causes of action arising under section 549 of the Bankruptcy Code, claims arising on account of transfers of value from a Debtor to (x) another Debtor and (y) a non-Debtor affiliate incurred on or following the Petition Date); any and all proceeds, products, rents, and profits of the foregoing, and all proceeds and property recovered in respect of Avoidance Actions and Successor Liability Claims; *provided*, for the avoidance of doubt, and notwithstanding anything to the contrary contained herein, to the extent an asset is an Excluded Asset or a lien cannot attach to any of the foregoing pursuant to applicable law, the liens granted pursuant to this Order shall attach to the Debtors' economic rights, including, without limitation, any and all proceeds of the foregoing. "Excluded Assets" means (a) any governmental licenses or state or local franchises, charters or authorizations, to the extent a security interest in any such license, franchise, charter or authorization would be prohibited or restricted thereby (including any legally effective prohibition or restriction, but excluding any prohibition or restriction that is ineffective under the Uniform Commercial Code of any applicable jurisdiction), (b) any asset if, to the extent that and for so long as the grant of a lien thereon is prohibited by applicable law (other than to the extent that any such prohibition would be rendered ineffective pursuant to any other applicable law, including the Bankruptcy Code or the Uniform Commercial Code of any

(Page | 19)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

applicable jurisdiction), or would require consent or approval of any governmental authority, (c) any intent-to-use trademark application prior to the filing of a "Statement of Use" or "Amendment to Allege Use" with respect thereto, (d) any lease, license or other agreement or any property subject thereto (including pursuant to a purchase money security interest, capital lease or similar arrangement) to the extent that a grant of a security interest therein would, under the terms of such lease, license or other agreement existing on the Closing Date (as defined in the DIP Credit Agreement), violate or invalidate such lease, license or agreement or purchase money arrangement or capital lease or create a breach, default or right of termination in favor of any other party thereto after giving effect to the applicable anti-assignment provisions of the Uniform Commercial Code of any applicable jurisdiction or other similar applicable law, other than proceeds and receivables thereof, the assignment of which is expressly deemed effective under the Uniform Commercial Code of any applicable jurisdiction or the Bankruptcy Code or other similar applicable law notwithstanding such prohibition, and (e) cash or cash equivalents maintained in any deposit account that are comprised of (i) funds used or to be used for payroll and payroll taxes and other employee benefit payments to or for the benefit of the employees, in each case, during the applicable period, (ii) funds used or to be used to pay any taxes required to be collected, remitted or withheld during the current period and (iii) other funds which any Debtor holds as an escrow or fiduciary for the benefit of any third person, including the trust fund established for the benefit of the EPA, pursuant to the *Remedial Design/Remedial Action*

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

*Consent Decree, United States v. Soco West, Inc.,* No. 1:11-cv-00088-RFC (D. Mont. Aug. 18, 2011) [Docket No. 3-1] (the "EPA Trust Account").

(b)    Liens Junior to Certain Other Liens.   Subject only to the Carve Out, pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected security interest in and lien upon all prepetition and post-petition property of the Debtors that is subject to valid, perfected and enforceable prepetition liens (if any) or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (the "Permitted Prior Liens").  Subject to the Carve Out and the Permitted Prior Liens, the DIP Liens: (i) shall not be made subject to or *pari passu* with (A) any lien or security interest heretofore or hereinafter granted in any of the Chapter 11 Cases or any successor cases, and shall be valid and enforceable against the Debtors, their estates, any trustee or any other estate representative appointed or elected in the Chapter 11 Cases or any successor cases and/or upon the dismissal of any of the Chapter 11 Cases or any successor cases and (B) any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code; and (ii) shall not be subject to sections 506(c) (effective as of the Petition Date), 510, 549, 550, or 551 of the Bankruptcy Code.

Notwithstanding the foregoing, the DIP Liens shall not extend to, and the DIP Collateral shall not consist of, (wv) Avoidance Actions, (xw) Successor Liability Claims, (yx) other estate causes of action and estate claims, if any, against the DIP Lenders and their Affiliates (as defined

(Page | 21)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

in the DIP Facility Documents), (y) any and all estate claims and estate causes of action subject to the Proposed Settlement (together with subclauses (v), (w) and (x), the "Specified Estate Claims") and (z) Excluded Assets; *provided*, that DIP Collateral shall include the proceeds of Specified Estate Claims and Excluded Assets; *provided*, *however*, that DIP Collateral shall not include the proceeds of the EPA Trust Account.  For the avoidance of doubt, all estate causes of actions and estate claims other than the Specified Estate Claims shall be DIP Collateral.

