**COLE SCHOTZ P.C.**

Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, NJ 07602-0800
201-489-3000   201-489-1536 fax

—
New York
—
Delaware
—
Maryland
—
Texas
—
Florida

Michael D. Sirota
Member
Admitted in NJ and NY

Reply to New Jersey Office
Writer's Direct Line: 201.525.6262
Writer's Direct Fax: 201.678.6262
Writer's E-Mail: msirota@coleschotz.com

October 21, 2024

**VIA CM/ECF**
The Honorable Michael B. Kaplan, U.S.B.J.
402 East State Street
Trenton, N.J. 08608

Re:   In re: Whittaker, Clark & Daniels, Inc., *et al.*
Case No. 23-13575-MBK (Bankr. D.N.J.)

Dear Chief Judge Kaplan,

The letter request from the TCC and FCR [Dkt. 1427] ("Ltr.") to pierce over a year of privileged communications and work product provided to the Debtors' disinterested directors is unsupported by caselaw, fundamentally misunderstands what is required to obtain approval of a claims settlement under Third Circuit law, and would require the production of privileged materials on motions routinely filed in bankruptcy courts. It should be denied.[1]

### *There Has Been No "At Issue" Waiver.*

The TCC and FCR rely on the wrong standard in arguing that "at issue" waiver "ultimately" turns on supposed "overriding fairness considerations." Ltr. at 4. In the Third Circuit, "advice of counsel is placed in issue where the client asserts a claim or defense, and ***attempts to prove that claim or defense by disclosing or describing an attorney client communication***." *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994).[2] The Third Circuit rejects decisions that "rest on a conclusion that the information sought is relevant and should in fairness be disclosed." *Id.* at 864.[3] Instead, "[r]elevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case ***even if*** one

---

[1] The Debtors obviously have a starkly different view of the merits of the Settlement Motion and the process leading up to it than that advanced by the TCC and FCR in their letter. The Debtors will address those issues at the hearing on the Settlement Motion.

[2] All emphasis in this response is added unless otherwise noted.

[3] Indeed, the list of factors the TCC and FCR cite from *In re Human Tissue Prod. Liability Litig.*, 244 F.R.D. 151, 159 (D.N.J. 2008), Ltr. at 4, is directly drawn from *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wa. 1975), which the Third Circuit specifically declared is "of dubious validity" because of its reliance on "relevance" and "fairness." *Rhone-Poulenc*, 32 F.3d at 864.

coleschotz.com

65977/0001-48665199



The Honorable Michael B. Kaplan
October 21, 2024
Page 2

might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue." *Id.*

Properly framed, there is no "at issue" waiver here.  The Debtors have not attempted to—and need not—prove *any* claim or defense in the Settlement Motion by "disclosing or describing an attorney client communication."  As another bankruptcy court in the Third Circuit explained:

> ***It is not necessary for the Debtors to waive the attorney/client privilege*** by presenting testimony regarding what counsel felt was the likelihood they would win on the claims being settled. ... ***It is sufficient to present the Court with the legal positions asserted by each side and the facts relevant to those issues.*** The Court itself can then evaluate the likelihood of the parties' prevailing in that litigation to determine whether the settlement is reasonable. Mere arguments of counsel or opinions of experts cannot substitute for that decision-making. ***Rather, the objective evidence that the Court should consider is the factual*** a*nalysis (which was presented in this case by the Debtors' witnesses) and the legal positions of both sides (which are contained in the pleadings filed by them).*

*In re Washington Mutual, Inc.*, 442 B.R. 314, 330 (Bankr. D. Del. 2011); *see also, e.g.*, *In re Health Diagnostic Lab., Inc.*, 2016 WL 6068812, at *5–6 (Bankr. E.D. Va. Oct. 14, 2016) ("Bankruptcy Rule 9019 requires the application of an ***objective*** test. ... In reviewing the [settlement] decision, the Court need only consider the legal positions underlying the disputed claims. ***The Court is not required to delve into privileged matters*** .... The Court will not invade the Liquidating Trustee's attorney/client privilege.").

This is precisely what the Debtors have done here: they have set forth the facts relevant to the settled estate causes of action and the legal positions and considerations for and against them. The Debtors have ***not*** asked the Court to approve the settlement based on how the Debtors' counsel advised the disinterested directors on the settled claims.  Nor have they revealed the substance of that advice.  The TCC and FCR wrongly claim "the Debtors ask the Court to approve the Settlement Agreement based on information presented to the directors from counsel's investigation." Ltr. at 2.  The Debtors in fact ask the Court to approve the Settlement Agreement based on the *Martin* factors, without once "disclosing or describing an attorney-client communication" to prove any of them, as required for an "at issue" waiver under *Rhone-Poulenc*. *Compare Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (setting forth factors), *with* Dkt. 1297 ¶¶ 43–83 (discussing each factor).  Indeed, the Debtors' references to their process no more cause an "at issue" waiver than the TCC's and FCR's own emphasis of the extent of their own investigation in the Standing Motion (which they presumably would not concede waived privilege over any legal advice provided to the FCR or the TCC's members).  *E.g.*, Standing Mot. ¶¶ 2, 7, 43–59; Ltr. at 6.

