**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com

-and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Chad J. Husnick, P.C. (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2400
chad.husnick@kirkland.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| WHITTAKER, CLARK & DANIELS, INC., *et al.*, | Case No. 23-13575 (MBK) |
| Debtors.[1] | (Jointly Administered) |

## CHAPTER 11 PLAN OF WHITTAKER, CLARK & DANIELS, INC. AND ITS DEBTOR AFFILIATES

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of the Debtors' federal tax identification numbers, are:  Whittaker, Clark & Daniels, Inc. (4760); Brilliant National Services, Inc. (2113); L. A. Terminals, Inc. (6800); and Soco West, Inc. (3400).  The location of the Debtors' principal place of business and the Debtors' service address in these Chapter 11 Cases is 100 First Stamford Place, Stamford, Connecticut 06902.

**TABLE OF CONTENTS**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND
GOVERNING LAW ...................................................................................................................1
    A.    Defined Terms ...................................................................................................1
    B.    Rules of Interpretation ....................................................................................13
    C.    Computation of Time ......................................................................................14
    D.    Governing Law ...............................................................................................14
    E.    Reference to Monetary Figures .......................................................................14
    F.    Reference to the Debtors or the Wind-Down Debtors .....................................14
    G.    Controlling Document......................................................................................14
    H.    Nonconsolidated Plan .....................................................................................15
    I.    Consultation, Information, Notice, and Consent Rights...................................15

ARTICLE II. ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, STATUTORY FEES, AND
ORDINARY COURSE EXPENSES...........................................................................................15
    A.    Administrative Claims .....................................................................................15
    B.    DIP Administrative Claims ..............................................................................15
    C.    Professional Fee Claims ..................................................................................16
    D.    Priority Tax Claims..........................................................................................17
    E.    Payment of Statutory Fees ..............................................................................17

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS...................17
    A.    Classification of Claims and Interests.............................................................17
    B.    Treatment of Claims and Interests ..................................................................18
    C.    Special Provision Governing Unimpaired Claims ...........................................25
    D.    Elimination of Vacant Classes ........................................................................25
    E.    Voting Classes, Presumed Acceptance by Non-Voting Classes ......................25
    F.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code .................25
    G.    Controversy Concerning Impairment...............................................................25
    H.    Subordinated Claims and Interests ..................................................................25

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN...........................................................25
    A.    Wind-Down Transactions ................................................................................25
    B.    Cancellation of Notes, Instruments, Certificates, and Other Documents.........26
    C.    General Settlement of Claims and Interests .....................................................26
    D.    Estate Claims Settlement .................................................................................26
    E.    Timing of Effective Date Transactions ...........................................................27
    F.    Payment of Other Claims ................................................................................27
    G.    Committee and Future Claimants' Representative Professional Fees...............27
    H.    Wind-Down Debtors .......................................................................................27
    I.    Plan Administrator ..........................................................................................28
    J.    Corporate Existence ........................................................................................28
    K.    Board of the Debtors .......................................................................................28
    L.    Vesting of Assets in the Wind-Down Debtors .................................................29
    M.    Corporate Action.............................................................................................29
    N.    Indemnification Obligations.............................................................................29
    O.    Section 1146 Exemption .................................................................................30
    P.    Director and Officer Liability Insurance .........................................................30
    Q.    Employee and Retiree Benefits .......................................................................30
    R.    Preservation of Certain Causes of Action .......................................................30
    S.    Dissolution, and Discharge of Duties, of Committee and Future Claimants'
        Representative...................................................................................................31
    T.    Insurance Neutrality........................................................................................31

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............32
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases .....32
    B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases........33

C.      Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ....................................33
D.      Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases ..........34
E.      Reservation of Rights ..........................................................................................................................34
F.      Contracts and Leases Entered into after the Petition Date ...............................................................34

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ..........................................................................35
A.      Distributions Generally .........................................................................................................................35
B.      Distributions on Account of Claims Allowed as of the Effective Date................................................35
C.      Rights and Powers of Disbursing Agent .............................................................................................35
D.      Delivery of Distributions and Undeliverable or Unclaimed Distributions .........................................35
E.      Manner of Payment ...............................................................................................................................37
F.      Indefeasible Distributions .....................................................................................................................37
G.      Compliance with Tax Requirements ....................................................................................................37
H.      Allocations .............................................................................................................................................37
I.      No Postpetition Interest on Claims......................................................................................................37
J.      Foreign Currency Exchange Rate .......................................................................................................37
K.      Setoffs and Recoupment ......................................................................................................................37
L.      Claims Paid or Payable by Third Parties ............................................................................................38

ARTICLE VII. THE PLAN ADMINISTRATOR, WIND-DOWN, AND POST-EFFECTIVE DATE TRUST
STRUCTURE ...........................................................................................................................................................38
A.      The Plan Administrator .........................................................................................................................38
B.      Wind-Down.............................................................................................................................................40
C.      Transfers of Property to the GUC Trust, Environmental Remediation Trust, and Tort
        Claims Trust ...........................................................................................................................................40
D.      GUC Trust..............................................................................................................................................41
E.      Environmental Remediation Trust. ......................................................................................................43
F.      Tort Claims Trust. ..................................................................................................................................44
G.      Indemnification, Insurance & Liability Limitation ..............................................................................44
H.      Tax Returns ...........................................................................................................................................45
I.      Dissolution of the Wind-Down Debtors...............................................................................................45
J.      Budget and Reporting ...........................................................................................................................45

ARTICLE VIII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED
CLAIMS ....................................................................................................................................................................45
A.      Allowance of Claims..............................................................................................................................45
B.      Claims Administration Responsibilities................................................................................................45
C.      Estimation of Claims .............................................................................................................................45
D.      Adjustment to Claims Without Objection .............................................................................................46
E.      Time to File Objections to Claims ........................................................................................................46
F.      Disallowance of Claims or Interests.....................................................................................................46
G.      Amendments to Claims .........................................................................................................................46
H.      No Distributions Pending Allowance....................................................................................................46
I.      Distributions After Allowance ...............................................................................................................47
J.      Special Rules for Distributions to Holders of Disputed Claims...........................................................47
K.      Special Rules for Environmental Claims, Indirect Environmental Claims, Tort Claims,
        and GUC Claims.....................................................................................................................................47

ARTICLE IX. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS .............................47
A.      Satisfaction of Claims and Termination of Interests ..........................................................................47
**B.      Injunction against Enforcement of Claims** ......................................................................................48
**C.      Releases by the Debtors** .....................................................................................................................48
**D.      Exculpation** ..........................................................................................................................................49
**E.      Injunction**.............................................................................................................................................49
F.      Protections Against Discriminatory Treatment ...................................................................................50
G.      Document Retention .............................................................................................................................50
H.      Reimbursement or Contribution...........................................................................................................50

ARTICLE X. CONDITIONS PRECEDENT TO CONSUMMATION OF THIS PLAN ......................................51
    A.    Conditions Precedent to the Effective Date ...........................................................51
    B.    Waiver of Conditions ..............................................................................................51
    C.    Effect of Failure of Conditions ..............................................................................51
    D.    Substantial Consummation ......................................................................................51

ARTICLE XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THIS PLAN ......................51
    A.    Modification and Amendments ...............................................................................51
    B.    Effect of Confirmation on Modifications ...............................................................52
    C.    Revocation or Withdrawal of Plan .........................................................................52

ARTICLE XII. RETENTION OF JURISDICTION ................................................................................52
    A.    Retention of Jurisdiction .........................................................................................52
    B.    Post-Confirmation Modification of Plan ................................................................54
    C.    Consent to Jurisdiction ...........................................................................................55

ARTICLE XIII. MISCELLANEOUS PROVISIONS ..............................................................................55
    A.    Immediate Binding Effect .......................................................................................55
    B.    Additional Documents .............................................................................................55
    C.    Reservation of Rights ..............................................................................................55
    D.    Successors and Assigns ...........................................................................................55
    E.    Notices .....................................................................................................................55
    F.    Term of Injunctions or Stays ..................................................................................57
    G.    Entire Agreement ....................................................................................................57
    H.    Plan Supplement .....................................................................................................58
    I.    Nonseverability of Plan Provisions ........................................................................58
    J.    Votes Solicited in Good Faith .................................................................................58
    K.    Closing of Chapter 11 Cases ...................................................................................58
    L.    Waiver or Estoppel ..................................................................................................58

## INTRODUCTION

Whittaker, Clark & Daniels, Inc. and its debtor affiliates (collectively, the "Debtors") propose this chapter 11 plan (as amended, supplemented, or otherwise modified from time to time, this "Plan") for the resolution of outstanding Claims against, and Interests in, the Debtors pursuant to chapter 11 of the Bankruptcy Code.  The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

Reference is made to the accompanying *Disclosure Statement for the Chapter 11 Plan of Whittaker, Clark & Daniels, Inc. and Its Debtor Affiliates* (the "Disclosure Statement"), to which Holders of Claims and Interests may refer for a discussion of the Debtors' history, businesses, assets, historical financial information, risk factors, a summary and description of the Plan, and certain related matters.

ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

A.    *Defined Terms*

As used in this Plan, capitalized terms have the meanings set forth below.

1.    "*Administrative Claim*" means a Claim for costs or expenses of administration of the Chapter 11 Cases pursuant to sections 327, 328, 330, 365, 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estates and operating the business of the Debtors incurred on or after the Petition Date and through the Effective Date; (b) Allowed Professional Fee Claims; and (c) all fees and charges assessed against the Estates under chapter 123 of the Judicial Code.

2.    "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Claims, which shall be (a) thirty days after the Effective Date for Administrative Claims other than Professional Fee Claims and (b) forty-five days after the Confirmation Date for Professional Fee Claims.

3.    "*Administrative Fee Order*" means the *Administrative Fee Order Establishing Procedures for the Allowance and Payment of Interim Compensation and Reimbursement of Expenses of Professionals Retained by Order of this Court* [Docket No. 176] (as amended, modified, or supplemented from time to time in accordance with the terms thereof).

4.    "*Adversary Proceeding*" means the adversary proceeding the Debtors initiated against Brenntag AG and other defendants under the caption *Whittaker, Clark & Daniels, Inc. v. Brenntag AG*, Adv. Proc. No. 23-01245 (MBK).

5.    "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.  With respect to any Entity that is not a Debtor, the term "Affiliate" shall apply to such Entity as if the Entity were a Debtor.

6.    "*Allowed*" means, with respect to any Claim or Interest, except as otherwise provided herein:  (a) a Claim or Interest that is evidenced by a Proof of Claim timely Filed by the Bar Date or a request for payment of Administrative Claim timely Filed by the Administrative Claims Bar Date (or for which Claim or Interest under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court a Proof of Claim or a request for payment of Administrative Claim is not or shall not be required to be Filed); (b) a Claim or Interest that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed; (c) a Claim or Interest Allowed pursuant to the Plan, any stipulation approved by the Bankruptcy Court, any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan or a Final Order of the Bankruptcy Court.  A Claim or Interest that has been Disallowed pursuant to a Final Order shall not be an "Allowed" Claim.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy

Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the Debtors.  A Proof of Claim Filed after and subject to the Bar Date or a request for payment of an Administrative Claim Filed after and subject to the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim or Interest.  "Allow" and "Allowing" shall have correlative meanings.

7.  "*Assigned Environmental Insurance Rights*" means Assigned Insurance Rights on account of Environmental Claims.

8.  "*Assigned GUC Insurance Rights*" means the Assigned Insurance Rights on account of General Unsecured Claims.

9.  "*Assigned Tort Claim Insurance Rights*" means the Assigned Insurance Rights on account of Tort Claims.

10.  "*Assigned Insurance Rights*" means, collectively, any and all rights, titles, privileges, interests, claims, demands or entitlements, as well as obligations of the Debtors and/or any Holder of Claims to any and all proceeds, payments, benefits, Causes of Action, choses in action, defense, or indemnity arising under, or attributable to, any and all Insurance Contracts, now existing or hereafter arising, accrued, or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, including those arising under or attributable to any and all commercial general liability policies, punitive damages policies, products liability policies, life sciences policies, D&O Liability Insurance Policies, and any of the Debtors' rights under any third parties' policies.  For the avoidance of doubt, this definition is not intended to alter the Debtors' (including the Debtors' assignees') or any Insurers' rights under any Insurance Contract or applicable Law.

11.  "*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination, or other Claims and Causes of Action, actions, or remedies that may be brought by, or on behalf of, the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy Law, including Claims, Causes of Action, actions, or remedies arising under sections 502, 510, 541, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common Law, including fraudulent transfer Laws.

12.  "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as in effect on the Confirmation Date.

13.  "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of New Jersey presiding over the Chapter 11 Cases, or any other court having jurisdiction over the Chapter 11 Cases, including to the extent of the withdrawal of reference under the Judicial Code, the United States District Court for the District of New Jersey.

14.  "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, each, as in effect on the Confirmation Date.

15.  "*Bar Date*" means, with respect to any particular Claim, the applicable date set by the Bankruptcy Court as the deadline for Filing a Proof of Claim against a Debtor in these Chapter 11 Cases.

16.  "*Brenntag*" means, collectively, Brenntag Canada, Inc., Brenntag Great Lakes, LLC, Brenntag Mid-South, Inc., Brenntag North America, Inc., Brenntag Northeast, LLC, Brenntag Pacific, Inc., Brenntag Southwest, Inc., Brenntag Specialties, LLC (f/k/a Brenntag Specialties, Inc., and as Mineral and Pigment Solutions, Inc.), and Coastal Chemical Co., LLC.

17.  "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

18.  "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

2

19.  "*Cause of Action*" means, collectively, any and all claims, interests, controversies, actions, proceedings, reimbursement claims, contribution claims, recoupment rights, debts, obligations, third-party claims, indemnity claims, damages (including claims for or award of costs and/or expenses, court costs and attorneys' fees), losses, remedies, causes of action, demands, rights, lawsuits, suits, litigation, arbitration, legal proceeding, obligations, liabilities, accounts, judgments, defenses, offsets, powers, privileges, licenses, franchises, guaranties, Avoidance Actions, agreements, counterclaims, and cross-claims, of any kind or character whatsoever, whether known or unknown or hereafter discovered, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, asserted or unasserted, direct or indirect, assertable directly or derivatively, choate or inchoate, reduced to judgment or otherwise, secured or unsecured, whether arising before, on, or after the Petition Date, in tort, Law, equity, or otherwise pursuant to any theory of civil Law (whether local, state, or federal U.S. Law or non-U.S. Law). Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by Law or in equity; (b) any Claim (whether under local, state, federal U.S. Law or non-U.S. civil Law) based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, fraudulent transfer or fraudulent conveyance or voidable transaction Law, violation of local, state, or federal non-U.S. Law or breach of any duty imposed by Law or in equity, including securities Laws, negligence, and gross negligence; (c) the right to object to or otherwise contest Claims or interests; (d) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; and (e) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

20.  "*Chapter 11 Cases*" means when used with reference (a) to a particular Debtor, the case pending for that Debtor in the Bankruptcy Court under chapter 11 of the Bankruptcy Code, and (b) to all Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court under Case No. 23-13575 (MBK) pursuant to the *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 72].

21.  "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against a Debtor.

22.  "*Claims Register*" means the official register of Claims maintained by the Notice and Claims Agent.

23.  "*Class*" means a class of Claims or Interests as set forth in **Article III** of the Plan pursuant to section 1122 of the Bankruptcy Code.

24.  "*CM/ECF*" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

25.  "*Committee*" means the official committee of talc claimants appointed by the U.S. Trustee on May 24, 2023 [Docket No. 121], the membership of which may be reconstituted from time to time.

26.  "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

27.  "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

28.  "*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court and/or the District Court pursuant to section 1128 of the Bankruptcy Code to consider Confirmation of the Plan, as such hearing(s) may be adjourned or continued from time to time.

29.  "*Confirmation Order*" means an order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code which order shall be reasonably acceptable to NICO.

30.  "*Contributed Trust Consideration*" means, collectively, the GUC Trust Assets, Environmental Remediation Trust Assets, and Tort Claims Trust Assets.

31.  "*Consummation*" means the occurrence of the Effective Date.

32.  "*Convenience Claim*" means any General Unsecured Claim, Tort Claim, or Environmental Claim valued greater than a minimum Distribution threshold ($100) but less than the Convenience Claim Threshold; *provided that*

Holders of General Unsecured Claims, Tort Claims, and Environmental Claims whose Claims exceed the Convenience Claim Threshold may irrevocably elect to have their Claims reduced to the Convenience Claim Threshold and treated as Convenience Claims.

33. "*Convenience Claim Election*" means the election, through a General Unsecured Claim Ballot, Environmental Claim Ballot, or Tort Claim Ballot, as applicable, in accordance with the procedures set forth in the Disclosure Statement Order, pursuant to which Holders of General Unsecured Claims, Environmental Claims, or Tort Claims, as applicable, whose claims exceed the Convenience Claim Threshold will be offered an opportunity to irrevocably elect to have their Claims reduced to the Convenience Claim Threshold and treated as Convenience Claims.

34. "*Convenience Claim Threshold*" means $[●].

35. "*Convenience Class*" means Class B4, C4, D4, and E4 Claims after giving effect to any Convenience Claim Elections.

36. "*Cure*" means all amounts, including an amount of $0, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) that is to be assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

37. "*D&O Liability Insurance Policies*" means all insurance policies (including any "tail policy") issued or providing coverage at any time to any of the Debtors, any of their predecessors, and/or any of their current or former subsidiaries for current or former directors', managers', officers', and/or employees' liability and all agreements, documents, or instruments relating thereto.

38. "*DB US Holding*" means DB US Holding Corporation (f/k/a Stinnes Corporation).

39. "*Debtors*" shall have the meaning set forth in the preamble.

40. "*Debtor Intercompany Claim*" means any Claim held by a Debtor against another Debtor.

41. "*Debtor Interests*" means all Interests in the Debtors outstanding immediately prior to the Effective Date.

42. "*Debtor Sites*" means any property, facility, or building owned, leased, operated, or otherwise used by any Debtor prior to the Confirmation Date in connection with its historical business operations.

43. "*DIP Agreement*" means that certain Senior Secured Debtor-in-Possession Credit Agreement, dated October, 2024, between Brilliant National Services, Inc., as Borrower, and National Indemnity Company, as Lender.

44. "*DIP Claim*" means all Claims against any Debtor with respect to any DIP Obligations, as defined in the DIP Order, which shall be superpriority administrative expense claims against each of the Debtors' estate with priority over all other Administrative Claims, secured by perfected first priority liens on all assets of the Debtors.

45. "*DIP Order*" means the *Order (I) Authorizing the Debtors to Obtain Postpetition Secured Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* (as amended, modified, or supplemented from time to time in accordance with the terms thereof), entered by the Bankruptcy Court on October 15, 2024 [Docket No. 1410].

46. "*DIP Termination Event*" means the occurrence of a termination event pursuant to paragraph 4 of the Settlement Agreement.

47. "*Disallowed*" means, when used with respect to any Claim, a Claim that:  (a) is denied, dismissed, expunged, overruled, or disallowed in whole or in part (but solely to the extent of such disallowance) by Final Order; (b) is (i) Scheduled as zero or as contingent, disputed, or unliquidated or (ii) is not Scheduled, and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with

the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable Law or the Plan; or (c) has been withdrawn by the Holder thereof.

