**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo, Esq.
James N. Lawlor, Esq.
Joseph F. Pacelli, Esq. (admitted *pro hac vice*)
Nicholas A. Servider, Esq. (admitted *pro hac vice*)
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com
jlawlor@wmd-law.com
jpacelli@wmd-law.com
nservider@wmd-law.com

**MUNGER TOLLES & OLSON LLP**
Seth Goldman, Esq. (admitted *pro hac vice*)
John W. Berry, Esq. (admitted *pro hac vice*)
Craig Jennings Lavoie, Esq. (admitted *pro hac vice*)
Jennifer L. Bryant, Esq. (admitted *pro hac vice*)
Bradley R. Schneider, Esq. (admitted *pro hac vice*)
350 South Grand Avenue, 50th Fl.
Los Angeles, CA 90071-1560
Telephone: (213) 683-9554
seth.goldman@mto.com
john.berry@mto.com
craig.lavoie@mto.com
jennifer.bryant@mto.com
bradley.schneider@mto.com

**SIMPSON THACHER & BARTLETT LLP**
Bryce L. Friedman, Esq. (admitted *pro hac vice*)
Alan C. Turner, Esq. (admitted *pro hac vice*)
David R. Zylberberg, Esq. (admitted *pro hac vice*)
Jamie J. Fell, Esq. (admitted *pro hac vice*)
425 Lexington Avenue
New York, NY 10017
Telephone: (212) 455-2000
bfriedman@stblaw.com
aturner@stblaw.com
david.zylberberg@stblaw.com
jamie.fell@stblaw.com

**MUNGER TOLLES & OLSON LLP**
Rebecca L. Sciarrino, Esq. (admitted *pro hac vice*)
560 Mission Street, 27th Fl.
San Francisco, CA 94105-2907
Telephone: (415) 512-4000
rebecca.sciarrino@mto.com

*Counsel for the Berkshire Entities*

*Counsel for the Berkshire Entities*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| WHITTAKER, CLARK & DANIELS, INC., *et al.*,[1] | Case No.: 23-13575 (MBK) |
| Debtors. | |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Whittaker, Clark & Daniels, Inc. (4760); Brilliant National Services, Inc. (2113); Soco West, Inc. (3400); and L.A. Terminals, Inc. (6800).

**BERKSHIRE ENTITIES' OBJECTION TO
MOTION OF THE OFFICIAL COMMITTEE OF TALC CLAIMANTS AND THE
FUTURE CLAIMANTS' REPRESENTATIVE FOR ENTRY OF AN ORDER
GRANTING STANDING AND AUTHORIZING THE COMMITTEE AND THE FCR TO
COMMENCE, PROSECUTE, AND SETTLE CERTAIN CAUSES OF ACTION ON
BEHALF OF THE DEBTORS' ESTATES**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ............................................................................................................................ 3

ARGUMENT .................................................................................................................................. 7

    I.    Movants' Request to Pursue Proposed Count I (Successor Liability) Fails, and Their Allegations of Prepetition Conflicts Are Both Baseless and Irrelevant. ........ 7

    II.    Movants' Request to Pursue Proposed Counts II–IV Should Be Denied Because They Are Neither Colorable Nor Beneficial. ........................................................... 9

        A.    Proposed Count II (Declaration Regarding DB US Contractual Indemnity to Brenntag) Would Harm, Rather than Benefit, the Estates. ....................... 9

        B.    Proposed Count III (Declaration Regarding NICO Contractual Indemnity to DB US) Is Moot, and the Debtors Do Not Have Standing to Pursue It. 11

        C.    Proposed Count IV (Injunctive Relief Over NICO / DB US Arbitration) Is Moot Because the Proceeding Has Been Terminated. ............................... 12

    III.    The TCC and FCR Are Not Appropriate Representatives of the Estates to Pursue the Proposed Claims. ................................................................................................ 13

CONCLUSION ............................................................................................................................. 14

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Am. Home Assur. Co. v. Liberty Mut. Ins. Co.*,
    475 F. Supp. 1169 (E.D. Pa. 1979) ................................................................................12

*Cont'l Cas. Co. v. Soco West, Inc.*,
    2010 WL 11507609 (C.D. Cal. May 5, 2010) ..................................................................9

*Cont'l Cas. Co. v. Soco West, Inc.*,
    No. 09-cv-05176 (C.D. Cal.) .............................................................................................9

*In re Diocese of Camden, New Jersey*,
    No. 20-21257 (JNP), 2022 WL 884242 (Bankr. D. N.J. Mar. 24, 2022) ..........................7

*Eaton Vance Mgmt v. ForstmannLeff Assocs., LLC*,
    N. 06 Civ. 1510 (WHP), 2006 WL 2331009 (S.D.N.Y. Aug. 11, 2006)........................12

*In re George Washington Bridge Bus Station Dev. Venture LLC*,
    No. 20-CV-1324 (AJN), 2021 WL 568241 (S.D.N.Y. Feb. 16, 2021)...........................13

