HUSCH BLACKWELL LLP
John J. Cruciani
Kirsten Byrd
4801 Main Street, Suite 1000
Kansas City, MO 64112
(816) 983-8197; Fax 816-983-8080
John.Cruciani@huschblackwell.com
Kirsten.Byrd@huschblackwell.com

HUGHES HUBBARD & REED LLP
Christopher K. Kiplok
Erin E. Diers
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000; Fax (212) 422-4726
Christopher.Kiplok@hugheshubbard.com
Erin.Diers@hugeshubbard.com

SCARINCI & HOLLENBECK, LLC
David Edelberg
150 Clove Road, 9th Fl.
Little Falls, New Jersey 07424
201-896-4100; Fax 201-896-8660
DEdelberg@sh-law.com

*Counsel to DB US Holding Corporation*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>WHITTAKER, CLARK & DANIELS, INC., *et al*.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-13575 (MBK)<br><br>(Jointly Administered) |

**OBJECTION OF DB US HOLDING CORPORATION TO**
**JOINT MOTION OF THE OFFICIAL COMMITTEE OF TALC CLAIMANTS**
**AND THE FUTURE CLAIMANTS' REPRESENTATIVE FOR ENTRY OF AN**
**ORDER GRANTING STANDING AND AUTHORIZING THE COMMITTEE**
**AND THE FCR TO COMMENCE, PROSECUTE, AND SETTLE CERTAIN**
**CAUSES OF ACTION ON BEHALF OF THE DEBTORS' ESTATES**

---

1. The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification number, are Whittaker, Clark & Daniels, Inc. (4760), Brilliant National Services, Inc. (2113); L. A. Terminals, Inc. (6800); and Soco West, Inc. (3400). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 100 First Stamford Place, Stamford, Connecticut 06902.

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .....................................................................................................................................2

    **A.**    Count IV Is Not Colorable Because It Is Moot. ...................................................3

    **B.**    The Proposed Declaratory Judgment Claims Are Not Colorable Because the Debtors Do Not Have Standing to Bring Them. ..............................3

        a.    The Debtors Do Not Have Standing to Assert the Declaratory Judgment Claim Set Forth in Count II....................................3

        b.    The Debtors Do Not Have Standing to Assert the Declaratory Judgment Claim Set Forth in Count III. ................................7

    **C.**    The Declaratory Judgment Claims Are Not Colorable Because They Seek Relief Beyond the Scope of the Declaratory Judgment Act.....................................................................................................................9

    **D.**    Pursuit of The Declaratory Relief Claims (Counts II and III) Would Not Benefit the Estates..............................................................................10

    **E.**    Both the 2003 MSPA and 2007 SPA Contain Mandatory Arbitration Clauses. .......................................................................................10

RESERVATION OF RIGHTS ........................................................................................................11

CONCLUSION ................................................................................................................................12

- i -

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Berman Enters., Inc.*, 168 B.R. 18 (Bankr. E.D.N.Y. 1992)..................................................11

*Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods (HAVEN)*, 915 F.2d 167 (5th Cir. 1990)..................................................................................9

*In re Diocese of Camden, New Jersey*, No. 20-21257 (JNP), 2022 WL 884242 (Bankr. D.N.J. Mar. 24, 2022) .........................................................................................2

*Dormitory Auth. of the State of N.Y. v. Samson Constr. Co.*, 30 N.Y.3d 704 (2018).......................8

*Edgewood Manor Apartment Homes, LLC v. RSUI Indem. Co.*, 733 F.3d 761 (7th Cir. 2013)..........................................................................................................................6

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 546 F. Supp. 3d 141 (D.P.R. 2021)..............................................................................................................................6

*Fireman's Fund Ins. Co. v. Glass,* No. 94 Civ. 7375(WK), 1997 WL 289858 (S.D.N.Y. May 30, 1997)..........................................................................................8

*Flast v. Cohen*, 392 U.S. 83 (1968) ................................................................................................3

*In re G-I Holdings, Inc.*, 313 B.R. 612 (Bankr. D.N.J. 2004) .........................................................2

*Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988) .........................................................5

*Lancer Ins. Co. v. Harleysville Mut. Ins.*, 108 F. Supp. 3d 275 (E.D. Pa. 2015).............................6

