**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com

-and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Chad J. Husnick, P.C. (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2400
chad.husnick@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*



Order Filed on March 27, 2025
by Clerk
U.S. Bankruptcy Court
District of New Jersey

| | |
|---|---|
| In re:<br><br>WHITTAKER, CLARK & DANIELS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-13575 (MBK)<br><br>(Jointly Administered) |

## ORDER (I) AUTHORIZING THE DEBTORS TO AMEND THE DIP CREDIT AGREEMENT AND (II) GRANTING RELATED RELIEF

**DATED: March 27, 2025**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

## ORDER (I) AUTHORIZING THE DEBTORS TO AMEND
## THE DIP CREDIT AGREEMENT AND (II) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered three (3) through eight (8), is

hereby **ORDERED**.

(Page 3)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Amend the DIP Credit Agreement and (II) Granting Related Relief |

Upon the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Amend the DIP Credit Agreement and (II) Granting Related Relief* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") authorizing the Debtors to amend the DIP Credit Agreement to (a) increase the size of the DIP Commitment under the DIP Facility by up to $30 million in new money DIP Loans pursuant to the Amendment; (b) make certain technical modifications to provisions of the DIP Credit Agreement in connection therewith; and (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration and the Griffith Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"), if any; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page 4)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Amend the DIP Credit Agreement and (II) Granting Related Relief |

granted herein; and upon all of the proceedings had before the Court and after due deliberation and

sufficient cause appearing therefor IT IS HEREBY ORDERED THAT:

1.      <u>Disposition</u>.  The relief requested in the Motion is **GRANTED** on a basis as set

forth herein.  The Amendment, which is attached as **<u>Exhibit 1</u>** to this Order, is authorized and

approved.  The DIP Order, as amended to include the terms of the Amendment, shall otherwise

remain in full force and effect.  Any and all objections to the Motion with respect to the entry of

this Order that have not been withdrawn, waived, settled, or resolved, and all reservations of rights

included therein, are hereby denied and overruled on the merits.  This Order shall become effective

immediately upon its entry.

2.      <u>Approval of the Amendment</u>.  Notwithstanding Paragraph 30 of the DIP Order, the

Debtors are authorized, but not directed, to borrow money pursuant to the DIP Credit Agreement,

as amended by the Amendment, up to an aggregate principal amount equal to $80 million, *plus*

any and all PIK Payment Amounts (all new money DIP Loans authorized by the Amendment being

"<u>Additional DIP Loans</u>"), subject to any limitations on borrowing under the DIP Credit

Agreement, which shall be used for all purposes permitted under the DIP Credit Agreement,

including, without limitation, to pay certain costs, fees, and expenses related to these chapter 11

cases, in each case in accordance with this Order, the DIP Order (as may be modified by this

Order), and the DIP Credit Agreement.

3.      <u>Findings Regarding the Amendment</u>.

a.      Good and sufficient cause has been shown for the entry of this Order.

b.      The Debtors have an immediate need to obtain the Additional DIP Loans

(up to the DIP Commitment, as amended by the Amendment), among other things, to pay the

(Page 5)
Debtors:            WHITTAKER, CLARK & DANIELS, INC., *et al*.
Case No.            23-13575 (MBK)
Caption of Order:   Order (I) Authorizing the Debtors to Amend the DIP Credit Agreement and
                    (II) Granting Related Relief

administrative costs of these chapter 11 cases. The access of the Debtors to liquidity through the

incurrence of new indebtedness is necessary and vital to the preservation and maintenance of the

Debtors' estate.

c.      The financing available under the DIP Credit Agreement, as amended by

the Amendment, represents the best and only available financing option for the Debtors under the

circumstances. The Debtors are unable to obtain financing on more favorable terms from sources

other than the DIP Lender under the DIP Facility Documents, as amended by the Amendment, and

are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the

Bankruptcy Code as an administrative expense. The Debtors also are unable to obtain secured

credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code for the

purposes set forth in the DIP Facility Documents without the Debtors granting to the DIP Lender

the DIP Liens and the DIP Superpriority Claims under the terms and conditions set forth in this

Order, the DIP Order, and the DIP Facility Documents.

d.      The terms of the Amendment are fair and reasonable, reflect the Debtors'

exercise of prudent business judgment consistent with its fiduciary duties, and constitute

reasonably equivalent value and fair consideration.

e.      The terms of the Amendment have been negotiated in good faith and at

arm's length between the Debtors and DIP Lender. All parties' obligations and indebtedness

arising under, in respect of, or in connection with the Amendment shall be deemed to have been

extended by the DIP Lender in good faith, as that term is used in section 364(e) of the Bankruptcy

Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy

Code, and the DIP Lender (and the successors and assigns thereof, solely in their capacity as such)

(Page 6)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Amend the DIP Credit Agreement and (II) Granting Related Relief |

shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

f.     The Amendment and the DIP Facility are independent from the Settlement Agreement made and executed as of September 3, 2024 by and between the Contributing Parties (as defined therein) and the Debtors (the "Proposed Settlement"), and the DIP Obligations, the DIP Liens, and the DIP Superpriority Claims, each as amended by the Amendment, each shall be allowed and enforceable pursuant to the terms and conditions set forth in this Order, the DIP Order, and the DIP Facility Documents regardless of whether or not the Proposed Settlement is approved by the Court, becomes effective, or is terminated.  For the avoidance of doubt, the findings of fact and conclusions of law set forth herein shall not limit the objection of any party in interest to the approval of the Proposed Settlement, and all parties' rights are reserved with respect thereto.

4.     Privileges, Protections, and Priority.  All liens, priorities, and other rights, remedies, benefits, privileges, and protections provided to the DIP Lender in the DIP Order and the DIP Facility Documents with respect to or relating to the DIP Credit Agreement shall apply with equal force and effect with respect to the Amendment and all obligations in connection therewith or related thereto.  Notwithstanding Paragraph 22(e) of the DIP Order, the Additional DIP Loans will rank *pari passu* in right of payment and security with the original DIP Loans and, accordingly, consistent with Paragraph 5 of the DIP Order, the DIP Lender's claims with respect to the Additional DIP Loans shall be superpriority administrative expense claims with priority under section 364(c)(1) of the Bankruptcy Code over all other administrative expense claims and unsecured claims against the Debtors, subject only to the Carveout (as defined in the DIP Order).

(Page 7)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Amend the DIP Credit Agreement and (II) Granting Related Relief |

In furtherance of the foregoing, except as modified by this Order, for all purposes under the DIP Order the defined term "DIP Loans" shall include the Additional DIP Loans.

5.      The DIP Order.  The terms of the DIP Order are incorporated herein and made part of this Order.  Except as expressly modified by this Order, the DIP Order shall remain unchanged and in full force and effect.  All factual and other findings and conclusions of law contained in the DIP Order shall remain fully applicable, including with respect to the Additional DIP Loans, except to the extent specifically modified herein.

6.      Rights of the DIP Lender.  For the avoidance of doubt, nothing in this Order or the Amendment is intended to nor shall alter, impair, or otherwise affect the claims or the priority thereof, or the other rights and interests of the DIP Lender under the DIP Order or the DIP Facility Documents.

7.      Binding Effect; Successors and Assigns.  The DIP Facility Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties in interest in these chapter 11 cases, including, without limitation, the DIP Lender, the Committee, the FCR, and the Debtors and their respective successors and permitted assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Lender.  In determining to make any loan (whether under the DIP Credit Agreement, a promissory note or otherwise) or in exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Facility Documents, the DIP Lender (in their capacity as such) shall not (i) be deemed to be in control of the operations

(Page 8)

| | |
|---|---|
| Debtors: | WHITTAKER, CLARK & DANIELS, INC., *et al*. |
| Case No. | 23-13575 (MBK) |
| Caption of Order: | Order (I) Authorizing the Debtors to Amend the DIP Credit Agreement and (II) Granting Related Relief |

of the Debtors, or (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates.

8.      Notwithstanding anything the contrary contained in this Order, the DIP Order, the DIP Facility, DIP Credit Agreement, the Amendment, or any other DIP Facility Document, the DIP Lender shall have no obligation to make DIP Loans to the extent that such DIP Loans (whether for the Carve Out or otherwise) would cause the aggregate amount of outstanding DIP Loans to exceed the DIP Commitments; *provided*, that any PIK Payment Amounts (as defined in the DIP Credit Agreement) shall not be counted towards the DIP Commitments.

9.      <u>Headings</u>.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Order.

10.      <u>Effectiveness</u>.  This Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon entry hereof.  The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014, any Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order.

11.      <u>Retention of Jurisdiction</u>.  The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order

## Exhibit 1

**Amendment**

**EXECUTION VERSION**

## FIRST AMENDMENT TO SENIOR SECURED
## DEBTOR-IN-POSSESSION CREDIT AGREEMENT

THIS FIRST AMENDMENT TO SENIOR SECURED DEBTOR-IN-POSSESSION CREDIT AGREEMENT (this "Amendment") is made as of [●], 2025, between Brilliant National Services, Inc., a Delaware corporation and a debtor and a debtor-in-possession (the "Borrower"), the other Loan Parties party hereto and National Indemnity Company, a Nebraska corporation, as lender (the "DIP Lender").