(c)     Notwithstanding anything to the contrary in this Order or the DIP Facility Documents, the DIP Collateral shall not include the EPA Trust Account or any proceeds thereof.

7.     Carve Out.

(a)     Carve Out.  As used in this Order, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals"), the FCR pursuant to section 105(a) or 1103 (the "FCR Professionals"), and the Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals

(Page | 22)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

and FCR Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the DIP Lenders of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $500,000 incurred after the first business day following delivery by the DIP Lenders of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap").  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Lenders to the Debtors, their lead restructuring counsel, the U.S. Trustee, counsel to the FCR, and counsel to the Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the DIP Obligations under the DIP Facility, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)      Carve Out Reserves.  On the day on which a Carve Out Trigger Notice is given by the DIP Lenders to the Debtors with a copy to counsel to the FCR and counsel to the Committee (the "Termination Declaration Date"), the Carve Out Trigger Notice shall (i) be deemed a draw request and notice of borrowing by the Debtors for DIP Loans under the DIP Commitments (each, as defined in the DIP Credit Agreement), in an amount equal to the then unpaid amounts of the Allowed Professional Fees (any such amounts actually advanced shall constitute DIP Loans) and (ii) also constitute a demand to the Debtors to utilize all cash on hand

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees.  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims.  On the Termination Declaration Date, the Carve Out Trigger Notice shall also (i) be deemed a request by the Debtors for DIP Loans under the DIP Commitments, in an amount equal to the Post-Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute DIP Loans) and (ii) constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap.

The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims.  On the first business day after the DIP Lenders give such notice, notwithstanding anything in the DIP Credit Agreement to the contrary, including with respect to the existence of a Default (as defined in the DIP Credit Agreement) or Event of Default, the failure of the Debtors to satisfy any or all of the conditions precedent for DIP Loans under the DIP Facility, any termination of the DIP Commitments following an Event of Default, or the occurrence of the Maturity Date (as defined in the DIP Credit Agreement), the DIP Lenders shall make available to the Debtors such borrowing in

| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
|---|---|
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

accordance with the DIP Facility.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full, in cash, and all DIP Commitments have been terminated, in which case any such excess shall be paid to the Debtors.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full, in cash, and all DIP Commitments have been terminated, in which case any such excess shall be paid to the Debtors.  Notwithstanding anything to the contrary in the DIP Facility Documents or this Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 7, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 7, prior to making any payments to the DIP Lenders.  Notwithstanding anything to the contrary in the DIP Facility Documents or this Order, following delivery of a Carve Out Trigger Notice, the DIP Lenders shall not sweep or foreclose on cash (including cash received as a result of the sale or

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the DIP Lenders for application in accordance with the DIP Facility Documents.  Further, notwithstanding anything to the contrary in this Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute DIP Loans (as defined in the DIP Credit Agreement) or increase or reduce the DIP Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in this Order or the DIP Facility, the Carve Out shall be senior to all liens and claims securing the DIP Facility and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations.

(c)    <u>Payment of Allowed Professional Fees Prior to the Termination Declaration Date</u>.    Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(d)    <u>No Direct Obligation to Pay Allowed Professional Fees</u>.  The DIP Lenders shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any successor cases

| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
|---|---|
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

under any chapter of the Bankruptcy Code.  Nothing in this Order or otherwise shall be construed to obligate the DIP Lenders in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(e)    Payment of Carve Out On or After the Termination Declaration Date. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.  Any funding of the Carve Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Order, the DIP Facility Documents, the Bankruptcy Code, and applicable law.

8.    Reservation of Rights of the DIP Lenders.  Subject only to the Carve Out, notwithstanding any other provision in this Order, or the other DIP Facility Documents to the contrary, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights of the DIP Lenders under the DIP Facility Documents, any intercreditor agreement, or the Bankruptcy Code or under non-bankruptcy law (as applicable).  The delay in or failure of the DIP Lenders to seek relief or otherwise exercise their rights and remedies shall not constitute a waiver of any of the DIP Lenders' rights and remedies.