Notably, the TCC and FCR ***do not cite a single case*** where a debtor was found to have waived privilege by filing a 9019 motion and explaining that the debtor's decisionmakers received



The Honorable Michael B. Kaplan
October 21, 2024
Page 3

legal advice (without disclosing its substance). Instead, the Settlement Motion follows exactly the line drawn by *Washington Mutual* and one of the cases the TCC and FCR rely on: *In re Residential Capital*, 491 B.R. 63 (Bankr. S.D.N.Y. 2013). *Washington Mutual* observed that in a prior case, testimony by a debtor's management "that they did not rely on counsel at all in evaluating the merits of potential litigation" was found to be "incredible." 442 B.R. at 329–30. But the testimony in the case before the *Washington Mutual* court—that "the Debtors management ... relied substantially on the advice of counsel"—both avoided any credibility issue *and* did not waive privilege. *Id.* at 330. *Residential Capital* similarly made clear that "***[t]he attorney-client privilege is not waived if the Debtors argued that they sought the advice of counsel, among other actions, in an effort to reasonably educate themselves as to the merits of the settlement***." 491 B.R. at 72. That, at most, is what the Debtors have done in the Settlement Motion. *Residential Capital* only precluded the debtors from offering a narrow subset of evidence: "after having asserted the attorney-client privilege throughout discovery, the Debtors cannot now introduce the substance of whatever advice it sought and received." *Id.* The Debtors have not introduced the substance of the advice provided to their disinterested directors.

The core argument advanced by the TCC and FCR—that privileged advice and work product provided to the Debtors' disinterested directors is "at issue" because the business judgment rule applies to the Settlement Motion—is both wrong and contrary to the law, whether in the 9019 context or otherwise. *Martin* addresses both Rule 9019's procedural requirements and Section 363(b)'s substantive requirements. *Martin*, 91 F.3d at 394 n.2 ("Section 363 of the Code is the substantive provision requiring a hearing and court approval; Bankruptcy Rule 9019 sets forth the procedure for approving an agreement to settle or compromise a controversy."). If a debtor meets the *Martin* factors, the settlement should be approved.

The TCC and FCR confuse the *substantive evidence* to be considered under Section 363(b) and Rule 9019—that set forth under *Martin*—with the *standard of review* the Court applies in assessing that evidence. As *Washington Mutual* and similar cases make clear, there is no need for any debtor to place privileged information "at issue" to support the *Martin* factors. And even as to the standard of review itself, the Debtors need not put privileged advice "at issue" for the business judgment rule to apply. It applies by default. *See, e.g.*, *In re Immune Pharms.*, 635 B.R. 118, 122 (Bankr. D.N.J. 2021) ("[T]he court need only canvas the issues to determine whether the settlement falls above the 'lowest point in the range of reasonableness'; and under normal circumstances, the court should defer to the trustee's judgment so long as there is a legitimate business justification.").

It cannot be—and the TCC and FCR cite no supporting case—that all legal advice received in connection with a transaction subject to the business judgment rule, including most transactions outside of bankruptcy proceedings *and* most transactions requiring approval under Section 363(b) in bankruptcy proceedings, is always "at issue" because of the possibility that a plaintiff tries to disprove the applicability of the default business judgment rule.

The TCC and FCR remarkably contend that because the business judgment rule can be *rebutted*, they must be entitled to privileged information to attempt to make that showing. Ltr. at 5. Indeed, they argue that ***in every case*** involving the business judgment rule, potential rebuttal

65977/0001-48665199



The Honorable Michael B. Kaplan
October 21, 2024
Page 4

evidence "must [be] consider[ed]" and is "necessarily implicat[ed]"—exactly the opposite of a default presumption. *Id.* at 2, 5. Attempts by a party to *rebut* a presumption cannot waive its opponent's privilege. "A party does not lose the privilege ... when his or her state of mind is put in issue in the action." *Rhone-Poulenc*, 32 F.3d at 863–64. The *client* must assert the claim or defense creating the waiver by "disclosing or describing an attorney client communication." *Id.*