48. "*Disbursing Agent*" means the applicable Entity selected by the Debtors or the Wind-Down Debtors to make or facilitate Distributions pursuant to the Plan, Plan Supplement, and Wind-Down Documents, including, for the avoidance of doubt, the Plan Administrator, the Environmental Remediation Trustee, the GUC Trustee, and the Tort Claims Trustee.

49. "*Disclosure Statement*" means the disclosure statement for the Plan, including all exhibits and schedules thereto, in each case, as may be amended, supplemented, or modified from time to time, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable Law, to be approved pursuant to the Disclosure Statement Order.

50. "*Disclosure Statement Order*" means the order (and all exhibits thereto), entered by the Bankruptcy Court approving, among other things, the Disclosure Statement and the Solicitation Materials, and allowing solicitation of the Plan to commence, entered on [●] [Docket No. [●]] (as amended, modified, or supplemented from time to time in accordance with the terms thereof).

51. "*Disputed*" means, as to a Claim or an Interest, any Claim or Interest (or portion thereof): (a) that is not Allowed; (b) that is not Disallowed by the Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has Filed a Proof of Claim or otherwise made a written request to a Debtor for payment, without any further notice to—or action, order, or approval of—the Bankruptcy Court.

52. "*Distribution*" means any (a) Cash, (b) property, or (c) interest in property to be paid or distributed hereunder to the Holders of Allowed Claims on account of such Claims.

53. "*Distribution Record Date*" means the date for determining which Holder of Claims are eligible to receive a Distribution under the Plan on account of an Allowed Claim, which date shall be the later of (a) the Confirmation Date and (b) the Bar Date.

54. "*District Court*" means the United States District Court for the District of New Jersey.

55. "*Effective Date*" means the date on which (a) no stay of the Confirmation Order is in effect, (b) all conditions precedent to the occurrence of the Effective Date set forth in **Article X.A** of the Plan have been satisfied or waived in accordance with **Article X.B** of the Plan, and (c) the Plan is declared effective.

56. "*Encumbrance*" means, with respect to any asset, any mortgage, Lien, pledge, charge, security interest, assignment, or encumbrance of any kind or nature in respect of such asset (including any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable Law of any jurisdiction).

57. "*Entity*" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

58. "*Environmental Claim*" means any Claim or Cause of Action against a Debtor asserted by any Government Environmental Unit, and other civil responsibilities, obligations or liabilities with respect to sites relating to or arising under the Comprehensive Environmental Response, Compensation, and Liability Act, Resource Conservation and Recovery Act, or any other Environmental Laws, including Claims for restoration, corrective action, or remediation of environmental or natural resource conditions.

59. "*Environmental Law*" means, whenever in effect, all federal, tribal, state, and local states, regulations, ordinances, and similar provisions having the force or effect of law; all judicial and administrative orders and determinations and all common law concerning public health and safety, worker health and safety, pollution or protection of the environment, including the Atomic Energy Act, CERCLA, the Clean Water Act, the Clean Air Act, the Emergency Planning and Community Right-to-Know Act, the Federal Insecticide, Fungicide, and Rodenticide Act, the RCRA, the Safe Drinking Water Act, the Toxic Substances Control Act, and any tribal, state, or local equivalents.

60.  "*Environmental Remediation Trust*" means the trust to be established by the Debtors on the Effective Date, to which the Debtors or Wind-Down Debtors, as applicable, will contribute the Environmental Remediation Trust Assets and which will be governed by the Environmental Remediation Trust Agreement.

61.  "*Environmental Remediation Trust Agreement*" means the governing document for the Environmental Remediation Trust, to be Filed with the Plan Supplement.

62.  "*Environmental Remediation Trust Assets*" means (a) the Assigned Environmental Insurance Rights and (b) an allocation of the Settlement Proceeds.

63.  "*Environmental Remediation Trustee*" means the trustee or trustees to be appointed by the Debtors, who will administer the Environmental Remediation Trust.

64.  "*Environmental Remediation Trust Operating Expenses*" means any and all costs, expenses, fees, taxes, disbursements, debts, or obligations incurred from the operation and administration of the Environmental Remediation Trust, which shall be paid from the Environmental Remediation Trust Assets.

65.  "*Environmental Remediation Operating Reserve*" means a reserve in the Environmental Remediation Trust to be established and funded from time to time to pay Environmental Remediation Trust Operating Expenses. The Environmental Remediation Trust Operating Reserves shall be (a) funded on the Effective Date with a portion of the Environmental Remediation Trust Assets in an amount determined by the Environmental Remediation Trustee with the consent (not to be unreasonably withheld, delayed, or conditioned) of the Debtors, (b) funded thereafter from time to time from the Environmental Remediation Trust Assets, and (c) held by the Environmental Remediation Trust in segregated accounts and administered by the Environmental Remediation Trustee on and after the Effective Date.

66.  "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

67.  "*Estate Causes of Action*" means any and all actions, Claims, rights, remedies, defenses, counterclaims, suits, and Causes of Action (a) owned or held, or assertable by or on behalf of any Debtor or its Estate (including, without limitation, claims assertable by the Tort Claimants' Committee or FCR, or by any other creditors, on behalf of any Debtor or its Estate), (b) that constitute property of the Estates under section 541 of the Bankruptcy Code, (c) that are or may be commenced or pursued by a representative of the Debtors or the Estates, including pursuant to sections 323 or 362 of the Bankruptcy Code or chapter 5 of the Bankruptcy Code, (d) to avoid, invalidate or recover any transfer of any kind made by any Debtor, or any obligation of any Debtor, including under chapter 5 of the Bankruptcy Code or other applicable law, (e) that constitute Successor Liability Claims, or (f) otherwise assertable by any Debtor or its Estate under any federal, state, or other applicable law seeking to establish a non-Debtor's liability for existing or future Tort Claims, Environmental Claims, Indirect Environmental Claims, or other Claims against the Debtors; in all cases, however denominated and whether or not asserted, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction.

68.  "*Estate Claims Settlement*" means the settlement by and among the Debtors and the Settlement Parties, the proceeds of which shall be used to fund the Professional Fee Amount, Reserve Funds, Contributed Trust Consideration, and Distributions.

69.  "*Estate Claims Settlement Agreement*" means that certain Settlement Agreement attached as <u>Exhibit 1</u> to the Estate Claims Settlement Order.

70.  "*Estate Claims Settlement Effective Date*" shall have the meaning ascribed to "Effective Date" in the Estate Claims Settlement Agreement.

71.  "*Estate Claims Settlement Order*" means the *Order (I) Approving the Settlement Agreement Between the Debtors and the Contributing Parties, (II) Authorizing the Debtors to Perform All of Their Obligations Thereunder, and (III) Granting Related Relief* (as amended, modified, or supplemented from time to time in accordance with the terms thereof), entered by the Bankruptcy Court on [●], [2024] [Docket No. [●]].

72. "*Exculpated Parties*" means collectively, and in each case solely in its capacity as such:  (a) the Debtors; (b) the Wind-Down Debtors; (c) the Committee and each of its members; (d) the Future Claimants' Representative; and (e) with respect to each of the foregoing Entities in clauses (a) through (d), each such Entity's Related Parties (with respect to clause (e), each solely in their capacity as a fiduciary to the Debtors and their Estates).

73. "*Executory Contract*" means a contract to which any Debtor is a party and that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

74. "*Federal Judgment Rate*" means the federal judgment rate specified by 28 U.S.C. § 1961 in effect as of the Petition Date.

75. "*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court or, with respect to the filing of a Proof of Claim, the Notice and Claims Agent.

76. "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken or filed, or as to which any appeal that has been taken or any petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice; provided that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure or any comparable Bankruptcy Rule may be filed relating to such order or judgment shall not cause such order or judgment to not be a Final Order.

77. "*Future Claimants' Representative*" means the Honorable Shelley C. Chapman, retired Bankruptcy Judge for the United States Bankruptcy Court for the Southern District of New York (or any court-appointed alternative or successor), in her capacity as the court-appointed legal representative for all future Holders of Tort Claims pursuant to section 524(g) of the Bankruptcy Code.

78. "*General Unsecured Claim*" means any unsecured Claim against any of the Debtors that is not:  (a) paid in full prior to the Plan Effective Date pursuant to an order of the Bankruptcy Court; (b) a DIP Claim; (c) an Administrative Claim; (d) a Tort Claim; (e) an Environmental Claim; or (f) an Indirect Environmental Claim.

79. "*GUC Trust*" means the trust to be established by the Debtors on the Effective Date, to which the Debtors will contribute the GUC Trust Assets and which will be governed by the GUC Trust Agreement.

80. "*GUC Trust Agreement*" means the governing document for the GUC Trust, to be Filed with the Plan Supplement.

81. "*GUC Trust Assets*" means (a) the Assigned GUC Insurance Rights and (b) an allocation of the Settlement Proceeds.

82. "*GUC Trustee*" means the trustee or trustees to be appointed by the Debtors, who will administer the GUC Trust.

83. "*GUC Trust Operating Expenses*" means any and all costs, expenses, fees, taxes, disbursements, debts, or obligations incurred from the operation and administration of the GUC Trust, which shall be paid from the GUC Trust Assets.

84. "*GUC Trust Operating Reserve*" means a reserve in the GUC Trust to be established and funded from time to time to pay GUC Trust Operating Expenses.  The GUC Trust Operating Reserves shall be (a) funded on the Effective Date with a portion of the GUC Trust Assets in an amount determined by the GUC Trustee with the consent (not to be unreasonably withheld, delayed, or conditioned) of the Debtors, (b) funded thereafter from time to time from the GUC Trust Assets, and (c) held by the GUC Trust in segregated accounts and administered by the GUC Trustee on and after the Effective Date.

85. "*Government Environmental Unit*" means any and all Federal, state, local, or tribal Governmental Units asserting Claims or having regulatory authority or responsibilities with respect to Environmental Laws.

86. "*Governmental Unit*" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

87. "*Holder*" means any Entity holding a Claim against or an Interest in the Debtors, as applicable.

88. "*Indirect Environmental Claims*" means a Claim held by a private party for breach of contract, indemnification, contribution, reimbursement, or cost recovery related to environmental monitoring or remediation, including Claims for contribution, personal injury, property damage, or direct costs under any Environmental Law.

89. "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

90. "*Insurance Contracts*" means any and all insurance policies or agreements providing coverage at any time to, or that otherwise may provide or may have provided insurance coverage to, any of the Debtors, regardless of whether the insurance policies were issued to a Debtor or to a Debtor's subsidiaries, or to any of their Predecessors-in-Interest, successors (other than Brenntag), or assigns, and any and all agreements, documents, or instruments related thereto.

91. "*Insurer*" means any company or other Entity that issued or entered into an Insurance Contract (including any third-party administrator) and any respective predecessors and/or affiliates thereof.

92. "*Intercompany Claims*" means, collectively:   (a) Debtor Intercompany Claims and (b) Non-Debtor Intercompany Claims.

93. "*Interest*" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in the Debtors and any other rights, options, warrants, rights, restricted stock awards, performance share awards, performance share units, stock appreciation rights, phantom stock rights, stock-settled restricted stock units, cash-settled restricted stock units, or other securities or agreements to acquire the common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of the Debtors (whether or not arising under or in connection with any employment agreement, separation agreement, or employee incentive plan or program of the Debtors as of the Petition Date and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or similar security).

94. "*Internal Revenue Code*" means the Internal Revenue Code of 1986, as amended from time to time.

95. "*IRS*" means the Internal Revenue Service of the United States of America.

96. "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as amended from time to time.

97. "*Judgment*" means a final judicial determination or arbitration award.

98. "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

99. "*Lien*" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

100. "*Motion to Dismiss Denial Order*" means the *Order Denying Motion to Dismiss* [Docket No. 211], entered by the Bankruptcy Court.

101. "*NICO*" means, collectively, Berkshire Hathaway Inc., BH Columbia Inc., Columbia Insurance Company, National Indemnity Company, Resolute Management, Inc., Ringwalt & Liesche Co., and National Liability & Fire Insurance Company.

102. "*Non-Debtor Intercompany Claim*" means any Claim (including Claims related to setoff rights) held against a Debtor by NICO or NICO's Related Parties, including from an agreement with NICO or a delegation of authority by a Debtor to NICO or a NICO Related Party.

103. "*Notice and Claims Agent*" means Stretto, Inc., the notice, claims, and solicitation agent and administrative advisor retained by the Debtors in the Chapter 11 Cases pursuant to the *Order Authorizing Retention and Appointment of Stretto, Inc. as Claims and Noticing Agent* [Docket No. 71] and the *Order Authorizing the Debtors' Employment and Retention of Stretto Inc. as Administrative Advisor Effective as of the Petition Date* [Docket No. 228], entered by the Bankruptcy Court.

104. "*Ordinary Course Professional Order*" means the *Order Granting Debtors' Motion for Entry of an Order Authorizing Employment and Payment of Professionals Utilized in the Ordinary Course of Business* [Docket No. 294] (as amended, modified, or supplemented from time to time in accordance with the terms thereof), entered by the Bankruptcy Court.

105. "*Other Sites*" means sites not owned by any Debtor as of the Petition Date and to be identified, as and if applicable, in (a) the Other Sites exhibit attached, as applicable, to any settlement agreement entered into with respect to Environmental Claims and Indirect Environmental Claims or (b) the Plan Supplement.

106. "*Owned Site*" means the real property owned by the Debtors at 1353 Taylor Place, Billings, MT 59101, which shall be deemed abandoned upon the Effective Date pursuant to section 554 of the Bankruptcy Code.

107. "*Person*" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

108. "*Petition Date*" means April 26, 2023, the date on which the Debtors commenced the Chapter 11 Cases.

109. "*Plan*" means this plan, as it may be amended or supplemented from time to time, including all exhibits, schedules, supplements, appendices, annexes, and attachments thereto.

110. "*Plan Administrator*" means the person, selected by the Debtors, to administer the Wind-Down Debtors. For the avoidance of doubt, all costs, liabilities, and expenses reasonably incurred by the Plan Administrator, and any personnel employed by the Plan Administrator in the performance of the Plan Administrator's duties, shall be paid in accordance with the Wind-Down Budget.  The identity of the Plan Administrator shall be disclosed in the Plan Supplement.

111. "*Plan Administrator Agreement*" means the agreement that governs the powers, duties, and responsibilities of the Plan Administrator, consistent with this Plan and Filed as part of the Plan Supplement.

112. "*Plan Documents*" means, collectively, (a) this Plan, (b) the Disclosure Statement, (c) all of the exhibits attached to this Plan and the Disclosure Statement, (d) the Plan Supplement and all documents and agreements contained therein, and (e) any other document necessary to implement this Plan.

113. "*Plan Proponents*" means, collectively, the Debtors.

114. "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to initially be Filed by the Debtors no later than seven days before the deadline set by the Disclosure Statement Order to object to the Plan or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, including, without limitation, the following, as and if applicable:  (a) the Schedule of Assumed Executory Contracts and Unexpired Leases (if applicable); (b) the identity and terms of any documentation establishing the rights, obligations, and compensation of the Plan Administrator; (c) the Environmental Remediation Trust Agreement; (d) the GUC Trust Agreement; (e) the Tort Claims Trust Agreement; (f) the Tort Claims Trust Distribution Procedures; (g) identification of the Other Sites; (h) the Wind-Down Budget; (i) the Wind-Down Transactions Memorandum; and (j) any other necessary documentation related to the Wind-Down in accordance with **Article IV** of the Plan. The Debtors shall have the right to alter, amend, modify, or supplement the documents contained in the Plan Supplement up to the Effective Date as set forth in the Plan.  The Plan Supplement shall be deemed incorporated into

and part of the Plan as if set forth herein in full; *provided* that in the event of a conflict between the Plan and the Plan Supplement, the Plan Supplement shall control in accordance with **Article I.G**.

115. "*Predecessors-in-Interest*" means: (a) with respect to (i) Debtor Brilliant National Services, Inc., (A) Stinnes Oil & Chemical, (B) Eastech Chemical Inc., (C) Soco Chemical Inc., (D) Brenntag Inc.; and (ii) Debtor Soco West, Inc., (A) A.J. Lynch Co., (B) Western Chemical & Manufacturing Co., (C) Dyce Chemical Inc., (D) Crown Chemical Corp., (E) Holchem Inc., and (F) Brenntag West, Inc.; and (b) any other prior Affiliate of the Debtors that was dissolved, cancelled, or otherwise wound-down prior to the Petition Date.

116. "*Priority Claim*" means any claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

117. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

118. "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

119. "*Professional*" means an Entity: (a) employed in the Chapter 11 Cases pursuant to a Bankruptcy Court order in accordance with sections 327, 328, 363, or 1102 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

120. "*Professional Fee Claim*" means any Claim by a Professional for compensation for services rendered or reimbursement of expenses incurred by such Professionals through and including the Confirmation Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court. To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

121. "*Professional Fee Escrow Account*" means an account funded by the Debtors with Cash on or before the Effective Date in an amount equal to the total estimated Professional Fee Amount.

122. "*Professional Fee Escrow Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Confirmation Date, which estimates Professionals shall deliver to the Debtors—or the Debtors shall otherwise make such estimates—as set forth in **Article II.C.3** of the Plan.

123. "*Proof of Claim*" means a proof of Claim Filed against the Debtors in the Chapter 11 Cases.

124. "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to a Claim or Interest, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

125. "*Related Party*" means, collectively, with respect to an Entity, (a) such Entity's current and former Affiliates and (b) such Entity's and such Entity's current and former Affiliates' directors, managers, officers, shareholders, equity Holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by operation of Law or otherwise), subsidiaries, current, former, and future associated entities, managed or advised entities, accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors, fiduciaries, trustees, employees, agents (including any Disbursing Agent), advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, other Representatives, and other Professionals, Representatives, advisors, predecessors, successors, and assigns, each solely in their capacities as such (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), and the respective heirs, executors, estates, servants, and nominees of the foregoing.

10

126. "*Released Claims*" means any Claims or Interests (other than DIP Claims) that have been released, satisfied, stayed, terminated, or are subject to compromise and settlement pursuant to the Plan.

127. "*Released Parties*" means, collectively, and in each case solely in its capacity as such:  (a) the Debtors; (b) the Wind-Down Debtors; (c) the Settlement Parties; and (d) each Related Party of each Entity in clauses (a) through (c).

128. "*Representatives*" means with respect to any Person, such Person's (a) predecessors, permitted assigns, subsidiaries, and controlled affiliates; (b) current and former officers, directors, and managers, principals, members, shareholders, limited partners, employees, financial advisors, attorneys, accountants, investment bankers, consultants, experts, and other professionals; and (c) respective heirs, executors, and estates, in each case solely in their capacity as such.

129. "*Reserve Funds*" shall have the meaning ascribed to such term in **Article IV.F** herein.

130. "*Retained Causes of Action*" means any Cause of Action that shall vest in the Wind-Down Debtors on the Effective Date, which, for the avoidance of doubt, shall not include any of the Causes of Action that are settled, released, or exculpated under the Plan or the Estate Claims Settlement Order, whether pursuant to the Estate Claims Settlement or otherwise.