*Hassan v. City of New York*,
    804 F.3d 277 (3d Cir. 2015), *as amended* (Feb. 2, 2016)..............................................12

*La Liberte v. Reid*,
    No. 18-CV-5398-DLI-JRC, 2023 WL 6593985 (E.D.N.Y. Aug. 18, 2023) ..................12

*In re LTL Mgmt. LLC*,
    638 B.R. 291 (Bankr. D.N.J. 2022) ..................................................................................4

*In re Motors Liquidation Co.*,
    580 B.R. 319 (Bankr. S.D.N.Y. 2018)............................................................................11

*In re Nat'l Forge Co.*,
    326 B.R. 532 (W.D. Pa. 2005)......................................................................................1, 7

*Off. Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics
Corp. v. Chinery*, 330 F.3d 548 (3d Cir. 2003).................................................................13, 14

*Perry v. Gonzales*,
    472 F. Supp. 2d 623 (D.N.J. 2007).................................................................................11

*In re Prosser*,
    No. 06-30009, 2009 WL 2424409 (Bankr. D.V.I. July 31, 2009), *aff'd in part,
    dismissed in part*, 469 B.R. 228 (D.V.I. 2012) .............................................................13

*In re Redden*,
   No. 04-12335(PJW), 2013 WL 5436368 (Bankr. D. Del. Sept. 30, 2013) .............................. 10

*In re Rosenblum*,
   545 B.R. 846 (Bankr. E.D. Pa. 2016) ..................................................................................... 10

*In re Skinner*,
   519 B.R. 613 (Bankr. E.D. Pa. 2014), *aff'd*, 532 B.R. 599 (E.D. Pa. 2015),
   *aff'd*, 636 F. App'x 868 (3d Cir. 2016) .................................................................................. 10

*In re TSIC, Inc.*,
   393 B.R. 71 (Bankr. D. Del. 2008) ......................................................................................... 5

*In re Whittaker, Clark, & Daniels, Inc.*,
   No. 24-2210 (3d Cir. Oct. 17, 2024) ....................................................................................... 5

*U.S. Fidelity & Guar. Co. v. Soco West, Inc.*,
   2011 WL 1045102 (D. Mont. Mar. 16, 2011) ......................................................................... 9

**STATE CASES**

*Winkel v. Colgate-Palmolive Co.*,
   No. BC-549253 (Cal. Super. Ct., L.A. County Apr. 28, 2015) ............................................... 4

**STATE STATUTES**

CA Corp. Code § 307(b) ................................................................................................................ 8

8 DE Code 141(f)(1) ...................................................................................................................... 8

N.J. Rev. Stat. 14A:6-7.1 ............................................................................................................... 8

Berkshire Hathaway, Inc., National Indemnity Company ("NICO"), National Liability & Fire Insurance Company, Resolute Management, Inc., Ringwalt & Liesche Co., BH Columbia Inc., and Columbia Insurance Company (collectively, the "Berkshire Entities") respectfully submit this objection ("Objection") to the Joint Motion of the Official Committee of Talc Claimants (the "TCC") and the Future Claimants' Representative (the "FCR," and collectively with the TCC, "Movants") for Entry of an Order Granting Standing and Authorizing the Committee and the FCR To Commence, Prosecute, and Settle Certain Causes of Action on Behalf of the Debtors' Estates ("Standing Motion" or "Standing Mot."), Dkt. No. 1293.[2]

## PRELIMINARY STATEMENT

With their Standing Motion, the TCC and FCR seek exclusive authority to pursue and settle (1) successor liability claims against Brenntag[3] (proposed Count I) and (2) declaratory and injunctive relief regarding non-Debtors DB US's[4] and NICO's contractual indemnity obligations related to non-Debtor Brenntag (proposed Counts II, III, and IV). *See* Standing Mot. ¶¶ 119–22; *see also id.*, Ex. B ("Compl."), ¶¶ 68–119. The motion should be denied because the TCC and FCR do not and cannot demonstrate that "the debtor has unjustifiably refused to pursue" the proposed claims or that each of these claims is "a colorable claim that would benefit the estate." *In re Nat'l Forge Co.*, 326 B.R. 532, 543 (W.D. Pa. 2005).

To begin with, Movants' request for standing to assert successor liability claims (Count I) rests on a demonstrably false factual premise—that the Debtors unjustifiably refused to pursue successor liability claims against Brenntag. The settlement agreement that is currently before the

---

[2] All docket numbers refer to the main proceeding, Case No. 23-13575, unless stated otherwise.

[3] "Brenntag" refers to Brenntag SE; Brenntag Canada Inc.; Brenntag Great Lakes LLC; Brenntag Mid South, Inc.; Brenntag North America, Inc.; Brenntag Northeast, Inc.; Brenntag Pacific, Inc.; Brenntag Southeast, Inc.; Brenntag Southwest, Inc.; Brenntag Specialties, Inc.; Brenntag Specialties, LLC; Coastal Chemical Co., LLC; and Mineral and Pigment Solutions, Inc.

[4] "DB US" refers to DB US Holding Corporation.