*LaSalle Nat'l Bank v. Ernst & Young LLP,* 729 N.Y.S.2d 671 (N.Y. App. Div. 2001) ...............................................................................................................................8

*In re MF Glob. Holdings Ltd.*, 571 B.R. 80 (Bankr. S.D.N.Y. 2017) ...........................................11

*Monegasque de Reassurances S.A.M. v. NAK Naftogaz of Ukraine*, 158 F.Supp.2d 377 (S.D.N.Y. 2001), *aff'd*, 311 F.3d 488 (2d Cir. 2002) .......................................................11

*Pearl St. Parking Assocs. LLC v. City of Buffalo*, 211 N.Y.S.3d 655 (N.Y. App. Div. 2024) ............................................................................................................................8

*PHL Variable Ins. Co. v. ESF QIF Tr.*, No. CV 12-319-LPS, 2013 WL 6869803 (D. Del. Dec. 30, 2013)..................................................................................................4

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237 (1952) ..................................................5

*Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643 (3d Cir. 1990) ......................................... 4

*Steward Int'l Enhanced Index Fund v. Carr*, No. 09-CV-5006 (DMC), 2010 WL
　336276 (D.N.J. Jan. 22, 2010) ............................................................................................... 11

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ......................................................................... 4

*Warth v. Seldin,* 422 U.S. 490 (1975) ............................................................................................. 5

*Wausau Ins. Cos. v. Indem. Ins. Co. of N. Am.*, No. CIV. A. 90-0722, 1990 WL
　82085 (E.D. Pa. June 11, 1990) ............................................................................................... 6

*Williams v. BASF Catalysts LLC,* 765 F.3d 306 (3d Cir. 2014) ..................................................... 4

*Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183 (3d Cir. 2008) .............................................. 11

*Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302 (3d Cir. 2022) ............................................. 4

**Statutes and Rules**

28 U.S.C. § 2201 .................................................................................................................. 2, 3, 7, 9, 10

DB US Holding Corporation ("DBUS"), by its undersigned counsel, submits this objection to the *Joint Motion of the Official Committee of Talc Claimants and the Future Claimants' Representative for Entry of an Order Granting Standing and Authorizing the Committee and the FCR to Commence, Prosecute, and Settle Certain Causes of Action on Behalf of the Debtors' Estates* [Docket No. 1293] (the "Standing Motion,"[2] and the proposed Complaint annexed thereto as Exhibit B, the "Proposed Complaint") and joins in the Berkshire Entities' objection to the Standing Motion, filed concurrently (the "Berkshire Objection").

## PRELIMINARY STATEMENT

1. DBUS joins in the Berkshire Objection and for the reasons set forth therein, respectfully requests that the Court deny the Standing Motion. DBUS also files this separate objection to address certain claims that the TCC and FCR (together, the "Movants") seek standing to pursue against DBUS.

2. By the Standing Motion, Movants ask this Court to grant Movants standing to pursue declaratory judgments and an injunction related to contractual indemnification claims among **non-debtors** Brenntag, DBUS, and NICO. The Debtors' estates (whether through the Debtors or through the Movants) lack standing to pursue these claims among non-debtors. If necessary, adjudication of the scope of indemnification claims among non-debtors Brenntag, DBUS, and NICO can be resolved in the contractually agreed upon forum at the appropriate time, with no impact on the Debtors' estates. As the claims that Movants seek standing to pursue against DBUS are not colorable claims and pursuit of such claims would not benefit the Debtors' estates, the Standing Motion should be denied.

---

2. Capitalized terms used but not defined herein shall have the meaning set forth in the Standing Motion.

- 1 -

## ARGUMENT

3. Movants have failed to meet their burden to establish for each claim against DBUS that (i) the claim is "colorable"; (ii) prosecution of the claim would be beneficial to the estates; and (iii) the Debtors have unjustifiably failed to bring the claim. *See In re G-I Holdings, Inc.*, 313 B.R. 612, 628-29 (Bankr. D.N.J. 2004).