W I T N E S S E T H :

WHEREAS, the Borrower and the DIP Lender entered into that certain Senior Secured Debtor-In-Possession Credit Agreement, dated as of October 25, 2024, among the Borrower and the DIP Lender (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, the "Existing Credit Agreement," and the Existing Credit Agreement as amended hereby, the "Credit Agreement");

WHEREAS, the Borrower has requested, and the DIP Lender has agreed, as set forth herein, to amend certain provisions of the Existing Credit Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein and, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

ARTICLE I.

DEFINITIONS AND REFERENCES

Section 1.1.    Defined Terms.  Unless the context otherwise requires or unless otherwise expressly defined herein, the terms defined in the Credit Agreement shall have the same meanings whenever used in this Amendment.  Unless otherwise specified, all section references in this Amendment    refer    to    sections    of    the    Credit    Agreement.

AMENDMENTS TO, AND ACKNOWLEDGEMENTS UNDER, CREDIT AGREEMENT

Section 2.1.    Witnesseth.  The recitals of the Existing Credit Agreement are hereby amended by amending and restating the second recital in its entirety as follows:

WHEREAS, the Borrower has requested, and, upon the terms and subject to the conditions set forth in this Agreement, the DIP Lender has agreed to make available to the Borrower, a senior secured debtor-in-possession credit facility of up to $80,000,000 (the "DIP Facility");

Section 2.2.    Defined Terms.  Section 1.1 of the Credit Agreement is hereby amended by amending and restating the definition of "DIP Loan Commitment Amount" in its entirety as follows:

"DIP Loan Commitment Amount": the lesser of (a) $80,000,000 (as reduced from time to time in accordance with the terms of this Agreement) and (b) the amount approved by the Bankruptcy Court pursuant to the DIP Financing Order; provided, that any PIK Payment Amounts shall not be included in the DIP Loan Commitment Amount.

Section 2.3.    Conditions to Subsequent Draws.  Section 5.2 of the Credit Agreement is hereby amended by adding the below clause (f) to Section 5.2 as follows:

(f)    Additional Condition Subsequent Under First Amendment.  The United States Court of Appeals for the Third Circuit, in cases numbered 24-02210 and 24-02211, shall render a decision affirming the Bankruptcy Court's order denying the motion to dismiss Whittaker, Clark & Daniels, Inc.'s Chapter 11 Case [Docket No. 211]; provided, that such condition shall only apply to draws of DIP Loans made after $20,000,000 has been borrowed pursuant to the *First Amendment to Senior Secured Debtor-in-Possession Credit Agreement* between the Borrower and the DIP Lender.

Section 2.4.    Acknowledgements.    The Borrower and the other Loan Parties hereby acknowledge the following:

(a)    An Event of Default has occurred and is continuing under Section 8(b) of the Credit Agreement as a result of the Borrower's inability to satisfy the Milestone set forth in Section 6.7(b) of the Credit Agreement (the "Milestone Event of Default").

(b)    Notwithstanding the Milestone Event of Default, the DIP Lender is willing to make available the DIP Loan Commitment Amount (as amended by this Amendment) to the Borrower in accordance with the procedure set forth in Section 3.1 of the Credit Agreement.

(c)    The DIP Lender further reserves all rights with respect to the Milestone Event of Default under the Credit Agreement, the DIP Financing Order, or otherwise; and the DIP Lender shall remain entitled to take any action or enforce any remedies as permitted under the Credit Agreement or the DIP Financing Order as a result of the Milestone Event of Default, subject, in each case, to the terms and conditions thereof.

ARTICLE III.

CONDITIONS TO EFFECTIVENESS

Section 3.1.    First Amendment Effective Date. This Amendment shall become effective as of the date on which the following conditions shall have been satisfied (or waived by the DIP Lender) (such date, the "First Amendment Effective Date"):

(a)    The DIP Lender shall have received counterparts of this Amendment duly executed and delivered by the Borrower, each other Loan Party and the DIP Lender.

2

(b)    The Bankruptcy Court shall have entered an order authorizing the Loan Parties' entry into this Amendment.

ARTICLE IV.