9.    Bar of Challenges.  The waivers and releases contained in this Order shall be binding upon the Debtors, their estates, and any of their respective successors including the

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

Committee, the FCR or any other person acting behalf of the Debtors or their estates, in each case, in all circumstances and for all purposes. The waivers contained in this Order shall be binding upon all other parties in interest. For the avoidance of doubt, the findings of fact and conclusions of law set forth herein shall not limit the objection of any party in interest to the approval of the Proposed Settlement, and all parties' rights are reserved with respect thereto.

10.    <u>Termination Date</u>.  On the Termination Date (as defined below), consistent with the DIP Credit Agreement, (a) all DIP Obligations shall be immediately due and payable, all DIP Commitments will terminate, and the Carve Out Reserves shall be funded as set forth in this Order; and (b) the DIP Lenders shall be otherwise entitled to exercise rights and remedies under the DIP Facility Documents in accordance with this Order.

11.    <u>Events of Default</u>.  The occurrence of any of the following events, unless waived in writing (email being sufficient) by the DIP Lenders in accordance with the terms of the DIP Facility Documents, shall constitute an event of default (collectively, the "<u>Events of Default</u>"): (a) the failure of the Debtors to perform, in any material respect, any of the terms, provisions, conditions, covenants, or obligations under this Order, (b) the failure of the Debtors to comply with any of the Milestones (as defined below) or (c) the occurrence of an "Event of Default" under the DIP Credit Agreement (which Events of Default are explicitly incorporated by reference into this Order).  The DIP Lenders shall provide written notice of any Event of Default to the Debtors and the U.S. Trustee; *provided* that, in the event a Standstill EOD (as defined

(Page | 28)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

below) is triggered, the DIP Lenders shall also provide written notice of such Standstill EOD to counsel to the Committee and counsel to the FCR.

12.    Standstill Upon the Occurrence of Certain Events of Default.  In the event that an Event of Default is triggered under sections [8(e)] (solely with respect to the Settlement Order (as defined in the DIP Credit Agreement)) or [8(f)] (solely with respect to the Estate Claims Decision or the Settlement Order (each as defined in the DIP Credit Agreement)) of the DIP Credit Agreement (collectively, the "Standstill EODs," and each, a "Standstill EOD"), the DIP Lenders shall refrain from exercising their rights and remedies under section 14 of this Order for forty-five (45) days from the DIP Lenders' provision of a written notice of such Standstill EOD in accordance with paragraph 11 of this Order (the "Standstill Period"); *provided*, *however*, if, prior to expiration of the Standstill Period, a party in interest (including the Committee and/or the FCR) files a motion for authority to obtain alternative postpetition financing ("Alternative Financing Motion") that expressly provides that such alternative postpetition financing will be used, inter alia, to repay the DIP Obligations in full, the Standstill Period shall be extended until the date that is one (1) business day from entry of the order granting or denying such Alternative Financing Motion; *provided* that in no event shall the Standstill Period be extended by more than twenty-four (24) days; *provided* that nothing in this paragraph shall prevent the DIP Lenders from issuing a Carve Out Trigger Notice pursuant to paragraph 7 of this Order during the Standstill Period; *provided*, *further*, that upon the occurrence of a Standstill EOD and the issuance of a Carve Out Trigger Notice pursuant to paragraph 7 of this Order during the

(Page | 29)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

Standstill Period, the Post-Carve Out Trigger Notice Cap shall be increased by an additional $200,000, subject to paragraph 30 of this Order.

13. ~~12.~~ Milestones.  The Debtors' failure to comply with any of the case milestones set forth in the ~~term sheet~~ DIP Credit Agreement attached hereto as **Exhibit 1** (collectively, the "Milestones") shall constitute an "Event of Default" in accordance with the terms of the DIP Credit Agreement unless waived or extended by the DIP Lenders.

14. ~~13.~~ Rights and Remedies Upon Event of Default.  Subject to the terms of the applicable DIP Facility Documents and the provision of this Order relating to the Carve Out, immediately upon the occurrence and during the continuation of an Event of Default notwithstanding the provisions of section 362 of the Bankruptcy Code (which is expressly vacated and modified for such purposes), without any application, motion, or notice to, hearing before, or order from the Court, but subject to the terms of this Order and the Remedies Notice Period (defined below), the DIP Lenders may declare (any such declaration shall be referred to herein as a "Termination Declaration") (i) all DIP Obligations owing under the DIP Facility Documents to be immediately due and payable, and thereupon the principal of the DIP Obligations so declared to be due and payable, together with accrued interest thereon and all fees and other applicable DIP Obligations, shall become due and payable immediately, in each case, without presentment, demand, protest, notice of intent to accelerate, notice of acceleration or other notice of any kind, which is waived by the Debtors pursuant to the DIP Credit Agreement, (ii) the termination, reduction or restriction of any further commitment to extend credit to the