Thus, even if the TCC or FCR attempts to put the disinterested directors' "state of mind" at issue by advocating for a heightened standard of review, there is no waiver *by the Debtors*. To the contrary, courts recognize that evidence that directors received legal advice can support the reasonableness of their actions—without disclosing the substance of such advice or waiving privilege. *E.g.*, *Residential Capital*, 491 B.R. at 72 ("The attorney-client privilege is not waived if the Debtors argued that they sought the advice of counsel, among other actions, in an effort to reasonably educate themselves as to the merits of the settlement."); *In re Comverge, Inc. S'holder Litig.*, 2013 WL 1455827, at *3–4 (Del. Ch. Apr. 10, 2013) ("[T]he examination of privileged communications is not required for the truthful resolution of this litigation because the [defendant corporation and directors] merely seek to rely on the fact that they sought and obtained legal advice rather than that they relied on the substance of privileged communications to prove that the Board was fully informed. ... In that regard, a number of cases have held that it is the existence of legal advice that is material to the question of whether the board acted with due care, not the substance of that advice.").

The TCC and FCR cite no instance of a court compelling the production of privileged information provided to a debtor's decisionmakers in connection with approving a settlement under Rule 9019 (or any other use of estate property under Section 363(b)) in *any* circumstance—let alone simply because the business judgment rule applied. This is not surprising, as the TCC and FCR offer no limiting principle for their sweeping assertions. Under their argument, *any* decision made by a debtor under Section 363(b) or otherwise subject to the business judgment rule would inevitably put *any* legal advice the debtor received concerning the decision "at issue." That argument follows neither logic nor law and should be rejected.

The TCC and FCR repeatedly cite *In re Tribune Co.*, 2011 WL 386827 (Bankr. D. Del. Feb. 3, 2011). Ltr. at 4, 5–6. But *Tribune* only emphasizes how far afield their cited authority is both factually and legally. In *Tribune*, the requested documents were ***not*** internal attorney-client privileged advice and work product provided to the Debtors' decisionmakers: they were documents ***exchanged between counterparties*** to a settlement "regarding the parties' discussions concerning the merits of the [settled claims], specifically in connection with negotiations concerning the [potential plans]," which were being withheld based on assertions of common interest privilege and mediation protections. 2011 WL 386827, at *3. Here, the Debtors already produced to the TCC and FCR the documents concerning the negotiation of the Settlement Agreement and the parties' exchange of their positions. This includes not only all email communications concerning the negotiation of the Settlement Agreement, but also a June 19, 2024 presentation made by the Debtors to Berkshire, DB US, and Brenntag concerning the merits of claims subject to a potential settlement. Those same three parties also produced the counter-presentations each made to the Debtors on June 25, 2024. While the party moving to compel in *Tribune* did use a "sword and shield" argument, the settlement parties there made a compromise



The Honorable Michael B. Kaplan
October 21, 2024
Page 5

offer of production, which the court slightly adjusted. *Id.* at *7–9. Unsurprisingly, the compromise (including as adjusted) did not involve internal attorney-client privileged information and work product like what the TCC and FCR seek here. The court also noted that the compromise "allows discovery into the Mediation *process*, but protects the *substance* of the Mediation discussions." *Id.* at *8 (emphasis in original). Putting aside the obvious differences of the types of communications sought in *Tribune* from those sought here, the Debtors have drawn a similar line between describing *process* (including that it involved counsel) and *not* describing the *substance* of any legal advice or work product.

At bottom, regardless of the theory asserted, the Debtors have not put privileged information "at issue" or used privilege as a sword and shield. The Debtors have not disclosed (selectively or otherwise) any legal advice or work product that is the subject of the request to compel, and the Debtors will not do so at the hearing on the Settlement Motion. The TCC and FCR may disagree with the objective evidence of the relevant facts and legal arguments in the Settlement Motion, but they cannot pierce the Debtors' privileges to form those objections.