131. "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule (including any amendments, supplements, or modifications thereto) of Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan, which schedule shall, if applicable, be included in the Plan Supplement.

132. "*Schedule of Proposed Cure Amounts*" means any schedule (including any amendments, supplements, or modifications thereto) of the Debtors' proposed Cure amounts (if any) with respect to each of the Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan.

133. "*Schedules*" means, collectively, the schedules of assets and liabilities and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

134. "*SEC*" means the United States Securities and Exchange Commission.

135. "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, together with the rules and regulations promulgated thereunder, as amended from time to time, or any similar federal, state, or local Law.

136. "*Security*" means any security, as defined in section 2(a)(1) of the Securities Act.

137. "*Settlement Parties*" means, collectively, NICO, Brenntag, and DB US Holding.

138. "*Settlement Proceeds*" means all Cash proceeds generated from the Estate Claims Settlement, *less* (a) the Professional Fee Amount required to be funded into the Professional Fee Escrow Account on or prior to the Effective Date and (b) the Reserve Funds.

139. "*Solicitation Materials*" means, collectively, the solicitation materials with respect to the Plan.

140. "*Successor Liability Claims*" shall have the meaning ascribed to such term in the Debtors' motion for summary judgment in the Adversary Proceeding [Adv. Proc. Docket No. 3].

141. "*Successor Liability Claims Order*" means the *Order Granting Summary Judgment in Favor of the Debtors on Counts I and IV of the Complaint* in the Adversary Proceeding [Adv. Proc. Docket No. 292].

142. "*Tort Claim*" means any Claim or Cause of Action against a Debtor whether known or unknown, manifested or unmanifested, for costs or damages, including with respect to any manner of alleged bodily injury,

11

death, sickness, disease, emotional distress, fear of cancer, medical monitoring, or other personal injuries (whether physical, emotional or otherwise), directly or indirectly arising out of or in any way relating to the presence of or exposure to asbestos, talc, asbestiform minerals or any other chemical compound, or asbestos-, talc-, asbestiform- or any other chemical compound containing products caused or allegedly caused by, based on or allegedly based on, arising or allegedly arising from, attributable or allegedly attributable to, or in connection with, directly or indirectly, in whole or in part, the alleged acts, omissions, or conduct of the Debtors or any of the Debtors' Predecessors-in-Interest, including any such claims directly or indirectly, in whole or in part, arising out of or in any way relating to: (a) any products previously mined, manufactured, engineered, assembled, distributed, sold, used, consumed, installed, maintained, owned, occupied, stored, possessed, processed, designed, marketed, fabricated, constructed, supplied, produced, serviced, specified, selected, repaired, removed, replaced, released, and/or in any other way made available by the Debtors or any of the Debtors' Predecessors-in-Interest; (b) any materials present at any premises owned, leased, occupied, or operated by the Debtors or the Debtors' Predecessors-in-Interest; or (c) any talc in any way connected to the Debtors.

143. "*Tort Claims Trust*" means the trust to be established by the Debtors on the Effective Date, to which the Debtors will contribute the Tort Claims Trust Assets and which will be governed by the Tort Claims Trust Agreement and Tort Claims Distribution Procedures.

144. "*Tort Claims Trust Assets*" means (a) the Assigned Tort Claim Insurance Rights and (b) an allocation of the Settlement Proceeds.

145. "*Tort Claims Trust Agreement*" means the governing document for the Tort Claims Trust, to be Filed with the Plan Supplement.

146. "*Tort Claims Trust Distribution Procedures*" means the governing document for the procedures for submission, resolution, and distribution procedures in respect of all Tort Claims, to be Filed with the Plan Supplement, which shall be reasonably satisfactory to NICO.

147. "*Tort Claims Trustee*" means the trustee or trustees to be appointed by the Debtors, who will administer the Tort Claims Trust.

148. "*Tort Claims Trust Operating Expenses*" means any and all costs, expenses, fees, taxes, disbursements, debts, or obligations incurred from the operation and administration of the Tort Claims Trust, which shall be paid from the Tort Claims Trust Assets.

149. "*Tort Claims Operating Reserve*" means a reserve in the Tort Claims Trust to be established and funded from time to time to pay Tort Claims Trust Operating Expenses. The Tort Claims Trust Operating Reserves shall be (a) funded on the Effective Date with a portion of the Tort Claims Trust Assets in an amount determined by the Tort Claims Trustee with the consent (not to be unreasonably withheld, delayed, or conditioned) of the Debtors, (b) funded thereafter from time to time from the Tort Claims Trust Assets, and (c) held by the Tort Claims Trust in segregated accounts and administered by the Tort Claims Trustee on and after the Effective Date.

150. "*Unclaimed Distribution*" means any Distribution under the Plan on account of an Allowed Claim or Allowed Interest to a Holder that has not:  (a) accepted a particular Distribution or, in the case of Distributions made by check, negotiated such check within 180 calendar days of receipt; (b) given notice to the Wind-Down Debtors, the Plan Administrator, the Environmental Remediation Trustee, the GUC Trustee, or the Tort Claims Trustee, as applicable, of an intent to accept a particular Distribution within 180 calendar days of receipt; (c) responded to the Debtors', Wind-Down Debtors', Plan Administrator's, Environmental Remediation Trustee's, or the GUC Trustee's, as applicable, requests for information necessary to facilitate a particular Distribution prior to the deadline included in such request for information; or (d) timely taken any other action necessary to facilitate such Distribution; *provided, however*, that any and all Distributions to be made to Holders of Tort Claims shall be governed and made in accordance with the Tort Claims Trust Distribution Procedures, as applicable, and shall not be subject to **Article VI**.

151. "*Unexpired Lease*" means a lease of nonresidential real property to which any Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

152. "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

153. "*U.S. Trustee*" means the United States Trustee for the District of New Jersey.

154. "*Voting Deadline*" means the deadline for submitting ballots to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code that is specified in the Disclosure Statement, ballots, or related solicitation documents approved by the Bankruptcy Court.

155. "*Voting Record Date*" means December 9, 2024 at 4:00 p.m. (prevailing Eastern Time).

156. "*Voting Report*" means the report certifying the methodology for the tabulation of votes and result of voting under the Plan.

157. "*Wind Down*" means the orderly and value maximizing wind down of the Debtors and the Estates pursuant to this Plan.

158. "*Wind-Down Budget*" means the budget to be included in the Plan Supplement no later than seven days prior to the Effective Date, which shall project the Wind-Down Debtors' and Plan Administrator's receipts and disbursements, as may be updated pursuant to **Article VII.J**.

159. "*Wind-Down Debtors*" means the Debtors, as modified pursuant to and under the Plan, on and after the Effective Date, or any successors or assigns thereto.

160. "*Wind-Down Documents*" means the Plan, the Disclosure Statement, the Plan Supplement, and the various agreements and other documents formalizing or implementing the Plan and the transactions contemplated thereunder.

161. "*Wind-Down Transactions*" means those mergers, amalgamations, consolidations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, dissolutions, or other corporate transactions that the Plan Administrator reasonably determines to be necessary to implement the Wind-Down, as described in more detail in **Article VII** herein.

162. "*Wind-Down Transactions Memorandum*" means (if applicable) that certain memorandum as may be amended, supplemented, or otherwise modified from time to time, describing the steps to be carried out to effectuate the Wind-Down Transactions, the form of which shall be included in the Plan Supplement.

B.    *Rules of Interpretation*

For purposes of the Plan: (1) in the appropriate context, each term (including capitalized terms), whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed, or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented in accordance with the Plan or Confirmation Order, as applicable; (3) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (4) unless otherwise specified, all references herein to "Articles" are references to Articles hereof; (5) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (6) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (7) the words "includes" or "including" are not limiting; (8) subject to the provisions of any contract, charters, bylaws, partnership agreements, limited liability company agreements, operating agreements, or other organizational documents or shareholders' agreements, as applicable, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable Law, including the Bankruptcy Code and Bankruptcy Rules; (9) any immaterial effectuating provisions may be interpreted by the Debtors or the Wind-Down Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of

the Bankruptcy Court or any other Entity; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (12) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (14) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like, as applicable; (15) captions and headings are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (16) reference to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company Laws; (17) all references herein to consent, acceptance, or approval may be conveyed by counsel for the respective Person or Entity that have such consent, acceptance, or approval rights, including by electronic mail; and (18) any reference herein to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

C.    *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. For the avoidance of doubt, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.    *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided* that corporate governance matters relating to the Debtors or the Wind-Down Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation of the relevant Debtor.

E.    *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.    *Reference to the Debtors or the Wind-Down Debtors*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Wind-Down Debtors shall mean the Debtor and the Wind-Down Debtors, as applicable, to the extent the context requires.

G.    *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and any document included in the Plan Supplement, the terms of the relevant provision in the Plan shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order). In the event of an inconsistency between the Confirmation Order and the Plan, including the Plan Supplement or the Disclosure Statement, the Confirmation Order shall control.

H.      *Nonconsolidated Plan*

Although for purposes of administrative convenience and efficiency the Plan has been filed as a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors.

I.      *Consultation, Information, Notice, and Consent Rights*

Notwithstanding anything herein to the contrary, any and all consultation, information, notice, and consent rights of the parties with respect to the form and substance of the Plan, and all exhibits to the Plan and the Plan Supplement, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in **Article I.A** hereof) and fully enforceable as if stated in full herein (including the rights of NICO in its capacity as the "DIP Lender" as set forth in the DIP Order and the exhibits thereto).

Failure to reference the rights referred to in the immediately preceding paragraph as such rights relate to any document shall not impair such rights or obligations.

# ARTICLE II.
## ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS,
## STATUTORY FEES, AND ORDINARY COURSE EXPENSES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims (including Professional Fee Claims) and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in **Article III** hereof.

A.      *Administrative Claims*

Except with respect to the Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code, and except to the extent that a Holder of an Allowed Administrative Claim and the Debtor(s) against which such Allowed Administrative Claim is asserted agrees to less favorable treatment for such Holder, or such Holder has been paid by the Debtors on account of such Allowed Administrative Claim prior to the Effective Date, each Holder of such Allowed Administrative Claim will receive in full and final satisfaction of its Allowed Administrative Claim, an amount of Cash equal to the unpaid amount of such Allowed Administrative Claim in accordance with the following:  (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holder of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Wind-Down Debtors, as applicable; or (5) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims by the Administrative Claims Bar Date that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or the Wind-Down Debtors, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date.

B.      *DIP Administrative Claims*

The DIP Claims shall be deemed Allowed against each Debtor in the full amount outstanding under the DIP Agreement (including any unpaid accrued interest and unpaid fees, expenses, and other obligations under the DIP Agreement).  In full satisfaction, settlement, and release of, and in exchange for, the DIP Claims, each Holder of a

DIP Claim shall receive:  (i) upon the occurrence of the Estate Claims Settlement Effective Date, pursuant to the Estate Claims Settlement, the dollar-for-dollar reduction (on account of the principal amount of the DIP Loans funded in cash) in the amount of the Settlement Contribution (as defined in the Settlement Agreement) described in the Settlement Agreement; or (ii) upon the occurrence of a DIP Termination Event prior to the Estate Claims Settlement Effective Date, payment in full in cash of such DIP Claims.

C.      *Professional Fee Claims*

      1.      <u>Final Fee Applications and Payment of Professional Fee Claims</u>

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred during the period from the Petition Date through the Confirmation Date must be Filed no later than forty-five days after the Confirmation Date.  All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Court, including the Administrative Fee Order.  The Debtors or the Wind-Down Debtors, as applicable, shall pay Professional Fee Claims in Cash in the amount Allowed by the Bankruptcy Court from the Professional Fee Escrow Account, as soon as reasonably practicable after such Professional Fee Claims are Allowed, and which Allowed amount shall not be subject to disallowance, setoff, recoupment, subordination, recharacterization, or reduction of any kind, including pursuant to section 502(d) of the Bankruptcy Code.  To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of Professional Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, which shall be satisfied in accordance with **<u>Article II.A</u>** of the Plan.

      2.      <u>Professional Fee Escrow Account</u>

As soon as reasonably practicable after the Confirmation Date, and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full pursuant to one or more Final Orders.  Such funds shall not be considered property of the Estates.  The amount of Allowed Professional Fee Claims shall be paid in Cash to the Professionals by the Debtors or the Wind-Down Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed.  When all such Allowed Professional Fee Claims have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be transferred to the Wind-Down Debtors without any further notice to or action, order, or approval of the Bankruptcy Court.

      3.      <u>Professional Fee Amount</u>

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors during the period from the Petition Date through the Confirmation Date, and shall deliver such estimate to the Debtors no later than seven days prior to the Confirmation Hearing; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of each Professional's final request for payment in the Chapter 11 Cases.  If a Professional does not provide such an estimate, the Debtors may estimate the unpaid Professional Fee Claims of any such Professional.

      4.      <u>Post-Confirmation Fees and Expenses</u>

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors or the Wind-Down Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, be authorized to pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Debtors or Wind-Down Debtors, as applicable.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code or the Administrative Fee Order in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or the Wind-Down Debtors, as applicable, may employ or pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

D.      *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in full and final satisfaction, settlement, and release of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

E.      *Payment of Statutory Fees*

All fees due and payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by or on behalf of the Wind-Down Debtors for each quarter (including any fraction thereof) until the earlier of entry of a final decree closing the Chapter 11 Cases or an order of dismissal or conversion, whichever comes first.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      *Classification of Claims and Interests*

Except for the Claims addressed in **Article II** hereof, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest, or any portion thereof, is classified in a particular Class only to the extent that any portion of such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim is classified in a particular Class for the purpose of receiving Distributions under the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The following represents the classification of Claims and Interests for each Debtor pursuant to the Plan:

1.   Class Identification for Other Claims or Interests

Subject to **Article III.D** of the Plan, the following charts represent the classification of certain Claims against, and Interests in, the Debtors pursuant to the Plan.

| Class | Claims | Status | Voting Rights |
|-------|--------|--------|---------------|
| Class A1 | Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class A2 | Debtor Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| Class A3 | Non-Debtor Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class A4 | Debtor Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

2.   Class Identification for Whittaker, Clark & Daniels, Inc.

| Class | Claims | Status | Voting Rights |
|-------|--------|--------|---------------|
| Class B1 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class B2 | Tort Claims | Impaired | Entitled to Vote |
| Class B3 | Environmental Claims and Indirect Environmental Claims | Impaired | Entitled to Vote |

17

| Class | Claims | Status | Voting Rights |
|---|---|---|---|
| Class B4 | Convenience Claims | Impaired | Entitled to Vote |

3.  Class Identification for Soco West, Inc.

| Class | Claims | Status | Voting Rights |
|---|---|---|---|
| Class C1 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class C2 | Tort Claims | Impaired | Entitled to Vote |
| Class C3 | Environmental Claims and Indirect Environmental Claims | Impaired | Entitled to Vote |
| Class C4 | Convenience Claims | Impaired | Entitled to Vote |

4.  Class Identification for Brilliant National Services, Inc.

| Class | Claims | Status | Voting Rights |
|---|---|---|---|
| Class D1 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class D2 | Tort Claims | Impaired | Entitled to Vote |
| Class D3 | Environmental Claims and Indirect Environmental Claims | Impaired | Entitled to Vote |
| Class D4 | Convenience Claims | Impaired | Entitled to Vote |

5.  Class Identification for L. A. Terminals, Inc.

| Class | Claims | Status | Voting Rights |
|---|---|---|---|
| Class E1 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class E2 | Tort Claims | Impaired | Entitled to Vote |
| Class E3 | Environmental Claims and Indirect Environmental Claims | Impaired | Entitled to Vote |
| Class E4 | Convenience Claims | Impaired | Entitled to Vote |

B.    *Treatment of Claims and Interests*

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, and release of, and in exchange for, such Holder's Allowed Claim or Allowed Interest, as applicable, except to the extent different treatment is agreed to in writing by the Debtors or the Wind-Down Debtors, as applicable, and the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter.

**Other Claims and Interests**

1.  Class A1 – Priority Claims

    (a)    *Classification*:  Class A1 consists of all Allowed Priority Claims.

    (b)    *Treatment*:  Each Holder of an Allowed Priority Claim shall receive, in full and final satisfaction of such Allowed Priority Claim, treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code, which renders such Allowed Priority Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

    (c)    *Voting*:  Class A1 is Unimpaired under the Plan.  Holders of Allowed Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2.  Class A2 – Debtor Intercompany Claims

    (a)    *Classification*:  Class A2 consists of all Debtor Intercompany Claims.

    (b)    *Treatment*:  Each Debtor Intercompany Claim shall be, at the option of the Debtors, either Reinstated, otherwise set off, settled, distributed, contributed, canceled, or released, or otherwise addressed, in accordance with the Wind-Down Transactions Memorandum.

    (c)    *Voting*:  Class A2 is Unimpaired under the Plan if Debtor Intercompany Claims are Reinstated or Impaired under the Plan if Debtor Intercompany Claims are canceled. Holders of Debtor Intercompany Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3.  Class A3 – Non-Debtor Intercompany Claims

    (a)    *Classification*:  Class A3 consists of all Non-Debtor Intercompany Claims.

    (b)    *Treatment*:  On the Estate Claims Settlement Effective Date, each Holder of a Non-Debtor Intercompany Claim shall waive such Non-Debtor Intercompany Claim pursuant to the Estate Claims Settlement.

    (c)    *Voting*:  Class A3 is Impaired and Holders of Non-Debtor Intercompany Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

4.  Class A4 – Debtor Interests

    (a)    *Classification*:  Class A4 consists of all Debtor Interests.

    (b)    *Treatment*:  On the Effective Date, all Debtor Interests shall be canceled, released, and extinguished and will be of no further force or effect, without any Distribution to Holders of Debtor Interests.

    (c)    *Voting*:  Class A4 is Impaired under the Plan.  Holders of Debtor Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

**Claims Against Whittaker, Clark & Daniels, Inc.**

5.  Class B1 – General Unsecured Claims

    (a)    *Classification*:  Class B1 consists of all General Unsecured Claims against Whittaker, Clark & Daniels, Inc.

    (b)    *Treatment*:  On the Effective Date, liability for all General Unsecured Claims against Whittaker, Clark & Daniels, Inc. shall automatically, and without further act, deed, or court order, be resolved solely in accordance with and to the extent set forth in the applicable Plan Documents and the Confirmation Order.  Each Allowed General Unsecured Claim against Whittaker, Clark & Daniels, Inc. shall be resolved and receive Distributions, if any, in accordance with the terms, provisions, and procedures of the Plan and the GUC Trust Agreement.  The GUC Trust shall be funded in accordance with the provisions of Article VII.C. of the Plan.  The sole recourse of a Holder of a General Unsecured Claim against Whittaker, Clark & Daniels, Inc. shall be to the GUC Trust.

    (c)    *Voting*:  Class B1 is Impaired under the Plan.  Each Holder of a General Unsecured Claim against Whittaker, Clark & Daniels, Inc. is entitled to vote to accept or reject the Plan.

6.  Class B2 – Tort Claims

    (a)    *Classification:*  Class B2 consists of all Tort Claims against Whittaker, Clark & Daniels, Inc.