1

Court proves that the Debtors *did* pursue these claims.[5] The Berkshire Entities will not dwell on that argument, but rather write separately to respond to Movants' attacks on the Berkshire Entities' prepetition relationship with the Debtors. Specifically, Movants assert that Debtors should be divested of any authority over successor liability claims against Brenntag because, prior to this bankruptcy, the Debtors allegedly had conflicts of interests. Those allegations are both legally irrelevant—indeed, any prepetition conflicts are a transparent red herring—and factually baseless.

The TCC and FCR's request for standing on their remaining counts (II–IV) should be denied for an equally fundamental reason: None of these claims is remotely colorable or calculated to benefit the Debtors' estates. Count II asks the Court for declaratory relief regarding the contractual indemnity provisions among DB US and Brenntag even though both are non-Debtors, the provisions are governed by German law, and the contract requires disputes to be resolved in German arbitration. Moreover, because DB US is the guarantor of the Debtors' own direct indemnity obligations to Brenntag, granting the declaratory relief the Movants seek would only serve to confirm that the estates are liable to indemnify Brenntag—a result that would harm, not benefit, the Debtors' estates.

Count III asks for a declaration as to the indemnity provisions in a contract between non-Debtors NICO and DB US in lieu of a contractually-required ICC arbitration in London. This count, therefore, suffers from the same infirmity as Count II, but should also be denied because no representative of the Debtors' estates has a right to pursue it as a matter of law. The Debtors are neither parties to, nor third-party beneficiaries of, NICO's agreement with DB US. Therefore, the Debtors lack standing to seek, and the Court lacks jurisdiction to provide, a declaration as to the parties' obligations under that agreement.

---

[5] *See generally* Debtors' Motion for Entry of an Order (I) Approving the Settlement Agreement Between the Debtors and the Contributing Parties, (II) Authorizing the Debtors to Perform All of Their Obligations Thereunder, and (III) Granting Related Relief, Dkt. No. 1297 (Sept. 3, 2024) ("9019 Motion").

2

Count IV asks the Court to enjoin an ICC arbitration between non-Debtors NICO and DB US. As Movants are well aware, that arbitration has already been settled and terminated without any impact on NICO's contractual indemnity obligations to DB US. Although Movants have refused to withdraw Count IV, it is moot. Accordingly, standing should be denied for Counts II, III, and IV as well.

Finally, even if Movants could identify any colorable and beneficial claims that have not been pursued by the Debtors, the TCC and FCR are the last ones who should be entrusted with pursuing them. The TCC and FCR owe fiduciary duties only to tort claimants, not the environmental or general unsecured creditors, or the estates generally. And it shows: Even as they now seek standing to assert successor liability claims against Brenntag on behalf of the estates, the TCC and FCR simultaneously seek to reverse this Court's holding that these are estate claims. In fact, the TCC continues to seek dismissal of WCD's bankruptcy case altogether, a result that would squander the $535 million of settlement value to be provided by the contributing parties, not to mention the vast resources already expended in these cases as a whole. *See generally* 9019 Motion. Plainly, the TCC and FCR's priority is not to preserve and maximize the value of the Debtors' assets for the benefit of all creditors. Indeed, they have admitted as much in advocating for a "pass through" plan where all estate causes of action, including successor liability claims, would be abandoned to creditors, who will face years of uncertain and costly litigation before receiving any compensation. Such a plan would also necessarily result in a windfall for some creditors and diminished recoveries for others. By their conduct to date, the TCC and FCR have shown that they are unqualified to represent the Debtors' estates. Therefore, they should not be vested with the power to pursue estate claims on behalf of the Debtors' estates.

## BACKGROUND

The Debtors filed for bankruptcy in April 2023 to address their liabilities fairly and efficiently. Among those liabilities were claims alleging that Whittaker, Clark & Daniels, Inc. ("WCD") had historically distributed talc contaminated with asbestos, causing claimants to

3

develop mesothelioma.  WCD, of course, is only one of several cosmetic talc companies that has sought chapter 11 relief in the last few years in the wake of the recent rise in cosmetic talc litigation—a tort theory that, despite contradicting the best epidemiological science, began finding some success in a handful of favorable plaintiff verdicts, starting with a multi-million dollar verdict against Colgate-Palmolive in 2015.  *See Winkel v. Colgate-Palmolive Co.*, No. BC-549253 (Cal. Super. Ct., L.A. County Apr. 28, 2015).