4. To establish colorability, Movants bear the burden of demonstrating that each claim meets the applicable pleading standards. *Id.* at 631 ("[T]he first inquiry is much the same as that undertaken when a defendant moves to dismiss a complaint for failure to state a claim.") (quotation omitted). Claims are not colorable (and thus their pursuit would not benefit the estate) if they would not survive a motion to dismiss. *Id.*; *see also In re Diocese of Camden, New Jersey*, No. 20-21257 (JNP), 2022 WL 884242, at *8 (Bankr. D.N.J. Mar. 24, 2022) (holding that a committee had not met the standard to obtain derivative standing to bring alter ego and fraudulent transfer claims where it had not alleged sufficient facts to properly plead those claims).

5. As set forth herein and in the Berkshire Objection, the claims against DBUS alleged by Movants in the Proposed Complaint are not colorable.[3] **First**, the claim seeking an injunction in Count IV of the Proposed Complaint is moot in light of the recent termination of the arbitration proceeding between NICO and DBUS. **Second**, the Debtors (whether on their own behalf or through the Movants) do not have constitutional or prudential standing to bring the claims set forth in Counts II and III of the Proposed Complaint (the "Declaratory Judgment Claims"). **Third**, Movants seek through the Declaratory Judgment Claims relief beyond the scope of the Declaratory Judgment Act. **Finally**, even if the Debtors' estates did have standing to pursue the

---

3. It would not benefit the estates to assert claims that are not colorable. *See In re Diocese of Camden*, 2022 WL 884242 at *8 (denying motion for derivative standing as to claims the court found were not colorable).

Declaratory Judgment Claims (they do not), pursuit of such claims in this Court would violate the bargained-for arbitration provisions of the relevant agreements among non-debtors. For these reasons, the Court should deny the Standing Motion, including with respect to the claims asserted against DBUS.

### A. Count IV Is Not Colorable Because It Is Moot.

6. In Count IV, Movants propose to assert a claim for entry of a preliminary injunction enjoining the continuation of an arbitration between NICO and DBUS while the other claims in the Proposed Complaint are adjudicated. (Proposed Compl. ¶ 118.) Count IV suffers from myriad substantive deficiencies, but foremost among them is that the arbitration was terminated by agreement between DBUS and NICO on November 22, 2024. Accordingly, Count IV is not colorable because it is moot. *See Flast v. Cohen*, 392 U.S. 83, 95 (1968) ("[N]o justiciable controversy is presented . . . when the question sought to be adjudicated has been mooted by subsequent developments[.]").

### B. The Proposed Declaratory Judgment Claims Are Not Colorable Because the Debtors Do Not Have Standing to Bring Them.

7. The Declaratory Judgment Claims are not colorable because the Debtors do not have standing to bring them. Movants do not, and cannot, explain why the Debtors' estates would have standing to step in to ***Brenntag's*** shoes to pursue ***Brenntag's*** indemnification rights against DBUS (Count II), and then subsequently step in to ***DBUS's*** shoes to pursue ***DBUS's*** indemnification rights against NICO (Count III).

#### a. The Debtors Do Not Have Standing to Assert the Declaratory Judgment Claim Set Forth in Count II.

8. In Count II, Movants seek a judicial declaration pursuant to the Declaratory Judgment Act that "DBUS is contractually obligated to indemnify Brenntag for successor liability

-3-

claims under the 2004 [sic] MSPA." (Proposed Compl. ¶ 124.) Debtors lack constitutional and prudential standing to assert this claim.

9. To establish the existence of a "case" or "controversy" under Article III of the Constitution, the plaintiff must have a "'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quotations omitted). To gain Article III standing, which is required in order to establish a justiciable case or controversy, a plaintiff must identify "(1) a cognizable injury that is (2) causally connected to the alleged conduct and is (3) capable of being redressed by a favorable judicial decision." *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 327 (3d Cir. 2014) (quotations omitted).

10. "[W]hen a plaintiff seeks *prospective* (forward-looking) relief in the form of an injunction or a declaratory judgment, they must show that they are 'likely to suffer *future* injury.' The future injury must also be 'imminent,' meaning that it is 'certainly impending' rather than just merely 'possible.'" *Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302, 318 (3d Cir. 2022) (quotations omitted); *see also Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990) ("The discretionary power to determine the rights of parties before injury has actually happened cannot be exercised unless there is a legitimate dispute between the parties."). "Determining whether declaratory judgment jurisdiction exists in a particular case requires consideration of the 'facts alleged, under all the circumstances,' in order to evaluate whether they 'show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *PHL Variable Ins. Co. v. ESF QIF Tr.*, No. CV 12-319-LPS, 2013 WL 6869803, at *3 (D. Del. Dec. 30, 2013) (quotations omitted). "The disagreement must not be nebulous or contingent but must have taken [a] fixed and final shape so that a court can see what legal issues it is deciding, what

effect its decision will have on [its] adversaries, and some useful purpose to be achieved in deciding them." *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 244 (1952).