<u>MISCELLANEOUS</u>

Section 4.1.    <u>Effect on the DIP Financing Documents</u>.  Except as expressly set forth herein, this Amendment shall not by implication or otherwise limit, impair, constitute a waiver of or otherwise affect the rights and remedies of the DIP Lender under the Existing Credit Agreement or any other DIP Financing Document, and shall not alter, modify, amend or in any way affect any of the terms, conditions, obligations, covenants or agreements contained in the Existing Credit Agreement or any other provision of the Existing Credit Agreement or of any other DIP Financing Document, all of which are ratified and affirmed in all respects and shall continue in full force and effect.   Each Loan Party hereby approves and consents to the agreements and waivers contemplated by this Amendment and agrees that its obligations under the Existing Credit Agreement and the other DIP Financing Documents to which it is a party shall not be diminished as a result of the execution of this Amendment or the consummation of the transactions contemplated by this Amendment and the Credit Agreement.  Each Loan Party acknowledges and agrees that all of the Liens and security interests created and arising under any DIP Financing Document remain in full force and effect and continue to secure its Obligations, unimpaired, uninterrupted and undischarged, regardless of the effectiveness of this Amendment and the consummation of the transactions contemplated by this Amendment and the Credit Agreement. Nothing herein shall be deemed to entitle the Borrower to a consent to, or a waiver, amendment, modification or other change of, any of the terms, conditions, obligations, covenants or agreements contained in the Existing Credit Agreement, the Credit Agreement or any other DIP Financing Document in similar or different circumstances.  Nothing in this Amendment shall be deemed to be a novation of any obligations under the Existing Credit Agreement or any other DIP Financing Document.

Section 4.2.    <u>Reaffirmation</u>.  By signing this Amendment, each Loan Party hereby confirms that (a) its obligations and liabilities under the Credit Agreement and the other DIP Financing Documents to which it is a party remain in full force and effect on a continuous basis after giving effect to this Amendment, (b) the DIP Lender remains entitled to the benefits of the guarantees and the security interests set forth or created in the Security Documents and the other DIP Financing Documents and (c) notwithstanding the effectiveness of the terms hereof, the Security Documents and the other DIP Financing Documents are, and shall continue to be, in full force and effect and are hereby ratified and confirmed in all respects.  Each Loan Party ratifies and confirms that all Liens granted, conveyed, or assigned to the DIP Lender by such Person pursuant to each DIP Financing Document to which it is a party remain in full force and effect, are not released or reduced, and continue to secure full payment and performance of the Obligations.

Section 4.3.    <u>Loan Documents</u>.  This Amendment is a DIP Financing Document, and all provisions in the Credit Agreement (as they may be affected by this Amendment) pertaining to DIP Financing Documents apply thereto.

Section 4.4.    Governing Law; Jury Trial Waiver; Jurisdiction; Consent to Service of Process.  Sections 9.8, 9.9 and 9.10 of the Credit Agreement shall each apply to this Amendment, *mutatis mutandis.*

Section 4.5.    Counterparts; Electronic Execution.  This Amendment may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Amendment.  Delivery of an executed counterpart of this Amendment by facsimile or other electronic method of transmission shall be equally as effective as delivery of an original executed counterpart of this Amendment. Any party delivering an executed counterpart of this Amendment by facsimile or other electronic method of transmission also shall deliver an original executed counterpart of this Amendment but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Amendment.

**THIS AMENDMENT REPRESENTS THE FINAL AGREEMENT AMONG THE PARTIES HERETO AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN OR AMONG THE PARTIES HERETO.**

[*The remainder of this page has been intentionally left blank.*]