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

Debtors to the extent any such commitment remains under the DIP Facility, (iii) termination of the DIP Facility and the DIP Facility Documents as to any future liability or obligation of the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations, (iv) that the Carve Out shall be triggered, through the delivery of the Carve Out Trigger Notice to the DIP Borrower, and (v) that the default rate of interest under the DIP Facility has been triggered (the date on which a Termination Declaration is delivered, the "Termination Date"). The automatic stay in the Chapter 11 Cases otherwise applicable to the DIP Lenders are hereby modified so that five (5) business days after the Termination Date, with written notice having been provided to the Debtors and the U.S. Trustee and filed on the docket of the lead Debtor of the Chapter 11 Cases (the "Remedies Notice Period") the DIP Lenders shall be entitled to exercise its rights and remedies in accordance with the DIP Facility Documents and this Order to satisfy the DIP Obligations, DIP Superpriority Claims, and DIP Liens, subject to the Carve Out. During the Remedies Notice Period, the Debtors and/or any party in interest shall be entitled to seek an emergency hearing within the Remedies Notice Period with the Court for the sole purpose of contesting whether an Event of Default has occurred or is continuing. Except as set forth in this paragraph 1~~3~~4 or otherwise ordered by the Court prior to the expiration of the Remedies Notice Period, after the Remedies Notice Period, the Debtors and all parties in interest shall waive their right to and shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Lenders under this Order. Unless the Court orders otherwise prior to the

(Page | 31)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

expiration of the Remedies Notice Period, the automatic stay as to the DIP Lenders shall automatically be terminated at the end of the Remedies Notice Period without further notice or order. Upon expiration of the Remedies Notice Period, the DIP Lenders shall be permitted to exercise all remedies set forth herein, and in the DIP Facility Documents, and as otherwise available at law without further order of or application or motion to this Court consistent with this Order.

15. ~~14.~~ Limitation on Charging Expenses Against Collateral. No expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral (except to the extent of the Carve Out) pursuant to sections 105(a) or 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the DIP Lenders, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lenders.

16. ~~15.~~ Expenses. The Debtors are hereby authorized and directed to pay, in accordance with this Order, the principal, interest, fees, payments, expenses, and other amounts described in the DIP Facility Documents as such amounts become due and without need to obtain further Court approval, all to the extent provided in this Order or the DIP Facility Documents.

| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
|---|---|
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

17.    ~~16.~~ <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

18.    ~~17.~~ <u>Insurance</u>.  Until the DIP Obligations have been indefeasibly paid in full, at all times the Debtors shall maintain casualty and loss insurance coverage for the DIP Collateral on substantially the same basis as maintained prior to the Petition Date and shall name the DIP Lenders as loss payee or additional insured, as applicable, thereunder.

19.    ~~18.~~ <u>No Waiver for Failure to Seek Relief</u>.  The failure or delay of the DIP Lenders to exercise rights and remedies under this Order, the DIP Facility Documents, or applicable law, as the case may be, shall not constitute a waiver of its rights or remedies hereunder, thereunder, or otherwise.  All such rights and remedies are expressly reserved and preserved.

20.    ~~19.~~ <u>Perfection of the DIP Liens</u>.

(a)    The DIP Lenders are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, depository account control agreements, notices of lien, or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted hereunder or under the DIP Facility Documents. Whether or not the DIP Lenders shall choose to file such financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, and non-avoidable. If the DIP Lenders determine to file or execute any financing statements, agreements, notice of liens, or

| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
|---|---|
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

similar instruments, the Debtors shall use commercially reasonable efforts to cooperate and assist in any such execution and/or filings as reasonably requested by the DIP Lenders, and the automatic stay shall be modified solely to allow such filings as provided for in this Order.

(b)     A certified copy of this Order may be filed with or recorded in filing or recording offices by the DIP Lenders in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of this Order for filing and recording; *provided*, *however*, that notwithstanding the date of any such filing, the date of such perfection shall be the date of this Order.