### *The "Fiduciary Exception" Is Inapplicable*

The TCC and FCR argue that "the 'fiduciary exception' doctrine likewise supports" piercing the Debtors' privilege. Ltr. at 6 n.4. This argument is relegated to a footnote for a reason: the exception has only been extended to limited requests for *historical* privileged information concerning *historical* transactions, and only upon a showing of "good cause" that the TCC and FCR do not even mention or attempt to meet. *Garner v. Wolfinbarger*, 430 F.2d 1093, 1104 (5th Cir. 1970) (factors in assessing "good cause" include "whether the communication related to past or prospective actions" and "whether the communication is of advice concerning the litigation itself"). The single case the TCC and FCR point to involved a request that was expressly limited to historical documents, and did not "target any communications that occurred after [the debtor's] bankruptcy." Memo. of Law ISO Mot. to Compel at 11, *Official Comm. of Asbestos Claimants of G-I Holdings, Inc. v. Heyman*, No. 01-cv-8539 (S.D.N.Y. Sept. 9, 2005), *available at* 2005 WL 8165367; *see generally Official Committee of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 342 B.R. 416 (S.D.N.Y. 2006). Here, of course, the TCC and FCR expressly target *only* privileged information created *after* the Debtors' bankruptcy filings. The fiduciary exception does not apply to such requests. *Cf. Asbestos Health Claimants' Committee v. Jasper Corp. (In re Celotex Corp.)*, 196 B.R. 596, 598–99, 600 n.3 (Bankr. M.D. Fla. 1996) (explaining that "fiduciary exception" was inapplicable to fact pattern "clearly distinguishable" from *Garner* where creditors' committees sought "documents [that] were prepared postpetition as relates to matters in the general bankruptcy case" by the "Debtor's financial consultants and counsel," including draft valuation analyses and legal memoranda "directly related to the [Veil Piercing Settlement Agreement] and confirmation").

### *The TCC And FCR Have No "Substantial Need" For Debtor Work Product, And Its "Substantial Equivalent" Is Available From Their Own Work Product*

A party may only obtain another party's non-opinion work product based on a showing that it "has substantial need for the materials to prepare its case and cannot, without undue



The Honorable Michael B. Kaplan
October 21, 2024
Page 6

hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(i). Any request for opinion work product "requires a heightened showing of extraordinary circumstances." *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 664 (3d Cir. 2003).

The TCC and FCR fail to articulate any reason why they have any need, let alone a "substantial need," for the Debtors' work product leading up to the Settlement Agreement and Settlement Motion. At best, they reference a purported need to "show whether or not the Directors were adequately informed." Ltr. at 7. But this is merely a reframing of their misguided "at issue" arguments. The TCC and FCR can readily test the Debtors' process by reviewing the Debtors' productions of documents concerning the negotiation of the Settlement Agreement and the privilege logs of communications with the disinterested directors, as well as deposing the disinterested directors. The TCC and FCR by their own admission have all they need to oppose the Settlement Motion because it does not meet the *Martin* factors—the actual evidentiary standard at issue—without any resort to Debtor work product. As the TCC and FCR have already stated multiple times, they have conducted their own investigation and reached their own conclusions about the estate causes of action being released. *Supra* at 2. There is no substantial need or undue hardship here.

Again, the TCC and FCR articulate no limiting principle to their argument that any time a transaction requiring bankruptcy court approval is subject to the business judgment presumption, creditors automatically have a "need" or "substantial need" to obtain underlying work product to shift the standard of review. The TCC and FCR cite *In re Quigley, Inc.*, 2009 WL 9034027 (Bankr. S.D.N.Y. Apr. 24, 2009), which did not hold that all creditor committees or future claimant representatives have a blanket "substantial need" for any debtor work product. Instead, it conducted an exhaustive, document-by-document review, many of which involved more complex assertions of common interest privilege and work product waiver based on the sharing of documents with non-debtors. *Id.* at *9–14. Here, the question is solely as to Debtor work product that is not the subject of any common interest assertion and was not shared with other parties.[4]

Moreover, whatever examples the TCC and FCR cite in distinguishable contexts, the caselaw the Debtors cite above is clear that waiving privilege and work product protections is *not* required to obtain approval of a settlement. *Supra* at 2. Indeed, requiring the unilateral disclosure of all debtor work product to obtain approval of a settlement would defeat the purpose behind encouraging settlements in bankruptcy proceedings, because "avoiding litigating the issues is one of the main advantages of settlement." *Immune Pharms.*, 635 B.R. at 122 (citing *In re NovaPro Holdings, LLC*, 815 F. App'x 655, 658 (3d Cir. 2020)).

\* \* \*

---

[4] Additionally, *Quigley* found that while "[i]t is hard to gauge whether the documents are essential or crucial" as required for obtaining work product, the committee there "should be entitled to the benefit of the doubt." 2009 WL 9034027, at *7. The *Quigley* court had no citation for this position, which is not supported by logic or the plain language of Rule 26(b)(3)(A)(i). It should not be followed here.

65977/0001-48665199



The Honorable Michael B. Kaplan
October 21, 2024
Page 7

      For these reasons, the Court should deny the TCC's and FCR's request for the privileged communications and work product that the Debtors provided to their disinterested directors.

                      Respectfully submitted,

/s/ *Michael D. Sirota*
**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email: msirota@coleschotz.com
       wusatine@coleschotz.com
       fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: joshua.sussberg@kirkland.com

-and-

Chad J. Husnick, P.C. (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: chad.husnick@kirkland.com

*Co-Counsel for Debtors*
*and Debtors in Possession*

65977/0001-48665199