    (b)    *Treatment*:  On the Effective Date, liability for all Tort Claims against Whittaker, Clark & Daniels, Inc. shall automatically, and without further act, deed, or court order, be resolved solely in accordance with and to the extent set forth in the applicable Plan Documents and the Confirmation Order.  Each Allowed Tort Claim against Whittaker, Clark & Daniels, Inc. shall be resolved and receive Distributions, if any, in accordance with the terms, provisions, and procedures of the Tort Claims Trust Agreement and the Tort Claims Trust Distribution Procedures.  The Tort Claims Trust shall be funded in accordance with the provisions of Article VII.C. of the Plan.  The sole recourse of a Holder of a Tort Claim against Whittaker, Clark & Daniels, Inc. shall be to the Tort Claims Trust.

    (c)    *Voting:*  Class B2 is Impaired under the Plan.  Each Holder of a Tort Claim against Whittaker, Clark & Daniels, Inc. is entitled to vote to accept or reject the Plan.

7.  Class B3 – Environmental Claims

    (a)    *Classification*:  Class B3 consists of all Environmental Claims and Indirect Environmental Claims against Whittaker, Clark & Daniels, Inc.

    (b)    *Treatment*:  On the Effective Date, liability for all Environmental Claims and Indirect Environmental Claims against Whittaker, Clark & Daniels, Inc. shall automatically, and without further act, deed, or court order, be resolved solely in accordance with and to the extent set forth in the applicable Plan Documents and the Confirmation Order.  Each Allowed Environmental Claim and Indirect Environmental Claim against Whittaker, Clark & Daniels, Inc. shall be resolved and receive Distributions, if any, in accordance with the terms, provisions, and procedures of the Plan and the Environmental Remediation Trust Agreement.  The Environmental Remediation Trust shall be funded in accordance with the provisions of Article VII.C. of the Plan.  The sole recourse of a Holder of an Environmental Claim or Indirect Environmental Claim against Whittaker, Clark & Daniels, Inc. shall be to the Environmental Remediation Trust.

(c)     *Voting*:  Class B3 is Impaired under the Plan.  Each Holder of an Environmental Claim and Indirect Environmental Claim against Whittaker, Clark & Daniels, Inc. is entitled to vote to accept or reject the Plan.

8.   Class B4 – Convenience Claims

(a)     *Classification*:  Class B4 consists of all Convenience Claims against Whittaker, Clark & Daniels, Inc.

(d)     *Treatment*:  In full and final satisfaction, compromise, settlement, and release of its Convenience Claims, each Holder of a Convenience Claim against Whittaker, Clark & Daniels, Inc. shall receive a [●]% recovery on account of the Allowed amount of such Convenience Claim.

(e)     *Voting*:  Class B4 is Impaired under the Plan.  Each Holder of a Convenience Claim against Whittaker, Clark & Daniels, Inc. is entitled to vote to accept or reject the Plan.

**Claims Against Soco West, Inc.**

9.   Class C1 – General Unsecured Claims

(a)     *Classification*:  Class C1 consists of all General Unsecured Claims against Soco West, Inc.

(b)     *Treatment*:  On the Effective Date, liability for all General Unsecured Claims against Soco West, Inc. shall automatically, and without further act, deed, or court order, be resolved solely in accordance with and to the extent set forth in the applicable Plan Documents and the Confirmation Order.  Each Allowed General Unsecured Claim against Soco West, Inc. shall be resolved and receive Distributions, if any, in accordance with the terms, provisions, and procedures of the Plan and the GUC Trust Agreement.  The GUC Trust shall be funded in accordance with the provisions of Article VII.C. of the Plan.  The sole recourse of a Holder of a General Unsecured Claim against Soco West, Inc. shall be to the GUC Trust.

(c)     *Voting*:  Class C1 is Impaired under the Plan.  Each Holder of a General Unsecured Claim against Soco West, Inc. is entitled to vote to accept or reject the Plan.

10.  Class C2 – Tort Claims

(a)     *Classification*:  Class C2 consists of all Tort Claims against Soco West, Inc.

(b)     *Treatment*:  On the Effective Date, liability for all Tort Claims against Soco West, Inc. shall automatically, and without further act, deed, or court order, be resolved solely in accordance with and to the extent set forth in the applicable Plan Documents and the Confirmation Order.  Each Allowed Tort Claim against Soco West, Inc. shall be resolved in accordance with the terms, provisions, and procedures of the Tort Claims Trust Agreement and the Tort Claims Trust Distribution Procedures.  The Tort Claims Trust shall be funded in accordance with the provisions of Article VII.C. of the Plan.  The sole recourse of a Holder of a Tort Claim against Soco West, Inc. shall be to the Tort Claims Trust.

(c)     *Voting*:  Class C2 is Impaired under the Plan.  Each Holder of a Tort Claim against Soco West, Inc. is entitled to vote to accept or reject the Plan.

11. Class C3 – Environmental Claims

    (a)    *Classification*:  Class C3 consists of all Environmental Claims and Indirect Environmental Claims against Soco West, Inc.

    (b)    *Treatment*:  On the Effective Date, liability for all Environmental Claims and Indirect Environmental Claims against Soco West, Inc. shall automatically, and without further act, deed, or court order, be resolved solely in accordance with and to the extent set forth in the applicable Plan Documents and the Confirmation Order.  Each Allowed Environmental Claim and Indirect Environmental Claim against Soco West, Inc. shall be resolved and receive Distributions, if any, in accordance with the terms, provisions, and procedures of the Plan and the Environmental Remediation Trust Agreement.  The Environmental Remediation Trust shall be funded in accordance with the provisions of Article VII.C. of the Plan.  The sole recourse of a Holder of an Environmental Claim or Indirect Environmental Claim against Soco West, Inc. shall be to the Environmental Remediation Trust.

    (c)    *Voting*:  Class C3 is Impaired under the Plan.  Each Holder of an Environmental Claim and Indirect Environmental Claim against Soco West, Inc. is entitled to vote to accept or reject the Plan.

12. Class C4 – Convenience Claims

    (a)    *Classification*:  Class C4 consists of all Convenience Claims against Soco West, Inc.

    (f)    *Treatment*:  In full and final satisfaction, compromise, settlement, and release of its Convenience Claims, each Holder of a Convenience Claim against Soco West, Inc. shall receive a [●]% recovery on account of the Allowed amount of such Convenience Claim.

    (g)    *Voting*:  Class C4 is Impaired under the Plan.  Each Holder of a Convenience Claim against Soco West, Inc. is entitled to vote to accept or reject the Plan.

**Claims Against Brilliant National Services, Inc.**

13. Class D1 – General Unsecured Claims

    (a)    *Classification*:  Class D1 consists of all General Unsecured Claims against Brilliant National Services, Inc.

    (b)    *Treatment*:  On the Effective Date, liability for all General Unsecured Claims against Brilliant National Services, Inc. shall automatically, and without further act, deed, or court order, be resolved solely in accordance with and to the extent set forth in the applicable Plan Documents and the Confirmation Order.  Each Allowed General Unsecured Claim against Brilliant National Services, Inc. shall be resolved and receive Distributions, if any, in accordance with the terms, provisions, and procedures of the Plan and the GUC Trust Agreement.  The GUC Trust shall be funded in accordance with the provisions of Article VII.C. of the Plan.  The sole recourse of a Holder of a General Unsecured Claim against Brilliant National Services, Inc. shall be to the GUC Trust.

    (c)    *Voting*:  Class D1 is Impaired under the Plan.  Each Holder of a General Unsecured Claim against Brilliant National Services, Inc. is entitled to vote to accept or reject the Plan.

14. Class D2 – Tort Claims

    (a)    *Classification:*  Class D2 consists of all Tort Claims against Brilliant National Services, Inc.

(b)     *Treatment*:  On the Effective Date, liability for all Tort Claims against Brilliant National Services, Inc. shall automatically, and without further act, deed, or court order, be resolved solely in accordance with and to the extent set forth in the applicable Plan Documents and the Confirmation Order.  Each Allowed Tort Claim against Brilliant National Services, Inc. shall be resolved in accordance with the terms, provisions, and procedures of the Tort Claims Trust Agreement and the Tort Claims Trust Distribution Procedures.  The Tort Claims Trust shall be funded in accordance with the provisions of Article VII.C. of the Plan.  The sole recourse of a Holder of a Tort Claim against Brilliant National Services, Inc. shall be to the Tort Claims Trust.

(c)     *Voting:*  Class D2 is Impaired under the Plan.  Each Holder of a Tort Claim against Brilliant National Services, Inc. is entitled to vote to accept or reject the Plan.

15.  Class D3 – Environmental Claims

(a)     *Classification*:  Class D3 consists of all Environmental Claims and Indirect Environmental Claims against Brilliant National Services, Inc.

(b)     *Treatment*:  On the Effective Date, liability for all Environmental Claims and Indirect Environmental Claims against Brilliant National Services, Inc. shall automatically, and without further act, deed, or court order, be resolved solely in accordance with and to the extent set forth in the applicable Plan Documents and the Confirmation Order. Each Allowed Environmental Claim and Indirect Environmental Claim against Brilliant National Services, Inc. shall be resolved and receive Distributions, if any, in accordance with the terms, provisions, and procedures of the Plan and the Environmental Remediation Trust Agreement.  The Environmental Remediation Trust shall be funded in accordance with the provisions of Article VII.C. of the Plan.  The sole recourse of a Holder of an Environmental Claim or Indirect Environmental Claim against Brilliant National Services, Inc. shall be to the Environmental Remediation Trust.

(c)     *Voting*: Class D3 is Impaired under the Plan.  Each Holder of an Environmental Claim and Indirect Environmental Claim against Brilliant National Services, Inc. is entitled to vote to accept or reject the Plan.

16.  Class D4 – Convenience Claims

(a)     *Classification*:  Class D4 consists of all Convenience Claims against Brilliant National Services, Inc.

(h)     *Treatment*:  In full and final satisfaction, compromise, settlement, and release of its Convenience Claims, each Holder of a Convenience Claim against Brilliant National Services, Inc. shall receive a [●]% recovery on account of the Allowed amount of such Convenience Claim.

(i)     *Voting*: Class D4 is Impaired under the Plan.  Each Holder of a Convenience Claim against Brilliant National Services, Inc. is entitled to vote to accept or reject the Plan.

**Claims Against L. A. Terminals, Inc.**

17.  Class E1 – General Unsecured Claims

(a)     *Classification*:  Class E1 consists of all General Unsecured Claims against L. A. Terminals, Inc.

(b)     *Treatment*:  On the Effective Date, liability for all General Unsecured Claims against L. A. Terminals, Inc. shall automatically, and without further act, deed, or court order, be resolved solely in accordance with and to the extent set forth in the applicable Plan

23

Documents and the Confirmation Order. Each Allowed General Unsecured Claim against L. A. Terminals, Inc. shall be resolved and receive Distributions, if any, in accordance with the terms, provisions, and procedures of the Plan and the GUC Trust Agreement. The GUC Trust shall be funded in accordance with the provisions of Article VII.C. of the Plan. The sole recourse of a Holder of a General Unsecured Claim against L. A. Terminals, Inc. shall be to the GUC Trust.

(c)     *Voting*: Class E1 is Impaired under the Plan. Each Holder of a General Unsecured Claim against L. A. Terminals, Inc. is entitled to vote to accept or reject the Plan.

18.  Class E2 – Tort Claims

(a)     *Classification:* Class E2 consists of all Tort Claims against L. A. Terminals, Inc.

(b)     *Treatment*: On the Effective Date, liability for all Tort Claims against L. A. Terminals, Inc. shall automatically, and without further act, deed, or court order, be resolved solely in accordance with and to the extent set forth in the applicable Plan Documents and the Confirmation Order. Each Allowed Tort Claim against L. A. Terminals, Inc. shall be resolved in accordance with the terms, provisions, and procedures of the Tort Claims Trust Agreement and the Tort Claims Trust Distribution Procedures. The Tort Claims Trust shall be funded in accordance with the provisions of Article VII.C. of the Plan. The sole recourse of a Holder of a Tort Claim against L. A. Terminals, Inc. shall be to the Tort Claims Trust.

(c)     *Voting:* Class E2 is Impaired under the Plan. Each Holder of a Tort Claim against L. A. Terminals, Inc. is entitled to vote to accept or reject the Plan.

19.  Class E3 – Environmental Claims

(a)     *Classification*: Class E3 consists of all Environmental Claims and Indirect Environmental Claims against L. A. Terminals, Inc.

(b)     *Treatment*: On the Effective Date, liability for all Environmental Claims and Indirect Environmental Claims against L. A. Terminals, Inc. shall automatically, and without further act, deed, or court order, be resolved solely in accordance with and to the extent set forth in the applicable Plan Documents and the Confirmation Order. Each Allowed Environmental Claim and Indirect Environmental Claim against L. A. Terminals, Inc. shall be resolved and receive Distributions, if any, in accordance with the terms, provisions, and procedures of the Plan and the Environmental Remediation Trust Agreement. The Environmental Remediation Trust shall be funded in accordance with the provisions of Article VII.C. of the Plan. The sole recourse of a Holder of an Environmental Claim or Indirect Environmental Claim against L. A. Terminals, Inc. shall be to the Environmental Remediation Trust.

(c)     *Voting*: Class E3 is Impaired under the Plan. Each Holder of an Environmental Claim and Indirect Environmental Claim against L. A. Terminals, Inc. is entitled to vote to accept or reject the Plan.

20.  Class E4 – Convenience Claims

(a)     *Classification*: Class E4 consists of all Convenience Claims against L. A. Terminals, Inc.

(j)     *Treatment*: In full and final satisfaction, compromise, settlement, and release of its Convenience Claims, each Holder of a Convenience Claim against L. A. Terminals, Inc. shall receive a [●]% recovery on account of the Allowed amount of such Convenience Claim.

(k)    *Voting*: Class E4 is Impaired under the Plan. Each Holder of a Convenience Claim against L. A. Terminals, Inc. is entitled to vote to accept or reject the Plan.

C.    *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Wind-Down Debtors' rights regarding any Unimpaired Claim, including, all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

D.    *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.    *Voting Classes, Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims or Interests eligible to vote on the Plan and no Holder of Claims or Interests eligible to vote in such Class votes to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

F.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims. The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class(es) of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with **Article XII** hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests or reclassifying Claims to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

G.    *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

H.    *Subordinated Claims and Interests*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective Distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors or the Wind-Down Debtors, as applicable, reserve the right to re-classify any Allowed Claim or Allowed Interest (other than a DIP Claim) in accordance with any contractual, legal, or equitable subordination rights relating thereto.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Wind-Down Transactions*

On the Effective Date, or as soon as reasonably practicable thereafter, the Wind-Down Debtors shall take all actions as may be necessary or appropriate to effectuate the Wind Down Transactions, which shall be reasonably acceptable to NICO, including, without limitation: (1) the execution and delivery of any appropriate agreements or

other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (4) such other transactions that are required to effectuate the Wind Down Transactions; (5) all transactions necessary to provide for the purchase of some or all of the assets of, or Interests in, any of the Debtors which purchase may be structured as a taxable transaction for United States federal income tax purposes; and (6) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

B.      *Cancellation of Notes, Instruments, Certificates, and Other Documents*

On the later of the Effective Date and the date on which Distributions are made pursuant to the Plan (if not made on the Effective Date), except for the purpose of evidencing a right to and allowing Holders of Claims and Interests to receive a Distribution under the Plan or to the extent otherwise specifically provided for in the Plan, the Confirmation Order, or any agreement, instrument, or other document entered into in connection with or pursuant to the Plan or the Wind-Down Transactions, all notes, bonds, indentures, certificates, Securities, shares, purchase rights, options, warrants, collateral agreements, subordination agreements, intercreditor agreements, or other instruments or documents (collectively, "Instruments") directly or indirectly evidencing, creating, or relating to any indebtedness or obligations of, or ownership interest in, the Debtors, giving rise to any Claims against or Interests in the Debtors or to any rights or obligations relating to any Claims against or Interests in the Debtors shall be deemed cancelled without any need for a Holder to take further action with respect thereto, and the duties and obligations of the Debtors or the Wind-Down Debtors, as applicable, or any non-Debtor Affiliates shall be deemed satisfied in full, cancelled, released, and of no force or effect; *provided* that the foregoing shall not apply to Instruments evidencing, creating, or relating to the DIP Claims, the DIP Agreement, or the Estate Claims Settlement Agreement.

C.      *General Settlement of Claims and Interests*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, satisfied, or otherwise resolved pursuant to the Plan, including any disputes concerning in any way the validity, effectiveness, or priority of the Intercompany Claims.  The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests. Subject to **Article VI** hereof, all Distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

D.      *Estate Claims Settlement*

Each of (a) the Debtors and (b) the Settlement Parties agreed to the terms of the Estate Claims Settlement. The Estate Claims Settlement reflects a good-faith compromise and settlement of numerous issues and disputes between and among the Debtors and the Settlement Parties.  The Estate Claims Settlement is designed to achieve a reasonable and effective resolution of the Chapter 11 Cases and increase distributable value available for the benefit of Holders of Allowed Claims.  Except as otherwise expressly set forth in the Estate Claims Settlement Agreement, the Estate Claims Settlement Order, and the DIP Order, the Estate Claims Settlement constitutes a settlement of all potential issues and claims between and among the Debtors, on the one hand, and the Settlement Parties, on the other.

Pursuant to Bankruptcy Rule 9019, the Debtors and the Settlement Parties have agreed to the terms of the Estate Claims Settlement, which provides for, among other things:  (a) Cash payments to the Debtors totaling $535 million in the aggregate; (b) the Debtors' waiver of any and all Estate Causes of Action against the Non-Debtor Released Parties (as defined in the Estate Claims Settlement Agreement) arising out of, in connection with, or relating

to any matters occurring before the Estate Claims Settlement Effective Date; (c) the Settlement Parties' release of all Causes of Action against the Debtor Releasees arising out of, in connection with, or relating to any matters occurring before the Estate Claims Settlement Agreement Effective Date, in each case all as more fully set forth in the Estate Claims Settlement, in exchange for the releases and other consideration set forth therein and in this Plan. For the avoidance of doubt, while the Estate Claims Settlement aims to maximize distributable value available for the benefit of Holders of Allowed Claims, the Estate Claims Settlement is not contingent upon Confirmation.

Notwithstanding anything to the contrary in this Plan or the other Plan Documents, nothing in the Plan Documents, including the description of the Estate Claims Settlement and the terms and conditions thereof in this **Article IV.D** of the Plan, shall amend, modify, supplement, or alter in any way the Estate Claims Settlement, the Estate Claims Settlement Agreement or the Estate Claims Settlement Order, and in the event of a conflict between the Estate Claims Settlement Agreement or Estate Claims Settlement Order and any Plan Document, the Estate Claims Settlement Agreement or Estate Claims Settlement Order, as applicable, shall control.

E.      *Timing of Effective Date Transactions*

Unless the Plan or the Confirmation Order provide otherwise, actions required to be taken on the Effective Date or as soon thereafter as is reasonably practicable shall be deemed to have been made on the Effective Date if made on or as soon as reasonably practicable after the Effective Date.