      For years, WCD was a peripheral defendant in this litigation, for at least two reasons.  First, WCD sold its assets to a Brenntag subsidiary in connection with a 2003 Master Sale and Purchase Agreement ("2003 MSPA")[6] and, consequently, was no longer in the business of distributing talc.  Second, WCD never supplied the cosmetic talc used in the products that gave rise to the bulk of cosmetic talc litigation:  Johnson & Johnson's body powder products.  But WCD's status as a peripheral defendant suddenly changed in October 2021, when Johnson & Johnson transferred its talc-related liabilities to a new entity, LTL Management LLC, which then filed a chapter 11 petition.  *See In re LTL Mgmt. LLC*, 638 B.R. 291 (Bankr. D.N.J. 2022); Declaration of Mohsin Y. Meghji, Chief Restructuring Officer of Whittaker, Clark & Daniels, Inc., in Support of Chapter 11 Petitions and First Day Motions ("Meghji Decl."), Dkt No. 5, ¶ 36.  LTL Management's bankruptcy (subsequently dismissed) removed the main target of cosmetic talc litigation from the tort system for nearly two years, resulting in the asbestos plaintiffs' bar taking aim at other companies that remained, including WCD.  *See* Meghji Decl. ¶ 36.[7]

      Faced with significant tort liabilities that they could not have foreseen even a few years earlier, the Debtors engaged independent counsel, appointed two disinterested directors, and ultimately commenced these bankruptcy cases.  *See* Dkt. No. 1.  The United States Trustee

---

[6] The Debtors' 9019 Motion refers to this agreement as the "2003 MSPA" while the Standing Motion refers to it as the "2004 MSPA."  This agreement was entered into in December 2003 (unlike the related Asset Purchase Agreements, which were entered into in February 2004), so the Berkshire Entities use the term "2003 MSPA."

[7] *See also* briefing and expert reports in connection with the 9019 Motion.

4

thereafter appointed nine creditors to the Official Committee of Talc Claimants, *see* Dkt. No. 121,[8] which of course "is a fiduciary for those whom it represents [current tort claimants], not for the debtor or the estate generally." *In re TSIC, Inc.*, 393 B.R. 71, 78 (Bankr. D. Del. 2008) (citation omitted). This Court appointed Ret. Judge Chapman as the Future Claimants' Representative "for the purpose of representing and protecting the rights of the" future tort claimants in these bankruptcy cases. Dkt. No. 231, ¶ 1.

Almost immediately, the Debtors faced a motion to dismiss filed by a receiver appointed by the South Carolina Court of Common Pleas following a jury verdict against WCD. *See* Dkt. Nos. 62, 117. The TCC joined the dismissal motion, *see* Dkt. No. 132, which, if successful, would have forced WCD back into the tort system and made it impossible to provide all claimants a comprehensive and fair resolution of their claims. This Court denied the motion to dismiss, *see* Dkt. Nos. 210, 211, but the TCC continues to seek a reversal of that decision from the Third Circuit, *see In re Whittaker, Clark, & Daniels, Inc.*, No. 24-2210, Dkt. No. 26 (Oct. 17, 2024).

While the TCC sought to dismiss WCD's bankruptcy case, the Debtors sought to negotiate a comprehensive resolution of their liabilities. To that end, the Debtors filed an adversary proceeding to establish their ownership of various "Successor Liability Claims"[9]— including against Brenntag—which the TCC and FCR opposed at every step. At the Court's direction, the Debtors and various creditors and stakeholders, including the TCC and FCR,

---

[8] Those creditors are Kathy Ripley Didawick, on behalf of Ann Ripley; Blue Cross Blue Shield Association; Katia Figueroa; Virginia Harrington; Juliet Gray; Sandra Jankowski, individually and on behalf of Leo Jankowski; Sarah Plant; Tara Valentine, on behalf of Patricia Krempecki; and Shelly Yerkes.

[9] As defined in the adversary complaint, "Successor Liability Claims" mean claims against non-Debtors "seeking to establish such entities' liability for Tort Claims on any grounds, including, without limitation, that such entities are successors to, or alter egos of, the Debtors." Adv. Proc. No. 23-01245, Dkt. No. 1, ¶ 1. In turn, "Tort Claims" include "existing and future tort claims against the Debtors alleging injuries resulting from exposure to products containing talc, asbestos, or chemical compounds processed or distributed by the Debtors or their predecessors in interest" and "environmental litigation against the Debtors relating to the production or handling of hazardous materials which allegedly contaminated certain properties." *Id.*

5

mediated for more than six months from December 2023 through May 2024 before the Honorable Robert E. Gerber (Ret.). It became clear, however, that mediation would not culminate in a global settlement or section 524(g) plan. In June 2024, Judge Gerber reported that "there is no reasonable likelihood of a deal between the Claimants Side (the Talc Creditors Committee and FCR), and the other Mediation Parties in the near term," Dkt. No. 1121 ¶ 11, and the TCC and FCR requested "that the Court declare the mediation terminated," Dkt. Nos. 1114, 1115. The Court thereafter issued a summary judgment ruling in favor of the Debtors, holding that the Successor Liability Claims are property of the Debtors' estates. *See* Adv. Proc. No. 23-01245, Dkt. Nos. 268, 292. The TCC appealed this ruling to the Third Circuit, where the appeal is pending. *See* Adv. Proc. No. 23-01245, Dkt. Nos. 297, 335.

When negotiations with the TCC and FCR broke down in June 2024, the Debtors began to explore a settlement with the Berkshire Entities, DB US, and Brenntag to resolve the Successor Liability Claims and other estate causes of action. Around the end of August 2024, the Debtors finalized the terms of the settlement, and the 9019 Motion was filed on September 3, 2024. *See* Dkt. No. 1297.