11. In addition to the constitutional minimum for standing to sue in federal court, the "prudential standing" rule requires that a plaintiff "assert his own legal rights and interests" and prohibits a plaintiff from "rest[ing] his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin,* 422 U.S. 490, 499 (1975). In other words, the prudential standing rule "bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Id.* at 509. "The prudential concerns limiting third-party standing are particularly relevant in the bankruptcy context. Bankruptcy proceedings regularly involve numerous parties, each of whom might find it personally expedient to assert the rights of another party even though that other party is present in the proceedings and is capable of representing himself." *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 644 (2d Cir. 1988).

12. That is precisely what Movants are seeking to do in Count II. By seeking derivative standing to pursue a declaratory judgment on behalf of the Debtors that **DBUS** is contractually obligated to indemnify **Brenntag**, Movants are seeking to enforce the indemnification rights of a third party (Brenntag), rather than any right of the Debtors. Movants' only substantive allegation related to **the Debtors'** "personal stake" in the allocation of rights and obligations between non-Debtor third parties Brenntag and DBUS is that "[t]here is a high likelihood that the requested declaration will definitively resolve the uncertainty that gave rise to the controversy—i.e., whether non-Debtor DBUS is contractually obligated, rather than Brilliant or WCD, to indemnify Brenntag for any Successor Liability Claims[.]" (Proposed Compl. ¶ 94.) By this allegation, Movants imply that Debtors Brilliant and WCD have a stake in obtaining the requested relief because DBUS, if obligated to indemnify Brenntag, would *replace* the Debtors as

-5-

Brenntag's indemnitor. That is not the case. Pursuant to the 2003 MSPA, if the Debtors are "unable to financially satisfy any claims made by" Brenntag, then DB US "shall be the guarantor." 2003 MSPA § 12.1.1. The Debtors would still owe an obligation to Brenntag, which would be guaranteed by DBUS.

13. Moreover, Movants do not appear to be seeking a declaration resolving the ***Debtors'*** indemnification obligations.[4] Rather, they seek a declaration resolving the respective rights and obligations of Brenntag and DBUS, two non-Debtor third parties. They fail to allege any injury that the ***Debtors*** have suffered—or will imminently suffer—in the absence of the requested declaration. Thus, Movants have not satisfied their burden to establish that the Debtors are proper parties to pursue a declaratory judgment action seeking a declaration that DBUS must indemnify Brenntag.[5]

14. In addition, Movants fail to allege any facts to support their conclusory allegation that there is an "actual legal and substantial controversy" regarding "whether DBUS is contractually obligated to satisfy Indemnification Claims asserted by Brenntag with respect to the

---

4. In the introduction to the Proposed Complaint, Movants purport to seek "declarations that the Debtors are not obligated to indemnify Brenntag for this successor liability because, pursuant to contractual arrangements, DBUS and NICO are instead responsible for any such indemnification." (Proposed Compl. ¶ 7.) However, in Count II, Movants appear to seek only "a declaratory judgment that DBUS is liable for Indemnification Claims asserted by Brenntag." (*Id*. ¶ 97.)