**[Signature pages on file with the Borrower and the Guarantors]**

## <u>Exhibit 2</u>

**Amended DIP Budget**

# Amended DIP Budget Weekly View (WE 3/01/2025 through WE 6/28/2025)

| $000s | WE 3/1/25 ACT | WE 3/8/25 FCST Wk.1 | WE 3/15/25 FCST Wk.2 | WE 3/22/25 FCST Wk.3 | WE 3/29/25 FCST Wk.4 | WE 4/5/25 FCST Wk.5 | WE 4/12/25 FCST Wk.6 | WE 4/19/25 FCST Wk.7 | WE 4/26/25 FCST Wk.8 | WE 5/3/25 FCST Wk.9 | WE 5/10/25 FCST Wk.10 | WE 5/17/25 FCST Wk.11 | WE 5/24/25 FCST Wk.12 | WE 5/31/25 FCST Wk.13 | WE 6/7/25 FCST Wk.14 | WE 6/14/25 FCST Wk.15 | WE 6/21/25 FCST Wk.16 | WE 6/28/25 FCST Wk.17 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Receipts** | | | | | | | | | | | | | | | | | | |
| Total Cash Receipts | $4 | — | — | — | — | — | — | — | — | — | — | — | — | — | — | — | — | — |
| **Cash Operating Disbursements** | | | | | | | | | | | | | | | | | | |
| Board Fees & Expenses | — | — | — | — | — | — | — | — | — | — | — | — | — | — | — | — | — | — |
| Other | — | — | ($70) | (3) | ($70) | — | — | — | (3) | ($70) | — | — | — | (3) | ($70) | — | — | (3) |
| Utilities | — | — | (10) | (0) | — | — | — | — | (0) | — | — | — | — | (0) | — | — | — | (0) |
| Bank Fees | — | — | (1) | — | — | — | — | — | — | — | — | — | — | — | — | — | — | — |
| Total Cash Operating Disbursements | — | — | ($81) | ($3) | ($70) | — | — | — | ($3) | ($70) | — | — | — | ($3) | ($70) | — | — | ($3) |
| **Net Operating Cash Flow** | $4 | — | ($81) | ($3) | ($70) | — | — | — | ($3) | ($70) | — | — | — | ($3) | ($70) | — | — | ($3) |
| **Cash Non-Operating Disbursements** | | | | | | | | | | | | | | | | | | |
| Professional Fees & Expenses | ($4,462) | ($1,117) | ($6,380) | ($8,716) | — | — | — | — | ($6,994) | — | — | ($4,546) | — | ($5,545) | — | — | — | ($16,428) |
| US Trustee Fees | — | — | — | — | — | — | — | — | (188) | — | — | — | — | — | — | — | — | (227) |
| Post-Confirmation Costs | — | — | — | — | — | — | — | — | — | — | — | — | — | — | — | — | — | (1,500) |
| Total Cash Non-Operating Disbursements | ($4,462) | ($1,117) | ($6,380) | ($8,716) | — | — | — | — | ($7,173) | — | — | ($4,546) | — | ($5,545) | — | — | — | ($18,155) |
| DIP Financing[1] | — | — | — | $10,000 | — | $10,000 | — | — | — | — | — | — | $10,000 | — | — | — | — | — |
| **Total Net Cash Flow** | ($4,458) | ($1,117) | ($6,461) | $1,281 | ($70) | $10,000 | — | — | ($7,175) | ($70) | — | ($4,546) | $10,000 | ($5,548) | ($70) | — | — | ($18,157) |
| Beginning Unrestricted Cash Balance | $27,080 | $22,621 | $21,504 | $15,044 | $16,325 | $16,255 | $26,255 | $26,255 | $26,255 | $19,080 | $19,010 | $19,010 | $14,464 | $24,464 | $18,916 | $18,846 | $18,846 | $18,846 |
| Total Net Cash Flow | (4,458) | (1,117) | (6,461) | 1,281 | (70) | 10,000 | — | — | (7,175) | (70) | — | (4,546) | 10,000 | (5,548) | (70) | — | — | (18,157) |
| Ending Unrestricted Cash | $22,621 | $21,504 | $15,044 | $16,325 | $16,255 | $26,255 | $26,255 | $26,255 | $19,080 | $19,010 | $19,010 | $14,464 | $24,464 | $18,916 | $18,846 | $18,846 | $18,846 | $689 |
| (-) Accrued but Unpaid Professional Fees | (27,011) | (27,185) | (22,347) | (23,639) | (17,578) | (18,693) | (19,807) | (14,186) | (15,054) | (15,921) | (12,243) | (13,110) | (8,682) | (10,556) | (12,430) | (14,304) | — | — |
| Net Available Unrestricted Cash[2] | ($4,389) | ($5,681) | ($7,303) | ($8,595) | ($139) | ($1,323) | $7,562 | $6,448 | $3,956 | $3,089 | $2,221 | $11,354 | $10,234 | $8,290 | $6,416 | $4,542 | $4,542 | $689 |
| Memo: Restricted Cash - EPA Trust Account #8700 | $8,306 | $8,306 | $8,306 | $8,306 | $8,306 | $8,338 | $8,338 | $8,338 | $8,338 | $8,369 | $8,369 | $8,369 | $8,369 | $8,389 | $8,389 | $8,389 | $8,401 | $8,401 |
| Memo: Accrued DIP Interest | $1,122 | $1,215 | $1,308 | $1,402 | $1,504 | $1,616 | $1,738 | $1,868 | $1,999 | $2,130 | $2,261 | $2,393 | $2,533 | $2,684 | $2,834 | $2,985 | $3,136 | $3,287 |

1)   Assumes incremental $10.0M DIP draw WE 3/29, $10.0M draw WE 4/12, and $10.0M draw WE 5/24

2)   Ending net available unrestricted cash forecasted to be ~$689K on June 30, 2025