(c)     Any provision of any lease, license, contract or other agreement that requires (i) the consent or approval of one or more landlords, lessors, or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, license, contract or other agreement or the proceeds thereof, or other collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code, subject to applicable law. Any such provision shall have no force and effect with respect to the granting of the DIP Liens on such leasehold interest, license, contract or other agreement, or the proceeds of any assignment and/or sale thereof by any Debtor in accordance with the terms of the DIP Credit Agreement or this Order, subject to applicable law.

(Page | 34)

Debtors:            WHITTAKER, CLARK & DANIELS, INC., *et al*.
Case No.            23-13575 (MBK)
Caption of Order:   ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN
                    POSTPETITION SECURED FINANCING, (II) GRANTING LIENS
                    AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE
                    CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY

21. ~~20.~~ Release. Effective upon entry of this Order, each of the Debtors and the

Debtors' estates, on its own behalf and on behalf of each of their predecessors, their successors,

and assigns, shall, to the maximum extent permitted by applicable law, unconditionally,

irrevocably, and fully forever release, remise, acquit, relinquish, irrevocably waive, and

discharge, effective upon entry of this Order, the DIP Lenders and their affiliates, former,

current, or future officers, employees, directors, agents, representatives, owners, members,

partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants,

attorneys, affiliates, assigns, and predecessors in interest (collectively, "Representatives"), each

in their capacity as such, of and from any and all claims, demands, liabilities, responsibilities,

disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations,

actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs,

expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected,

unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including, without

limitation, all legal and equitable theories of recovery, arising under common law, statute, or

regulation or by contract, of every nature and description that exist on the date hereof

(collectively, "Claims") with respect to or relating to the DIP Obligations, the DIP Liens, or the

DIP Facility Documents, as applicable, including, without limitation: (i) any so-called "lender

liability" or equitable subordination claims or defenses with respect to or relating to the DIP

Obligations, the DIP Liens, or the DIP Facility Documents and (ii) any and all claims and causes

of action regarding the validity, priority, extent, enforceability, perfection, or avoidability of the

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

liens or claims of the DIP Lenders; *provided* that nothing in this paragraph shall (x) in any way limit or release the obligations of the DIP Lenders under the DIP Facility Documents, (y) release any Claims of a Debtor against another Debtor or any Debtors' officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, assigns, and predecessors in interest, each solely in their capacity as such or (z) release any Avoidance Actions or Successor Liability Claims against the DIP Lenders or their Affiliates.

22.    21. Preservation of Rights Granted Under this Order.

(a)    In the event this Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise, any liens or claims granted to the DIP Lenders hereunder arising prior to the effective date of any such vacatur, reversal, or modification of this Order shall be governed in all respects by the original provisions of this Order, including entitlement to all rights, remedies, privileges, and benefits granted herein, and the DIP Lenders shall be entitled to all the rights, remedies, privileges, and benefits afforded in section 364(e) of the Bankruptcy Code.

(b)    Unless and until all DIP Obligations are indefeasibly paid in full, in cash, and all DIP Commitments are terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly (i) except as permitted under the DIP Facility Documents or, if not provided for therein, with the prior written consent of the DIP Lenders, (x) any modification, stay, vacatur, or amendment of this Order or (y) a priority claim for any

| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

administrative expense or unsecured claim against any of the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in sections 503(b), 507(a), or 507(b) of the Bankruptcy Code) in any of the Chapter 11 Cases, *pari passu* with or senior to the DIP Superpriority Claims, or (z) any other order allowing use of the DIP Collateral; and (ii) except as permitted under the DIP Facility Documents (including the Carve Out), any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens.

(c)     Notwithstanding any order dismissing any of the Chapter 11 Cases entered at any time, or the termination of the Settlement Agreement, (x) the DIP Liens, the DIP Superpriority Claims, and the other administrative claims granted pursuant to this Order shall continue in full force and effect and shall maintain their priorities as provided in this Order until all DIP Obligations are indefeasibly paid in full in cash (and such DIP Liens, DIP Superpriority Claims, and the other administrative claims granted pursuant to this Order, shall, notwithstanding such dismissal, remain binding on all parties in interest); and (y) to the fullest extent permitted by law the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, and security interests referred to in clause (x) above.