F.      *Payment of Other Claims*

On the Effective Date, the Wind-Down Debtors shall (a) with respect to each unpaid DIP Claim, Administrative Claim, Priority Tax Claim, Priority Claim, and Convenience Claim, either (i) pay the Allowed amount of such Claim in full in Cash (collectively, the "Effective Date Payment"), (ii) reserve Cash sufficient for payment of the Allowed amount of such Claim in full, or, (iii) with respect to Convenience Claims, pay (or reserve Cash sufficient to pay) [●]% of the Allowed amount of each unpaid Convenience Claim, and (b) reserve Cash sufficient for payment of all legal fees and expenses reasonably likely to be incurred by the Wind-Down Debtors through the closing of the Chapter 11 Cases, including all legal fees and expenses necessary to defend to final resolution any appeal of the Confirmation Order, the Motion to Dismiss Denial Order, or any other matter arising in or related to these Chapter 11 Cases, hearing on a Professional Fee Claim, and any adversary proceeding pending as of the Effective Date (the aggregate amount of such reserved Cash pursuant to clauses (a) and (b), the "Reserve Funds"). The Wind-Down Debtors will transfer, or cause to be transferred, to the Environmental Remediation Trust, Tort Claims Trust, and GUC Trust, on a Pro Rata basis, any Reserve Funds remaining following the Wind-Down Debtors' payment in full of all DIP Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims, Allowed Convenience Claims, and all other post-Effective Date fees and expenses.

G.      *Committee and Future Claimants' Representative Professional Fees*

The Debtors shall, on or prior to the Effective Date, pay the accrued and unpaid reasonable and documented fees and expenses incurred prior to the Effective Date by the Committee Professionals and the Future Claimants' Representative Professionals in accordance with **Article II.C**; *provided* that payment of any and all fees and expenses incurred by the Committee Professionals and the Future Claimants' Representative Professionals shall be subject in all respects to the DIP Order.

H.      *Wind-Down Debtors*

On and after the Effective Date, if applicable, the Wind-Down Debtors shall continue in existence for purposes of (i) winding down the Debtors' affairs as expeditiously as reasonably possible; (ii) resolving Disputed Claims, (iii) making Distributions on account of Allowed Claims as provided hereunder, (iv) enforcing and prosecuting claims, interests, rights, and privileges under all Causes of Action in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith, (v) filing appropriate tax returns, (vi) liquidating all assets of the Wind-Down Debtors, and (vii) otherwise administering the Plan in an efficacious manner consistent with the Plan. The Wind Down Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (i) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (ii) all matters pending in any courts, tribunals, forums,

27

or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

The Wind-Down Debtors shall be authorized to adopt any agreements, documents, and instruments and to take any other actions contemplated under the Plan as necessary to consummate the Plan. Cash payments to be made pursuant to the Plan will be made by the applicable Disbursing Agent. The Debtors and Wind-Down Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Debtors or the Wind-Down Debtors, as applicable, to satisfy its obligations under the Plan. Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate the terms of the Plan.

I.   *Plan Administrator*

As set forth in **Article VII**, the Plan Administrator shall act for the Wind-Down Debtors in the same fiduciary capacity as applicable to a president and chief executive officer (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same) and retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under this Plan in accordance with the Wind-Down and as otherwise provided in the Confirmation Order. On the Effective Date, the authority, power, and incumbency of the persons acting as managers, directors, and officers of the Wind-Down Debtors shall be deemed to have resigned, and the Plan Administrator shall be appointed as the sole officer of the Wind-Down Debtors, and shall succeed to the rights, powers, duties, and privileges of the Wind-Down Debtors' officers. Subject to the terms of the Plan, among other duties normal and customary of a director and officer responsible for winding down the affairs of a business, the Plan Administrator shall have the right and duty to investigate, prosecute, and compromise any and all of the Debtors' and Wind Down Debtors' Claims and Causes of Action (other than Claims and Causes of Action released in the Estate Claims Settlement or the Plan).

From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Wind-Down Debtors as further described in **Article VII** hereof. The Plan Administrator shall have the authority to sell, liquidate, or otherwise dispose of any and all of the Wind-Down Debtors' assets without any additional notice to or approval from the Bankruptcy Court.

J.   *Corporate Existence*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, the Debtors shall continue to exist after the Effective Date as a corporation, limited liability company, partnership, or other form with all the powers of a corporation, limited liability company, partnership, or other form pursuant to the applicable Law in the jurisdiction in which the applicable Debtor is incorporated and pursuant to the certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended under the Plan or otherwise, in each case, consistent with the Plan, and to the extent such documents are amended in accordance therewith, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal Law). After the Effective Date, the respective certificate of incorporation and bylaws (or other formation documents) of the Wind-Down Debtors may be amended or modified on the terms therein without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, in the sole discretion of the Plan Administrator. After the Effective Date, the Wind-Down Debtors may be disposed of, dissolved, wound down, or liquidated without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

K.   *Board of the Debtors*

As of the Effective Date, the existing board of directors of the Debtors shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers or directors and any remaining officers or directors of any Debtor shall be deemed to have resigned without any further action required on the part of any such Debtor, the equity holders of the Debtors, or the officers or directors, as applicable, of the Debtors. Subject in all respects to

the terms of this Plan, the Debtors shall be dissolved as soon as practicable on or after the Effective Date, but in no event later than the closing of the Chapter 11 Cases.

As of the Effective Date, the Plan Administrator shall act as the sole officer of the Debtors with respect to its affairs. Subject in all respects to the terms of this Plan, the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve any of the Debtors, and shall: (a) file a certificate of dissolution for any of the Debtors, together with all other necessary corporate and company documents, to effect the dissolution of any of the Debtors under the applicable laws of each applicable Debtor's state of formation; and (b) complete and file all final or otherwise required federal, state, and local tax returns and shall pay taxes required to be paid for any of the Debtors, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of the Debtors or their Estates for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws; and (c) represent the interests of the Debtors or the Estates before any taxing authority in all tax matters, including any action, suit, proceeding, or audit.

The filing by the Plan Administrator of any of the Debtors' certificate of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, board of directors, or board of managers of the Debtors or any of their affiliates.

L.      *Vesting of Assets in the Wind-Down Debtors*

Except as otherwise provided in the Estate Claims Settlement Agreement, Estate Claims Settlement Order, Confirmation Order, the Plan, or any agreement, instrument, or other document incorporated in, or entered into in connection with or pursuant to, the Plan or Plan Supplement, on the Effective Date, all property in the Estate, all Causes of Action, and any property acquired by the Debtors pursuant to the Plan shall vest in the Wind-Down Debtors, as applicable, free and clear of all Liens, Claims, charges, or other Encumbrances; *provided* that the Owned Site(s) shall be deemed abandoned on the Effective Date. For the avoidance of doubt, any Entity, including any Predecessor-in-Interest or prior Affiliate of any Debtor, that was dissolved or otherwise cancelled prior to the Effective Date shall be precluded from ever pursuing any property of the Estate or any property of the Wind-Down Debtors, including proceeds of the Insurance Contracts. On and after the Effective Date, except as otherwise provided in the Plan, the Wind-Down Debtors may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

M.      *Corporate Action*

On the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including: (1) selection of the Plan Administrator as the director and officer for the Wind-Down Debtors; (2) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date), including the steps set forth in the Wind-Down Transactions Memorandum; (3) adoption, execution, delivery, and/or filing of any governance documents the Debtors or Wind-Down Debtors deem necessary or appropriate to effectuate the terms of the Plan and Confirmation Order; and (4) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases. All matters provided for in the Plan involving the corporate structure of the Debtors or the Wind-Down Debtors, and any corporate, partnership, limited liability company, or other governance action required by the Debtors or the Wind-Down Debtors, as applicable, in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the equity Holders, members, directors, managers, or officers of the Debtors or the Wind-Down Debtors, as applicable. On or prior to the Effective Date, the appropriate officers of the Debtors or the Wind-Down Debtors, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, Securities, and instruments contemplated under the Plan (or necessary or desirable to affect the transactions contemplated under the Plan) in the name of and on behalf of the Wind-Down Debtors. The authorizations and approvals contemplated by this **Article IV.M** shall be effective notwithstanding any requirements under non-bankruptcy Law.

N.      *Indemnification Obligations*

Consistent with applicable Law, all indemnification provisions in place on and as of the Effective Date (whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other

Professionals of the Debtors, as applicable, shall be Reinstated and remain intact, irrevocable, and shall survive the effectiveness of the Plan on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other Professionals of the Debtors than the indemnification provisions in place prior to the Effective Date.

O.      *Section 1146 Exemption*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Wind-Down Debtor or to any other Entity) of property under the Plan or pursuant to: (1) the issuance, Distribution, transfer, or exchange of any debt, equity Security, or other interest in the Debtors or the Wind-Down Debtors; (2) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

P.      *Director and Officer Liability Insurance*

Notwithstanding anything in the Plan to the contrary, the Wind-Down Debtors shall be deemed to have assumed all of the Debtors' D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code effective as of the Effective Date. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Wind-Down Debtors' foregoing assumption of each of the unexpired D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, Confirmation of the Plan shall not impair, or otherwise modify, any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be Filed.

In addition, after the Effective Date, the Wind-Down Debtors shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies in effect on or after the Petition Date, with respect to conduct occurring prior thereto, and all directors, managers, and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy, to the extent set forth therein, regardless of whether such directors, managers, and officers remain in such positions after the Effective Date.

Q.      *Employee and Retiree Benefits*

To the best of the Debtors' knowledge, section 1129(a)(13) of the Bankruptcy Code is inapplicable; *provided* that for the avoidance of doubt, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall be paid in accordance with applicable Law.

R.      *Preservation of Certain Causes of Action*

With the exception of those claims released by the Debtors pursuant to this Plan or the Estate Claims Settlement, as applicable, in accordance with section 1123(b) of the Bankruptcy Code, the Wind-Down Debtors shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing), all claims, rights,

Retained Causes of Action, suits, and proceedings, whether in law or in equity, whether known or unknown, accruing to, or that are property of, the Debtors and their Estates pursuant to the Bankruptcy Code or any statute or legal theory, including any rights, claims, and Retained Causes of Action against third parties based upon, attributable to, or arising out of Allowed Claims, in their sole and absolute discretion, without the necessity for Bankruptcy Court approval under Bankruptcy Rule 9019, and the Wind-Down Debtors shall retain and may enforce all defenses and counterclaims to all Claims asserted against the Debtors or their Estates, including, but not limited to, setoff, recoupment, and any rights under section 502(d) of the Bankruptcy Code.

**The Wind-Down Debtors may pursue such Retained Causes of Action, as appropriate, in accordance with the best interests of the Wind-Down Debtors. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Wind-Down Debtors, as applicable, will not pursue any and all available Retained Causes of Action of the Debtors against such Entity. The Debtors and the Wind-Down Debtors expressly reserve all rights to prosecute any and all Retained Causes of Action against any Person or Entity that is not a Settlement Party or Released Party.**

The Wind-Down Debtors reserve and shall retain such Retained Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Retained Causes of Action that a Debtor may hold against any Entity shall vest in the Wind-Down Debtors. The Wind-Down Debtors, through their authorized agents or Representatives, shall retain and may exclusively enforce any and all such Causes of Action.

S.      *Dissolution, and Discharge of Duties, of Committee and Future Claimants' Representative*

On the Effective Date, the Committee shall be dissolved automatically, whereupon its members, Professionals, and agents shall be released and discharged from any further authority, duties, obligations, and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code; *provided*, *however*, that following the Effective Date, the Committee shall continue in existence and have standing and a right to be heard for the following limited purposes: (a) applications, and any relief related thereto, for compensation by Professionals and requests for allowance of fees and/or expenses under section 503(b) of the Bankruptcy Code, and (b) any appeals of, or related to, (x) the Confirmation Order or (y) any other pending appeal to which the Committee is a party. To the extent that the Committee determines to continue to serve and function after the Effective Date pursuant to the preceding sentence, the Committee shall dissolve upon entry of a Final Order (a) approving any such Professional Fee Claim or (b) denying the final pending appeal to which the Committee is a party.

On the Effective Date, the Future Claimants' Representative shall automatically be discharged from her duties in such capacity. The Future Claimants' Representative and her Professionals and agents shall be released and discharged from any further authority, duties, obligations, and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code; *provided*, *however*, that following the Effective Date, the Future Claimants' Representative shall continue in existence and have standing and a right to be heard for the following limited purposes: (a) applications, and any relief related thereto, for compensation by Professionals and requests for allowance of fees and/or expenses under section 503(b) of the Bankruptcy Code, and (b) any appeals of, or related to, (x) the Confirmation Order or (y) any other appeal to which the Future Claimants' Representative is a party. To the extent that the Future Claimants' Representative determines to continue to serve and function after the Effective Date pursuant to the preceding sentence, the Future Claimants' Representative shall be discharged upon entry of a Final Order (a) approving any such Professional Fee Claim or (b) denying the final pending appeal to which the Future Claimant's Representative is a party.

Professional Fee Claims for any Committee Professional and Future Claimants' Representative Professional shall be paid in accordance with **Article II.C** of this Plan.

T.      *Insurance Neutrality.*

Nothing in the Plan, the Plan Supplement, the Confirmation Order shall alter, supplement, change, decrease, or modify the terms (including the conditions, limitations, and/or exclusions) of the Insurance Contracts; *provided* that, notwithstanding anything in the foregoing to the contrary, the enforceability and applicability of the terms

(including the conditions, limitations, and/or exclusions) of the Insurance Contracts, and this the rights or obligations of any insurer, the Debtors, the GUC Trust, the Environmental Remediation Trust, and the Tort Claims Trust, arising out of or under any Insurance Contract, whether before or after the Effective Date, are subject to the Bankruptcy Code and applicable Law (including any actions or obligations of the Debtors thereunder), the terms of the Plan, the Plan Supplements, and the Confirmation Order (including the findings contained therein or issued in conjunction therewith), and, to the extent the insurers have or had adequate notice from any source, any other ruling made or order entered by the Bankruptcy Court whether prior to or after the Confirmation Date. Furthermore, nothing in the Plan, the Plan Supplement, or the Confirmation Order shall relieve any insurer of the Debtors from their obligations under the Insurance Contracts.

Nothing in this Plan, the Confirmation Order, or any Plan Document shall impose any obligation on any insurer to provide a defense for, settle, or pay any judgment with respect to any Claim. All such obligations with respect to the insurers shall be determined by and in accordance with the terms of the applicable Insurance Contracts and with applicable Law.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, all Executory Contracts or Unexpired Leases not otherwise assumed or rejected will be deemed rejected by the Wind-Down Debtors in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that are: (1) identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (2) previously expired or terminated pursuant to their own terms or agreement of the parties thereto; (3) have been previously assumed or rejected by a Debtor pursuant to a Final Order; (4) are the subject of a motion to assume that is pending on the Effective Date; or (5) have an ordered or requested effective date of rejection that is after the Effective Date.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan, or the Schedule of Assumed Executory Contracts and Unexpired Leases or Schedule of Proposed Cure Amounts, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise specifically set forth herein, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Wind-Down Debtors in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by the Wind-Down Debtors.

Except as otherwise provided herein or agreed to by the Debtors and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

To the maximum extent permitted by Law, any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan shall be deemed modified such that the transactions contemplated by the Plan shall not constitute a "change of control" or "assignment" (or terms with similar effect) under, or any other transaction or matter that would result in a violation, breach or default under, or increase, accelerate, or otherwise alter any obligations, rights, or liabilities of the Debtors or the Wind-Down Debtors under, or result in the creation or imposition of a Lien upon any property or asset of the Debtors or the Wind-Down Debtors pursuant to, the applicable Executory Contract or Unexpired Lease, and any consent or advance notice required under such Executory Contract or Unexpired

Lease shall be deemed satisfied by Confirmation. Notwithstanding anything to the contrary in the Plan, the Debtors or the Wind-Down Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases and the Schedule of Proposed Cure Amounts at any time up to forty-five days after the Effective Date.

To the extent any provision of the Bankruptcy Code or the Bankruptcy Rules requires the Debtors to assume or reject an Executory Contract or Unexpired Lease, such requirement shall be satisfied if the Debtors makes an election to assume or reject such Executory Contract or Unexpired Lease prior to the deadline set forth by the Bankruptcy Code or the Bankruptcy Rules, as applicable, regardless of whether or not the Bankruptcy Court has actually ruled on such proposed assumption or rejection prior to such deadline.

If certain, but not all, of a contract counterparty's Executory Contracts or Unexpired Leases are assumed pursuant to the Plan, the Confirmation Order shall be a determination that such counterparty's Executory Contracts or Unexpired Leases that are being rejected pursuant to the Plan are severable agreements that are not integrated with those Executory Contracts and/or Unexpired Leases that are being assumed pursuant to the Plan. Parties seeking to contest this finding with respect to their Executory Contracts and/or Unexpired Leases must File a timely objection to the Plan on the grounds that their agreements are integrated and not severable, and any such dispute shall be resolved by the Bankruptcy Court at the Confirmation Hearing (to the extent not resolved by the parties prior to the Confirmation Hearing).

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Wind-Down Debtors, the Estates, or their property without the need for any objection by the Wind-Down Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and barred, notwithstanding anything in the Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with **Article III.B** of the Plan.

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

On the Effective Date or as soon as reasonably practicable thereafter, the Debtors or the Wind-Down Debtors, as applicable, shall, in accordance with the Schedule of Proposed Cure Amounts pay all Cure costs (if any) relating to Executory Contracts and Unexpired Leases (if any) that are being assumed under the Plan. Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure costs that differ from the amounts paid or proposed to be paid by the Debtors or the Wind-Down Debtors to a counterparty must be Filed with the Notice and Claims Agent on or before fourteen days after the Filing of the Schedule of Proposed Cure Amounts. Any such request that is not timely Filed shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Debtor or Reorganized Debtor, without the need for any objection by the applicable Debtor or Reorganized Debtor or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court. Any Cure costs shall be deemed fully satisfied and released upon payment by the Debtors or the Wind-Down Debtors of the applicable Cure costs; *provided, however*, that nothing herein shall prevent the Wind-Down Debtors from paying any Cure costs despite the failure of the relevant counterparty to File such request for payment of such Cure costs. The Wind-Down Debtors also may settle any Cure costs without any further notice to or action, order, or approval of the Bankruptcy Court. In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan must be Filed with the Bankruptcy Court on or before the date of the Confirmation Hearing. Any such objection will be scheduled to be heard by the Bankruptcy Court at the Confirmation Hearing or at the Debtors' or Wind-Down Debtors', as applicable, first scheduled omnibus hearing for which such objection is timely Filed. Any counterparty to an Executory Contract or

Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

If there is any dispute regarding any Cure costs, the ability of the Wind-Down Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of any Cure costs shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors or the Wind-Down Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease. The Debtors and Wind-Down Debtors, as applicable, reserve the right at any time to move to reject any Executory Contract or Unexpired Lease based upon the existence of any such unresolved dispute. If the Bankruptcy Court determines that the Allowed Cure cost with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the Schedule of Proposed Cure Amounts, the Debtors shall have the right to remove such Executory Contract or Unexpired Lease from the Schedule of Assumed Executory Contracts and Unexpired Leases, in which case such Executory Contract or Unexpired Lease will be deemed rejected as of the Effective Date subject to the applicable counterparty's right to object to such rejection.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or any bankruptcy-related defaults, arising at any time prior to the effective date of assumption. **Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, shall be deemed Disallowed and expunged as of the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such assumption, (2) the effective date of such assumption or (3) the Effective Date, without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.**

For the avoidance of doubt, the Debtors do not anticipate that many, if any, Executory Contracts or Unexpired Leases will be assumed under the Plan or that any Cure costs will be owed; however, this **Article V.C** is included in the Plan out of an abundance of caution.