On August 30, 2024, as the Debtors were finalizing the settlement, Movants filed a motion seeking derivative standing to assert claims against Brenntag, DB US, and NICO. The Standing Motion boasts that Movants conducted a "dogged[]" investigation and "uncovered valuable claims" "that the Debtors ha[d] not adequately investigated." Standing Mot. at pp. 19, 22. In reality, the claims that Movants "uncovered" are simply: (1) the successor liability claims against Brenntag (proposed Count I) that had been alleged for years in numerous tort cases, and which the Debtors pursued in the Adversary Proceeding (over Movants' opposition) and subsequently settled; and (2) declaratory and injunctive relief claims (Proposed Counts II–IV) based on indemnification agreements that the TCC knew about "from the start" of these proceedings. Adv. Proc. No. 23-01245, Dkt. No. 255 at 3, 6.

6

ARGUMENT

To obtain derivative standing, Movants have the burden to "allege[] a colorable claim that would benefit the estate" and demonstrate that "the debtor has unjustifiably refused to pursue the claim." *In re Nat'l Forge Co.*, 326 B.R. at 543; *see also In re Diocese of Camden, New Jersey*, No. 20-21257 (JNP), 2022 WL 884242, at *4 (Bankr. D.N.J. Mar. 24, 2022). Movants fail to meet these requirements.

I. **Movants' Request to Pursue Proposed Count I (Successor Liability) Fails, and Their Allegations of Prepetition Conflicts Are Both Baseless and Irrelevant.**

In their Standing Motion, Movants charge that the Debtors are too conflicted to pursue successor liability claims against Brenntag; hence, they argue, standing to assert such claims should be vested with Movants. Standing Mot. ¶¶ 90–122. Movants' assertion is disproven by the fact that the Debtors not only pursued these claims, but settled those and other estate claims for more than *half a billion* dollars. *See In re Diocese of Camden, New Jersey*, 2022 WL 884242, at *11 (collecting cases where "the court held that a trustee pursuing settlement of a potential claim was sufficient to deem the trustee had not unjustifiably refused to pursue it"); *see generally* 9019 Motion. The Berkshire Entities leave any further refutation of this point to the Debtors.

Not content with misguided challenges to the conduct of the Debtors' fiduciaries in these cases, Movants also level entirely gratuitous attacks on the Debtors' prepetition relationship with the Berkshire Entities. Those attacks are both legally and factually deficient. As a threshold matter, allegations of prepetition conflicts are irrelevant as a matter of law. "[W]hether there exists a conflict of interest between the debtor and the parties against whom the derivative action is directed" is relevant only to "determining whether a Debtor's refusal" to pursue the at-issue claims "is unjustified." *In re Nat'l Forge Co.*, 326 B.R. at 545. In other words, the question is whether the Debtors' *current* boards of directors—and specifically, the disinterested directors responsible for determining whether or not to pursue any potentially conflicted matters within

7

these bankruptcy proceedings, *see* Dkt. No. 1301, Ex. 28, § 1—are capable of prosecuting claims against the Berkshire Entities and other parties. There is no possible connection between the Debtors' prepetition boards and the Debtors' actions in this proceeding.

In any event, Movants' allegations of prepetition "conflicts" are meritless. First, Movants assert that, following the 2007 transaction, the Debtors' boards of directors never convened formal meetings. Standing Mot. ¶ 22. But none of California, Delaware, or New Jersey law requires in-person board meetings,[10] and the Debtors' compliance with governing law cannot create a conflict. Second, Movants conclusorily assert that the Berkshire Entities managed the Debtors "to serve their own interests." Standing Mot. ¶ 46. But the evidence reflects that the Debtors' President, Raj Mehta, was charged with growing "[the Debtors'] assets as best as possible *for the Brilliant group of companies* and discharg[ing] all the liabilities as fairly, reasonably, and expeditiously as possible." Declaration of Rebecca L. Sciarrino ("Sciarrino Decl."), Ex. 3, R. Mehta Dep. 128:5–128:16 (emphasis added); *see also id.* at 173:4–173:19 (testifying his "total efforts were to try to discharge all of the liabilities as fairly and reasonably and minimize the exposure to all of the debtors and to try and marshal all the assets [he] could"). Third, Movants misstate the record by alleging that the Debtors never took any legal action against insurance companies that were affiliated with the Berkshire Entities, such as CNA. Standing Mot. ¶ 24. To the contrary, the Debtors and CNA sued one another several

---

[10] CA Corp. Code § 307(b) ("An action required or permitted to be taken by the board may be taken without a meeting, if all members of the board shall individually or collectively consent in writing to that action and if the number of members of the board serving at the time constitutes a quorum."). 8 DE Code 141(f)(1) ("[A]ny action required or permitted to be taken at any meeting of the board of directors . . . may be taken without a meeting if all members of the board . . . consent thereto in writing."); N.J. Rev. Stat. 14A:6-7.1 ("[A]ny action required or permitted to be taken pursuant to authorization voted at a meeting of the board . . . may be taken without a meeting if all members of the board . . . consent thereto in writing.").