5. Courts regularly find that parties lack standing in similar circumstances. *See Lancer Ins. Co. v. Harleysville Mut. Ins.*, 108 F. Supp. 3d 275, 278 (E.D. Pa. 2015) (holding that plaintiff insurer lacked standing to seek a declaration that two other insurance companies also owed coverage to the defendants since it was requesting "a declaration about what other insurers are required to do for their insureds, not about what they are required to do for [the plaintiff]"); *Wausau Ins. Cos. v. Indem. Ins. Co. of N. Am.*, No. CIV. A. 90-0722, 1990 WL 82085, at *1 (E.D. Pa. June 11, 1990) (holding that insurer lacked standing to seek a declaration that another insurance company could not deny coverage to third parties, even though that denial of coverage induced a third party to seek coverage from the plaintiff); *see also, e.g.*, *Edgewood Manor Apartment Homes, LLC v. RSUI Indem. Co.*, 733 F.3d 761, 771–72 (7th Cir. 2013) (affirming dismissal of declaratory judgment action for lack of standing where plaintiff sought declaration of obligations of an insurer (RSUI) to an insured (Southland) from whom the plaintiff had a separate contractual right to recover, because plaintiff had only an indirect interest in such a declaration); *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 546 F. Supp. 3d 141, 152-54 (D.P.R. 2021) (holding that plaintiffs lacked prudential standing to obtain various declarations related to the respective rights of third parties).

Successor Liability Claims." (Proposed Compl. ¶ 89.) Brenntag and DBUS are required to resolve any disputes related to their respective indemnification rights and obligations under the 2003 MSPA—an agreement governed by German law—pursuant to a German arbitration proceeding.[6] Although Movants argue that the Debtors are conflicted, they make no similar argument as to why ***Brenntag*** is not in a position to enforce its own indemnification rights against DBUS. Thus, Movants have failed to demonstrate that they have constitutional and prudential standing to assert a claim for a declaratory judgment that DBUS is obligated to indemnify Brenntag for Successor Liability Claims.

### b. The Debtors Do Not Have Standing to Assert the Declaratory Judgment Claim Set Forth in Count III.

15.     For the same reasons Movants lack standing to pursue Count II, Movants also lack standing to pursue the Declaratory Judgment Claim set forth against DBUS and NICO in Count III of their Proposed Complaint. In fact, any interest Movants might have in obtaining the declaration they seek in Count III is even more remote than any interest they have in obtaining the declaration they seek in Count II.

16.     In Count III, Movants seek a judicial declaration under the Declaratory Judgment Act that "NICO is contractually obligated to indemnify DBUS for successor liability claims and indemnification claims under the 2007 agreement." (Proposed Compl. at 22.) For all the same reasons discussed in Section B(a), *supra*, Movants have not established—and cannot establish—standing to pursue Count III. Movants have not identified any imminent, cognizable injury they would suffer in the absence of the requested declaration. Whether DBUS or NICO

---

6.  *See* 2003 MSPA § 22.11 ("This Agreement shall be governed by, and be construed in accordance with, the laws of the Federal Republic of Germany, without regard to principles of conflicts of laws and without regard to the UN Convention on the Sale of Goods. All disputes arising in connection with this Agreement or its validity shall be finally settled by three arbitrators in accordance with the Arbitration Rules of the German Institution of Arbitration e.V. (DIS) without recourse to the ordinary courts of law.").

must ultimately bear the burden of any legitimate claims for indemnification made by Brenntag against DBUS (if any) simply does not affect any interest of the Debtors.

17. To the extent Movants intend to suggest that the Debtors have standing to pursue the declaration they seek in Count III because Debtors are third-party beneficiaries of the 2007 SPA, they are wrong as a matter of law. Movants fail to identify any language in the 2007 SPA that indicates that DBUS and NICO intended the Debtors to be beneficiaries of NICO's promise to indemnify DBUS such that they would have standing to pursue this declaration.[7] Absent a showing that the parties intended their agreement to benefit a third party, "the third party is merely an incidental beneficiary with no right to enforce the particular contract[]." *Pearl St. Parking Assocs. LLC v. City of Buffalo*, 211 N.Y.S.3d 655, 659 (N.Y. App. Div. 2024) (citations omitted).[8]

18. For these reasons, Movants have failed to demonstrate that the Debtors have standing to pursue the claim set forth in Count III.

---

7. In fact, Section 10.09 of the 2007 SPA, titled "No Third Party Beneficiaries" explicitly provides that "[e]xcept for the provisions of Article VIII relating to indemnified parties, this Agreement shall be binding upon and inure solely to the benefit of the parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other Person, including any union or any employee or former employee of the Seller, any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement." 2007 SPA § 10.09. This negating clause suggests that only "indemnified parties" might qualify for third-party beneficiary status. The Debtors are not "indemnified parties" under Section 8.03. *See id.* § 8.03.