(d)     Except as expressly provided in this Order or in the DIP Facility Documents, the DIP Liens, the DIP Superpriority Claims, and all other rights and remedies of the DIP Lenders granted by the provisions of this Order and the DIP Facility Documents shall survive, and shall not be modified, impaired, or discharged by (i) the entry of an order converting

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

any of the Chapter 11 Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases, terminating the joint administration of the Chapter 11 Cases or by any other act or omission, (ii) the entry of an order approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code, (iii) the termination of the Settlement Agreement, or (iv) the entry of an order confirming a chapter 11 plan in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations.  The terms and provisions of this Order and the DIP Facility Documents shall continue in the Chapter 11 Cases, in any successor cases if these Chapter 11 Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code.  The DIP Liens, the DIP Superpriority Claims, and all other rights and remedies of the DIP Lenders granted by the provisions of this Order shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full, in cash or, with respect to the DIP Obligations, otherwise satisfied in a manner agreed to by the DIP Lenders.

(e)     Other than as set forth in this Order, subject to the Carve Out, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest granted in any of the Chapter 11 Cases or arising after the Petition Date, and the DIP Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code.

23.   22. Limitation on Use of DIP Facility Proceeds and DIP Collateral. Notwithstanding anything to the contrary in this Order, none of the DIP Facility, the DIP

(Page | 38)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

Collateral, or the Carve Out or proceeds thereof may be used to assert, support or prosecute (or to seek standing to assert, support or prosecute) any claims or causes of action against, or which are indemnified by, the DIP Lenders or any of their affiliates, officers, directors, employees, agents, representatives, attorneys, consultants, financial advisors, affiliates, assigns, or successors (the "DIP Related Parties"); *provided*, however, that such proceeds may be used to seek approval of (or object to or otherwise respond to) (a) the Proposed Settlement. and (b) the *Joint Motion of the Official Committee of Talc Claimants and the Future Claimants' Representative for Entry of an Order Granting Standing and Authorizing the Committee and the FCR to Commence, Prosecute, and Settle Certain Causes of Action on Behalf of the Debtors' Estates* [Docket No. 1293]. For the avoidance of doubt, the DIP Facility, the DIP Collateral, and the Carve Out and the proceeds thereof may be used to pay Allowed Professional Fees of Professional Persons incurred in connection with any appeal of the Memorandum Decision and Order Granting Summary Judgment in Favor of the Debtors on Counts I and IV of the Complaint issued by the Court in Adv. Pro. No. 23-01245 (MBK) on August 13, 2024 [Adv. Pro. Docket No. 268] and August 28, 2024 [Adv. Pro. Docket No. 292], respectively.

24.    23. Conditions Precedent. Except as provided for in the Carve Out, the DIP Lenders shall not have any obligation to make any DIP Loan under the respective DIP Facility Documents unless all of the conditions precedent to the making of such extensions of credit under the applicable DIP Facility Documents have been satisfied in full or waived in accordance with such DIP Facility Documents.

(Page | 39)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

25.   24. Binding Effect; Successors and Assigns.  The DIP Facility Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including, without limitation, the DIP Lenders, the Committee, the FCR, and the Debtors and their respective successors and permitted assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Lenders.  In determining to make any loan (whether under the DIP Credit Agreement, a promissory note or otherwise) or in exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Facility Documents, the DIP Lenders (in their capacity as such) shall not (i) be deemed to be in control of the operations of the Debtors, or (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates.

26.   25. Limitation of Liability.  In determining to make any loan under the DIP Facility Documents or in exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Facility Documents, the DIP Lenders shall not, solely by reason thereof, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq.  as amended, or any similar federal or

(Page | 40)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

state statute). Furthermore, nothing in this Order or the DIP Facility Documents shall in any way be construed or interpreted to impose ~~or allow the imposition~~ upon the DIP Lenders ~~of~~ any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors.

27. ~~26.~~ <u>No Requirement to File Claim for DIP Obligations</u>. Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including, without limitation, any order establishing a deadline for the filing of proofs of claim or requests for payment of administrative expenses under section 503(b) of the Bankruptcy Code, the DIP Lenders shall not be required to file any proof of claim or request for payment of administrative expenses with respect to any of the DIP Obligations, all of which shall be due and payable in accordance with the DIP Facility Documents without the necessity of filing any such proof of claim or request for payment of administrative expenses, and the failure to file any such proof of claim or request for payment of administrative expenses shall not affect the validity, priority, or enforceability of any of the DIP Facility Documents or of any indebtedness, liabilities, or obligations arising at any time thereunder or prejudice or otherwise adversely affect the DIP Lenders' rights, remedies, powers, or privileges under any of the DIP Facility Documents, this Order, or applicable law. The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

(Page | 41)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al.* |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

28.    27. No Marshaling.  The DIP Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral, and proceeds of the DIP Collateral shall be received and applied pursuant to this Order and the DIP Facility Documents, notwithstanding any other agreement or provision to the contrary.