D.      *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Wind-Down Debtors, as applicable, under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any applicable non-bankruptcy Law to the contrary, the Wind-Down Debtors expressly reserve and do not waive any right to receive any continuing obligation of a counterparty to provide, without limitation, any warranty, continued maintenance, contribution, or indemnity obligations owed to the Debtors pursuant to any rejected Executory Contracts or Unexpired Leases.

E.      *Reservation of Rights*

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that the Wind-Down Debtors have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Wind-Down Debtors, as applicable, shall have forty-five days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

F.      *Contracts and Leases Entered into After the Petition Date*

Contracts and leases entered into after the Petition Date by the Debtors, including any Executory Contracts and Unexpired Leases assumed by the Debtors, will be performed by the Debtors or the Wind-Down Debtors in the ordinary course of business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.   *Distributions Generally*

Other than with respect to payments to be made on account of (a) Professional Fee Claims or (b) as otherwise provided in the Plan or Plan Supplement (including pursuant to the Environmental Remediation Trust Agreement, Tort Claims Trust Agreement, Tort Claims Trust Distribution Procedures, and GUC Trust Agreement), the applicable Disbursing Agent shall make all other Distributions required to be made under the Plan as provided under this **Article VI**.   For the avoidance of doubt, Distributions on account of (i) Environmental Claims and Indirect Environmental Claims shall be governed by the Environmental Remediation Trust Agreement, (ii) Tort Claims shall be governed by the Tort Claims Trust Agreement and Tort Claims Trust Distribution Procedures, (iii) General Unsecured Claims shall be governed by the GUC Trust Agreement, and shall not be governed under this **Article VI**.

B.   *Distributions on Account of Claims Allowed as of the Effective Date*

Except as otherwise provided herein, in a Final Order, or as otherwise agreed to by the Debtors or the Wind-Down Debtors, as the case may be, and the Holder of the applicable Allowed Claim, the applicable Disbursing Agent shall make Distributions under the Plan on account of Allowed Claims; *provided* that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (2) Allowed Priority Tax Claims shall be paid in accordance with **Article II.D** of the Plan.   To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the Holder of such Claim or as may be due and payable under applicable non-bankruptcy Law or in the ordinary course of business.   Thereafter, a Distribution date shall occur no less frequently than once in every ninety-day period, as necessary, in the Wind-Down Debtors' sole discretion.

C.   *Rights and Powers of Disbursing Agent*

1.   Powers of the Disbursing Agent

The applicable Disbursing Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) employ professionals to represent it with respect to its responsibilities; and (c) exercise such other powers as may be vested in the applicable Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the applicable Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.   Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on behalf of the Wind-Down Debtors on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement Claims (including reasonable attorney fees and expenses), made by the Disbursing Agent on behalf of the Wind-Down Debtors shall be paid in Cash by the Wind-Down Debtors in accordance with the Wind-Down Budget; *provided* that reasonable compensation and expense reimbursement (including reasonable attorney fees and expenses) with respect to the GUC Trust, Environmental Remediation Trust, and Tort Claims Trust, shall be paid from the GUC Trust Operating Reserve, Environmental Remediation Trust Operating Reserve, and Tort Claims Trust Operating Reserve, respectively.

D.   *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.   Record Date for Distribution

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making Distributions shall be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.  If a Claim, other than one based on a publicly traded Security,

is transferred twenty or fewer days before the Distribution Record Date, the applicable Disbursing Agent shall make Distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.   Delivery of Distributions in General

Except as otherwise provided herein, the applicable Disbursing Agent shall make Distributions to Holders of Allowed Claims as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such Distribution; *provided* that the manner of such Distributions shall be determined at the discretion of the Wind-Down Debtors or applicable Disbursing Agent, as applicable.

3.   Minimum Distributions

Holders of Allowed Claims entitled to Distributions of $100 or less shall not receive Distributions, and each such Claim shall be enjoined pursuant to **Article IX** and its Holder is forever barred pursuant to **Article IX** from asserting that Claim against the Wind-Down Debtors or their property.

4.   Undeliverable and Unclaimed Distributions

If any Distribution to a Holder of an Allowed Claim is returned to the applicable Disbursing Agent as undeliverable, no Distribution shall be made to such Holder unless and until the applicable Disbursing Agent is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time all currently due missed Distributions shall be made to such Holder on the next Distribution date without interest. Undeliverable Distributions shall remain in the possession of the Wind-Down Debtors until such time as a Distribution becomes deliverable, or such Distribution reverts to the Wind-Down Debtors or is cancelled pursuant to this **Article VI.D.4**, and shall not be supplemented with any interest, dividends, or other accruals of any kind.

Any Distribution under the Plan that is an Unclaimed Distribution or remains undeliverable for a period of 180 calendar days after the attempted Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution or undeliverable Distribution shall revest in the Wind-Down Debtors automatically (and without need for a further order by the Bankruptcy Court, notwithstanding any applicable federal, provincial, or estate escheat, abandoned, or unclaimed property Laws to the contrary). Upon such revesting, the Claim of the Holder or its successors with respect to such property shall be cancelled, released, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property Laws, or any provisions in any document governing the Distribution that is an Unclaimed Distribution, to the contrary.

For the avoidance of doubt, any and all Distributions to be made to (a) Holders of Tort Claims shall be governed and made in accordance with the Tort Claims Trust Agreement and Tort Claims Trust Distribution Procedures, (b) Holders of Environmental Claims shall be governed and made in accordance with the Environmental Remediation Trust Agreement, and (c) Holders of General Unsecured Claims shall be governed and made in accordance with the GUC Trust Agreement, as applicable, and shall not be subject to this **Article VI**.

5.   Surrender of Cancelled Instruments or Securities

On the Effective Date or as soon as reasonably practicable thereafter, each Holder of a certificate or instrument evidencing a Claim or an Interest that has been cancelled in accordance with this Plan shall be deemed to have surrendered such certificate or instrument to the applicable Disbursing Agent. Such surrendered certificate or instrument shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim or Interest, which shall continue in effect for purposes of allowing Holders to receive Distributions under the Plan, charging Liens, priority of payment, and indemnification rights. Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims that are Unimpaired under the Plan.

E.      *Manner of Payment*

      1.      All Distributions of Cash to the Holders of the applicable Allowed Claims under the Plan shall be made by the applicable Disbursing Agent on behalf of the Debtors or Wind-Down Debtors.

      2.      At the option of the applicable Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

F.      *Indefeasible Distributions*

      Subject to **Article VI.L** hereof, any and all Distributions made under the Plan shall be indefeasible and not subject to clawback or turnover provisions.

G.      *Compliance with Tax Requirements*

      In connection with the Plan, to the extent applicable, the Debtors, Wind-Down Debtors, Disbursing Agent, and any applicable withholding agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors and the Wind-Down Debtors reserve the right to allocate all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and similar spousal awards, Liens, and Encumbrances.

H.      *Allocations*

      Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

I.      *No Postpetition Interest on Claims*

      Unless otherwise specifically provided for in the Plan, the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy Law, postpetition interest shall not accrue or be paid on any prepetition Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on such Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final Distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

J.      *Foreign Currency Exchange Rate*

      Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal* (National Edition), on the Effective Date.

K.      *Setoffs and Recoupment*

      Except as expressly provided in the Plan, the Wind-Down Debtors may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim (other than a DIP Claim), any and all Claims, rights, and Causes of Action that the Wind-Down Debtors may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Wind-Down Debtors and the Holder of the Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided* that neither the failure to effectuate a setoff or recoupment

nor the allowance of any Claim hereunder shall constitute a waiver or release by the Wind-Down Debtors or their successors of any and all Claims, rights, and Causes of Action that the Wind-Down Debtors or their successors may possess against the applicable Holder.

L.      *Claims Paid or Payable by Third Parties*

     1.      Claims Paid by Third Parties

The Debtors or the Wind-Down Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be Disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtors or the Wind-Down Debtors; *provided* that the foregoing shall not apply to DIP Claims.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim (other than a DIP Claim) receives a Distribution on account of such Claim and receives payment from a party that is not the Debtors or Wind-Down Debtors on account of such Claim, such Holder shall, within fourteen calendar days of receipt thereof, repay or return the Distribution to the Wind-Down Debtors, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan.  The failure of such Holder to timely repay or return such Distribution shall result in the Holder owing the Wind-Down Debtors annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen-day grace period specified above until the amount is repaid.

     2.      Applicability of Insurance Contracts

Except as otherwise provided in the Plan, Distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable Insurance Contract.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Person or Entity may hold against any other Person or Entity, including insurers under any Insurance Contract nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VII.
## THE PLAN ADMINISTRATOR, WIND-DOWN, AND POST-EFFECTIVE DATE TRUST STRUCTURE

A.      *The Plan Administrator*

The Debtors, in consultation with NICO, shall appoint a Plan Administrator, who shall act for the Wind-Down Debtors in the same fiduciary capacity as applicable to a president and chief executive officer (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same) and retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under this Plan in accordance with the Wind-Down and as otherwise provided in the Confirmation Order.

The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to distribute the Environmental Remediation Trust Assets to the Environmental Remediation Trust, the Tort Claims Trust Assets to the Tort Claims Trust, and the GUC Trust Assets to the GUC Trust, as applicable, in accordance with the Plan, the Environmental Remediation Trust Agreement, Tort Claims Trust, and GUC Trust Agreement, and wind down the affairs of the Debtors and Wind-Down Debtors, including (all without further order of the Bankruptcy Court):  (1) receiving, holding, investing, liquidating, supervising, and protecting the assets of the Wind Down Debtors; (2) taking all steps to execute all instruments and documents necessary to effectuate the Distributions to be made under the Plan; (3) making applicable Distributions as contemplated under the Plan; (4) establishing and maintaining bank accounts in the name of the Wind Down Debtors; (5) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (6) paying all reasonable and documented fees, expenses, debts, charges, and liabilities of the Wind Down Debtors; (7) administering and paying taxes of the Wind Down Debtors, including filing tax returns; (8) representing the interests of the Wind Down Debtors or the Estates before any taxing authority in all matters, including any action, suit, proceeding, or audit; (9) investigating commencing, prosecuting, or settling the Retained Causes of Action; (10) pursuing Claims related to the Insurance Contracts subject to the terms and conditions of the Plan and applicable terms, conditions, and other provisions of the applicable Insurance Contracts

and applicable Law; (11) performing all obligations of the Debtors or the Wind-Down Debtors under Contracts and leases entered into after the Petition Date by the Debtors, including the Estate Claims Settlement Agreement and any Executory Contracts and Unexpired Leases assumed by the Debtors, (12) taking all steps to enforce the Estate Claims Settlement Order, Successor Liability Claims Order, and the Confirmation Order, including by acting for the Wind-Down Debtors with respect to actions to enforce the Estate Claims Settlement Order and the Confirmation Order and/or defend appeals of the Estate Claims Settlement Order, Successor Liability Claims Order, and/or the Confirmation Order, and (13) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.

The Plan Administrator may resign at any time upon thirty (30) days' written notice delivered to the Wind-Down Debtors and the Bankruptcy Court; *provided* that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator in consultation with NICO, such appointment being subject to the approval of the Bankruptcy Court. Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the Wind-Down Debtors shall be terminated.

1. Plan Administrator Rights and Powers

The Plan Administrator shall retain and have all the rights, powers, and duties of a trustee in bankruptcy including without limitation the powers necessary to carry out his or her responsibilities under this Plan and as otherwise provided in the Confirmation Order. The Plan Administrator shall be the exclusive trustee of the assets of the Wind-Down Debtors for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

2. Retention of Professionals

The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties. The reasonable fees and expenses of such professionals shall be paid by the Wind-Down Debtors from upon the monthly submission of statements to the Plan Administrator. The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

3. Compensation of the Plan Administrator

The Plan Administrator's compensation, on a post-Effective Date basis, shall be as described in the Plan Supplement. Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Plan Administrator on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Plan Administrator in connection with such Plan Administrator's duties shall be paid without any further notice to, or action, order, or approval of, the Bankruptcy Court in Cash if such amounts relate to any actions taken hereunder. Notwithstanding anything to the contrary herein, all fees, expenses, and disbursements of the Plan Administrator, including the compensation of the Plan Administrator and the payment of fees and expenses of any professionals engaged by the Plan Administrator, shall be subject to the Wind-Down Budget.

4. Plan Administrator Expenses

All costs, expenses, and obligations incurred by the Plan Administrator in administering this Plan, the Wind-Down Debtors, or in any manner connected, incidental or related thereto, in effecting Distributions from the Wind-Down Debtors thereunder (including the reimbursement of reasonable expenses) shall be incurred and paid as set forth in the Plan Supplement.

The Debtors and the Plan Administrator, as applicable, shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. However, in the event that the Plan Administrator is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash from the Reserve Funds.

5.    Cooperation with the GUC Trustee, Environmental Remediation Trustee, and Tort Claims Trustee

The Plan Administrator shall, to the extent reasonably commercially practicable, cooperate with the GUC Trustee, Environmental Remediation Trustee, and Tort Claims Trustee to provide the Debtors' or Wind-Down Debtors' books and records to the applicable trustee in accordance with the GUC Trust Agreement, Environmental Remediation Trust Agreement, and Tort Claims Trust Agreement, as applicable.

B.      *Wind-Down*

On and after the Effective Date, the Plan Administrator will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve the Debtors' Estates.

As soon as practicable after the Effective Date, the Plan Administrator shall:  (1) cause the Debtors and the Wind-Down Debtors, as applicable, to comply with, and abide by, the terms of the Plan and any other documents contemplated thereby; (2) to the extent applicable, file a certificate of dissolution or equivalent document, together with all other necessary corporate and company documents, to effect the dissolution of the Debtors under the applicable laws of their state of incorporation or formation (as applicable); and (3) take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan.  Any certificate of dissolution or equivalent document may be executed by the Plan Administrator without need for any action or approval by the shareholders or board of directors of any Debtor.  From and after the Effective Date, except with respect to Wind-Down Debtors as set forth herein, the Debtors (1) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (2) shall be deemed to have canceled pursuant to this Plan all Interests, and (3) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.  For the avoidance of doubt, notwithstanding the Debtors' dissolution, the Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Administrator.

C.      *Transfers of Property to the GUC Trust, Environmental Remediation Trust, and Tort Claims Trust*

1.    Funding the Trusts

The GUC Trust, Environmental Remediation Trust, and Tort Claims Trust shall be funded solely by the GUC Trust Assets, Environmental Remediation Trust Assets, and Tort Claims Trust Assets (collectively, the "Contributed Trust Consideration"), respectively.   On the Effective Date, the obligations to provide the GUC Trust Assets, Environmental Remediation Trust Assets, and Tort Claims Trust Assets shall constitute legal, valid, binding, and authorized obligations of the Wind-Down Debtors, enforceable in accordance with the terms hereof.  The financial accommodations to be extended in connection with the Contributed Trust Consideration are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law.

2.    Vesting of the Contributed Trust Consideration in the GUC Trust, Environmental Remediation Trust, and Tort Claims Trust

On the Effective Date, pursuant to the Plan and in accordance with the GUC Trust Agreement, Environmental Remediation Trust Agreement, and Tort Claims Trust Agreement, as applicable, the Contributed Trust Consideration shall be transferred or issued to and vest in the GUC Trust, Environmental Remediation Trust, and Tort Claims Trust, as applicable, free and clear of all Claims, Interests, Liens, other encumbrances and liabilities of any kind (other than the General Unsecured Claims, GUC Trust Operating Expenses, Environmental Claims, Environmental Remediation Trust Operating Expenses, Tort Claims, and Tort Claims Trust Operating Expenses).  The GUC Trust, Environmental Remediation Trust, and Tort Claims Trust shall have no liability for, and the Contributed Trust Consideration shall

40

vest in the applicable trust free and clear of, any prepetition and postpetition Claims, Causes of Action or liabilities of any kind, in each case that have been or could have been asserted against the Debtors, their Estates or their property (including Claims based on successor liability), or any other Released Party based on any acts or omissions prior to the Effective Date, except for the General Unsecured Claims, Environmental Claims, and Tort Claims, as applicable.

From and after the Effective Date, all proceeds of the Contributed Trust Consideration, shall be applied in accordance with the GUC Trust Agreement, Environmental Remediation Trust Agreement, Tort Claims Trust Agreement (and Tort Claims Trust Distribution Procedures), and the terms of the Plan.

3.   Institution of Maintenance of Legal and Other Proceedings

As of the date upon which the GUC Trust, Environmental Remediation Trust, and Tort Claims Trust, as applicable, are established, the GUC Trust, Environmental Remediation Trust, and Tort Claims Trust, as applicable, shall be empowered, and have the sole authority, to initiate, prosecute, defend and resolve all legal actions and other proceedings related to any asset, liability or responsibility of the GUC Trust, Environmental Remediation Trust, and Tort Claims Trust, as applicable; *provided*, *however*, for the avoidance of doubt, that the GUC Trust, Environmental Remediation Trust, and Tort Claims Trust shall not be empowered to and shall not have the authority to initiate, prosecute, defend, or resolve any and all legal actions and other proceedings relating to Released Claims or Claims or Interest released pursuant to the Estate Claims Settlement.  The GUC Trust, Environmental Remediation Trust, and Tort Claims Trust, as applicable, shall be empowered, and have the sole authority, to initiate, prosecute, defend, and resolve all such actions in the name of the Debtors or their Estates, in each case if deemed necessary or appropriate by the GUC Trustee, Environmental Remediation Trustee, and Tort Claims Trustee, as applicable.  The GUC Trust, Environmental Remediation Trust, and Tort Claims Trust, as applicable, shall be responsible for the payment of all damages, awards, judgments, settlements, expenses, costs, fees, and other charges incurred subsequent to the date upon which the GUC Trust, Environmental Remediation Trust, and Tort Claims Trust, as applicable, are established arising from, or associated with, any legal action or other proceeding brought pursuant to the foregoing.

D.   *GUC Trust.*

On the Effective Date, the Plan Administrator shall transfer the GUC Trust Assets to the GUC Trust.  The GUC Trust shall be established for the primary purpose of liquidating the GUC Trust Assets, reconciling General Unsecured Claims asserted against the Debtors or Wind-Down Debtors, and distributing the proceeds thereof in accordance with the Plan, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the purpose of the GUC Trust.  Upon the transfer of the GUC Trust Assets to the GUC Trust, the Wind-Down Debtors will have no reversionary or further interest in or with respect to the assets of the GUC Trust.  To the extent beneficial interests in the GUC Trust are deemed to be "securities" as defined in section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws, the Debtors intend that the exemption provisions of section 1145 of the Bankruptcy Code will apply to such beneficial interests.  The identity of the GUC Trustee shall be disclosed in the Plan Supplement.  The GUC Trust shall pay all GUC Trust Operating Expenses from the GUC Trust Operating Reserve.