8

times since the 2007 transaction.[11]  None of Movants' attempts to manufacture a prepetition conflict withstands scrutiny.

### II. Movants' Request to Pursue Proposed Counts II–IV Should Be Denied Because They Are Neither Colorable Nor Beneficial.

Movants' remaining proposed Counts II, III, and IV seek judicial declarations concerning contractual indemnification obligations of non-Debtors DB US and NICO and an injunction against the continuation of a now-terminated ICC Arbitration between non-Debtors DB US and NICO.  *See* Compl. ¶¶ 88–119.  These proposed claims fail for various reasons, including lack of standing, lack of colorability, lack of jurisdiction, and lack of any benefit to the Debtors' estates.[12]

#### A. Proposed Count II (Declaration Regarding DB US Contractual Indemnity to Brenntag) Would Harm, Rather than Benefit, the Estates.

Proposed Count II seeks a declaration that DB US, rather than a Debtor, "is contractually obligated to indemnify Brenntag for successor liability claims under the" 2003 MSPA.  Compl. at p. 21 (capitalization removed).  Movants do not clearly articulate what relief they are seeking with this count, but to the extent they seek a declaration that the indemnification provisions of the 2003 MSPA are enforceable,[13] there is no controversy to adjudicate, as none of the parties to the agreement disputes its enforceability.  And if there were such a dispute, it makes no sense to confer standing on *the TCC and FCR* to litigate it.  Brenntag is fully capable of pursuing its interests against DB US, including, per the parties' agreement, by submitting any disagreement to arbitration.  *See* Dkt. No. 1301, Ex. 9 (2003 MSPA) ¶ 22.9.  There is no reason for Movants to

---

[11] *See, e.g.*, *U.S. Fidelity & Guar. Co. v. Soco West, Inc.*, 2011 WL 1045102 (D. Mont. Mar. 16, 2011); *Cont'l Cas. Co. v. Soco West, Inc.*, 2010 WL 11507609 (C.D. Cal. May 5, 2010); *Cont'l Cas. Co. v. Soco West, Inc.*, No. 09-cv-05176 (C.D. Cal.), Dkt. No. 1.

[12] The Berkshire Entities requested that the TCC and FCR drop Counts II–IV, but the TCC and FCR refused to simply withdraw them.

[13] *See* Standing Mot. ¶ 78 (describing request for a declaratory judgment that DB US is "contractually obligated to satisfy Indemnification Claims that Brenntag holds pursuant to the" 2003 MSPA).

9

pursue indemnification rights that belong to Brenntag, rather than the Debtors, or for this Court to adjudicate the rights and obligations of non-Debtors.

If Movants instead seek a declaration substantively interpreting the indemnification provisions, their claim is neither colorable nor beneficial. Movants seem to suggest that the mere fact of the Debtors' insolvency relieves the Debtors of their indemnity obligations to Brenntag and "shifts" those obligations to DB US. Standing Mot. ¶¶ 79–80. The plain language of the 2003 MSPA proves otherwise. That agreement provides that if the Debtors are "unable to financially satisfy any claims made by" Brenntag, then DB US "shall be the guarantor." 2003 MSPA ¶ 12.1.1. But that does not mean insolvency extinguishes the Debtors' indemnity obligations. To the contrary, as Movants acknowledge, the only way to trigger DB US's indemnity to Brenntag is if the Debtors themselves (1) owe indemnity to Brenntag and (2) cannot satisfy that obligation. *See* 2003 MSPA ¶ 12; Compl. ¶¶ 101–02.

A judicial declaration stating that the Debtors owe indemnity to Brenntag would harm, rather than benefit, the estates. Such a declaration would only strengthen Brenntag's claims and further encumber the estates' assets. This, alone, means the Movants should not be allowed to pursue this claim. "Without an argument that granting standing would benefit the bankruptcy estate, derivative standing is necessarily improper." *In re Redden*, No. 04-12335(PJW), 2013 WL 5436368, at *3 (Bankr. D. Del. Sept. 30, 2013); *accord In re Rosenblum*, 545 B.R. 846, 863 (Bankr. E.D. Pa. 2016) ("Derivative standing is appropriate only if" the proposed claim "would benefit the estate."). Because proposed Count II violates this requirement, Movants should not be permitted to pursue it. *See In re Skinner*, 519 B.R. 613, 623 (Bankr. E.D. Pa. 2014) (a court "is not authorized to confer derivate standing" where claims "would cause the divestiture of estate assets and necessarily fail to benefit the Debtor's estate"), *aff'd,* 532 B.R. 599 (E.D. Pa. 2015), *aff'd,* 636 F. App'x 868 (3d Cir. 2016).

### B. Proposed Count III (Declaration Regarding NICO Contractual Indemnity to DB US) Is Moot, and the Debtors Do Not Have Standing to Pursue It.