8. *See also LaSalle Nat'l Bank v. Ernst & Young LLP,* 729 N.Y.S.2d 671, 676 (N.Y. App. Div. 2001) ("Absent clear contractual language evincing such intent, New York courts have demonstrated a reluctance to interpret circumstances to construe such an intent."); *Fireman's Fund Ins. Co. v. Glass,* No. 94 Civ. 7375(WK), 1997 WL 289858, *3 (S.D.N.Y. May 30, 1997) ("Although an intended beneficiary need not be specifically mentioned in the contract . . . New York law requires that the parties' intent to benefit a third party be shown on the face of the contract."); *Dormitory Auth. of the State of N.Y. v. Samson Constr. Co.*, 30 N.Y.3d 704, 710 (2018) (Intent to benefit a third party is shown "when the third party is the only one who could recover for the breach of contract or when it is otherwise clear from the language of the contract that there was an intent to permit enforcement by the third party.") (internal quotation omitted).

### C. The Declaratory Judgment Claims Are Not Colorable Because They Seek Relief Beyond the Scope of the Declaratory Judgment Act.

19. Even if Movants could establish that the Debtors have constitutional and prudential standing (they cannot), their proposed Declaratory Judgment Claims against DBUS fail in any case because they exceed the scope of the court's powers under the Declaratory Judgment Act. The Declaratory Judgment Act, by its terms, does not afford courts the power to declare the rights or legal relations of parties who are not seeking any such declaration. The Act provides in relevant part that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations *of any interested party seeking such declaration*, whether or not further relief is or could be sought." 28 U.S.C. § 2201 (emphasis added). For the same reasons the Debtors lack standing, they are also not an "interested party" under the Declaratory Judgment Act. *See, e.g., Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods (HAVEN)*, 915 F.2d 167, 170 (5th Cir. 1990) ("[T]he Act does not extend to all possible interests a party may possess. The courts have long held that only parties with legal interests threatened in an actual controversy have standing to sue under the Declaratory Judgment Act.").

20. Even if the Debtors were considered parties sufficiently "interested" in the outcome of a purported disputes between non-Debtor third parties (Brenntag and DBUS in Count II, and DBUS and NICO in Count III), the declarations Movants seek do not pertain to **the Debtors'** "rights" or "other legal relations." 28 U.S.C. § 2201. Therefore, the declarations Movants seek to pursue simply fall beyond the scope of the Declaratory Judgment Act, which, by its terms, is limited to declarations of "the rights and other legal relations of any interested party *seeking such declaration*." *Id.* (emphasis added). Accordingly, Movants have not satisfied their burden to demonstrate that the claims set forth in Counts II and III are colorable.

### D. Pursuit of The Declaratory Relief Claims (Counts II and III) Would Not Benefit the Estates.

21. Movants have also failed to demonstrate how pursuit of the Declaratory Relief Claims would benefit the estates. Movants' only explanation for how this proposed relief would benefit the Debtors' estates is the barebones assertion that pursuing claims against DBUS will "increas[e] the funds available to satisfy the estates' liabilities." (Standing Mot. ¶ 80.) Movants do not, however, allege that Brenntag (the target of Movants' only proposed claim for monetary damages) lacks the financial wherewithal to satisfy any judgment entered in connection with the Successor Liability Claims, requiring DBUS or NICO to step in to satisfy such judgment. To the contrary, Movants allege that Brenntag is a "solvent non-debtor" that had "more than €10 billion in assets as of December 31, 2023, and annual sales of over €16 billion." (Standing Mot. ¶¶ 69, 73.) Movants also do not allege that Brenntag or DBUS, if faced with a judgment related to the Successor Liability Claims (or indemnification obligations related to such judgment), would not pursue contractual indemnification rights against NICO.