29.    28. Payments Held in Trust.  Except as expressly permitted in this Order or the DIP Facility Documents, in the event that any person or entity (other than the DIP Lenders) receives any payment on account of a security interest in DIP Collateral, receives any DIP Collateral or any proceeds of such collateral, or receives any other payment with respect thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations under the DIP Facility Documents or the Settlement Contribution Date, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of collateral in trust for the benefit of the DIP Lenders (as applicable based on the specific asset at issue) and shall immediately turn over such proceeds to the DIP Lenders, or as otherwise instructed by this Court, for application in accordance with the DIP Facility Documents and this Order.

30.    29. Notwithstanding anything the contrary contained in this Order, the DIP Facility, DIP Credit Agreement, or any other DIP Facility Document, the DIP Lenders shall have no obligation to make DIP Loans to the extent that such DIP Loans (whether for the Carve Out or otherwise) would cause the aggregate amount of outstanding DIP Loans to exceed the DIP Commitments; *provided*, that any PIK Payment Amounts (as defined in the DIP Credit Agreement) shall not be counted towards the DIP Commitments.

(Page | 42)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

31.     Certain Governmental Matters.

(a)     Notwithstanding anything to the contrary in this Order or the DIP Facility Documents, nothing in this Order or the DIP Facility Documents shall relieve the Debtors of any obligations under federal, state or local police or regulatory laws or under 28 U.S.C. § 959(b); *provided* that nothing herein shall limit or impair the Debtors' rights to assert defenses under applicable law and nothing herein shall create new defenses to obligations under police or regulatory laws or 28 U.S.C. § 959(b).

(b)     Notwithstanding anything to the contrary in this Order or the DIP Facility Documents, nothing in this Order or the DIP Facility Documents, shall impair or adversely affect the United States of America's rights, claims and defenses of set-off and recoupment, or those of any State or any of the foregoing's respective agencies, departments or agents, and all such rights, claims and defenses shall be preserved in their entirety; *provided* that nothing herein shall limit or otherwise impair the Debtors' or the DIP Lenders' rights to challenge any such rights, claims, and defenses under applicable nonbankruptcy law; *provided, further*, that nothing herein shall limit the applicability of paragraphs 25 and 26 of this Order.

(c)     Notwithstanding anything to the contrary in this Order or the DIP Facility Documents, nothing in this Order or the DIP Facility Documents shall impair or adversely affect any right under applicable law of any governmental unit with respect to any financial assurance, letter of credit, trust, surety bond, or insurance proceeds; *provided* that nothing herein shall limit

(Page | 43)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

or otherwise impair the Debtors' or the DIP Lenders' rights to challenge any such rights under applicable nonbankruptcy law.

(d)    Notwithstanding anything to the contrary in this Order or the DIP Facility Documents, nothing in this Order or the DIP Facility Documents permits the DIP Lenders to recover their attorney's fees and costs in negotiating, briefing, defending the Proposed Settlement or any discovery or litigation relating thereto.

(e)    Subpart (i) of the second sentence of Paragraph 25 and the first sentence of paragraph 26 of this Order shall apply to police or regulatory liabilities to governmental units only so long as the actions of the DIP Lenders do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by the Debtors, or otherwise cause lender liability to arise or the status of control, responsible person, owner, or operator to exist under applicable federal, state, or local law.

32.    30.   Effect of this Order.   This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon execution hereof.

33.    31.  The Debtors shall serve by regular mail a copy of this Order and the Motion on all parties required to receive such service pursuant to Local Rule 9013-5(f) within two (2) business days after the entry of this Order.

(Page | 44)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY |

34. ~~32.~~ <u>Retention of Jurisdiction</u>.   The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

## EXHIBIT 1

**DIP** ~~Term Sheet~~<u>Credit Agreement</u>

| Summary report: Litera Compare for Word 11.8.0.56 Document comparison done on 10/9/2024 12:21:17 PM | |
|---|---|
| **Style name:** Color (Kirkland Default) | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://dms.kirkland.com/LEGAL/114826161/1 | |
| **Modified DMS:** iw://dms.kirkland.com/LEGAL/114826161/5 | |
| **Changes:** | |
| Add | 55 |
| Delete | 35 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 90 |