1.   GUC Trust Treatment

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, or unless otherwise required by applicable law, the Debtors expect to treat the GUC Trust as a "liquidating trust" under section 301.7701-4(d) of the Treasury Regulations and a grantor trust under section 671 of the Tax Code.  In such case, for U.S. federal income tax purposes, the transfer of assets to the GUC Trust will be deemed to occur as (a) a first-step transfer of the GUC Trust Assets to the Holders of the applicable General Unsecured Claims, and (b) a second-step transfer by such Holders to the GUC Trust.

No request for a ruling from the IRS will be sought on the classification of the GUC Trust.  Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the GUC Trust.  If the IRS were to successfully challenge the classification of the GUC Trust as a grantor trust, the federal income tax consequences to the GUC Trust and the GUC Trust beneficiaries could vary from those discussed in the Plan (including the potential for an entity-level tax).  For example, the IRS could characterize the GUC Trust as a so-called "complex trust" subject to a separate entity-level tax on its earnings, except to the extent that such earnings are distributed during the taxable year.  If the GUC Trust were characterized as a "qualified settlement fund," which

treatment is mandatory (rather than elective) for any a fund that meets the requirements of a "qualified settlement fund," the tax treatment would also vary from that discussed in the Plan.

As soon as possible after the transfer of the GUC Trust Assets to the GUC Trust, the GUC Trustee shall make a good faith valuation of the GUC Trust Assets. This valuation will be made available from time to time, as relevant for tax reporting purposes. Each of the Debtors, the GUC Trustee, and the Holders of General Unsecured Claims receiving interests in the GUC Trust shall take consistent positions with respect to the valuation of the GUC Trust Assets, and such valuations shall be utilized for all U.S. federal income tax purposes.

Allocations of taxable income of the GUC Trust among the GUC Trust beneficiaries shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the GUC Trust had distributed all its assets (valued at their tax book value) to the GUC Trust beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent Distributions from the GUC Trust. Similarly, taxable loss of the GUC Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining GUC Trust Assets. The tax book value of the GUC Trust Assets shall equal their fair market value on the date of the transfer of the GUC Trust Assets to the GUC Trust, adjusted in accordance with tax accounting principles prescribed by the Tax Code, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

The GUC Trust shall in no event be dissolved later than five (5) years from the creation of such GUC Trust unless the Bankruptcy Court, upon motion within the six (6) month period prior to the fifth (5th) anniversary (or within the six (6) month period prior to the end of an extension period), determines that a fixed period extension (not to exceed five (5) years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the GUC Trustee that any further extension would not adversely affect the status of the trust as a liquidating trust for U.S. federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the GUC Trust Assets.

Assuming that the above expected treatment applies, the GUC Trust will file annual information tax returns with the IRS as a grantor trust pursuant to section 1.671-4(a) of the Treasury Regulations that will include information concerning certain items relating to the holding or disposition (or deemed disposition) of the GUC Trust Assets (*e.g.*, income, gain, loss, deduction, and credit). Each GUC Trust beneficiary holding a beneficial interest in the GUC Trust will receive a copy of the information returns and must report on its federal income tax return its share of all such items. The information provided by the GUC Trust will pertain to GUC Trust beneficiaries who receive their interests in the GUC Trust in connection with the Plan.

2.    Disputed Ownership Fund Treatment

With respect to any of the assets of the GUC Trust that are subject to potential disputed claims of ownership or uncertain Distributions, or to the extent "liquidating trust" treatment is otherwise unavailable or not elected to be applied with respect to the GUC Trust, the Debtors intend that such assets will be subject to disputed ownership fund treatment under section 1.468B-9 of the Treasury Regulations, that any appropriate elections with respect thereto shall be made, and that such treatment will also be applied to the extent possible for state and local tax purposes. Under such treatment, a separate federal income tax return shall be filed with the IRS for any such account. Any taxes (including with respect to interest, if any, earned in the account) imposed on such account shall be paid out of the assets of the respective account (and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes).

3.    Transfer of Assigned Insurance Rights

In furtherance of the transfer of the GUC Trust Assets to the GUC Trust, on the Effective Date, the Debtors shall be deemed to have irrevocably vested in, transferred, granted, and assigned to the GUC Trust, and the GUC Trust shall receive and accept, any and all of the Assigned GUC Insurance Rights. The foregoing transfer shall be (i) free and clear of any and all actual or alleged Liens or encumbrances of any nature whatsoever (other than, as applicable, the General Unsecured Claims related to the Insurance Contracts), (ii) made to the maximum extent possible under applicable law, (iii) absolute and without requirement of any further action by the Debtors or Wind-Down Debtors, the GUC Trust, the Bankruptcy Court, or any other Person, and (iv) governed by, and construed in accordance with, the Bankruptcy Code and the other applicable laws governing the applicable Insurance Contracts, and subject to **Article IV.T**. The transfer of the Assigned GUC Insurance Rights contemplated in this Section is not an assignment

of any Insurance Contract itself.  The Confirmation Order shall contain findings with respect to the preservation of Assigned Insurance Rights consistent with the Plan.

Notwithstanding the foregoing, the Plan Administrator shall have the power to assign and/or transfer (a) Assigned Tort Claim Insurance Rights to Holders of Allowed Tort Claims, (b) Assigned GUC Insurance Rights to Holders of Allowed General Unsecured Claims, or (c) Assigned Environmental Insurance Rights to Holders of Allowed Environmental Claims, subject to reasonable restrictions so as not to interfere with, increase costs to, or impede the efforts of, the GUC Trust, as further described in the Wind-Down Documents, to the extent permitted by the terms and conditions of the applicable Insurance Contract(s) and applicable Law.

E.      *Environmental Remediation Trust.*

On the Effective Date, the Plan Administrator shall transfer the Environmental Remediation Trust Assets to the Environmental Remediation Trust.  The Environmental Remediation Trust shall be established for the primary purpose of liquidating the Environmental Remediation Trust's assets, reconciling Environmental Claims asserted against the Debtors or Wind-Down Debtors, and distributing the proceeds thereof in accordance with the Plan, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to and consistent with, the purpose of the Environmental Remediation Trust.  Upon the transfer of the Wind-Down Debtors' assets to the Environmental Remediation Trust, the Wind-Down Debtors will have no reversionary or further interest in or with respect to the Environmental Remediation Trust Assets.   To the extent beneficial interests in the Environmental Remediation Trust are deemed to be "securities" as defined in section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws, the Debtors intend that the exemption provisions of section 1145 of the Bankruptcy Code will apply to such beneficial interests.  The identity of the Environmental Remediation Trustee shall be disclosed in the Plan Supplement.  The Environmental Remediation Trust shall pay all Environmental Remediation Trust Operating Expenses from the Environmental Trust Operating Reserve.

1.  Environmental Remediation Trust Treatment

It is anticipated that the Environmental Remediation Trust will qualify as a "qualified settlement fund" within the meaning of the Treasury Regulations promulgated under Section 468B of the Tax Code.  Qualified settlement fund treatment for funds that meet its requirements is mandatory, not elective.  Among other things, a "qualified settlement fund"  is treated as a separate taxable entity and is taxable at the highest tax rate applicable to trusts and estates on its taxable income.

2.  Transfer of Assigned Insurance Rights

In furtherance of the transfer of the Environmental Remediation Trust Assets to the Environmental Remediation Trust, on the Effective Date, the Debtors shall be deemed to have irrevocably vested in, transferred, granted, and assigned to the Environmental Remediation Trust, and the Environmental Remediation Trust shall receive and accept, any and all of the Assigned Environmental Insurance Rights.  The foregoing transfer shall be (i) free and clear of any and all actual or alleged Liens or encumbrances of any nature whatsoever (other than, as applicable, the Environmental Claims related to the Insurance Contracts), (ii) made to the maximum extent possible under applicable law, (iii) absolute and without requirement of any further action by the Debtors or the Wind-Down Debtors, the Environmental Remediation Trust, the Bankruptcy Court, or any other Person, and (iv) governed by, and construed in accordance with, the Bankruptcy Code and the other applicable laws governing the applicable Insurance Contracts, and subject to **Article IV.T**.  The transfer of the Assigned Environmental Insurance Rights contemplated in this Section is not an assignment of any Insurance Contract itself.  The Confirmation Order shall contain findings with respect to the preservation of Assigned Insurance Rights consistent with the Plan.

Notwithstanding the foregoing, the Plan Administrator shall have the power to assign and/or transfer (a) Assigned Tort Claim Insurance Rights to Holders of Allowed Tort Claims, (b) Assigned GUC Insurance Rights to Holders of Allowed General Unsecured Claims, or (c) Assigned Environmental Insurance Rights to Holders of Allowed Environmental Claims, subject to reasonable restrictions so as not to interfere with, increase costs to, or impede the efforts of, the Environmental Remediation Trust, as further described in the Wind-Down Documents, to the extent permitted by the terms and conditions of the applicable Insurance Contract(s) and applicable Law.

F.      *Tort Claims Trust.*

On the Effective Date, the Plan Administrator shall transfer the Tort Claims Trust Assets to the Tort Claims Trust. The Tort Claims Trust shall be established for the primary purpose of liquidating the Tort Claims Trust's assets, reconciling Tort Claims asserted against the Debtors or Wind-Down Debtors, and distributing the proceeds thereof in accordance with the Plan, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to and consistent with, the purpose of the Tort Claims Trust. Upon the transfer of the Tort Claims Trust Assets to the Tort Claims Trust, the Wind-Down Debtors will have no reversionary or further interest in or with respect to the assets of the Tort Claims Trust. To the extent beneficial interests in the Tort Claims Trust are deemed to be "securities" as defined in section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws, the Debtors intend that the exemption provisions of section 1145 of the Bankruptcy Code will apply to such beneficial interests. The identity of the Tort Claims Trustee shall be disclosed in the Plan Supplement. The Tort Claims Trust shall pay all Tort Claims Trust Operating Expenses from the Tort Claims Trust Operating Reserve.

1.    Tort Claims Trust Treatment

It is anticipated that the Tort Claims Trust will qualify as a "qualified settlement fund" within the meaning of the Treasury Regulations promulgated under Section 468B of the Tax Code. Qualified settlement fund treatment for funds that meet its requirements is mandatory, not elective. Among other things, a "qualified settlement fund" is treated as a separate taxable entity and is taxable at the highest tax rate applicable to trusts and estates on its taxable income.

2.    Transfer of Assigned Insurance Rights

In furtherance of the transfer of the Tort Claims Trust Assets to the Tort Claims Trust on the Effective Date, the Debtors shall be deemed to have irrevocably vested in, transferred, granted, and assigned to the Tort Claims Trust, and the Tort Claims Trust shall receive and accept, any and all of the Assigned Tort Claim Insurance Rights in respect of Tort Claims. The foregoing transfer shall be (i) free and clear of any and all actual or alleged Liens or encumbrances of any nature whatsoever (other than, as applicable, the Tort Claims related to the Insurance Contracts), (ii) made to the maximum extent possible under applicable law, (iii) absolute and without requirement of any further action by the Debtors, the Tort Claims Trust, the Bankruptcy Court, or any other Person, and (iv) governed by, and construed in accordance with, the Bankruptcy Code and the other applicable laws governing the applicable Insurance Contracts, and subject to **Article IV.T**. The transfer of the Assigned Tort Claim Insurance Rights contemplated in this Section is not an assignment of any Insurance Contract itself. The Confirmation Order shall contain findings with respect to the preservation of Assigned Insurance Rights consistent with the Plan.

Notwithstanding the foregoing, the Plan Administrator shall have the power to assign and/or transfer (a) Assigned Tort Claim Insurance Rights to Holders of Allowed Tort Claims, (b) Assigned GUC Insurance Rights to Holders of Allowed General Unsecured Claims, or (c) Assigned Environmental Insurance Rights to Holders of Allowed Environmental Claims, subject to reasonable restrictions so as not to interfere with, increase costs to, or impede the efforts of, the Tort Claims Trust, as further described in the Wind-Down Documents, to the extent permitted by the terms and conditions of the applicable Insurance Contract(s) and applicable Law.

G.      *Indemnification, Insurance & Liability Limitation*

The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Wind-Down Debtors. The Plan Administrator may obtain, at the expense of the Wind-Down Debtors, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Wind-Down Debtors.

For the avoidance of doubt, notwithstanding anything to the contrary contained herein, (a) the Plan Administrator in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors and (b) the GUC Trustee, the Environmental Claims Trustee and the Tort Claims Trustee each shall not be indemnified by the Wind-Down Debtors (but may be indemnified by their respective trusts as provided for in the respective trust agreements).

H.      *Tax Returns*

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

I.      *Dissolution of the Wind-Down Debtors*

Upon a certification to be Filed with the Bankruptcy Court by the Plan Administrator of all Distributions having been made, the Confirmation Order, the Estate Claims Settlement Order, and the Successor Liability Claims Order each having become a Final Order, and completion of all its other duties under the Plan and entry of a final decree closing the last of the Chapter 11 Cases, the Wind-Down Debtors shall be deemed to be dissolved without any further action by the Wind-Down Debtors, including the filing of any documents with the secretary of state for the state in which each Debtor or Wind-Down Debtor is formed or any other jurisdiction.  The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Wind-Down Debtors in and withdraw the Wind-Down Debtors from applicable state(s).

J.      *Budget and Reporting*

Unless otherwise ordered by the Bankruptcy Court, commencing with the third month following the Effective Date and every quarter thereafter (each such quarterly period, a "Reporting Period"), the Plan Administrator shall File with the Bankruptcy Court:  (1) an updated Wind-Down Budget; (2) a variance report comparing actual receipts and disbursements against those forecast in the previously applicable Wind-Down Budget; (3) a report on amounts distributed during such Reporting Period; (4) a report on the status of all claims and causes of action that the Plan Administrator, and/or Wind-Down Debtors have commenced or are authorized to commence pursuant to the Plan; and (5) a report on the claims reconciliation and objection process.

# ARTICLE VIII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.      *Allowance of Claims*

After the Effective Date, the Plan Administrator or each of the Wind-Down Debtors, as applicable, shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim or Interest immediately before the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the DIP Order, Estate Claims Settlement Order, or the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Interest unless and until such Claim or Interest, as applicable, is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.

B.      *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan or the Plan Supplement, and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Plan Administrator or the Wind-Down Debtors, as applicable, shall have the sole authority to:  (1) File and prosecute objections to Claims; (2) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; (3) settle, compromise, or resolve any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (4) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

C.      *Estimation of Claims*

Before, on, or after the Effective Date, the Debtors, Wind-Down Debtors, or Plan Administrator, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim pursuant to applicable Law, including pursuant to section 502(c) of the Bankruptcy Code and/or Bankruptcy Rule 3012 for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has

ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under sections 157 and 1334 of the Judicial Code to estimate any such Claim, including during the litigation of any objection to any Claim or during the pendency of any appeal relating to such objection.  Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Claim and does not provide otherwise, such estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of Distributions) and may be used as evidence in any supplemental proceedings, and the Debtors, Plan Administrator, or Wind-Down Debtors may elect to pursue any supplemental proceedings to object to any ultimate Distribution on such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before seven (7) days after the date on which such Claim is estimated.  Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D.      *Adjustment to Claims Without Objection*

        The Debtors or the Wind-Down Debtors, as applicable, shall be authorized to update the Claims Register to adjust or remove any Claim that has been paid in full or satisfied, or any Claim that has been amended or superseded; *provided* that the Debtors will provide notice to such Claimant at the address or email address on the Proof of Claim, to the extent such information is provided, informing such Claimant that its Claim will be adjusted or removed from the Claims Register.

E.      *Time to File Objections to Claims*

        Any objections to Claims or Interests shall be Filed on or before the later of (1) 180 days after the Effective Date and (2) such other period of limitation as may be specifically fixed by the Bankruptcy Court upon a motion by the Debtors or Wind-Down Debtors.

F.      *Disallowance of Claims or Interests*

        If Proofs of Claim are not received by the Notice and Claims Agent on or before the applicable Bar Date, the Holders of the underlying Claims shall be barred from asserting such Claims against the Debtors and precluded from voting on any chapter 11 plans Filed in these Chapter 11 Cases, if applicable, and/or receiving Distributions from the Debtors on account of such Claims in these Chapter 11 Cases.  The Debtors or Wind-Down Debtors, as applicable, shall be authorized to update the Claims Register to remove any Claims not received by the Notice and Claims Agent before the applicable Bar Date and not subject to an exception as set forth above; *provided* that the Debtors will provide notice to such claimant at the address or email address on the Proof of Claim, to the extent such information is provided, informing such claimant that its Claim will be removed from the Claims Register as a result of being untimely Filed.

        **Except as otherwise provided herein or as agreed to by the Debtors or the Wind-Down Debtors, any and all Proofs of Claim Filed after the applicable Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any Distributions on account of such Claims, unless such late Proof of Claim has been deemed timely Filed by a Final Order.**

G.      *Amendments to Claims*

        On or after the applicable Bar Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court, the Debtors, or the Wind-Down Debtors, and any such new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court to the maximum extent provided by applicable Law.

H.       *No Distributions Pending Allowance*

Notwithstanding any other provision of the Plan, if an objection to a Claim or portion thereof is Filed as set forth in **Article VIII**, no Distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

I.       *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the applicable Disbursing Agent shall provide to the Holder of such Claim the Distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim.

J.       *Special Rules for Distributions to Holders of Disputed Claims*

Notwithstanding any provision otherwise in this Plan, and except as may be agreed to by the Debtors and the Wind-Down Debtors, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial Distributions shall be made with respect to any Disputed Claim until the Disputed Claim has become an Allowed Claim, as applicable, or has otherwise been resolved by settlement or Final Order.

K.       *Special Rules for Environmental Claims, Indirect Environmental Claims, Tort Claims, and GUC Claims*

Notwithstanding anything to the contrary in this **Article VIII**:  (a) procedures for resolving Environmental Claims and Indirect Environmental Claims, including contingent, unliquidated, and disputed Environmental Claims and Indirect Environmental Claims, shall be set forth in the Environmental Remediation Trust Agreement, and the procedures set forth in this **Article VIII** shall not apply to Environmental Claims or Indirect Environmental Claims; (b) procedures for resolving Tort Claims, including contingent, unliquidated, and disputed Tort Claims, shall be set forth in the Tort Claims Trust Agreement and Tort Claims Trust Distribution Procedures, and the procedures set forth in this **Article VIII** shall not apply to Tort Claims; and (c) procedures for resolving General Unsecured Claims, including contingent, unliquidated, and disputed General Unsecured Claims, shall be set forth in the GUC Trust Agreement and the procedures set forth in this **Article VIII** shall not apply to GUC Claims.