Proposed Count III seeks a declaration that NICO must indemnify DB US under the 2007 Stock Purchase Agreement ("2007 SPA"). *See* Dkt No. 1301-1, Ex. 14. Count III is not a colorable claim that benefits the estate for the same reasons as Count II. Movants try to drum up a controversy to support their proposed Count III by pointing to the existence of an ICC Arbitration between NICO and DB US, *id.* ¶¶ 63, 99, where NICO allegedly sought a decision "relieving it of its indemnification obligations under the 2007 [SPA]." *Id.* ¶ 113. But the ICC Arbitration has been terminated. As part of the settlement that resolved the arbitration, NICO and DB US affirmed that the indemnity provisions of the agreement are valid and binding. *See* Sciarrino Decl. Ex. 1, BERKTCC0283032 ¶ 1(c) (DB US – NICO Settlement Agreement). In other words, the supposed controversy underlying proposed Count III has been resolved because DB US and NICO have agreed to leave the indemnification (and other) terms of the 2007 SPA in full force and effect. Therefore, there is no need for a judicial determination of DB US and NICO's contractual rights—and indeed, the Court lacks jurisdiction to make such a determination. *See, e.g.*, *Perry v. Gonzales*, 472 F. Supp. 2d 623, 626 (D.N.J. 2007) ("Under Article III, a [federal] court 'lacks subject matter jurisdiction over a dispute that is moot.'"). Movants, however, have refused to withdraw Count III, notwithstanding that they received and used the settlement agreement during fact discovery and received confirmation that the arbitration has been terminated. *See* Sciarrino Decl. Exs. 1–2. Because this claim is moot, there is no reason for Movants to continue pursuing Count III.

In any event, the Debtors do not have standing to pursue this claim. "In the context of a contract dispute, only parties to the contract and intended third-party beneficiaries of the contract have prudential standing to appear and enforce agreements." *In re Motors Liquidation Co.*, 580 B.R. 319, 340 (Bankr. S.D.N.Y. 2018). The Debtors are not parties to the 2007 SPA. And contrary to Movants' assertions, Compl. ¶ 104, they are also not third-party beneficiaries of that

agreement.[14] Accordingly, the Debtors do not have standing to enforce that agreement or obtain a declaration of the rights as between NICO and DB US. *See La Liberte v. Reid*, No. 18-CV-5398-DLI-JRC, 2023 WL 6593985, at *9 (E.D.N.Y. Aug. 18, 2023) ("It is well settled that a third party does not have standing to bring a breach of contract claim under an indemnity contract."), *report and recommendation adopted*, 2023 WL 6370772 (E.D.N.Y. Sept. 30, 2023); *Eaton Vance Mgmt v. ForstmannLeff Assocs., LLC*, N. 06 Civ. 1510 (WHP), 2006 WL 2331009, at *6 (S.D.N.Y. Aug. 11, 2006) ("Parties who lack standing to enforce an agreement also lack standing to seek a declaration of rights under the contract.").

"Standing to sue is required for jurisdiction in a federal forum." *Hassan v. City of New York*, 804 F.3d 277, 289 (3d Cir. 2015), *as amended* (Feb. 2, 2016). And because the Debtors themselves would not have standing to pursue proposed Count III, it follows that Movants cannot obtain derivative standing to pursue it. This is particularly true for the declaratory relief sought by proposed Count III, for which standing requirements are "to be strictly construed." *Am. Home Assur. Co. v. Liberty Mut. Ins. Co.*, 475 F. Supp. 1169, 1172 (E.D. Pa. 1979). For this reason as well, Movants' request to pursue proposed Count III lacks merit.

### C. Proposed Count IV (Injunctive Relief Over NICO / DB US Arbitration) Is Moot Because the Proceeding Has Been Terminated.

In proposed Count IV, Movants seek an order enjoining the ICC Arbitration between NICO and DB US. Compl. ¶ 118. That claim is moot because the arbitration proceeding has been terminated. *See* Sciarrino Decl. Ex. 2 (email confirming termination). There is nothing for this Court to enjoin. And in any event, it would be improper to enjoin a contractually required foreign arbitration between non-Debtors. *See, e.g.*, *La Liberte*, 2023 WL 6593985, at *9. As noted already, there is no reason for Movants' refusal to withdraw Count IV.

---

[14] Section 10.08 precludes third-party beneficiaries other than indemnified parties under Article VII. 2007 SPA Section 10.08. The Debtors are not indemnified parties with respect to NICO's indemnity obligations in Section 8.03. 2007 SPA Section 8.03.

12

### III. The TCC and FCR Are Not Appropriate Representatives of the Estates to Pursue the Proposed Claims.

Even if Movants had met their burden to identify a colorable claim, the pursuit of which benefits the Debtors' estates and which the Debtors unjustifiably refused to pursue, neither one of them is an appropriate representative to pursue claims on behalf of the Debtors' estates.