### E. Both the 2003 MSPA and 2007 SPA Contain Mandatory Arbitration Clauses.

22. Even if the Debtors' estates had standing to pursue the Declaratory Relief Claims (they do not) and adjudication of the Declaratory Relief Claims was proper under the Declaratory Judgments Act (it is not), this Court is not the proper forum to adjudicate the interpretation and scope of the 2003 MSPA and the 2007 SPA. The 2003 MSPA is a German-law governed agreement, and all disputes thereunder are subject to mandatory arbitration in Germany in accordance with the Arbitration Rules of the German Institution of Arbitration e.V.[9] Likewise, all disputes under the 2007 SPA are subject to arbitration in England in accordance with the Rules

---

9. *See* supra note 6.

of Arbitration of the International Chamber of Commerce.[10] "Although bankruptcy courts have the discretion to refuse to enforce an arbitration agreement, it must first be demonstrated that a specific conflict exists between enforcing an arbitration clause and the provisions and purposes of the Bankruptcy Code." *In re Berman Enters., Inc.*, 168 B.R. 18, 22 (Bankr. E.D.N.Y. 1992) (holding that "[i]t would be improper for this Court to render any decision regarding the validity of the indemnification agreement in light of the Arbitration Act's guarantee to enforce private contractual arrangements" where it was "clear that the relief sought . . . is not to be found in this forum, but is instead governed by the arbitration clause which [the parties] agreed upon in their indemnification agreement.").[11] No such conflict exists here.

23. Moreover, a German arbitral tribunal is better positioned than this Court to resolve questions of German law. Courts regularly defer to foreign tribunals regarding interpretation of foreign law.[12] The proper forum for the interpretation of the indemnification rights and obligations of the non-debtor parties is the bargained-for arbitral forum.

## RESERVATION OF RIGHTS

24. Nothing herein is intended or should be construed as (a) an admission as to the validity of any particular claim against DBUS, (b) a waiver of DBUS's rights to dispute any

---

10. 2007 SPA § 10.11(a)-(b) ("Any dispute, controversy or claim arising out of or in connection with this Agreement or the breach, termination or validity hereof ("Dispute") shall be finally settled by arbitration in accordance with the Rules of Arbitration of the International Chamber of Commerce (the "Rules") then in effect, except as modified herein. The arbitration shall be held, and the award shall be rendered, in London, England, in the English language.").

11. *See also In re MF Glob. Holdings Ltd.*, 571 B.R. 80, 94 (Bankr. S.D.N.Y. 2017) (observing that even "[t]he arbitration of a procedurally core dispute rarely conflicts with any policy of the Bankruptcy Code unless the resolution of the dispute fundamentally and directly affects a core bankruptcy function.").

12. *See Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 193 (3d Cir. 2008) (holding that the necessity of applying foreign law weighs in favor of dismissal); *Steward Int'l Enhanced Index Fund v. Carr*, No. 09-CV-5006 (DMC), 2010 WL 336276, at *10 (D.N.J. Jan. 22, 2010) ("[A] district court is reasonable to conclude that application of foreign law weighs against maintaining jurisdiction."); *see also Monegasque de Reassurances S.A.M. v. NAK Naftogaz of Ukraine*, 158 F.Supp.2d 377, 387 (S.D.N.Y. 2001) ("Courts have a legitimate interest in avoiding the difficulty with . . . the application of foreign law."), *aff'd*, 311 F.3d 488 (2d Cir. 2002).

particular claim on any grounds, or (c) a waiver of any of DBUS's rights, objections, defenses, arguments, interests, or claims in the Chapter 11 Cases or under the 2003 MSPA and 2007 SPA. DBUS expressly reserves the right to supplement, modify, and amend this Objection at any time, including at the hearing to consider the Standing Motion.

## CONCLUSION

WHEREFORE, DBUS respectfully requests that the Court deny the relief sought in the Standing Motion.

Dated: December 20, 2024

Respectfully submitted,

 */s/ David Edelberg*
SCARINCI & HOLLENBECK, LLC
David Edelberg
150 Clove Road, 9th Fl.
Little Falls, New Jersey 07424
201-896-4100; Fax 201-896-8660
DEdelberg@sh-law.com

-and-

HUSCH BLACKWELL LLP
John J. Cruciani
Kirsten Byrd
4801 Main Street, Suite 1000
Kansas City, MO 64112
(816) 983-8197; Fax 816-983-8080
John.Cruciani@huschblackwell.com
Kirsten.Byrd@huschblackwell.com

-and-

HUGHES HUBBARD & REED LLP
Christopher K. Kiplok
Erin E. Diers
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000; Fax (212) 422-4726
Christopher.Kiplok@hugheshubbard.com
Erin.Diers@hugeshubbard.com

*Counsel to DB US Holding Corporation*

-12-