# ARTICLE IX.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.       *Satisfaction of Claims and Termination of Interests*

Except as otherwise specifically provided in the Plan or the Confirmation Order, or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan, the Distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including Demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the Filing of the Chapter 11 Cases shall be deemed cured on the Effective Date; *provided* that the DIP Claims shall survive the Effective Date and shall be treated in accordance with the DIP Order and **Article II.B** of the Plan.  In accordance with the provisions of the Plan, pursuant

47

to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Plan Administrator, or Wind-Down Debtors, as applicable, may compromise and settle any Claims and Causes of Action against other Entities; *provided*, for the avoidance of doubt, that the Plan Administrator or Wind-Down Debtors shall not be authorized to compromise or settle any Released Claims or Claims or Interests released pursuant to the Estate Claims Settlement.

**B.**        *Injunction against Enforcement of Claims*

**Except as specifically provided in the Plan or the Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims against the Debtors (other than DIP Claims) are permanently enjoined, on and after the Effective Date, from:  (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, Wind-Down Debtors, or their respective property with respect to such Claim; (b) enforcing, attaching, collecting, or recovering by any manner or means of any judgment, award, decree, or order against the Debtors, Wind-Down Debtors, or their respective property with respect to such Claim; (c) creating, perfecting, or enforcing any Encumbrance of any kind against the Debtors, Wind-Down Debtors, or their respective property with respect to such Claim; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due to any Debtors or against the property or interests in property of any Debtor, with respect to such Claim; (e) taking any action whatsoever to revive, reconstitute, reincorporate, or otherwise reform any Predecessor-in-Interest or any other previously dissolved or cancelled Affiliate of the Debtors; and/or (f) commencing or continuing any action, in any manner and in any place in the world, against the Debtors, Wind-Down Debtors, or their respective property that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.  The foregoing injunction shall extend to the Debtors' successors (including, without limitation, the Wind-Down Debtors) and their respective properties and interests in property.  The injunction provided in this provision shall void any Judgment obtained against any Debtor at any time, to the extent that such Judgment relates to an enjoined Claim.**

**C.**        *Releases by the Debtors*

**Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released by the Debtors, the Wind-Down Debtors, and their Estates from any and all Claims and Causes of Action, whether known or unknown, including any derivative Claims, asserted by or on behalf of the Debtors, that the Debtors, the Wind-Down Debtors, or their Estates (as applicable) would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against or Interest in a Debtor or other Entity, or that any Holder of any Claim against or Interest in the Debtors or other Entity could have asserted on behalf of the Debtors, based on or relating to or in any manner arising from in whole or in part, the Debtors (including the management, ownership, or operation thereof), any Securities issued by the Debtors and the ownership thereof, the Debtors' in or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), any intercompany transactions, the Chapter 11 Cases and any related adversary proceedings, the Disclosure Statement, the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan, or the Plan Supplement, Filing of the Chapter 11 Cases, pursuit of Confirmation, pursuit of Consummation, administration and implementation of the Plan, including the issuance or Distribution of Securities pursuant to the Plan, or the Distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release:  (a) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, or any other document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (b) the rights of any Holder of Allowed Claims to receive Distributions under the Plan; (c) any matters retained by the Debtors pursuant to the Retained Causes of Action; or (d) any rights, claims, and defenses (whether contractual or otherwise) of each Contributing Party (as defined in the Estate Claims Settlement Agreement) against another Contributing Party, including all rights, claims, and defenses under the**

2003 MSPA and 2007 SPA (the "<u>Preserved Rights</u>").  For the avoidance of doubt, nothing contained in this Plan, including this <u>Article IX.C</u>, shall (a) release, compromise, impair, or in any way affect any Assigned Insurance Rights or (b) be raised as or constitute a defense to the assertion of Preserved Rights.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release and shall constituted the Bankruptcy Court's finding that the Debtor Release is:  (1) in exchange for the good and valuable considerations provided by the Released Parties, including without limitation, the Released Parties' contributions to facilitating and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Wind-Down Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

D.    *Exculpation*

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Claims or Causes of Action for any Claim related to any act or omission in connection with, relating to, or arising out, in whole or in part, from the Petition Date through the Effective Date (and following the Effective Date solely with respect to any issuance or Distribution of Securities, the Distribution of any property, or the implementation of the Wind-Down Transactions and/or the establishment of the Environmental Remediation Trust, GUC Trust, or Tort Claims Trust, each pursuant to and in accordance with the Plan), of the Chapter 11 Cases, the Debtors, the formulation, preparation, dissemination, or negotiation of the Plan Documents, Filing of the Chapter 11 Cases, pursuit of Confirmation, Consummation, or administration and implementation of the Plan or Confirmation Order, including the issuance or Distribution of Securities pursuant to the Plan, or the Distribution of property under the Plan, or any other related agreement, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities.  The Exculpated Parties have, and upon Confirmation of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable Laws with regard to the solicitation and Distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such Distributions shall not be, liable at any time for the violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such Distributions made pursuant to the Plan.  Notwithstanding anything to the contrary in the foregoing, the exculpations set forth in this <u>Article IX.D</u> (i) shall only be applicable to the maximum extent permitted by Law; and (ii) shall not be construed as (a) exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (provided that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, any Wind-Down Transaction, or any of the Plan Documents.

E.    *Injunction*

Except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations or Distributions issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold the Released Claims are permanently enjoined from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Wind-Down Debtors, Exculpated Parties, or Released Parties:  (1) commencing or continuing in any manner any action, suit, or other proceeding of any kind on account of or in connection with or with respect to any Released Claims; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any Released Claims; (3) creating, perfecting, or enforcing any Lien or Encumbrance of any kind against such Entities or the Estates of such Entities on account of or in connection with or with respect to any Released Claims; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against

the property or the Estates of such Entities on account of or in connection with or with respect to any Released Claims unless such Entity has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Released Claims released or settled pursuant to the Plan, including, for the avoidance of doubt, any action to revive, reconstitute, reincorporate, or otherwise reform any Predecessor-in-Interest or any other previously dissolved or cancelled Affiliate of the Debtors for any purpose whatsoever; *provided*, *however*, that nothing in this Plan or the provisions set forth in this <u>Article IX.E</u> shall enjoin any of the Preserved Rights or applicable defenses in connection therewith.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, Distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this <u>Article IX.E.</u>

No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Wind-Down Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to <u>Article IX</u> hereof without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim or Cause of Action of any kind, (ii) specifically finding that such Claim or Cause of Action was not released pursuant to this <u>Article IX</u> or the Estate Claims Settlement, as applicable, and (iii) specifically authorizing such Person or Entity to bring such a Claim or Cause of Action, as applicable, against any such Debtor, Wind-Down Debtor, Exculpated Party, or Released Party, as applicable; *provided*, *however*, that nothing in this Plan or the provisions set forth in this <u>Article IX</u> shall enjoin any of the Preserved Rights or applicable defenses in connection therewith.

F.      *Protections Against Discriminatory Treatment*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Wind-Down Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Wind-Down Debtors, or another Entity with whom the Wind-Down Debtors has been associated, solely because the Debtors have been debtors under chapter 11 of the Bankruptcy Code, have been insolvent before or during the Chapter 11 Cases, or has not paid a debt that may be enjoined by Confirmation of the Plan in the Chapter 11 Cases.

G.      *Document Retention*

On and after the Effective Date, the Wind-Down Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Wind-Down Debtors.

H.      *Reimbursement or Contribution*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever Disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date:  (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

## ARTICLE X.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THIS PLAN

A.      *Conditions Precedent to the Effective Date*

    1.    The following are conditions precedent to occurrence of the Effective Date of the Plan that must be satisfied, unless waived in accordance with **Article X.B** hereof:

        (a)    The Confirmation Order shall have been duly entered and in full force and effect;

        (b)    The Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and each of the other transactions contemplated by the Wind-Down;

        (c)    The final version of the schedules, documents, and exhibits contained in the Plan Supplement, and all other schedules, documents, supplements, and exhibits to the Plan, shall have been executed or Filed, as applicable, in form and substance consistent in all respects with the Plan;

        (d)    The Estate Claims Settlement Order and Successor Liability Claims Order each shall have become final and non-appealable;

        (e)    The Debtors shall have received the final contribution of the Estate Claims Settlement; and

        (f)    The Professional Fee Escrow Account shall have been established and funded with Cash in accordance with **Article II.C** of the Plan.

B.      *Waiver of Conditions*

    Except as otherwise specified in the Plan, any one or more of the conditions to Consummation set forth in this **Article X** may be waived only if waived in writing by the Plan Proponents, with the written consent of NICO (email being sufficient) and written consent of Brenntag with respect to the condition precedent set forth in **Article X.A.1.(d)** (email being sufficient), without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

C.      *Effect of Failure of Conditions*

    If Consummation does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims by the Debtors, Claims, or Interests; (2) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity.

D.      *Substantial Consummation*

    "Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THIS PLAN

A.      *Modification and Amendments*

    Except as otherwise specifically provided in the Plan, the Debtors, in accordance with the Bankruptcy Code and the Bankruptcy Rules, and subject to the written consent of NICO (email being sufficient) and in the case of **Article IX** and **Article I.A.127**, Brenntag (email being sufficient), reserve the right to modify the Plan, whether such

modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to those restrictions on modifications set forth in the Plan and the requirements of section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, the Debtors expressly reserve their rights to revoke or withdraw, or to alter, amend, or modify the Plan with respect to the Debtors, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.      *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof and prior to entry of the Confirmation Order are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, *provided* that the revocation or withdrawal of the Plan, or the failure of the occurrence of Confirmation or Consummation, shall have no effect on the Estate Claims Settlement, which shall be solely governed by the Estate Claims Settlement Order; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XII.
## RETENTION OF JURISDICTION

A.      *Retention of Jurisdiction*

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, to the fullest extent permissible under applicable law, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

a.   allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

b.   decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

c.   decide and resolve such other matters that may be set forth in or arise in connection with the Plan, the Confirmation Order, or the Environmental Remediation Trust, GUC Trust, or Tort Claims Trust;

d.   enter such orders as are necessary to implement and enforce the releases and injunctions described herein, including, if necessary, in connection with application of the protections afforded by the Bankruptcy Code and/or the Plan to the Settlement Parties;

e.   resolve any matters related to: (1) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtors are party or with respect to which the

Debtors may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cures pursuant to section 365 of the Bankruptcy Code; (2) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (3) the Wind-Down Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to **Article V** hereof, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (4) any dispute regarding whether a contract or lease is or was executory or expired;

f.  ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan, including the Tort Claims Trust Distribution Procedures;

g.  adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

h.  consider any modifications of the Plan, and remedy any defect or omission or reconcile any inconsistency or make any other necessary modifications in or to the Plan or any order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan, to the extent authorized by the Bankruptcy Code and the Bankruptcy Rules; *provided* that there shall be no modification made at any time that would reduce or eliminate any of the protections provided herein to the Settlement Parties or releases provided hereunder;

i.  adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

j.  enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created or entered into in connection with the Plan, the Confirmation Order, or the Disclosure Statement;

k.  enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

l.  resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

m.  issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of the Plan;

n.  resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, exculpations, and other provisions contained in **Article IX** hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

o.  resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of Distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to **Article VI.L** hereof;

p.  enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

q.  determine any other matters that may arise in connection with or relate to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

r.  enter an order or final decree concluding or closing the Chapter 11 Cases;

s.  adjudicate any and all disputes arising from or relating to Distributions under the Plan;

t.  consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

u.  determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

v.  hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, the Estate Claims settlement Order, or the Successor Liability Claims Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

w.  hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

x.  hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, injunctions, and releases granted in the Plan, including whether a claim or Cause of Action is a direct or derivative claim, including under **Article IX** hereof;

y.  hear and determine all disputes involving whether (a) any claim brought against any NICO Releasees, Brenntag Releasees, or DB US Releasees (each as defined in the Estate Claims Settlement Agreement) constitutes a Cause of Action of the Estates and is subject to the prohibition therein and in the Estate Claims Settlement Order against prosecution of such claim and (b) any claims brought against any non-Debtor constitutes a Brenntag Released Claim, NICO Released Claim, and/or DB US Released Claim (each as defined in the Estate Claims Settlement Agreement) and are subject to the prohibition therein and in the Estate Claims Settlement Order against prosecution of such claims;

z.  enforce all orders previously entered by the Bankruptcy Court; and

aa.  hear any other matter not inconsistent with the Bankruptcy Code.

B.  *Post-Confirmation Modification of Plan*

Subject to the limitations contained herein and in the other Plan Documents, and except as otherwise ordered by the Bankruptcy Court, the Plan Proponents, with the written consent of NICO (email being sufficient) and, in the case of **Article IX** and **Article I.A.127**, Brenntag (email being sufficient), may alter, amend, or modify the Plan or any exhibits thereto under section 1127(b) of the Bankruptcy Code and in accordance with the Plan Documents, at any time after the entry of the Confirmation Order and prior to Substantial Consummation of the Plan (1) in accordance with the requirements of sections 1122 and 1123 of the Bankruptcy Code or (2) to remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan either with Bankruptcy Court approval or, so long as the interests of the Holders of Allowed Claims are not adversely affected thereby in any material respect, without Bankruptcy Court approval. A Holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within the time fixed by the Bankruptcy Court, if any, such Holder changes its previous acceptance or rejection, to the extent such Holder is afforded the opportunity to do so under section 1127(d) of the Bankruptcy Code.

After the Effective Date, with the written consent of NICO (email being sufficient) and, in the case of **Article IX** and **Article I.A.127**, Brenntag (email being sufficient), the Wind-Down Debtors may remedy any defects or omissions or reconcile any inconsistencies in the Plan Documents for the purpose of implementing the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan, so long as the interests of the Holders of Allowed Claims and other applicable parties-in-interest are not adversely affected thereby.

Notwithstanding anything in this **Article XII.B**, there shall be no modification to the Plan made at any time that would reduce or eliminate (x) any of the protections provided to the Settlement Parties herein or in the Estate Claims Settlement Agreement or Estate Claims Settlement Order, or (y) the releases provided to the Settlement Parties hereunder or in the Estate Claims Settlement Agreement or Estate Claims Settlement Order, in each case, without the

54

prior written consent (email being sufficient) of the Settlement Party or Parties whose rights may be reduced or eliminated by such modification.

C.        *Consent to Jurisdiction*

Upon default under the Plan, the Debtors, the Wind-Down Debtors, and the Settlement Parties, respectively, consent to the jurisdiction of the Bankruptcy Court, and agree that it shall be the preferred forum for all proceedings relating to any such default.

# ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

A.        *Immediate Binding Effect*

Subject to **Article X.A** hereof, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including, for the avoidance of doubt, the documents and instruments contained in the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Wind-Down Debtors, any and all Holders of Claims or Interests (irrespective of whether such Holders of Claims or Interests have, or are presumed to have, accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and Interests shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or Interest has voted on the Plan.

B.        *Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Wind-Down Debtors, as applicable shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.        *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtors with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors, with respect to the Holders of Claims or Interests prior to the Effective Date.

D.        *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

E.        *Notices*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

55

| If to the Debtors: | If to the Counsel to the Debtors: |
|---|---|
| **Whittaker, Clark & Daniels, Inc.**<br>100 First Stamford Place<br>Stamford, Connecticut 06902<br>Attention:  Mohsin Meghji | **Kirkland & Ellis LLP**<br>**Kirkland & Ellis International LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Attention: Joshua Sussberg<br>E-mail:  jsussberg@kirkland.com;<br><br>and<br><br>**Kirkland & Ellis LLP**<br>**Kirkland & Ellis International LLP**<br>333 West Wolf Point Plaza<br>Chicago, Illinois 60654<br>Attention:  Chad Husnick<br>               Charlie Sterrett<br><br>E-mail:  chusnick@kirkland.com;<br>             charles.sterrett@kirkland.com; and<br><br>**Cole Schotz P.C.**<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attention: Michael D. Sirota, Esq., Warren A. Usatine, Esq., and Felice R. Yudkin, Esq.<br><br>E-mail:  msirota@coleschotz.com<br>             wusatine@coleschotz.com<br>             fyudkin@coleschotz.com |

| U.S. Trustee | Counsel to the Committee |
|---|---|
| **Office of the United States Trustee**<br>**U.S. Department of Justice**<br>One Newark Center<br>1085 Raymond Boulevard, Suite 2100<br>Newark, NJ 07102 | **Cooley LLP**<br>55 Hudson Yards<br>New York, NY 10001<br>Attention: Cullen D. Speckhart<br>            Michael Klein<br>            Evan M. Lazerowitz<br>            Jeremiah P. Ledwidge<br>Email: cspeckhart@cooley.com<br>         mklein@cooley.com<br>         elazerowitz@cooley.com<br>         jledwidge@cooley.com<br><br>**Sherman, Silverstein, Kohl, Rose & Podolsky, P.A.**<br>308 Harper Drive, Suite 200<br>Moorestown, NJ 08057<br>Attention: Arthur J. Abramowitz<br>            Ross J. Switkes<br>Email: aabramowitz@shermansilverstein.com<br>         rswitkes@shermansilverstein.com<br>**Caplin & Drysdale, Chartered**<br>One Thomas Circle, NW, Suite 1100<br>Washington, DC 20005<br>Attention: Kevin C. Maclay<br>            Todd E. Phillips<br>            Serafina A. Concannon<br>Email: kmaclay@capdale.com<br>         tphillips@capdale.com<br>         sconcannon@capdale.com |

After the Effective Date, the Wind-Down Debtors shall have the authority to send a notice to parties in interest providing that, to continue to receive documents pursuant to Bankruptcy Rule 2002, such party must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Wind-Down Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

F.      *Term of Injunctions or Stays*

**Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases or the Adversary Proceeding pursuant to the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.**

G.      *Entire Agreement*

Except as otherwise indicated, the Plan (including, for the avoidance of doubt, the documents and instruments in the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan; *provided* that to the extent of any inconsistency between the Plan and the Estate Claims Settlement Order with respect to the Estate Claims Settlement, the Estate Claims Settlement Order, or Estate Claims Settlement Agreement, as applicable, shall govern.

H.      *Plan Supplement*

All exhibits and documents included in the Plan Supplement are an integral part of the Plan and are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://cases.stretto.com/whittaker/ or the Bankruptcy Court's website at https://www.njb.uscourts.gov/.  To the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the Plan Supplement document or exhibit shall control (unless stated otherwise in such Plan Supplement document or exhibit or in the Confirmation Order); *provided* that to the extent of any inconsistency between any Plan Supplement document and the Estate Claims Settlement Order with respect to the Estate Claims Settlement, the Estate Claims Settlement Order or Estate Claims Settlement Agreement, as applicable, shall govern.

I.      *Nonseverability of Plan Provisions*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' or Wind-Down Debtors' consent, as applicable; and (3) nonseverable and mutually dependent.

J.      *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with section 1125(g) of the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and their Affiliates, agents, Representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, no such parties nor individuals nor the Wind-Down Debtors will have any liability for the violation of any applicable Law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

K.      *Closing of Chapter 11 Cases*

On and after the Effective Date, the Debtors or the Wind-Down Debtors shall be permitted to close the Chapter 11 Cases after they have been fully administered and File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and a proposed form of any applicable order necessary to close the Chapter 11 Cases.

L.      *Waiver or Estoppel*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

Dated: October 28, 2024                    **WHITTAKER, CLARK & DANIELS, INC.**


/s/ Mohsin Y. Meghji
Mohsin Y. Meghji
Chief Restructuring Officer
Whittaker, Clark & Daniels, Inc.