The purpose of derivative standing is "to allow a creditors' committee to pursue [claims] for the estate's direct benefit rather than its own." *Off. Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568–69 (3d Cir. 2003). To merit a grant of derivative standing, a creditor must be able to "step into the shoes of the" debtor-in-possession and "serve as an appropriate estate representative on behalf of [all] the creditors." *In re Prosser*, No. 06-30009, 2009 WL 2424409, at *3 (Bankr. D.V.I. July 31, 2009), *aff'd in part, dismissed in part,* 469 B.R. 228 (D.V.I. 2012). Thus, in deciding whether to grant such standing, "the bankruptcy court may consider not only whether pursuit of a claim by *some* creditor would benefit the estate, but also whether pursuit of a claim by *this* creditor would benefit the estate." *In re George Washington Bridge Bus Station Dev. Venture LLC*, No. 20-CV-1324 (AJN), 2021 WL 568241, at *3 (S.D.N.Y. Feb. 16, 2021).

Here, Movants have not demonstrated that, if granted standing, they would act for the best interests of the estates, as opposed to their own constituency to whom they owe exclusive fiduciary duties. Indeed, their conduct in these cases to date suggests the opposite. With respect to successor liability claims against Brenntag (proposed Count I), the TCC is currently asking the Third Circuit to hold that these same claims are not even property of the Debtors' estates. The Berkshire Entities are not aware of *any* precedent where a creditor's committee has been granted standing while simultaneously challenging the debtor's ownership of the very claims it seeks to pursue. And Movants have offered no assurances that, if granted control over the successor liability claims, they would not attempt to abandon these claims to individual creditors rather than pursue them for the benefit of all creditors.

13

Because Movants have made clear their preferred outcome in these cases is a "pass through" plan, there is every reason to expect that abandoning the successor liability claims is their endgame. Having participated in these proceedings all the way through settlement, the Berkshire Entities find that endgame extremely wasteful. Such an outcome would mean that the resources expended in these cases—in time, money, and judicial attention—was for naught. Rather than serving as a centralized forum for maximizing the value of the Debtors' assets to benefit all of their legitimate creditors, these bankruptcy proceedings would amount to a futile, value-destructive exercise. Movants' pursuit of this path—to the exclusion of value-enhancing alternatives—hardly inspires confidence that they have the best interests of these estates in mind.

Movants' over-reaching proposed declaratory and injunctive relief claims, which aim to inject the Court and the Debtors into hypothetical indemnity disputes among non-Debtors, only underscore these concerns. As described above, Movants have not shown how the Debtors' estates would benefit from pursuing a claim for declaratory relief as to DB US's obligation to indemnify Brenntag for successor liability claims. Movants' requests for a declaration as to NICO's indemnity obligations to DB US, and to enjoin a now-terminated proceeding, similarly make no sense from the perspective of the Debtors' estates. Nothing about that declaratory relief, even if granted, would increase the pool of assets available for the Debtors' creditors generally or reduce the Debtors' liabilities. Instead, Movants appear to be pursuing what they view as the interests of a specific class of creditors, which is not the purpose for which derivative standing is granted. *Cybergenics*, 330 F.3d at 568.

## CONCLUSION

Because the Debtors have pursued proposed Count I, and because proposed Counts II, III, and IV are not colorable and would not benefit the Debtors' estates, Movants' Standing Motion fails. The right to pursue and settle the proposed claims should remain with the Debtors.

14

| | |
|---|---|
| Dated: December 20, 2024 | By: */s/ Paul R. DeFilippo* |

**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo, Esq.
James N. Lawlor, Esq.
Joseph F. Pacelli, Esq. (admitted *pro hac vice*)
Nicholas A. Servider, Esq. (admitted *pro hac vice*)
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
Email: pdefilippo@wmd-law.com
          jlawlor@wmd-law.com
          jpacelli@wmd-law.com
          nservider@wmd-law.com

**MUNGER TOLLES & OLSON LLP**
Seth Goldman (admitted *pro hac vice*)
John W. Berry (admitted *pro hac vice*)
Craig Jennings Lavoie (admitted *pro hac vice*)
Jennifer L. Bryant (admitted *pro hac vice*)
350 South Grand Avenue, 50th Fl.
Los Angeles, CA 90071-1560
Telephone: (213) 683-9554
Email: seth.goldman@mto.com
          john.berry@mto.com
          craig.lavoie@mto.com
          jennifer.bryant@mto.com

**MUNGER TOLLES & OLSON LLP**
Rebecca L. Sciarrino (admitted *pro hac vice*)
560 Mission Street, 27th Fl.
San Francisco, CA 94105-2907
Telephone: (415) 512-4000
Email: rebecca.sciarrino@mto.com

**SIMPSON THACHER & BARTLETT LLP**
Bryce L. Friedman, Esq. (admitted *pro hac vice*)
Alan C. Turner, Esq. (admitted *pro hac vice*)
David R. Zylberberg, Esq. (admitted *pro hac vice*)
Jamie J. Fell, Esq. (admitted *pro hac vice*)
425 Lexington Avenue
New York, NY 10017
Telephone: (212) 455-2000
Email:  bfriedman@stblaw.com
          aturner@stblaw.com
          david.zylberberg@stblaw.com
          jamie.fell@stblaw.com

*Counsel for the Berkshire Entities*

15